

1  Stuart G. Gross (#251019)
   sgross@gross-law.com
2  Meredith Erdman (#273126)
   merdman@gross-law.com
3  **GROSS LAW**
   The Embarcadero
4  Pier 9, Suite 100
   San Francisco, CA 94111
5  t (415) 671-4628
   f (415) 480-6688
6
   *Counsel for Plaintiff*
7

8

9                  UNITED STATES DISTRICT COURT

10                NORTHERN DISTRICT OF CALIFORNIA

11                    SAN FRANCISCO DIVISION

12

13  **SAN FRANCISCO HERRING**            Case No. **CV 13 1750**
    **ASSOCIATION,**
14
                   Plaintiff,
15                                        **COMPLAINT FOR**
                                          **DECLARATORY AND**
        v.                                **INJUNCTIVE RELIEF**
16

17  **UNITED STATES DEPARTMENT OF**
    **THE INTERIOR**; **SALLY JEWELL**, in
18  hER official capacity as Secretary of the
    Interior; **UNITED STATES NATIONAL**
19  **PARK SERVICE**; **JONATHAN JARVIS**,
    in his official capacity as Director of the
20  National Park Service; and **FRANK DEAN**,
    in his official capacity as General
21  Superintendent of the Golden Gate National
    Recreation Area,
22
23                  Defendants.

24

25

26

27

28





1    Plaintiff San Francisco Herring Association ("SFHA") alleges as follows on information

2   and belief, except where based on personal knowledge, against the United States Department of

3   the Interior ("DOI"), Sally Jewell, in his official capacity as Secretary of the Interior; United

4   State National Park Service ("NPS"), Jonathan Jarvis, in his official capacity as Director of the

5   NPS; and Frank Dean, in his official capacity as General Superintendent of the Golden Gate

6   National Recreation Area (collectively, "Defendants"):

7                                  **I. INTRODUCTION**

8        1.    This action challenges Defendants' unlawful denial of commercial herring

9   fishermen access to fishing grounds in waters abutting the Golden Gate National Recreation

10  Area ("GGNRA"). Defendants lacks the legal authority to prohibit fishing in these waters—

11  quite simply the GGRNA has never acquired, and do not hold any rights or authority over the

12  waters in question that would give them the jurisdiction to prohibit commercial fishing in those

13  waters. Nonetheless, during the last two seasons, the 2011/12 season (1/2/12-3/9/12) and the

14  2012/13 (1/2/13-3/15/13) season, Defendants have prevented fishermen from harvesting herring

15  in these waters. This not only disrupted the careful management of the San Francisco Bay

16  herring roe fishery ("Herring Fishery") by the California Department of Fish and Wildlife

17  ("DFW") (formerly known as the Department of Fish and Game) and the California Fish and

18  Game Commission ("FGC"), it caused SFHA's members – small-scale independent fishermen,

19  many of whom fish in husband-wife teams – significant financial losses.

20      2.    Prior to the 2011/12 herring season, Defendants have only once before in the past

21  forty years of the GGNRA's existence threatened to over step the limits of its legal authority in

22  this way. However, that time, which occurred in the mid-1990s, Defendants backed away after

23  the person in charge of managing the Herring Fishery for DFW intervened.

24      3.    However, in November 2011, Defendants informed fishermen, many of whom

25  have been commercially fishing for herring in the San Francisco Bay since the mid-1970s, that

26  the NPS would prohibit fishing in the waters abutting the GGNRA over which the NPS claimed

27  jurisdiction.

28

GROSS
LAW

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**                              1

4.      The Herring Fishery is a limited entry quota-fishery, meaning that only persons who hold a special permit can fish for herring in the Bay and the total amount of fish that all of those persons can collectively harvest from anywhere in the Bay during a particular season is limited to a set amount. That amount is set by the FGC each year in advance of the season's opener after notice, comment, including public hearings, and the creation of an environmental document, as required under the California Environmental Quality Act (CEQA). The Herring Fishery, moreover, is tied to periodic spawns of the Bay's herring stock, which come into the Bay several times over the course of each winter to spawn at varying locations throughout the Bay, including on many occasions, the waters abutting the GGNRA.

5.      Thus, when Defendants arbitrarily and unlawfully decided to prohibit commercial fishing in waters abutting the GGNRA during the 2011/12 and the 2012/13 seasons, the decisions had the effect of substantially extending the length of the Herring Fishery's seasons, and caused the quotas to go unfilled. During both seasons, substantial spawns occurred in the waters abutting the GGNRA, but fishermen were prohibited from entering those waters to harvest the fish. This not only caused commercial herring fishermen and their buyers, including the membership of the SFHA, to suffer significant financial losses, it also disrupted the careful resource management strategy of the DFW/FGC and harmed the Bay's herring resource.

6.      During the 2012/13 season, for example, a very substantial spawn occurred in the waters near Sausalito, in which the Defendants has recently claimed the authority to prohibit commercial fishing. During the period of the spawn, NPS, DFW, and commercial fishing vessels jostled around the perimeter of the waters in which Defendants had decided to prohibit fishing, burning countless gallons of diesel fuel and gasoline for no conceivable purpose. In fact, the result from a herring resource conservation perspective was to unnecessarily increase the fishing pressure on younger herring that came into the Bay in later waves. This is in direct conflict with the DFW/FGC management goal of concentrating fishing pressure, as much as possible, on *older* fish, so as to encourage and support the natural replenishment of the stock.

7.      In a meeting that occurred recently between Defendants and representatives of fishermen, Defendants conceded that the prohibition of fishing in National Parks, which the

GROSS
LAW

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**          2

1 | Defendants have stated compels them to prohibit fishing in the waters in question, was enacted

2 | without the situation presented by the Herring Fishery and the GGNRA in mind. Defendants

3 | also made clear their decision to prohibit herring fishing in the area was not based on any

4 | determination that the fishery caused any type of problems, ecological or otherwise. Defendants,

5 | in fact, conceded that though the fishery has operated as long as the GGNRA has been in

6 | existence, the Defendants did not know enough about the fishery to determine whether or not it

7 | was a good or bad thing.

8 |          8.      The waters of San Francisco Bay, including those adjacent to the GGNRA, have

9 | been actively and lawfully fished since the mid-1800's. The current commercial herring roe

10 | fishery has operated in the San Francisco Bay since at least 1971. Since 1972, the fishery has

11 | been subject to the close regulation of the DFW and the FGC. Indeed, the Herring Fishery is

12 | often cited as one of the most successfully managed commercial fisheries in the country, if not

13 | the world, and is recognized as <u>the last urban commercial fishery in the United States</u>.

14 |          9.      The GGNRA was established in 1972 primarily on lands vacated by the U.S.

15 | military. The recreation area was established through what is known as the GGNRA's enabling

16 | act, 16 U.S.C. §§ 460bb *et seq*. This act makes clear that ***the jurisdiction of the NPS is limited***

17 | ***to lands, waters, and the rights therein <u>acquired</u> by the Department of the Interior ("DOI")***.

18 | Section 4 of the GGNRA's enabling act, 16 U.S.C. § 460bb-3, states

19 |              The Secretary shall administer the lands, waters and interests therein ***<u>acquired</u>***
   |              for the recreation area . . .
20 |

21 | (emphasis added).

22 |          10.     Section 3 of the GGNRA's enabling act, 16 U.S.C. § 460bb-2, further makes

23 | clear that the boundaries of the GGNRA define merely the area <u>in which</u> the DOI "***<u>may</u> acquire***

24 | lands, improvements, waters or interests therein." (emphasis added). The boundaries do not

25 | define the area over which the Defendants have jurisdiction. The DOI has to acquire the lands,

26 | waters and rights therein, first, before the Defendants have any jurisdiction over those lands and

27 | waters. The boundaries of the GGNRA established by Congress do not equal acquisition; rather,

28 | they merely define the area in which the DOI is authorized to make such acquisitions.

GROSS
LAW

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**                                3

1       11.    In this context, the Defendants' recent decision, after over forty years during

2 which the GGNRA and the Herring Fishery have existed side-by-side without issue, to prohibit

3 commercial herring fishing in areas abutting the GGNRA lands in the former Presidio and areas

4 of Marin County is illegal. ***The DOI never acquired rights over these waters that would give***

5 ***the NPS the authority to prohibit commercial fishing in them*** under Section 4 the GGNRA's

6 enabling act. Prohibiting commercial fishing within the waters abutting the GGNRA is not

7 within the NPS' power; thus, its decision to do so was squarely "in excess of [its] statutory

8 jurisdiction, authority, or limitations," in violation of the Administrative Procedures Act

9 ("APA"), 5 U.S.C. § 706(2)(C).

10       12.    Moreover, as explained herein, Defendants' decision to prohibit commercial

11 herring fishing in the waters is arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A).

12       13.    Further, having knowingly permitted fishermen to engage in their lawful right to

13 commercially fish these waters for over forty years, Defendants are estopped from now

14 preventing them from continuing to do so.

15       14.    Accordingly, SFHA, on behalf of itself and its members, brings this action

16 against Defendants under the APA, 5 U.S.C. §§ 701-06, for declaratory and permanent

17 injunctive relief as requested herein.

18           **II.  JURISDICTION, VENUE, & INTRADISTRICT ASSIGNMENT**

19       15.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this

20 action arises under the laws of the United States. Specifically, this action arises under the APA,

21 5 U.S.C. §§ 701-06.

22       16.    An actual controversy exists between the parties within the meaning of 28 U.S.C.

23 § 2201. Final agency action exists that is subject to this Court's review under the APA, 5

24 U.S.C. § 704. This Court may grant declaratory and additional relief, including an injunction,

25 pursuant to 28 U.S.C. §§ 2201 and 2202, and 5 U.S.C. §§ 702, 705, and 706. This Court may

26 allow SFHA to recover reasonable costs and attorneys' fees incurred in connection with this

27 action pursuant to 28 U.S.C. § 2412.

28

1    17.    Venue lies in this judicial district pursuant to 28 U.S.C § 1391(e), because a

2    substantial part of the events and/or omissions giving rise to the claims at issue in this action

3    occurred in this judicial district, and a substantial part of the property that is the subject of this

4    action is situated in this judicial district.

5    18.    Intradistrict assignment to the San Francisco Division is proper under Civil Local

6    Rule 3-2(c) because a substantial portion of the events and/or omissions giving rise to the claims

7    in this case occurred in San Francisco County.

8    ### III. PARTIES

9    **A.    Plaintiff**

10    19.    Plaintiff SFHA is a California non-profit, unincorporated association whose

11    membership consists of active San Francisco Bay commercial herring fishermen and buyers.

12    SFHA was formed to protect its members' access to the Herring Fishery and otherwise advocate

13    on behalf of its members' activities related to herring fishing.  The SFHA's membership is

14    made up by predominantly active commercial herring fishermen, all of whom are small

15    independent business owner/operators.  Many such fishermen, in fact, work together as husband

16    and wife teams on boats on which they work and sleep.

17    20.    SFHA brings this action on behalf of its members, who have been denied the

18    right and ability to harvest herring from key portions of the Herring Fishery by Defendants'

19    unlawful prohibition of commercial fishing in these areas and are otherwise detrimentally

20    affected by those actions.  SFHA has standing to pursue this action.  SFHA and its individual

21    members have suffered injury to concrete commercial interests in the Herring Fishery, and face

22    imminent continuing injury to those commercial interests, which injury has been caused by

23    Defendants' unlawful prohibition of commercial fishing in certain portions of the Herring

24    Fishery.  Declaring Defendants' actions unlawful and enjoining the continued prohibition of

25    commercial fishing in the disputed portions of the Herring Fishery would redress these injuries.

26    As SFHA's purpose is to protect its members' access to the Herring Fishery, the interests at

27    stake in this action—the right to conduct commercial fishing in key portions of the Herring

28    Fishery—are germane to the SFHA's purpose.

GROSS
LAW

**B.** **Defendants**

21.     Defendant United States Department of the Interior ("DOI") is an Executive Branch department of the United States, an "agency" within the meaning of 5 U.S.C. § 701(b), charged with managing the public lands and resources in accordance and in compliance with federal laws and regulations.

22.     Defendant Sally Jewell is the Secretary of the DOI, an Executive Branch agency of the United States. She is named as a defendant in her official capacity.

23.     Defendant United States National Park Service ("NPS") is an Executive Branch agency of the DOI. NPS is responsible for managing all national parks and recreation areas in the United States, including the GGNRA.

24.     Defendant Jonathan Jarvis is the Director of NPS. He is named as a defendant in his official capacity.

25.     Defendant Frank Dean is the General Superintendent of the GGNRA, a national recreation area administered by the NPS. He is named as a defendant in his official capacity.

26.     At all relevant times, each of the Defendants was an agent, employee, servant, partner, alter ego, and/or joint venturer of each of his/her co-Defendants in the acts and omissions that have caused the injuries to Plaintiff as alleged herein, and was at all times, acting within the course and scope of said agency, employment, service, partnership, conspiracy, alter ego status, and/or joint venture.

## IV. FACTUAL ALLEGATIONS

27.     The San Francisco Bay commercial herring fishery is one of the most highly regulated and successful commercial fisheries and stock management programs in the country. The Herring Fishery has been regulated and managed by the State of California since its inception in 1972. The State of California and fishery stakeholders have endorsed and used a broad variety of regulatory measures to ensure the safe, environmentally sensitive, and efficient conduct of commercial fishing in the fishery.= These measures include: conservative annual catch quotas from 0 to 15% of spawning population (significantly less than the entire population of herring); limited entry of vessels and qualified permittees; elimination of round haul nets in

1  1997/98 to become a gillnet-only fishery; adoption of low harvest rates to account for

2  ecosystem needs and scientific uncertainty; reduction from two to one gillnet fished per permit;

3  and the allowance for multiple permits on a single vessel to reduce fleet size. These and other

4  management measures were used not because of overfishing or stock collapse, but to prevent

5  the possibility of these dangers, to improve the economic efficiency of the fleet, and to reduce

6  the "footprint" of the herring boats on the often-congested waters of the San Francisco Bay.

7      28.    While the season for the Herring Fishery technically lasts from either December

8  or January through March, as a practical matter, when the fishery is allowed to progress in

9  accordance with the DFW/FGC management, the quota is generally filled much earlier than

10  March, and the number of days during which boats are actually on the water harvesting is

11  limited to a small number of days surrounding the first handful of times per season that herring

12  enter the Bay to spawn.

13      29.    This helps fulfill the DFW/FGC critical management goal of concentrating

14  fishing effort as much as possible on older fish: herring come into the Bay in successive waves

15  during a season. Each wave, the fish are younger. Thus, allowing fishermen to fill the quota as

16  soon as possible lessens the extent to which fishing pressure is directed towards later spawns

17  and thus younger fish.

18      30.    During the Herring Fishery's over forty year existence, Defendants have been

19  fully aware of the commercial herring fishing taking place in waters abutting the GGNRA, and

20  has never attempted to prohibit commercial herring fishing within any portion of these waters

21  prior to November 2011. Rather, the Fishery has been extensively and consistently regulated by

22  the DFW and the FGC. The DFW/FGC's regulation of the Fishery has permitted commercial

23  fishing in the waters in question for as long as the Herring Fishery has existed, subject to the

24  DFW regulations.

25      31.    In fact, Defendants threatened to prohibit commercial herring fishing in the

26  waters abutting the GGNRA only once before the current decision, approximately twenty years

27  ago, and the NPS backed away from doing so after intervention by the DFW Senior Biologist in

28  charge of managing the Herring Fishery at the time.

GROSS
LAW

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**        7

32.     In the mid-1990s, Defendants threatened to prohibit herring fishermen from fishing in the vicinity of the finger piers in the vicinity of Fort Mason and Gas House Cove. In reaction to the threat, DFW Senior Biologist Frank Henry met with then Superintendent of the GGNRA, Brian O'Neil. At the meeting Senior Biologist Henry provided Superintendent O'Neil details concerning the nature of herring fishing in San Francisco Bay and reported to him that NPS rangers were targeting highly-regulated, licensed herring fishermen while turning a blind eye to frequent sportfishing violations from these same piers in question. In reaction, the NPS dropped its threat to prohibit herring fishing in the area.

33.     In reliance on this, for the next twenty years approximately, commercial fishermen, including members of the SFHA, have continued to commercially fish for herring in the waters abutting the GGNRA and invested substantial sums in reliance upon their continued ability to do so.

34.     Despite the long history of responsible and uninterrupted commercial fishing in the Herring Fishery, its previous decision not to seek to prohibit commercial fishing in the waters abutting the GGNRA, and its clear lack of the legal authority to do so, in November 2011 Defendants provided a letter to commercial herring fishermen as part of their 2012 herring season regulatory packet provided by the DFW, notifying them that commercial fishing would be prohibited in certain key portions of the Herring Fishery that occurred in waters abutting the GGNRA. A true and correct copy of the November 2011 letter from the NPS is attached hereto as **Exhibit 1**.

35.     In the November 2011 letter, Defendants asserted that commercial fishing was prohibited "within the Recreation Area, which includes the waters within the boundary." While referencing Title 36 Code of Federal Regulations, the letter made no reference to the GGNRA's enabling act: neither generally nor to Section 4, which defines Defendants' jurisdiction to administer the GGNRA, specifically.

36.     This absence was made all the more notable by the letter's claim elsewhere that there existed "federal concurrent jurisdictional status" over the following tracts of land, "including tideland and submerged tracts": Fort Mason, Alcatraz Island, and the Presidio

1 (including Crissy Field, Fort Point, and Baker Beach), within the City and County of San

2 Francisco; and Fort Baker, Fort Barry, Fort Cronkhite, and Point Bonita, within the County of

3 Marin.

4      37.    In an "Attachment A" to the November 2011 letter, Defendants described the

5 basis for this claimed jurisdiction. At the top of Attachment A it reads: "Jurisdictional status of

6 tideland and submerged tracts at Golden Gate National Recreation Area (GGNRA) within the

7 City and County of San Francisco and County of Marin:" Below this header are then described

8 the five areas, the "Extent of Ownership" claimed by the United States over each area and the

9 purported "Legal Authority" on which those claims are respectively based. The five areas are

10 identified as follows: "Presidio of San Francisco (San Francisco City and County)"; "Fort

11 Mason (San Francisco City and County)"; "Alcatraz Island (San Francisco City and County)";

12 "Point Bonita to West End of Lime Point (Golden Gate Bride) (Marin County); and "Fort Back

13 (East) (Marin County)."

14      38.    According to Attachment A, the United States claims ownership of "fee title to

15 the tide and submerged lands 300 yards beyond low water" in areas abutting the Presidio, Fort

16 Mason, and Alcatraz, on the basis of "Act of March 9, 1897, by the California Legislature"

17 (Stat. 1897 Ch. 81) ("1897 Act"). The United States claims to "hold[] fee title to the tide and

18 submerged lands out to 500 yards beyond low water" in the area abutting Fort Baker (East), on

19 the basis of "Act of April 16, 1859, by the California Legislature" (Stat. 1859 Ch. 105) ("1859

20 Act"). The United States claims "a leasehold interest (in a strip of tide and submerged lands

21 1,000 feet wide extending waterward from the ordinary high water mark)" in the area abutting

22 Point Bonita to West End of Lime Point (Golden Gate Bride), on the basis of a "1987 California

23 State Lands Commission lease" ("1987 Lease").

24      39.    A true and correct copy of he 1897 Act is attached hereto as **Exhibit 2**. A true

25 and correct copy of the 1859 Act is attached hereto as **Exhibit 3**.

26      40.    As mentioned previously, § 4 of the GGNRA's enabling act, 16 U.S.C. § 460bb-

27 3, limits the NPS' jurisdiction to "the lands, waters and interests therein acquired." As a matter

28 of fundamental California Constitutional law, the United States did not acquire any interest in

1    the waters above bottom lands described in the November 2011 Letter's Attachment A that

2    would allow Defendants to exclude persons wishing to fish or navigate in those waters, through

3    either the 1897 Act, the 1859 Act, nor the 1987 Lease.

4          41.    When the State of California grants property rights to bottom lands under

5    navigable waters – as Defendants claim California did through1897 Act, the 1859 Act, and the

6    1987 Lease to the United States – the grant is subject to the public trust rights of others to fish

7    and navigate upon those waters. *See* California Const. Art. X, §3; *People v. Cal. Fish Co.*, 166

8    Cal. 576 (1913); Cal. Public Resource Code §6009.1. The California State Legislature and

9    State executive agencies lack the legal authority to include within a grant of property rights to

10   bottom lands below navigable waters a right to exclude others that would interfere with their

11   public trust rights to navigate or fish such waters, subject to certain very narrow exceptions not

12   applicable here. As a result, the State of California could not have granted Defendants the right

13   to prohibit fishing in the waters in question, and therefore Defendants have no right or authority

14   to prohibit commercial fishermen from exercising their public trust rights to navigate and fish

15   those waters.

16         42.    Moreover, any interests that the United States was granted through the 1897 Act

17   were rescinded in 1953, through Stat. 1953 Ch. 521 ("1953 Repealing Act"), a true and correct

18   copy of which is attached hereto **Exhibit 4**. The 1953 Repealing Act states: "Chapter 81 of the

19   Statutes of 1897 is hereby repealed." Accordingly, the 1897 Act cannot be used as a basis of the

20   "Legal Authority" for anything.

21         43.    Finally, even if California constitutional law and the repealed character of the

22   1897 Act were ignored, there is nothing in the 1897 Act, the 1859 Act, or the 1987 Lease to

23   which Defendants' could point as basis for the claimed authority to prohibit commercial fishing

24   in the waters in question. Neither the 1897 Act nor the 1859 Act say anything concerning the

25   authority to prohibit commercial fishing in the waters above the bottom lands they described.

26   Both acts merely ceded authority to the United States to the bottom lands described in each in

27   connection with the United States' use of the abutting terrestrial lands for military purposes. It

28

GROSS
LAW

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**                                      10

1    is further relevant to note that the grant by the California Legislature through the 1897 Act was

2    made explicitly revocable.

3        44.    The November 2011 letter was the first time since the mid-1990s that

4    Defendants (or any federal agency, for that matter) expressed its intention to prohibit

5    commercial fishing within waters abutting the GGNRA. Defendants backed away from its

6    unlawful threat to prohibit fishing in these waters in the 1990s, leading fishermen including

7    SFHA members, to rely on a continuation of such a policy.

8        45.    However, Defendants, did not back away from the threat stated in the November

9    2011 letter. Rather, during the 2011/12 season, fishermen, including members of the SFHA,

10   were prevented from harvesting herring that spawned in the waters abutting the Yellow Bluff

11   area of the GGNRA, causing the season to be extended for many several weeks than it would

12   have otherwise and preventing fishermen from fulfilling the season's quota.

13       46.    In an effort to protect their rights to commercially fish in the waters in question

14   and achieve an amicable resolution of the issue, on October 12, 2012, the president of the

15   SFHA, Matt Ryan, and others sent a letter to Defendants pointing out that Defendants had no

16   right to restrict fishing or navigation in the waters abutting the GGNRA.

17       47.    In response to the SFHA's October 12, 2012 letter, in the fall of 2012,

18   representatives of the fishermen and Defendants met to discuss Defendants' unlawful

19   prohibition of commercial fishing in the waters in question and to attempt to reach a resolution.

20   During the meetings and in subsequent telephone conversations between Defendants'

21   representatives and the fishermen's representatives, representatives for the NPS consistently

22   expressly stated its intentions to enforce the prohibition on commercial fishing contained in 36

23   C.F.R. § 2.3(d)(4) in the waters abutting the GGNRA, and that fishermen, including SFHA

24   members, would be subject to criminal penalties if they fished in these waters.

25       48.    On November 14, 2012, Defendants sent a second letter to commercial herring

26   fisherman regarding its prohibition on commercial fishing in the water's abutting the GGNRA.

27   A true and correct copy of the November 14, 2012 letter is attached hereto as **Exhibit 5**. In the

28   letter, Defendants reiterated their position that commercial fishing in the waters abutting the

GROSS
LAW

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**                                    11

1   GGNRA is prohibited pursuant to 36 C.F.R. § 2.3(d)(4) and expressly stated its intent to

2   monitor commercial fishing activities and enforce the prohibition of commercial fishing within

3   these waters. The letter stated in this regard:

4        Because of reported confusion over the jurisdiction of the NPS in past years, it is
         the intention of the NPS to provide informational warnings to any commercial
5        fisherman fishing within the boundaries of GGNRA this season. The NPS,
         however, *reserves the right to enforce any violations of the prohibition of*
6        *commercial fishing as set out in 36 CFR § 2.3(d)(4).*

7   (emphasis added).

8        49.     When pushed concerning these statements, an attorney for Defendants explicitly

9   refused to confirm that a commercial fisherman that fished in herring in the disputed waters

10  would not be cited. Moreover, during the entire time of the spawn in the waters of the Yellow

11  Bluff area that occurred during 2012/13 season, NPS rangers patrolled the waters and shoreline

12  to ensure that no commercial harvesting of herring would occur in those waters.

13       50.     Defendants did not cite any new support in its November 14, 2013 for its claimed

14  authority to prohibit commercial fishing in the waters abutting the GGNRA. Rather, the letter

15  omitted the descriptions of the United States' claimed property rights to the bottom lands in

16  question and the purported "Legal Authority" for such claims that were contained in the

17  November 2011 letter and refuted in the fishermen's letter of October 12, 2012.

18       51.     In a meeting between SFHA representatives and Defendants' representatives that

19  occurred as the 2012/13 season was waning, Defendants confirmed their intention to continue

20  prohibiting commercial fishing in the waters abutting the GGNRA as long as current laws and

21  regulations remained in effect.

22       52.     SFHA's members therefore risk punishment by a fine, imprisonment, or both for

23  violation of 36 C.F.R. § 2.3(d)(4) if they attempt to continue commercial fishing in the waters

24  abutting the GGNRA. *See* 36 C.F.R. § 1.3. By unlawfully prohibiting commercial fishing in

25  the waters abutting the GGNRA, Defendants have caused SFHA's members to suffer significant

26  financial losses as a result of their restricted access to the Fishery during the 2011/12 and

27  2012/13 fishing seasons, and SFHA's members will continue to suffer financial losses so long

28  as the commercial fishing prohibition is enforced by the NPS. Additionally, Defendants sudden

GROSS
LAW

1   and unprecedented action affecting commercial fishing activity in the Herring Fishery has

2   hindered the efficient prosecution and management of the Herring Fishery and is both arbitrary

3   and capricious.

4       53.     The SFHA brings this action on behalf of itself and its members on the ground

5   that the SFHA and its members have suffered and will continue to suffer injuries as a result of

6   being denied the right and ability to harvest herring from the waters abutting the GGNRA, as is

7   their public trust right to do so. The SFHA has standing to pursue this action on behalf of its

8   injured members because its members would have standing to sue in their own right, the interest

9   at stake (SFHA's members' right to fish in the waters abutting the GGRNA) are germane to the

10  SFHA's purpose, and the claims asserted and relief requested do not require the participation of

11  individual members in this action.

12      54.     Defendants' decision to prohibit commercial fishing in the waters abutting the

13  GGNRA constitutes a final agency action. Defendants have declared their intent to enforce this

14  prohibition in two letters to commercial fishermen on DOI/NPS letterhead and during meetings

15  and conversations with SFHA representatives, and the NPS has actively enforced this

16  prohibition by patrolling the waters of abutting the GGNRA and associated shorelines during

17  periods in which herring spawns occurred in such areas with the purpose and effect of

18  preventing SFHA members and other commercial fishermen from harvesting herring from the

19  waters.

20      55.     While no statute or agency rule prescribes administrative action as a prerequisite

21  to judicial review of the Defendants' unlawful application of its regulations outside the scope of

22  its jurisdiction, members of the SFHA have, nonetheless, unsuccessfully attempted to seek a

23  remedy by recourse to the agency prior to filing this action. Moreover, any further attempt at

24  administrative recourse would be futile in this case, as Defendants have clearly announced and

25  reaffirmed their new policy prohibiting commercial fishing in the waters abutting the GGNRA,

26  and has rejected the SFHA's attempts to challenge that policy.

27

28

# V. CAUSES OF ACTION

## COUNT 1:
### VIOLATION OF SECTION 10(e)(2)(C) OF THE APA
### (5 U.S.C. § 706(2)(C))

56. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

57. The APA, 5 U.S.C. § 701, *et seq.*, entitles a party to seek judicial review of an agency action where a legal wrong is alleged and the party alleging the violation is adversely affected or aggrieved by the agency action. Pursuant to 5 U.S.C. § 706(2)(C), a reviewing court shall hold unlawful and set aside agency action found to be in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

58. Defendants acted in violation of the APA by acting in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, when it prohibited commercial fishing in the waters abutting the GGNRA. Defendants do not possess the jurisdiction, authority, or right to prohibit or exclude commercial fishing in the waters abutting the GGNRA. Such waters, being part of the San Francisco Bay, are navigable.

59. The GGNRA's enabling act limits the jurisdiction of Defendants to "the lands, waters and interests therein acquired for the recreation area." 6 U.S.C. § 460bb-3. Defendants have never acquired, and are not presently in possession, of any interest in the waters abutting the GGNRA that would give Defendants the right and/or authority to prohibit persons, including members of the SFHA, from exercising their public trust rights to navigate and/or fish in such waters. Rather, to the extent that Defendants have acquired, and is presently in possession of, any interest in such waters or the bottom lands beneath them, such interest is subject to the public trust rights of persons, including members of the SFHA, to navigate and fish in such waters.

60. Section 3 of the GGNRA's enabling act, 16 U.S.C. § 460bb-2, further makes clear that the boundaries of the GGNRA define merely the area in which Defendants "may acquire lands, improvements, waters or interests therein." (emphasis added). The boundaries do

not define the area over which Defendants have jurisdiction. Defendants must acquire the lands, waters and rights therein, first, before Defendants any jurisdiction over those lands and waters. The boundaries of the GGNRA established by Congress do not equal acquisition; rather, they merely define the area in which Defendants are authorized to make such acquisitions.

61.     Thus, Defendants' prohibition of commercial fishing in the waters abutting the GGNRA are in excess of their statutory jurisdiction, authority, and/or limitations, and/or are short of statutory right in violation of Section 10(e)(2)(C) of the APA.

62.     Additionally, pursuant to 36 C.F.R. § 1.2(a)(5), where the United States holds a less-than-fee interest in lands and waters within the National Park System, the regulations governing the National Park System only apply "to the extent necessary to fulfill the purpose of the National Park Service administered interest *and compatible with nonfederal interest*." (emphasis added). Defendants do not possess the right to prohibit commercial fishing in the waters abutting the GGNRA, any property rights held by Defendants to waters abutting the GGNRA or the bottom lands underneath such waters, to the extent such rights exist at all, are subject to the public trust rights of SFHA members and others to fish and navigate those waters. Defendants' application of 36 C.F.R. § 2.3(d)(4) to the waters abutting the GGNRA to prohibit commercial fishing is incompatible with the public trust rights of SFHA members and others to fish and navigate those waters, and therefore is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

63.     Defendants' action in prohibiting commercial fishing in the waters abutting the GGNRA constitutes final agency action because it is the consummation of the agency's decision-making process, is not merely tentative or interlocutory in nature, and is an action by which the rights and/or obligations of SFHA's members have been determined.

64.     Due to Defendants' knowing and conscious agency action in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, the SFHA and its members have suffered legal wrongs and have been adversely affected and aggrieved within the meaning of 5 U.S.C. § 702. Denials of fishing access to the waters abutting the GGNRA has and will continue to cause injury to the SFHA and its members by artificially extending herring fishing

1  seasons, slowing and/or reducing herring catches, crowding vessels onto other spawning areas,

2  and preventing catch quotas from being fulfilled. SFHA's members have suffered and will

3  continue to suffer significant financial losses as a result of Defendants' extra-legal prohibition

4  of commercial fishing in the waters abutting the GGNRA.

5      65.  Defendants' actions outside the scope of their jurisdiction and/or authority are

6  reviewable under the APA. 5 U.S.C. §§ 704, 706.

7                              **COUNT 2:**
                **VIOLATION OF SECTION 10(e)(2)(A) OF THE APA**
8                              **(5 U.S.C. § 706(2)(A))**

9      66.  Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth

10  herein.

11      67.  The APA, 5 U.S.C. § 701, *et seq.*, entitles a party to seek judicial review of an

12  agency action where a legal wrong is alleged and the party alleging the violation is adversely

13  affected or aggrieved by the agency action. Pursuant to 5 U.S.C. § 706(2)(A), a reviewing court

14  shall hold unlawful and set aside agency action found to be arbitrary, capricious, an abuse of

15  discretion, or otherwise not in accordance with law.

16      68.  Defendants acted in violation of the APA by acting arbitrarily, capriciously and

17  not in accordance with the law when they interpreted 36 C.F.R. § 2.3(d)(4) to apply to the

18  waters abutting the GGNRA and to prohibit commercial fishing in these waters.

19      69.  Defendants' prohibition of commercial fishing in the waters abutting the

20  GGNRA is arbitrary and capricious in violation of Section 10(e)(2)(A) of the APA because

21  Defendants do not possess the jurisdiction, authority, or right to prohibit or exclude commercial

22  fishing in the waters abutting the GGNRA. Defendants have never acquired, and are not

23  presently in possession, of any interest in the waters abutting the GGNRA that would give the

24  Defendants the right and/or authority to prohibit persons, including members of the SFHA, from

25  exercising their public trust rights to navigate and/or fish in such waters. Rather, to the extent

26  that Defendants have acquired, and are presently in possession of, any interest in such waters or

27  the bottom lands beneath them, such interest is subject to the public trust rights of other persons,

28  including members of the SFHA, to navigate and fish in such waters.

1   70. Defendants' prohibition of commercial fishing in the waters abutting the

2 GGNRA is also arbitrary and capricious in violation of Section 10(e)(2)(A) of the APA for

3 other reasons including, without limitation, that doing so does not fulfill Defendants' obligation

4 and duty to conserve the scenery and natural and historic objects and wildlife of the parks, and

5 at the same time provide for public enjoyment of the parks in a manner that leaves them

6 unimpaired for future generations. Rather, Defendants' prohibition of commercial fishing in the

7 waters abutting the GGNRA disrupts the scenery and natural objects and wildlife of the parks

8 by artificially extending herring fishing seasons, slowing and/or reducing herring catches,

9 crowding vessels onto other spawning areas, and preventing catch quotas from being fulfilled.

10   71. Among the detrimental effects this has on the Herring Fishery is the increased

11 fishing pressure it places on younger fish in the herring stock. If it survives, a herring spawned

12 in the Bay will return to the Bay to spawn several times over the course of its life, which can

13 last almost ten years. Herring come into the Bay to spawn in several waves during a season.

14 Each successive wave, the herring get younger. Frequently, including during the last two

15 seasons, herring in the first –and thus older – waves spawned in waters abutting the GGNRA.

16 Preventing fishermen from harvesting these herring prevented the quota from being filled early

17 in the season. As a result, fishermen were out on the water longer and were throwing nets on

18 younger fish that came in later waves. This not only caused younger fish to be harvested, which

19 absent the prohibition would have survived to replenish the stock, it also resulted in unnecessary

20 mortality of younger fish that were not caught but which come in contact with the nets.

21   72. This directly undermines the sophisticated and long-standing regulatory scheme

22 that California uses to manage the fishery, which has among its primary management goals the

23 concentration of fishing pressure on older versus younger fish, as much as possible. The DFW

24 and the FGC have decided upon this conservation strategy after over forty years of management

25 and research activities directed towards the Bay's Herring Fishery. In fact, every year since

26 1991, except 2003, the DFW has created an environmental document under CEQA in advance

27 of setting the next year's quota. Defendants, on the other hand, have admitted to representatives

28 of the fishermen that they have not even studied the fishery and do not know whether allowing

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**        17

1  fishermen to harvest fish in the waters in question is harmful to natural resources. Rather, they

2  claim (incorrectly) to be compelled by the law to prohibit commercial fishing in these waters,

3  regardless whether doing so is good or bad for the environment.

4      73.    Defendants' unlawful prohibition of herring fishing in the waters abutting the

5  GGNRA is furthermore arbitrary and capricious for reasons including, without limitation, that

6  the Defendants' decision to prohibit herring fishing in these waters after over thirty years during

7  which the GGNRA and the Herring Fishery have existed side-by-side was taken based not on

8  any determination that the Herring Fishery caused any problems, ecological or otherwise, but

9  rather because of the Defendants' new and incorrect interpretation of the law.

10      74.    Thus, Defendants' prohibition of commercial fishing in the waters abutting the

11  GGNRA is arbitrary and capricious in violation of Section 10(e)(2)(A) of the APA.

12      75.    Defendants' action in prohibiting commercial fishing in the waters abutting the

13  GGNRA constitutes final agency action because it is the consummation of the agency's

14  decision-making process, is not merely tentative or interlocutory in nature, and is an action by

15  which the rights and/or obligations of SFHA's members have been determined.

16      76.    Due to Defendants' knowing and conscious arbitrary and capricious agency

17  action, the SFHA and its members have suffered legal wrongs and have been adversely affected

18  and aggrieved within the meaning of 5 U.S.C. § 702. Denials of fishing access to the waters

19  abutting the GGNRA has and will continue to cause injury to the SFHA and its members by

20  artificially extending herring fishing seasons, slowing and/or reducing herring catches,

21  crowding vessels onto other spawning areas, and preventing catch quotas from being fulfilled.

22  SFHA's members have suffered and will continue to suffer significant financial losses as a

23  result of Defendant's extra-legal prohibition of commercial fishing in the waters abutting the

24  GGNRA.

25      77.    Defendants' arbitrary and capricious actions are reviewable under the APA. 5

26  U.S.C. §§ 704, 706.

27

28

GROSS
LAW

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**                                    18

1

## COUNT 3:
## ESTOPPEL

2

3       78.     Plaintiff incorporates by references the foregoing paragraphs as if fully set forth

4   herein.

5       79.     Various SFHA members have commercially fished the waters abutting the

6   GGNRA under the regulation of the DFW and the FGC for almost forty years and many since

7   the early 1990s. During this entire period, up until approximately November 2011, Defendants

8   were fully aware of the commercial fishing taking place in the waters abutting the GGNRA and

9   did not attempt to regulate or prohibit this commercial fishing in those waters.

10      80.     Defendants' actions prior to the November 2011 letter indicate an intent that

11  SFHA members and all other commercial fishermen rely on their decision not to prohibit

12  commercial fishing in the waters abutting the GGNRA. In accordance with the statutory limits

13  on their jurisdiction, Defendants never previously enforced 36 C.F.R. § 2.3(d)(4) or any other

14  prohibition on commercial fishing in the waters abutting the GGNRA.

15      81.     Until the November 2011 letter, SFHA members had no knowledge that

16  Defendants believed they had the authority to prohibit commercial fishing in the waters abutting

17  the GGNRA. SFHA members relied on the actions of Defendants in permitting commercial

18  fishing in the waters abutting the GGNRA for over forty years, in that SFHA members

19  developed an industry and practice of commercial fishing in the waters abutting the GGNRA.

20  SFHA members relied on Defendants' actions indicating commercial fishing is permissible in

21  the waters abutting the GGNRA to their detriment, as SFHA members have now been and will

22  continue to be injured as a result of the Defendants' actions.

23      82.     Defendants' engaged in affirmative misconduct when, through their actions, it

24  affirmatively abandoned their claimed authority to prohibit commercial herring fishing in the

25  waters abutting the GGNRA in the mid-1990s and never again actively sought to prohibit

26  commercial herring fishing in these waters until November of 2011. In light of their change in

27  policy in November of 2011, these actions constituted ongoing active misrepresentations by the

28  Defendants regarding their policy concerning commercial herring fishing in these waters and/or

1   a pervasive pattern of false promises by Defendants not to seek to prohibit commercial herring

2   fishing in these waters.

3       83.     Defendants' actions have caused a serious injustice to SFHA members by

4   suddenly, without reason or recourse, prohibiting commercial herring fishing in crucial Herring

5   Fishery waters in which SFHA members have been actively commercially fishing for almost

6   forty years, causing substantial economic injury by interfering with their ability to harvest, sell

7   and buy herring.

8       84.     There will be no damage to the public interest by estopping Defendants from

9   prohibiting commercial fishing in the waters abutting the GGNRA and requiring them to

10  continue to allow such activity, as Defendants have already allowed commercial fishing in the

11  waters abutting the GGNRA for over forty years. In fact, the Defendants' recent about-face

12  concerning commercial herring fishing in these waters is detrimental to the public interest.

13  Arbitrarily and capriciously preventing fishermen from harvesting certain herring spawns that

14  happen to occur in waters over which the NPS illegally claims jurisdiction disrupts the careful

15  balance achieved through the stock-wide management by the DFW and the FGC and artificially

16  extends the herring season, causing not only financial injuries to those that depend on the

17  Herring Fishery, but also harming the herring stock.

18      85.     As a result, the injustice suffered by SFHA members by the prohibition on

19  commercial fishing substantially outweighs any damage to the public interest of estopping

20  Defendants from effecting their new found intent to enforce a prohibition of commercial herring

21  fishing in the waters abutting the GGNRA.

22      86.     A judicial determination is necessary in this matter to resolve this dispute

23  between the parties.

## VI. **PRAYER FOR RELIEF**

25      WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of

26  Plaintiff and against Defendants and grant the following relief:

27      A.      A judicial declaration that:

28

1           1.      Defendants' application of 36 C.F.R. § 2.3(d)(4) to the waters abutting

2  the GGNRA is unlawful as in excess of statutory jurisdiction, authority, or limitations, or short

3  of statutory right, in violation of the APA, 5 U.S.C. § 706(2)(C), and 36 C.F.R. § 1.2;

4           2.      Defendants' application of 36 C.F.R. § 2.3(d)(4) to the waters abutting

5  the GGNRA is unlawful as arbitrary, capricious, and an abuse of discretion, or otherwise not in

6  accordance with law, in violation of the APA, 5 U.S.C. § 706(2)(C);

7           3.      Defendants have no right or authority to prohibit commercial fishing the

8  in the waters abutting the GGNRA; and

9           4.      Defendants are estopped from prohibiting commercial fishing in the

10  waters abutting the GGNRA.

11      B.      An order permanently enjoining Defendants and all persons and entities in active

12  concert or participation with Defendants from enforcing 36 C.F.R. § 2.3(d)(4) in the waters

13  abutting the GGNRA and/or otherwise prohibiting commercial fishing in such waters;

14      C.      Award Plaintiff its costs and reasonable attorneys' fees incurred in this action

15  pursuant to 28 U.S.C. § 2412; and

16      D.      Grant such other or further relief as the Court deems just and proper.

17

18  DATED:  April 18, 2013                  **GROSS LAW**

19

20                                     Stuart G. Gross (#251019)

21                                     sgross@gross-law.com
                                         Meredith Erdman (#273126)

22                                     merdman@gross-law.com
                                     **GROSS LAW**

23                                     The Embarcadero
                                     Pier 9, Suite 100

24                                     San Francisco, CA 941111

25                                     t (415) 671-4628
                                     f (415) 480-6688

26

27                                     *Counsel for Plaintiff*

28

GROSS
LAW      **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**            21

# EXHIBIT 1



# United States Department of the Interior

NATIONAL PARK SERVICE
Golden Gate National Recreation Area
Fort Mason, San Francisco, California 94123

IN REPLY REFER TO:
W30(GOGA-VRPCR)

November, 2011

The law creating the National Park Service, Title 16 of the United States Code, § 1, requires the Park Service to conserve the scenery and natural and historic objects and wildlife of the parks, and at the same time to provide for public enjoyment of the parks in a manner that will leave them unimpaired for future generations.

In preparation of the upcoming Herring Season information notice, being prepared by your agency, the following applies with respect to jurisdictional status and commercial fishing within Golden Gate National Recreation Area (GGNRA). The federal concurrent jurisdictional status of lands, including tideland and submerged tracts, at GGNRA within the City and County of San Francisco include Fort Mason, Alcatraz Island and the Presidio, including Crissy Field, Fort Point and Baker Beach. Within the County of Marin concurrent jurisdiction includes: Fort Baker, Fort Barry, Fort Cronkhite, and Point Bonita.

The National Park Service has the responsibility of enforcing Title 36 Code of Federal Regulations (CFR) within the Recreation Area, which includes the waters within the boundary (36 CFR 1.2(3)). Per 36 CFR § 2.3 (d)(4), the following are prohibited: Commercial fishing, except where specifically authorized by Federal statutory law.

Within the concurrent jurisdiction sites the State of California, Department of Fish & Game has jurisdiction to enforce its laws. The National Park Service is holding its authorities in reserve at this time, should it decide the resource needs more protection beyond the State regulations; it retains its powers to enforce federal regulations. However, boating or the use of any vessel, as defined by Title 36 CFR §1.4, is prohibited in the Wildlife Protection Area portion, 100 yards, at Crissy Field, established in August, 2001 by the Superintendent in the Park compendium, under his authority from Title 36 CFR, § 1.5 (a)(1) Closures and public use limits and will remain in effect.

Notwithstanding the above, the GGNRA – out of our primary interest in protecting the resources – will rely on California Department of Fish and Game to respect National Park Service closures and enforce fisheries management.

## Attachment A

Jurisdictional status of tideland and submerged tracts at Golden Gate National Recreation Area (GGNRA) within the City and County of San Francisco and County of Marin:

**Presidio of San Francisco** (San Francisco City and County)
(including Crissy Field, Fort Point, and Baker Beach south to Lobos Creek)

Extent of Ownership:  The United States owns fee title to the tide and submerged lands 300 yards beyond low water. The United States exercises concurrent jurisdiction over this area.

Legal Authority: .                        Act of March 9, 1897, by California Legislature

**Fort Mason** (San Francisco City and County)

Extent of Ownership:  The United States owns fee title to the tide and submerged lands 300 yards beyond low water. The United States exercises concurrent jurisdiction over this area.

Legal Authority:                        Act of March 9, 1897, by California Legislature

**Alcatraz Island** (San Francisco City and County)

Extent of Ownership:  The United States owns fee title to the tide and submerged lands 300 yards beyond low water. The United States exercises concurrent jurisdiction over this area.

Legal Authority:                        Act of March 9, 1897, by California Legislature

**Point Bonita to West End of Lime Point (Golden Gate Bridge)** (Marin County)

Extent of Ownership:  The United States does not have fee ownership of these offshore lands.  The 1987 lease from the California State Lands Commission provides the National Park Service with a leasehold interest (in a        strip of tide and submerged lands 1,000 feet wide extending waterward from the ordinary high water mark).  The federal jurisdiction is proprietary.

Legal Authority:                        1987 California State Lands Commission lease

**Fort Baker (East)** (Marin County)

Extent of Ownership:  The United States holds fee title to the tide and submerged lands out to 500 yards beyond low water. The United States exercises concurrent jurisdiction over this area.

Legal Authority:                        Act of April 16, 1859, by California Legislature

# EXHIBIT 2

# CHAPTER LXXXI.

*An Act relinquishing to the United States of America the title of this State to certain lands.*

[Approved March 9, 1887.]

*The People of the State of California, represented in Senate and Assembly, do enact as follows:*

**Relinquishing title to certain State lands to the United States.**

SECTION 1.  All the right and title of the State of California in and to the parcels of land extending from high-water mark out to three hundred yards beyond low-water mark, lying adjacent and contiguous to such lands of the United States in this State as lie upon tidal waters and are held, occupied, or reserved for military purposes or defense, lying adjacent

75

## THIRTY-SECOND SESSION.

and contiguous to any island, the title to which is in the United States, or which island is reserved by the United States for any military or naval purposes or for defense, are hereby granted, released, and ceded to the United States of America; the boundaries of each parcel of land hereby granted, released, and ceded to the United States to be a line along high-water mark, a line three hundred yards out beyond low-water mark, and lines at right angles to high-water mark at the points where the boundaries of the adjacent lands of the United States touch high-water mark; *provided*, that the title to each parcel of land hereby granted, released, and ceded to the United States shall be, and remain in the United States only so long as the United States shall continue to hold and own the adjacent lands now belonging to the United States; *and provided further*, that this State reserves the right to serve and execute on said lands all civil process, not incompatible with this cession, and such criminal process as may lawfully issue under the authority of this State against any person or persons charged with crimes committed without said lands.

SEC. 2.   This Act shall take effect immediately.

# EXHIBIT 3

334                    STATUTES OF CALIFORNIA,

CHAP. CCCV.—*An Act ceding Jurisdiction to the United States over Certain Lands.*

[Approved April 16, 1859.]

*The People of the State of California, represented in Senate and Assembly, do enact as follows :*

Jurisdiction.    SECTION 1.   Jurisdiction is hereby ceded to the United States over any such tract or tracts of land at or near Lime Point Bluff, on the northern side of the Harbor of San Francisco, as may be ac[re]quired by the United States for the purpose of military defence, and over all the contiguous shores, flats, and waters, within five hundred yards from low-water-mark ; *Provided,* that this State shall retain a concurrent jurisdiction with the United States, in and over the premises in question, so far as that all civil processes, not incompatible with the full constitutional authority of the United States, and criminal process as may lawfully issue under the authority of this State, against any person or persons charged with crimes committed without the premises aforesaid, may be executed therein, in the same way and manner as if jurisdiction had not been ceded as aforesaid, except so far as such process may affect the real or personal property of the United States.

Exonerated from taxes.    SEC. 2.   The premises over which jurisdiction is ceded by this Act, and all structures and other property thereon, belonging to the United States, shall be exonerated and discharged from all taxes and assessments which may be laid or imposed under the authority of this State, while said premises shall remain the property of the United States, and shall be used for the purposes intended by this Act.

Take effect.    SEC. 3.   This Act shall take effect from and after its passage.

——————

CHAP. CCCVl.—*An Act for the Relief of T. W. Blake, William B. Olmstead, H. W. Anderson, C. R. Rice, and the Administrator of John Cole, deceased.*

[Approved April 16, 1859.]

*The People of the State of California, represented in Senate and Assembly, do enact as follows :*

$989 65.    SECTION 1.   The sum of nine hundred and eighty-nine dollars and sixty-five cents, of any money in the State treasury not otherwise appropriated, is hereby appropriated and set apart to pay F. W. Blake, William B. Olmstead, H. W. Anderson, C. R. Rice, and the Administrator of John Cole, deceased, sureties of C. F. Lynn, Ex-County Treasurer of Trinity County, said sum being amount of a just set-off which said sureties are entitled to

# EXHIBIT 4

Ch. 521]                  1953 REGULAR SESSION                  1761

## CHAPTER 521

*An act to repeal Chapter 81 of the Statutes of 1897, relating to the relinquishing to the United States of America the title of this State to certain lands.*

[Approved by Governor May 2, 1953. Filed with
Secretary of State May 4, 1953.]

In effect
September 9
1953

*The people of the State of California do enact as follows:*

SECTION 1.   Chapter 81 of the Statutes of 1897 is hereby Repeal
repealed.

# EXHIBIT 5



# United States Department of the Interior

NATIONAL PARK SERVICE
Golden Gate National Recreation Area
Fort Mason, San Francisco, California 94123

IN REPLY REFER TO:
A7217(GOGA-SUPT)

November 14, 2012

Attention: 2012/2013 Commercial Herring Fishermen

The Golden Gate National Recreation Area (GGNRA or Park) is governed, in part, by our park enabling legislation, and by the law creating the National Park Service (NPS), the NPS Organic Act, Title 16 of the United States Code § 1, that requires the NPS to conserve the scenery and natural and historic objects and wildlife of the parks, and at the same time to provide for public enjoyment of the parks in a manner that will leave them unimpaired for future generations. The NPS has the responsibility of enforcing the regulations in Title 36, Chapter 1, of the Code of Federal Regulations (36 CFR), which are applicable to all units of the National Park System, including the waters within the boundary of GGNRA (36 CFR § 1.2(3). Title 36 CFR § 2.3 (d)(4) prohibits commercial fishing in all national parks, except where specifically authorized by Federal statutory law. There is no federal statute that specially authorizes commercial fishing within GGNRA; therefore, commercial fishing, including commercial herring fishing, is prohibited within GGNRA.

The State of California, Department of Fish & Game (CDFG) has jurisdiction to enforce its laws in the waters within the boundary of GGNRA and in the past, CDFG has assisted the NPS in monitoring commercial fishing within the Park. During the upcoming herring season, the NPS will also be monitoring commercial fishing activities and enforce the prohibition of commercial fishing within the waters of GGNRA. (See attached map). Because of reported confusion over the jurisdiction of the NPS in past years, it is the intention of the NPS to provide informational warnings to any commercial fisherman fishing within the boundaries of GGNRA this season. The NPS, however, reserves the right to enforce any violations of the prohibition of commercial fishing as set out in 36 CFR § 2.3(d)(4).

Please note, boating or the use of any vessel, as defined by 36 CFR §1.4, is prohibited in the Crissy Field Wildlife Protection Area which encompasses the shoreline and beach north of Crissy Field that stretches east from the Torpedo Warf to approximately 700 feet east of the former Coast Guard station and all tide lands and submerged lands to 300 feet off shore. The Alcatraz Island shoreline and docks and all tide

lands and submerged lands to 300 feet off shore are also closed to boating or the use of any vessel, except to NPS contracted ferry and barge service.

Sincerely,

Frank Dean

Frank Dean
General Superintendent

Enclosure
Map of Marine Boundary of GGNRA



Marine Boundary and Wildlife Protection Areas

National Park Service
U. S. Department of the Interior
Golden Gate National Recreation Area

Relevant GGNRA Offshore Boundary
(1,320 ft offshore)

Crissy Wildlife Protection Area

Alcatraz Wildlife Protection Area
(Seasonal Closure: February 1 – June 30)

Alcatraz
(300 ft offshore)

Fort Mason

Fort Baker

Fort Point NHS

Crissy Field
(300 ft offshore)

Presidio

Sausalito

Marin
Headlands

Golden Gate
Bridge

Point
Bonita

0   0.25   0.5   0.75   1
Miles

Sources: NPS, USDA, Air photo from 2012.
Date: 11/14/2012