**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAN FRANCISCO HERRING ASSOCIATION,<br><br>        Plaintiff,<br><br>      v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR: SALLY JEWELL, in her official capacity as Secretary of the Interior: UNITED STATES NATIONAL PARK SERVICE: JONATHAN JARVIS, in his official capacity as Director of the National Park Service: and FRANK DEAN, in his official capacity as General Superintendent of the Golden Gate National Recreation Area,<br><br>        Defendants. | Case No.  13-cv-1750-JST<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Date: August 21, 2013<br>Time: 2:00 p.m.<br>Hon. Jon S. Tigar<br>Courtroom: 9, 19th Floor |

Pursuant to Federal Rule of Civil Procedure 26 and Civil Local Rule 16-9, the parties, by and through their respective counsel, submit this Joint Case Management Statement. Undersigned counsel for Plaintiff the San Francisco Herring Association ("SFHA" or "Plaintiff") hereby attests that Bruce Bernard, counsel for Defendants, authorized counsel for Plaintiff to sign this statement on his behalf.

1. <u>**Jurisdiction and Service**</u>

This Court has jurisdiction over this action as against the United States Department of Interior ("DOI") and National Park Service ("NPS") pursuant to 28 U.S.C. § 1331, as Plaintiff's alleges in Paragraph 15 of the Amended Complaint that "this action arises under the APA [Administrative Procedures Act], 5 U.S.C. §§ 701-706." Defendants deny that the Court has jurisdiction over the individuals sued in their official capacity. Plaintiff disputes that denial. Service has been completed.

//

//

//

**2.**     **Relevant Facts**

    **A.**     **Plaintiff**

Plaintiff's claims are based on two principal contentions: (1) DOI and its agency NPS (collectively, "DOI/NPS") do not have the jurisdiction/authority to prohibit fishing in the waters abutting the shoreline of the Golden Gate Recreation Area ("GGNRA") ("Disputed Waters"); and (2) the DOI/NPS filed to conduct an adequate analysis concerning the impact – environmental or otherwise – or appropriateness of commercial herring fishing in the Disputed Waters prior to its decision to prohibit commercial herring fishing in such waters.

    **1.**     **Facts Relevant to Plaintiff's Jurisdictional Claim**

The GGNRA was established in 1972 through the U.S. Congress's enactment of Public Law 92-589 (Oct. 27, 1972), which was subsequently codified at 16 U.S.C. §§ 460bb et seq. ("GGNRA Enabling Act" of "Act"). The Sections of the Act most relevant here are: Section 2, "Composition and Boundaries," 16 U.S.C. § 460bb-1[1]; Section 3, "Acquisition Policy," 16 U.S.C. § 460bb-2[2]; and Section 4, "Administration," 16 U.S.C. § 460bb-3.[3] Together these provisions establish that the jurisdiction/authority of the NPS/DOI over lands and waters in the San Francisco Bay area is <u>not</u> based solely on whether such lands or waters fall within the boundaries of the GGNRA set forth in Section 2

---

[1] "The recreation area shall comprise the lands, waters, and submerged lands generally depicted on the map entitled: 'Revised Boundary Map, Golden Gate National Recreation Area', numbered NRA-GG-80,003-K and dated October 1978, plus those areas depicted on the map entitled "Point Reyes and GGNRA Amendments and dated October 25, 1979'. . . ." 16 U.S.C. § 460bb-1. The Section goes on to *inter alia* prohibit the DOI/NPS from acquiring certain areas that fall within the boundaries of the recreations area defined by on this map. *See, e.g.* 16 U.S.C. § 460bb-1(a)(1) ("Notwithstanding any other provision of this Act, the Secretary ***shall not acquire*** the Marin County Assessor's parcels numbered 199-181-01, 199-181-06, 199-181-08, 199-181-13, and 199-181-14, located in the Muir Beach portion of the recreation area.") (emphasis added).

[2] "***Within the boundaries of the recreation area, the Secretary <u>may acquire</u> lands, improvements, waters, or interests therein***, by donation, purchase, exchange or transfer. Any lands, or interests therein, owned by the State of California or any political subdivision thereof, may be acquired only by donation. . . . " 16 U.S.C. § 460bb-2 (emphasis added).

[3] "The Secretary ***shall administer the lands, waters and interests therein <u>acquired</u>*** for the recreation area in accordance with the provisions of the Act of August 25, 1916 (39 Stat. 535; 16 U.S.C. 1, 2-4), as amended and supplemented, and the Secretary may utilize such statutory authority available to him for the conservation and management of wildlife and natural resources as he deems appropriate to carry out the purposes of this Act. . . . " 16 U.S.C. § 460bb-3 (emphasis added).

of the Act. Rather, in order for the DOI/NPS to have jurisdiction/authority over particular lands or waters, those lands and water must fall within the boundaries of the GGNRA established by Congress **_and_** the DOI/NPS must have acquired those lands and waters. Furthermore, the Act establishes that DOI/NPS cannot acquire lands or waters by eminent domain and can only acquire the lands of the State of California by donation.

The DOI/NPS never acquired any interest in the Disputed Waters that would give them the jurisdiction/authority to prohibit commercial fishing in those waters.

In November 2011, the DOI/NPS transmitted a letter to commercial herring fishermen as part of the 2012 herring season regulatory packet provided by the California Department of Fish and Wildlife ("CDFW") to fishermen every year in advance of the herring season. In that letter the DOI/NPS purported to address the "jurisdictional status and commercial fishing within the Golden Gate Recreation Area (GGNRA)" based on the DOI/NPS's alleged acquisition of certain "tideland and submerged tracts." Specifically, the letter claimed there existed "federal concurrent jurisdictional status of lands, including tideland and submerged tracts, at GGNRA within the City and County of San Francisco include Fort Mason, Alcatraz Island and the Presidio, including Crissy Field, Fort Point and Baker Beach; [and] within the County of Marin concurrent jurisdiction includes: Fort Baker, Fort Barry, Fort Cronkhite, and Point Bonita." The letter cited two acts of the California State Legislature from the 1800s and lease from the California State Lands Commission from the 1980s as the "legal authority" for claims of "ownership" over these lands that, in turn, purportedly gave the DOI/NPS jurisdiction over the waters above such lands.[4]

//

//

---

[4] Specifically, the letter claimed that: an "Act of March 9, 1897, by the California Legislature," codified as Stat. 1897 Ch. 81, gave "[t]he United States fee title to the tide and submerged lands 300 yards beyond low water" offshore of the Presidio of San Francisco, Fort Mason, and Alcatraz Island; an "Act of April 16, 1859, by the California Legislature," codified as Stat. 1859 Ch. 105, gave "[t]he United States fee title to the tide and submerged lands 500 yards beyond low water" offshore of Fort Baker; and an "1987 California State Lands Commission lease . . . provides the National Park Service with a leasehold interest (in a strip of tide and submerged lands 1,000 feet wide extending waterward from the ordinary high water mark)" offshore of "Point Bonita to West End of Lime Point." Concerning the latter claimed leasehold the letter made clear "[t]he federal jurisdiction is proprietary."

The DOI/NPS did not acquire a property interest in any of the Disputed Waters through any of these three instruments on which it could base a claim of jurisdiction/authority under the GGNRA Enabling Act Section 4, 16 U.S.C. § 460bb-3 to prohibit commercial fishing in such waters.

First, as matter of California constitutional law, when the State of California grants property rights to land under navigable waters, with a few very narrow exceptions not applicable here, such grants do <u>not</u> include property rights over the waters above that entitle the holder to exclude others wishing to fish or navigate such waters. Cal. Const. Art. X, §3; *People v. Cal. Fish Co.*, 166 Cal. 576 (1913); Cal. Public Resource Code §6009.1. Thus, accepting *arguendo* that the California Legislature, through the two acts from the 1800s cited by the DOI/NPS in the 2011 letter, granted "fee title" to the United States to the tide and submerged lands referenced therein, such a grant is irrelevant to the DOI/NPS' claimed jurisdiction over the waters above them. The same goes for the referenced lease from the California State Lands Commission and the waters above the tide and submerged lands referenced in connection therewith.

Second, the grants made in both of the acts from the 1800s were conditioned on the United States continued use of the lands for military purposes, which was not the case when the GGNRA was established in 1972. Thus, any property interest in such lands that had been granted through such acts had already reverted back to the State of California by that time and, thus, were never transferred to the DOI/NPS.

Finally, one of the referenced acts, the "Act of March 9, 1897" was repealed in 1953 by the California State Legislature, Stat. 1953 Ch. 521. Thus, again, any property interest in the lands purportedly granted to the United States by the 1897 act had, by 1972, reverted back to the State of California and, thus, were never transferred to the DOI/NPS.

In November 2012, following meetings with SFHA representatives and receipt of correspondence from SFHA's counsel the DOI/NPS transmitted a second letter to herring fishermen, in which the DOI/NPS once again claimed jurisdiction over the Disputed Waters and the concomitant authority to prohibit commercial fishing in such waters. However, the letter omitted any reference to any purported acquisition by the DOI/NPS of property right as a basis for this claimed jurisdiction. Instead, the letter appeared to base DOI/NPS's claimed jurisdiction to prohibit commercial fishing in the

1  Disputed Waters solely on the ground that the waters were "within the boundary of the GGNRA." In

2  subsequent phone conversations and email correspondence between counsel for SFHA and Greg Lind,

3  Assistant Field Solicitor for the DOI, Mr. Lind appeared to indicate that references within the

4  DOI/NPS's 2011 letter to the purported grants of property rights by the State of California as a basis for

5  the DOI/NPS's claimed jurisdiction over the Disputed Waters was a mistake. Rather, the jurisdictional

6  claims were based solely on the fact that the Disputed Waters fall within the boundary lines of the

7  GGNRA demarcated on the map referenced in Section 2(a)(1) of the GGNRA Enabling Act, 16 U.S.C. §

8  460bb-1(a)(1).

9       Section 2 of the GGNRA Enabling Act merely defines the geographic area in which the

10 DOI/NPS is authorized by Congress to acquire lands, waters, and rights therein in accordance with

11 Section 3 of the Act. Section 4 of the Act makes clear that the DOI/NPS must first acquire lands, waters,

12 and interests therein before it has the jurisdiction over them. Therefore, this claimed basis of authority –

13 that the Disputed Waters fall within the boundaries of the GGNRA demarcated in the Act – is

14 insufficient.

15                      **2.    Facts Relevant to Plaintiff's Lack of Analysis Claim**

16      The letters transmitted by the DOI/NPS to fishermen in 2011 and 2012 both implied that the

17 DOI/NPS was prohibiting commercial herring fishing in the Disputed Water because of its ecological

18 impact. Each letter, as a preamble to its statement of the DOI/NPS's claimed jurisdiction/authority to

19 prohibit commercial herring fishing in the Disputed Waters that stated that 16 U.S.C. § 1 "requires the

20 NPS to conserve the scenery and natural and historic objects and wildlife of the parks, and at the same

21 time to provide for public enjoyment of the parks in a manner that will leave them unimpaired for future

22 generations." However, nowhere in either letter is there any explanation why or how commercial herring

23 fishing in the Disputed Waters is incompatible with such aims. And, indeed, Mr. Lind, the DOI/NPS's

24 attorney, indicated to counsel for the SFHA in 2012 that the DOI/NPS had not studied the herring

25 fishery's operation in the Disputed Waters at the time it made its decision to prohibit fishing in such

26 waters and thus had no qualitative opinion  concerning the fishery's impact or the desirability of its

27 current manner of operation in the area.

28 //

On the other hand, California State government agencies – consistent with their jurisdiction over the waters in question – have engaged in vigilant and consistent analysis and regulation of the fishery for the last 40 years. In fact, every year since 1990, except two, in advance of the opening of the herring season, the CDFW and California Fish and Game Commission engage in an environmental review of the entire fishery under the California Environmental Quality Act ("CEQA") and, after notice and comment, hearings with all interested stakeholders, and the issuance of an environmental document, establish a fishery-wide quota for the fishery. As a result, the fishery is considered an international model for sustainable fishery management.

The NPS/DOI's prohibition of herring fishing in the Disputed Waters, in fact, harms the resource and disrupts its successful management by California State agencies. Because the Disputed Waters are concentrated in the mouth of the San Francisco Bay and because such areas generally are where larger, older herring come to spawn, prohibiting fishing in these waters displaces fishing pressure onto smaller, younger fish. As a result, in order to fill the quota – which is set in terms of total biomass – fishermen are forced to catch a greater total number of fish and greater number of younger fish. Herring can return to the San Francisco Bay for many years, up to an age of approximately 8-9 years. Thus, forcing fishermen to take not only more fish, in total, to fill the quota, but also more younger fish to fill the quota, is likely to have long-term detrimental effects on the resource.

Again, the DOI/NPS, despite claiming that the prohibition is being done in fulfillment of their obligation to conserve natural resources, did no analysis of the herring fishery or the effect that the prohibition would have on the herring resource before instituting it, either for the first time it was instituted, in 2011, or before it was instituted again, in 2013.

### 3.  Other Relevant Facts

The 2014 San Francisco Bay herring season will open on <u>January 1, 2014</u>. To the extent that the DOI/NPS's unlawful prohibition of commercial herring fishing in the Disputed Waters is not resolved in advance of that date, the SFHA's membership will suffer significant financial harm and the herring resource will likely be further damaged.

//

//

**B.    Defendants**

Defendants believe that facts relevant to the case begin with the 1972 creation of the Golden Gate National Recreation Area ("GGNRA") pursuant to 16 U.S.C. § 460bb-1 et seq. (GGNRA enabling statute) which set out the boundary of GGNRA, including waters within the boundary of GGNRA. GGNRA is a unit of the National Park System and governed by all laws and regulations applicable to units of the National Park System.

In 1983, the NPS finalized a regulation that prohibits commercial fishing in all units of the National Park System, except as specifically allowed by federal statute.  *See* 36 C.F.R. §2.3(d)(4).  No federal statute authorizes commercial fishing within GGNRA.  Federal law specifically authorizes Defendants to promulgate and enforce regulations regarding activities within units of the National Park System, including activities on or relating to waters within units of the National Park System.  16 U.S.C. §  1a-2(h); *see also* 36 C.F.R. § 1.2(a)(3).

GGNRA has repeatedly since at least 2003 upheld the prohibition of commercial fishing within GGNRA by notifying commercial herring fishermen and State of California agencies of the prohibition of commercial fishing, including commercial herring fishing, in the waters within the boundary of GGNRA.  Plaintiff is thus incorrect in asserting that GGNRA never upheld the commercial fishing ban prior to 2011.

**3.    Legal Issues**

**A.    Plaintiff**

The primary legal issues to be resolved include:

1.    Do Defendants have the jurisdiction/authority to prohibit commercial fishing in the Disputed Waters?

2.    Was Defendants' decision to prohibit commercial herring fishing in the Disputed Waters arbitrary and capricious?

**B.    Defendants**

Defendants believe the legal issues to be resolved include:

1.  Does Plaintiff have standing?

2.  Do Defendants have jurisdiction over the waters at issue?

3.  Are Defendants entitled to enforce the longstanding NPS regulation banning commercial fishing with regard to the waters at issue?

4.  Are any Defendants other than the NPS or DOI proper defendants?

**4.    Motions**

The parties anticipate filing cross-motions for summary judgment.  Plaintiff further anticipates a filing a motion for leave to serve discovery, if required by the Court.

**5.    Amendment to the Pleadings**

At this time, no further amendments to the pleadings are anticipated.

**6.    Evidence Preservation**

Defendants contend that the claims in this case will be resolved based on the administrative record to be prepared by Defendants.  To the extent electronic documents are part of the administrative record or otherwise relevant, Defendants have taken steps to preserve electronic evidence relevant to the issues reasonably evident in this action including interdiction of document destruction programs and ongoing erasures of emails and electronically-recorded material for those individuals likely to create, maintain or receive such information.

Plaintiff disputes that the Court is limited exclusively to the administrative record in its resolution of the case. Plaintiff has taken measures to ensure relevant evidence has been and will be preserved.

**7.    Disclosures**

Defendants contend that the claims in this case must be based on the administrative record to be prepared by Defendants.  As a result, the parties are exempt from serving disclosures pursuant to Federal Rules of Civil Procedure 26(a)(1)(B(i) ("The following proceedings are exempt from initial disclosure: (i) an action for review on an administrative record.").

Plaintiff disputes that the Court is limited exclusively to the administrative record in its resolution of the case. Accordingly, Plaintiff proposes that initial disclosures exchanged by August 28, 2013.

//

//

**8.**   **Discovery**

 **A.**   **Plaintiff**

 Plaintiff contends that it should be allowed to conduct limited discovery in this matter, specifically, concerning the basis on which the Defendants claim to have the jurisdiction/authority to prohibit fishing in the Disputed Waters. As discussed above, the DOI/NPS have been inconsistent and unclear concerning the basis on which they claim to have the jurisdiction/authority to prohibit fishing in the Dispute Waters. This significantly prejudices Plaintiff's ability to prepare its case in the manner necessary to seek resolution of the issue of the DOI/NPS's claimed jurisdiction/authority in advance of the opening of the herring season on January 1, 2014.

 Plaintiff is further prejudiced in this regard by the DOI/NPS' delay in preparation of the administrative record. Plaintiff filed its Complaint on April 18, 2013, and served the Summons and Complaint the same day by mail. Civil Local Rule 16-5 requires, in actions for review on the administrative record, that the defendant file and serve a "certified copy of the transcript of the administrative record, within 90 days of receipt of service of the summons and complaint." It has now been 118 days since the complaint and summons were served, and Defendants have not filed and served a transcript of the record. Furthermore, Defendants indicate that they will not be able file and serve the record until September 27, 2013, 159 days since the Summons and Complaint was filed and served.

 In this context limited discovery focused on determining precisely what basis Defendants claim gives them the jurisdiction/authority to prohibit commercial fishing in the disputed waters is both appropriate and allowed.

  The district court may inquire outside the administrative record when necessary to explain the agency's action. When such a failure to explain agency action effectively frustrates judicial review, the court may "obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary."

*Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. Ariz. 1988) (quoting *Camp v. Pitts*, 411 U.S. 138, 143 (1973)). Judge William Alsup, in a case challenging the U.S. Forest Service's denial of an administrative appeal under the APA, held that based on this law "[i]n some circumstances, . . . expanding review beyond the record or permitting discovery is justified." *See* Ex. A (*Ctr. for Biological Diversity v. Bosworth*, C 06-06523 WHA, Dkt. 45, Order Allowing Limited Discovery and Setting

Schedule for Supplemental Briefing (May 4, 2007)) at p. 3. Specifically, in that case, Judge Alsup found that the defendants failure to explain the reason for their challenged decision justified allowing the plaintiffs to take "narrowly-drawn discovery" on certain defined issues related thereto. *Id.* at p. 4; *see also, e.g.,* Ex. B (*Bair v. California State Dep't of Transp.*, C 10-4360 WHA, Dkt. 13, Case Management Order and Reference to Magistrate Judge for Mediation/Settlment (Jan. 1, 2011) (setting deadlines for discovery in case brought under the APA); *see also generally Bair v. California State Dep't of Transp.*, 867 F. Supp. 2d 1058, 1067 (N.D. Cal. 2012) (considering extra-record materials in decision on cross motions for summary judgment and citing *Southwest Center for Biological Diversity v. U.S. Forest Service*, 100 F.3d 1443, 1450 (9th Cir.1996).

This precedent applies here and militates in favor of allowing Plaintiff to conduct limited discovery on the basis on which the DOI/NPS claim the jurisdiction/authority to prohibit commercial fishing in the Disputed Waters.

### B.   Defendants

Because this action is a challenge to agency action brought under the APA, review is limited to the administrative record to be prepared by Defendants and extra-record discovery in is inappropriate. There are four narrow exceptions that, where applicable, can be used to supplement an administrative record. *See Lands Council v. Powell,* 395 F.3d 1019, 1029-30 (9th Cir. 2005).

### 9.   Class Actions

Not applicable.

### 10.   Related Cases

The parties are unaware of any related cases.

### 11.   Relief Sought

Plaintiff seeks a declaration that: (1) Defendants' prohibition of commercial fishing in the Disputed Waters is unlawful as in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, in violation of the APA, 5 U.S.C. § 706(2)(C), and 36 C.F.R. § 1.2; (2) Defendants' prohibition of commercial fishing in the Disputed Waters is unlawful as arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with law, in violation of the APA, 5 U.S.C. § 706(2)(C); and Defendants have no right or authority to prohibit commercial fishing the

1   in the Disputed Waters.

2     Plaintiff further seek an order permanently enjoining Defendants and all persons and entities in

3   active concert or participation with Defendants from enforcing 36 C.F.R. § 2.3(d)(4) in the Disputed

4   Waters and/or otherwise prohibiting commercial fishing in such waters, an order awarding Plaintiff its

5   costs and reasonable attorneys' fees incurred in this action pursuant to 28 U.S.C. § 241, and such other

6   or further relief as the Court deems just and proper.

7     Defendant seeks to have judgment entered in its favor, as well as an award of any recoverable

8   costs, and such other relief as the Court may deem appropriate.

9   **12.** **Settlement and ADR**

10     The parties engaged in settlement discussions prior to the filing of this lawsuit.  Those

11   discussions did not lead to a resolution of the dispute between the parties.  The parties agree that ADR

12   would not be productive at this time, as Defendants believe they are governed by federal statutes

13   establishing GGNRA and the park's boundaries, as well as a federal regulation that bans commercial

14   fishing in GGNRA waters.  Plaintiff contends the Defendants have no jurisdiction or authority to

15   prohibit commercial fishing in the Disputed Waters and that their decision to do so was also otherwise

16   and in addition arbitrary and capricious.

17     The parties are scheduled to have a telephone conference with ADR staff on August 19, 2013.

18   **13.** **Consent to Magistrate Judge For All Purposes**

19     The parties do not consent to a magistrate judge at this time.

20   **14.** **Other References**

21     None at this time.

22   **15.** **Narrowing of Issues**

23     Plaintiff believes that it would be appropriate to have briefing first on Plaintiff's claim that

24   Defendants have no jurisdiction/authority to prohibit commercial fishing in the Disputed Waters and

25   thus its actions doing so are in excess of statutory jurisdiction, authority, or limitations, or short of

26   statutory right, in violation of the APA, 5 U.S.C. § 706(2)(C), and 36 C.F.R. § 1.2. Plaintiff further

27   believes that such briefing should occur soon after Defendants respond to limited focus discovery on the

28   issue, which Plaintiff proposes to serve August 22, 2013. If the case is not fully resolved after such

briefing, litigation can then proceed on Plaintiff's other claim, to whit that Defendants' prohibition of commercial fishing in the Disputed Waters is unlawful as arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with law, in violation of the APA, 5 U.S.C. § 706(2)(C).

Defendants do not believe that any such bifurcation is necessary or appropriate. Defendants believe that their recommendation that the entire case be resolved on a single set of cross-summary judgment motions is the far more efficient case management approach.

**16.  Expedited Trial Procedure**

The parties do not believe that this case will be appropriate for handling under the Expedited Trial Procedure of General Order No. 64.

**17.  Scheduling**

    **A.  Plaintiff**

Plaintiff proposes the following schedule:

- Last day for Plaintiff to serve by email focused discovery concerning Defendants' claimed jurisdiction/authority to prohibit fishing in the Disputed Waters: August 22, 2013.[5]

- Last day for Parties to exchange Initial Disclosures: August 29, 2013.

- Last day for Defendants to respond to Plaintiff's discovery by email: September 5, 2013.

- Last day for Defendants to file and serve Administrative Record: September 20, 2013.[6]

- Last day for Defendants to file motion for summary judgment on Defendants' claimed jurisdiction/authority to prohibit fishing in the Disputed Waters: September 20, 2013.[7]

---

[5] On August 14, 2013, Plaintiff served limited focused discovery concerning Defendants' claimed jurisdiction/authority to prohibit fishing in the Disputed Waters. The served discovery consisted of seven interrogatories and ten requests for production of documents. Plaintiff does not presently anticipate serving further discovery.

[6] Plaintiff's agreement to the September 27, 2013 deadline for service and filing of the Administrative Record is contingent upon the Court granting Plaintiff leave to serve the requested discovery and its setting September 5, 2013 as Defendants' deadline for responding thereto. In the event that the Court does not grant such leave, Plaintiff requests the deadline for service and filing of the Administrative Record be set at September 5, 2013.

[7] Each side shall have a total of 75 pages of briefing that it may distributed as it likes between the two briefs it will file.

- Last day for Plaintiff to file consolidated brief containing opposition to Defendants' motion for summary judgment and cross-motion for summary judgment on Defendants' claimed jurisdiction/authority to prohibit fishing in the Disputed Waters: <u>October 11, 2013</u>.

- Last day for Defendants to file a consolidated brief containing reply on their motion for summary judgment and opposition to Plaintiff's cross-motion for summary judgment on Defendants' claimed jurisdiction/authority to prohibit fishing in the Disputed Waters: <u>October 25, 2013</u>.

- Last day for Plaintiff to file reply in support of cross-motion for summary judgment on Defendants' claimed jurisdiction/authority to prohibit fishing in the Disputed Waters: <u>November 22, 2013</u>.

- Hearing on cross motions for summary judgment on Defendants' claimed jurisdiction/authority to prohibit fishing in the Disputed Waters: <u>December 5, 2013</u>.

Any and all objections by the Plaintiff concerning the Administrative Record, including without limitation its completeness, are preserved until resolution of the above described cross-motions. If resolution of those cross-motions does not fully resolve the case, the parties will meet and confer and submit to the Court a proposed schedule and plan for resolution of the remainder of the case.

**B.   <u>Defendants</u>**

Defendants propose the following schedule:

Last day for Defendants to submit Administrative Record: September 27, 2013.

Last day to file any motion challenging Administrative Record: October 4, 2014.

The remainder of the schedule is contingent on whether or not there is a motion filed that challenges any aspect of the Administrative Record.  If no motion is filed, then the case could proceed on the schedule listed below.  If a motion is filed, then the schedule below would have to be delayed such that it would commence 14 or more days after resolution of all motions by the Court.

Last day for Defendants to file motion for summary judgment: October 11, 2013. Pursuant to Civil Local Rule 7-2(b), the motion shall not exceed 25 pages in length.

Last day for Plaintiff to file consolidated brief containing opposition to Defendants' motion for summary judgment and cross-motion for summary judgment: October 25,

2013.  Pursuant to Civil Local Rules 7-2(b), 7-3(a) and 7-4(b), if Plaintiff does not cross-move, the opposition brief shall not exceed 25 pages in length; if Plaintiff cross-moves, the consolidated opposition / cross-motion shall not exceed 50 pages in length.

Last day for Defendants to file a consolidated brief containing reply on their motion for summary judgment and opposition to Plaintiff's cross-motion for summary judgment: November 8, 2013.  Pursuant to Civil Local Rules 7-3(a) & (c) and 7-4(b), if Plaintiff does not cross-move, the reply shall not exceed 15 pages in length; if Plaintiff cross-moves, the consolidated reply / opposition shall not exceed 40 pages in length.

Last day for Plaintiff to file reply in support of cross-motion for summary judgment: November 22, 2013.  Pursuant to Civil Local Rule 7-3(c), the reply shall not exceed 15 pages in length.

Hearing on cross-motions for summary judgment: December 5, 2013.

## 18.   Trial

The parties believe that this case will be resolved by means of cross-motions for summary judgment.

## 19.   Disclosure of Non-party Interested Entities or Persons

Plaintiff filed its disclosure statement on July 29, 2013.  Defendants, as federal agencies and federal officials sued in their official capacity, are exempt from the disclosure requirement of Civil Local Rule 3-16(a).

## 20.   Such Other Matters As May Facilitate Just, Speedy and Inexpensive Resolution

None.

Dated: August 14, 2013                    Respectfully submitted,

                                          ROBERT G. DREHER
                                          Acting Assistant Attorney General

                                          */s/ Bruce D. Bernard*
                                          Bruce D. Bernard, Trial Attorney
                                          U.S. Department of Justice
                                          Environment and Natural Resources Division
                                          Natural Resources Section

                                          MELINDA HAAG
                                          United States Attorney

                                          */s/ Michael T. Pyle*
                                          _____
                                          MICHAEL T. PYLE
                                          Assistant United States Attorney

Dated: August 14, 2013                    Respectfully submitted,


                                          **GROSS LAW**


                                          */s/ Stuart G. Gross*
                                          Stuart G. Gross  (#251019)
                                          sgross@gross-law.com
                                          Meredith Erdman (#273126)
                                          merdman@gross-law.com
                                          **GROSS LAW**
                                          The Embarcadero
                                          Pier 9, Suite 100
                                          San Francisco, CA 941111
                                          t (415) 671-4628
                                          f (415) 480-6688

                                          *Counsel for Plaintiff San Francisco Herring Association*

# EXHIBIT A

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CENTER FOR BIOLOGICAL DIVERSITY,
CALIFORNIA NATIVE PLANT SOCIETY,
CALIFORNIA WILDERNESS COALITION,
SIERRA CLUB, THE WILDERNESS
SOCIETY, DEFENDERS OF WILDLIFE,
LOS PADRES FORESTWATCH, and the
NATURAL RESOURCES DEFENSE
COUNCIL,

               Plaintiffs,

  v.

DALE N. BOSWORTH, Chief, U.S. Forest
Service, DAVID TENNY, Deputy Under
Secretary for Natural Resources and
Environment, Department of Agriculture, U.S.
FOREST SERVICE, a federal agency, and
U.S. DEPARTMENT OF AGRICULTURE, a
federal agency,

               Defendants.

———————————————————/

No. C 06-06523 WHA


**ORDER ALLOWING LIMITED
DISCOVERY AND SETTING
SCHEDULE FOR
SUPPLEMENTAL BRIEFING**

     A summary judgment order remanded for a statement of reasons for a denial of

discretionary review of plaintiffs' one-day-late administrative appeals. A statement was

provided. Plaintiffs and defendants were then asked to submit briefs regarding the next steps to

be taken. There are some narrow issues on which plaintiffs may take discovery. These include

the extent to which the Forest Service applied its rule consistently with respect to late-filed

administrative appeals under its discretionary review process, and the extent to which the Forest

Service knew that the address the UPS had for the agency was incorrect and yet continued to

recommend UPS as a way to file such appeals.

*        *        *

This action concerns the Forest Service's revisions to the Land Management Plans for four national forests located in southern California. On April 3, 2006, the Regional Forester for the Pacific Southwest Region issued a record of decision for each forest plan. The records of decision notified potential appellants that appeals must be filed with the Chief of the Forest Service in Washington D.C., no later than 90 days after the date specified in the published notices of decision.

The notices of decision indicated to potential appellants that administrative appeals could either be sent using the United States Postal Service or via ground delivery. Different addresses were provided for each method. The legal notices also contained language warning appellants of potential security delays resulting from sending the appeals via the Postal Service. Forest Service regulations stated that a legible Postal Service postmark would be considered evidence of timely filing in the event of a question.

Plaintiffs in this action sent their administrative appeals via ground delivery on the day before the 90-day appeal period closed. They entered the address given for ground-delivery by the notices of decision into the UPS computer system. It returned a different address which plaintiffs used instead of the one provided. UPS was unable to deliver plaintiffs' administrative appeals the next day. They were ultimately delivered one day after the appeal period had closed. The administrative appeals were dismissed as untimely. Plaintiffs petitioned the Forest Service for discretionary review of their administrative appeals. The Forest Service declined in a brief letter.

Plaintiffs filed this action on October 18, 2006, seeking to compel review of their administrative appeals. Parties filed cross-motions for summary judgment. Plaintiffs argued that the Forest Service's acceptance of a Postal Service postmark, and not a UPS receipt, as evidence of timely filing was arbitrary and capricious. An order issued on March 23, 2007, holding that the Forest Service's interpretation of its own regulation was valid. It was not clear, however, that the Forest Service had applied its regulation consistently to all late-filed administrative appeals. The Forest Service also gave no explanation for its denial of

discretionary review of plaintiffs' administrative appeals. Accordingly, defendants were ordered to file a statement of reasons for denying discretionary review. After the statement was filed, parties were asked to file briefs regarding the next steps to be taken in this action, particularly whether limited discovery would be appropriate.

*          *          *

In reviewing the decision of an administrative agency, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). In some circumstances, however, expanding review beyond the record or permitting discovery is justified.

> The district court may inquire outside the administrative record when necessary to explain the agency's action. When such a failure to explain agency action effectively frustrates judicial review, the court may "obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary." The court's inquiry outside the record is limited to determining whether the agency has considered all relevant factors or has explained its course of conduct or grounds of decision.

*Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988) (quoting *Camp v. Pitts*, 411 U.S. 138, 143 (1973)).

Here, defendants have been noticeably reticent in providing reasons for their decision to deny discretionary review of plaintiffs' administrative appeals. Nor have they explained whether they were aware that UPS had an incorrect delivery address for their building or the extent to which the incorrect address contributed to plaintiffs' untimely filing. Furthermore, in this action, the vast majority of the administrative record deals with the forest plans themselves, *not* the Forest Service's decision to deny discretionary review. The administrative record gives little insight into the Forest Service's decision-making processes. Thus it is difficult to review the decision itself, meaning the decision to deny discretionary review of plaintiffs' administrative appeals.

The summary judgment order asked defendants to explain their reasons for denying discretionary review of plaintiffs' administrative appeals. Specifically, they were to address the

3

United States District Court
For the Northern District of California

1    factors they took into account in making the decision and the extent to which the decision on

2    plaintiffs' administrative appeals was consistent with decisions on other late-filed appeals.

3    Defendants' explanation was inadequate. They did not address how they treated similar

4    untimely-filed appeals; they merely stated that they were consistent in applying their policies

5    without identifying any similar instances. Defendants identified four factors they used in

6    making their decision. These were whether the decision was precedential in nature, whether the

7    decision modified or established new policy, controversy surrounding the decision, and

8    potential for further litigation. As to these factors, defendants merely stated that the decision

9    was consistent with the regulation, it was not precedential, did not modify or establish new

10   policy, and was not controversial except as to plaintiffs.

11       Accordingly, plaintiffs may take narrowly-drawn discovery on the following issues.

12   First, plaintiffs may take discovery into the way that the Forest Service handled other late-filed

13   (not just one-day-late) administrative appeals under the same regulation. Second, plaintiffs may

14   also take discovery into the extent to which other appeals were handled consistent with these

15   procedures. Finally, plaintiffs will be allowed to take discovery on the extent to which the

16   Forest Service was aware that the address in the legal notices differed from the address that the

17   UPS had on file for the Forest Service and otherwise encouraged its use.

18       Plaintiffs may serve ten narrowly-directed document requests on these subjects,

19   followed by two depositions, each lasting one day. Both the document requests and the

20   depositions must be reasonably related to the above-mentioned topics unless otherwise ordered.

21   All discovery must be completed no later than **45 DAYS** from the date of this order. Thereafter,

22   plaintiffs should file a supplemental brief no later than **JUNE 28, 2007**. Defendants' opposition

23   should be filed no later than **JULY 5, 2007**. Any reply from plaintiffs will be due no later than

24   **JULY 12, 2007**.

25       **IT IS SO ORDERED.**

26

27   Dated: May 4, 2007.

28                                          _____
                                           WILLIAM ALSUP
                                           UNITED STATES DISTRICT JUDGE

# EXHIBIT B

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BESS BAIR, TRISHA LEE LOTUS, BRUCE
EDWARDS, JEFFREY HEDIN, LOREEN
ELIASON, ENVIRONMENTAL PROTECTION
INFORMATION CENTER, a non-profit
corporation, CENTER FOR BIOLOGICAL
DIVERSITY, a non-profit corporation, and
CALIFORNIANS FOR ALTERNATIVES TO
TOXICS, a non-profit corporation,

          Plaintiffs,

   v.

CALIFORNIA STATE OF DEPARTMENT OF
TRANSPORTATION, CINDY McKIM, in her
official capacity as Director of the State of
California Department of Transportation,

          Defendants.

—————————————————/

No. C 10-04360 WHA

**CASE MANAGEMENT
ORDER AND REFERENCE
TO MAGISTRATE JUDGE FOR
MEDIATION/SETTLEMENT**

     After a case management conference, the Court enters the following order pursuant to

Rule 16 of the Federal Rules of Civil Procedure ("FRCP") and Civil Local Rule 16-10:

1.    All initial disclosures under FRCP 26 must be completed by **JANUARY 14, 2011**, on pain

     of preclusion under FRCP 37(c), including full and faithful compliance with FRCP

     26(a)(1)(A)(iii).

2.    Leave to add any new parties or pleading amendments must be sought by

     **JANUARY 31, 2011**.

3.    The non-expert discovery cut-off date shall be **SEPTEMBER 30, 2011**.

**United States District Court**
For the Northern District of California

4.     The last date for designation of expert testimony and disclosure of full expert reports under FRCP 26(a)(2) as to any issue on which a party has the burden of proof ("opening reports") shall be **SEPTEMBER 30, 2011**.  Within **FOURTEEN CALENDAR DAYS** of said deadline, all other parties must disclose any expert reports on the same issue ("opposition reports").  Within **SEVEN CALENDAR DAYS** thereafter, the party with the burden of proof must disclose any reply reports rebutting specific material in opposition reports.  Reply reports must be limited to true rebuttal and should be very brief.  They should not add new material that should have been placed in the opening report and the reply material will ordinarily be reserved for the rebuttal or sur-rebuttal phase of the trial. If the party with the burden of proof neglects to make a timely disclosure, the other side, if it wishes to put in expert evidence on the same issue anyway, must disclose its expert report within the fourteen-day period.  In that event, the party with the burden of proof on the issue may then file a reply expert report within the seven-day period, subject to possible exclusion for "sandbagging" and, at all events, any such reply material may be presented at trial only after, if at all, the other side actually presents expert testimony to which the reply is responsive.  The cutoff for all expert discovery shall be **FOURTEEN CALENDAR DAYS** after the deadline for reply reports.  In aid of preparing an opposition or reply report, a responding party may depose the adverse expert sufficiently before the deadline for the opposition or reply report so as to use the testimony in preparing the response.  Experts must make themselves readily available for such depositions.  Alternatively, the responding party can elect to depose the expert later in the expert-discovery period.  An expert, however, may be deposed only once unless the expert is used for different opening and/or opposition reports, in which case the expert may be deposed independently on the subject matter of each report.  At least **28 CALENDAR DAYS** before the due date for opening reports, each party shall serve a list of issues on which it will offer any expert testimony in its case-in-chief (including from non-retained experts).  This is so that all parties will be timely able to obtain

counter-experts on the listed issues and to facilitate the timely completeness of all expert reports. Failure to so disclose may result in preclusion.

5.  At trial, the direct testimony of experts will be limited to the matters disclosed in their reports. Omitted material may not ordinarily be added on direct examination. This means the reports must be complete and sufficiently detailed. Illustrative animations, diagrams, charts and models may be used on direct examination only if they were part of the expert's report, with the exception of simple drawings and tabulations that plainly illustrate what is already in the report, which can be drawn by the witness at trial. If cross-examination fairly opens the door, however, an expert may go beyond the written report on cross-examination and/or redirect examination. By written stipulation, of course, all sides may relax these requirements. For trial, an expert must learn and testify to the full amount of billing and unbilled time by him or his firm on the engagement.

6.  To head off a recurring problem, experts lacking percipient knowledge should avoid vouching for the credibility of witnesses, *i.e.*, whose version of the facts in dispute is correct. This means that they may not, for example, testify that based upon a review of fact depositions and other material supplied by counsel, a police officer did (or did not) violate standards. Rather, the expert should be asked for his or her opinion based — explicitly — upon an assumed fact scenario. This will make clear that the witness is not attempting to make credibility and fact findings and thereby to invade the province of the jury. Of course, a qualified expert can testify to relevant customs, usages, practices, recognized standards of conduct, and other specialized matters beyond the ken of a lay jury. This subject is addressed further in the trial guidelines referenced in paragraph 15 below.

7.  Counsel need not request a motion hearing date and may notice non-discovery motions for any Thursday (excepting holidays) at 8:00 a.m. The Court sometimes rules on the papers, issuing a written order and vacating the hearing. If a written request for oral argument is filed before a ruling, stating that a lawyer of four or fewer years out of law

3

**United States District Court**
For the Northern District of California

school will conduct the oral argument or at least the lion's share, then the Court will hear oral argument, believing that young lawyers need more opportunities for appearances than they usually receive. Discovery motions should be as per the supplemental order referenced in paragraph 15 and shall be expedited.

8.    The last date to file dispositive motions shall be **NOVEMBER 3, 2011**. No dispositive motions shall be heard more than 35 days *after* this deadline, *i.e.*, if any party waits until the last day to file, then the parties must adhere to the 35-day track in order to avoid pressure on the trial date.

9.    Defendant is free to file an early motion for summary judgment, together with its proposed "administrative record," and based thereon to move in parallel for a stay of discovery. The administrative record" must be accompanied by a declaration explaining how it was constructed, what was left out and what was put in, and why. The opposition to any such motion should be lay out, pursuant to Rule 56(f), the specific discovery that would be needed to meet the issues raised by the summary judgment motion. Even if discovery is allowed, it may wind up being limited to the actual needs of the case as shown by the motion. In the meantime, there is no specific limit on discovery.

10.   The **FINAL PRETRIAL CONFERENCE** shall be at **2:00 P.M.** on **DECEMBER 19, 2011**. For the form of submissions for the final pretrial conference and trial, please see paragraph 15 below.

11.   A **BENCH TRIAL** shall begin on **JANUARY 9, 2012**, at **7:30 A.M.**, in Courtroom 9, 19th Floor, 450 Golden Gate Avenue, San Francisco, California, 94102. The trial schedule and time limits shall be set at the final pretrial conference. Although almost all trials proceed on the date scheduled, it may be necessary on occasion for a case to trail, meaning the trial may commence a few days or even a few weeks after the date stated above, due to calendar congestion and the need to give priority to criminal trials. Counsel and the parties should plan accordingly, including advising witnesses.

12.   Counsel may not stipulate around the foregoing dates without Court approval.

4

Case 3:10-cv-04980-WHA Document 13 Filed 01/06/11 Page 26 of 27

United States District Court

For the Northern District of California

13.    While the Court encourages the parties to engage in settlement discussions, please do not ask for any extensions on the ground of settlement discussions or on the ground that the parties experienced delays in scheduling settlement conferences, mediation or ENE. The parties should proceed to prepare their cases for trial. No continuance (even if stipulated) shall be granted on the ground of incomplete preparation without competent and detailed declarations setting forth good cause.

14.    To avoid any misunderstanding with respect to the final pretrial conference and trial, the Court wishes to emphasize that all filings and appearances must be made — on pain of dismissal, default or other sanction — unless and until a dismissal fully resolving the case is received. It will not be enough to inform the clerk that a settlement in principle has been reached or to lodge a partially executed settlement agreement or to lodge a fully executed agreement (or dismissal) that resolves less than the entire case. Where, however, a fully-executed settlement agreement clearly and fully disposing of the entire case is lodged reasonably in advance of the pretrial conference or trial and only a ministerial act remains, the Court will arrange a telephone conference to work out an alternate procedure pending a formal dismissal.

15.    If you have not already done so, please read and follow the "Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases Before Judge William Alsup" and other orders issued by the Clerk's office when this action was commenced. Among other things, the supplemental order explains when submissions are to go to the Clerk's Office (the general rule) versus when submissions may go directly to chambers (rarely). With respect to the final pretrial conference and trial, please read and follow the "Guidelines For Trial and Final Pretrial Conference in Civil Bench Cases Before The Honorable William Alsup." All orders and guidelines referenced in the paragraph are available on the district court's website at http://www.cand.uscourts.gov. The website also includes other guidelines for attorney's fees motions and the necessary form of attorney time records for cases before

**United States District Court**
For the Northern District of California

Judge Alsup. If you do not have access to the Internet, you may contact Deputy Clerk

Dawn K. Toland at (415) 522-2020 to learn how to pick up a hard copy.

16.  All pretrial disclosures under FRCP 26(a)(3) and objections required by FRCP 26(a)(3)

must be made on the schedule established by said rule.

17.  This matter is hereby **REFERRED** to **MAGISTRATE JUDGE ELIZABETH D. LAPORTE** for

**MEDIATION/SETTLEMENT**.


**IT IS SO ORDERED.**


Dated:  January 6, 2011.

_____

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

6