STUART G. GROSS (#251019)
sgross@gross-law.com
**GROSS LAW**
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111
t (415) 671-4628
f (415) 480-6688

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **SAN FRANCISCO HERRING ASSOCIATION**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES DEPARTMENT OF THE INTERIOR**; **SALLY JEWELL**, in her official capacity as Secretary of the Interior; **UNITED STATES NATIONAL PARK SERVICE**; **JONATHAN JARVIS**, in his official capacity as Director of the National Park Service; and **FRANK DEAN**, in his official capacity as General Superintendent of the Golden Gate National Recreation Area, <br><br> Defendants. | **Case No. 13-1750 (JST)** <br><br> **PLAINTIFF'S SUPPLEMENTAL BRIEF IN RESPONSE TO DEFENDANTS' ARGUMENTS REGARDING STATUTE OF LIMITATIONS AND THE QUIET TITLE ACT** <br><br><br> Date: Dec 12, 2013 <br> Time: 9:30 a.m. <br> Ctrm: 9 <br> Judge: Jon S. Tigar |

GROSS LAW
THE EMBARCADERO, PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

# TABLE OF CONTENTS

I. Plaintiff's Claims Are Not Time Barred ..................................................................................1

    A. Plaintiff's Claims Are "As Applied" Challenges to Defendants' Ultra Vires Application of a Prohibition of Commercial Fishing to Plaintiff's Members Who Seek to Commercially Fish in the Waters in Question ..........................................................................1

    B. A Plaintiff's Claim Challenging an Ultra Vires Agency Action or Decision Accrues when that Action or Decision Is Adversely Applied to that Plaintiff ......................................1

    C. The NPS' Ultra Vires Prohibition of Commercial Fishing in the Waters in Question Has Been Applied to Plaintiff's Members on Multiple Occasions in the Six Years Prior to the Complaint's Filing, Causing a New Claim to Accrue Against Defendants Each Time ..2

        1. It Is Undisputed that the NPS Prohibited Plaintiff's Members from Commercial Fishing in the Waters in Question in the 2011/12 Season and Have Continued to Do So Since, Satisfying the 6 Year Statute .....................................................................................3

        2. The NPS' Ultra Vires Prohibition of Commercial Fishing Was First Applied to Sean Hodges, One of Plaintiff's Members, in 2012/13 ..........................................................5

    D. Accepting Arguendo the Applicable Statute of Limitation Has Passed, It Should be Equitably Tolled Here ...............................................................................................................5

II. Quiet Title Act Does Not Insulate Defendants' Ultra Vires Conduct From Review As Plaintiff Has Not Brought a Quiet Title Action to Which the Act Applies ..............................6

    A. The Quiet Title Act Exclusively Applies to Challenges by Adverse Claimants to Title, i.e. Quiet Title Actions, Not Challenges by Citizens that an Agency Has Acted Beyond the Jurisdiction Granted to It by Congress, Which Are Governed by the APA and Fall Within its Waiver of Sovereign Immunity ..........................................................................................7

    B. Plaintiff is Not Asserting an Adverse Claim to Title Over any Waters or Lands, but Rather Is Arguing NPS Never Met the Acquisition Prerequisite Congress Established for its Administrative Jurisdiction; Thus the APA, NOT the QTA, Applies, Including the APA's Waiver of Sovereign Immunity .............................................................................................9

PLAINTIFF'S SUPP. BRIEF IN RESPONSE TO DEFENDANTS' ARGUMENTS RE STATUTE OF LIMITATIONS AND THE QUIET TITLE ACT; Case No. 13-1750 (JST)

i

GROSS LAW
THE EMBARCADERO, PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

# **TABLE OF AUTHORITIES**

**CASES**

*Airweld, Inc. v. Airco, Inc.,* 742 F.2d 1184 (9th Cir. 1984) ........................................................5

*Block v. North Dakota*, 461 U.S. 273 (1982) ...............................................................................8

*Cedars-Sinai Medical Ctr. v. Shalala*, 125 F.3d 765 (9th Cir. 1997) ..........................................6

*Crow Tribe of Indians v. Campbell Farming Corp*., 828 F. Supp. 1468 (D. Mont. 1992)............3

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977) ...............................................2

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak* ("*Patchak*"), ___ U.S.
   ___, 132 S. Ct. 2199 (2012) .......................................................................................7, 8, 9, 10

*Pace v. DiGuglielmo*, 544 U.S. 408 (2005) ..................................................................................6

*Pub. Citizen, Inc. v. Mukasey*, No. 08-0833 MHP, 2008 U.S. Dist. LEXIS 81246 (N.D. Cal. Oct.
   9, 2008) .................................................................................................................................3, 5

*Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176 (9th Cir. 2001)............................................................6

*Summers v. Earth Island Inst*., 555 U.S. 488 (2009) ...................................................................2

*Wind River Mining Corp. v. United States*, 946 F.2d 710 (9th Cir. 1991) ...........................passim

**STATUTES**

5 U.S.C. §§ 706(2)(A)...............................................................................................................6, 10

5 U.S.C. §§ 706(2)(C)...........................................................................................................6, 7, 10

16 U.S.C. 460bb-3 ....................................................................................................................1, 10

25 U.S.C. §465 ...............................................................................................................................7

28 U.S.C. §2401(a) ........................................................................................................................6

28 U.S.C. §2409a ..................................................................................................................7, 9, 10

**REGULATIONS**

32 C.F.R. § 2.3(d)(4).................................................................................................................1, 2

GROSS LAW
THE EMBARCADERO, PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

PLAINTIFF'S SUPP. BRIEF IN RESPONSE TO DEFENDANTS' ARGUMENTS RE STATUTE OF
LIMITATIONS AND THE QUIET TITLE ACT; Case No. 13-1750 (JST)

ii

Pursuant to the Court's Order, Dkt. No. 62, Plaintiff hereby responds to Defendants' arguments (I) Plaintiff's claims are time-barred and (II) the Quiet Title Act ("QTA") bars the Court from review Defendants' conduct under the Administrative Procedures Act ("APA"), contained in their Reply in Support of their Motion for Summary Judgment and Opposition to Plaintiff' Cross-Motion for Summary Judgment ("Opp/Reply"). Neither argument has merit.

## I.     Plaintiff's Claims Are *Not* Time Barred

### A.     Plaintiff's Claims Are "As Applied" Challenges to Defendants' *Ultra Vires* Application of a Prohibition of Commercial Fishing to Plaintiff's Members Who Seek to Commercially Fish in the Waters in Question

Plaintiff challenges the NPS' ***application*** of the prohibition of commercial fishing contained in 32 C.F.R. § 2.3(d)(4) to Plaintiff's members who seek to commercially fish for herring in the waters of San Francisco Bay that lie adjacent to the Golden Gate National Recreation Area ("GGNRA"), on the grounds that: (a) through the GGNRA Enabling Act §4, Congress specifically limited the NPS' administrative jurisdiction vis-à-vis the recreation area established by the Act to just those "lands, waters and interests therein acquired for the recreation area," 16 U.S.C. 460bb-3; (b) the NPS has never satisfied this prerequisite as to the waters in question; thus, (c) its enforcement of the prohibition of commercial fishing contained in 32 C.F.R. § 2.3(d)(4), so as to prevent Plaintiff's member from commercial fishing in the waters in question, is *ultra vires*. *See* First Amended Complaint ("FAC"), ¶¶ 9-11, 58-61. Therefore, Defendants are flatly incorrect when they claim: "Plaintiff's claim is a facial challenge to the NPS's 1983 regulation prohibiting commercial fishing within National Park Units." Opp/Reply at 4. Plaintiff does not challenged, and certainly states no claim concerning, the underlying validity of 32 C.F.R. § 2.3(d)(4). Rather, the gravamen of Plaintiff's claim is that the NPS is enforcing this regulation in a geographic area where it has no authority to enforce *any regulation* and thus its application of the prohibition to Plaintiff's members in these waters is *ultra vires*. Accordingly, Plaintiff brings a classic "as applied" challenge.

### B.     A Plaintiff's Claim Challenging an *Ultra Vires* Agency Action or Decision Accrues when that Action or Decision Is Adversely Applied to that Plaintiff

Why Defendants would seek to mischaracterize Plaintiff's claim as a facial rather than

GROSS LAW
THE EMBARCADERO, PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

as applied *ultra vires* challenge quickly becomes clear upon review of the Ninth Circuit's decision in *Wind River Mining Corp. v. United States* ("*Wind River*"), 946 F.2d 710 (9th Cir. 1991). In *Wind River*, the Ninth Circuit drew a distinction between, *on the one hand*, challenges alleging "a mere procedural violation in the adoption of a regulation or other agency action" or "a policy-based facial challenge to the government's decision" and, *on the other hand*, "a substantive challenge to an agency decision alleging lack of agency authority." *Id.* at 715-716. While the former two types of challenges "must be brought within six years of the decision . . . *a substantive challenge to an agency decision alleging lack of agency authority may be brought within six years of the agency's application of that decision to the specific challenger*. *Id*. at 716 (emphasis added). Underlying this distinction is that the reasoning:

> The government should not be permitted to avoid all challenges to its actions, even if *ultra vires*, simply because the agency took the action long before anyone discovered the true state of affairs.

*Id*. at 715. This reasoning is particularly salient here, where Plaintiff's members have testified under oath that the first time they were prohibited from fishing in the waters in question was in 2011, *see* Dkt. Nos. 44-47, 49-52, and Defendants have admitted in their correspondence to fishermen to what they charitably characterize as "confusion over the jurisdiction of the NPS in past years." FAC, Ex. 5; *see also* Answer to FAC, ¶ 48. Defendants cannot be permitted to avoid challenges to that jurisdiction on the ground that the Plaintiff's members should have challenged the prohibition when 32 C.F.R. § 2.3(d)(4) was issued, decades before the NPS ever took any action to apply it them or anyone else it in the waters in question or even, by Defendants' own admission, the NPS had even "asserted" it was applicable. Opp/Reply at 4.

**C. The NPS' *Ultra Vires* Prohibition of Commercial Fishing in the Waters in Question Has Been Applied to Plaintiff's Members on Multiple Occasions in the Six Years Prior to the Complaint's Filing, Causing a New Claim to Accrue Against Defendants Each Time**

Plaintiff's standing to bring the instant suit is based on what is referred to as "representational standing." *See* FAC, ¶¶ 19-20, 53. Thus, Plaintiff's standing is derivative of that of its members, *see Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009); *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977), though it sufficient if just one of

GROSS LAW
THE EMBARCADERO, PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

PLAINTIFF'S SUPP. BRIEF IN RESPONSE TO DEFENDANTS' ARGUMENTS RE STATUTE OF LIMITATIONS AND THE QUIET TITLE ACT; Case No. 13-1750 (JST)

2

Plaintiff's member's would have standing if suing on his or her own. *See Pub. Citizen, Inc. v. Mukasey*, No. 08-0833 MHP, 2008 U.S. Dist. LEXIS 81246, at * 16 (N.D. Cal. Oct. 9, 2008). Accordingly, the relevant date*s* for accrual of Plaintiff's claims are the date*s* on which the *ultra vires* prohibition of commercial fishing in the waters in question was applied to one or more of Plaintiff's members. *cf. Crow Tribe of Indians v. Campbell Farming Corp.*, 828 F. Supp. 1468, 1478 (D. Mont. 1992). In the six years preceding the Complaint's filing on <u>April 18, 2013</u>, this has occurred several times, including, as Defendant's admit, during the 2011/12 season and 2012/13 season. FAC, ¶¶ 34, 48; Answer, ¶¶ 34, 48. Under *Wind River*, as well as the continuing claim doctrine on which *Wind River* is based, each time this occurred, a new claim accrued to Plaintiff for purposes of statute of limitations.

**1.    It Is Undisputed that the NPS Prohibited Plaintiff's Members from Commercial Fishing in the Waters in Question in the 2011/12 Season and Have Continued to Do So Since, Satisfying the 6 Year Statute**

Defendants claim that the NPS "***asserted*** authority over the waters within GGNRA, including the authority to regulate commercial fishing," Opp/Reply at 4 (emphasis added), "***sent notifications*** to DFW to be included in the informational packages that DFW sent to herring fishermen each year prior to the start of the herring fishing season (in December or January) specifying that commercial fishing was prohibited in the waters of GGNRA," in 1997 and 2000, respectively. *Id.* at 5 (emphasis added). Neither of these actions qualifies as an "adverse ***application*** of the [NPS'] decision" to prohibit commercial fishing in the waters in question to Plaintiff's members. *Wind River*, 946 F.2d at 715 (emphasis added). Indeed, the NPS correspondence to Plaintiff's members dated <u>November 2012</u>, attached to FAC as Ex. 5, *see* Answer to FAC, ¶ 48, implicitly admits that in previous years seasons the NPS did not enforce the prohibition in the waters in question but states that it will do so now. The testimony of Plaintiff's members, as well as former California Department of Fish and Game personnel, corroborates that, in fact, prior to the 2011/12 season, Plaintiff's members were not prevented by the NPS from commercially fishing in the waters in question. *See* Dkt. Nos. 44-52.

However, the Court need not resolve whether such *assertions* of authority or *sending* of notifications qualify as an adverse application of the prohibition to Plaintiff's members in this

GROSS LAW
THE EMBARCADERO, PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

PLAINTIFF'S SUPP. BRIEF IN RESPONSE TO DEFENDANTS' ARGUMENTS RE STATUTE OF LIMITATIONS AND THE QUIET TITLE ACT; Case No. 13-1750 (JST)

3

context, or rather the first adverse application of the prohibition to Plaintiff's members occurred the first time the NPS actually prevented Plaintiff's members from commercially fishing in those waters. And the Court need not resolve whether that occured in 2011 of some other year. (Indeed, if resolution of any these questions was necessary, they would constitute material issues of fact foreclosing summary judgment on the issue on the timeliness of Plaintiff's claims.) The undisputed fact is that the NPS applied its decision to prohibit commercial fishing in the waters in question to Plaintiff's members in 2011 and in the years that followed, and that is sufficient under *Wind River* to make Plaintiff's claim timely, regardless whether (as Defendants claim, and Plaintiff disputes) the NPS ever prohibited any of Plaintiff's members from commercially fishing in the waters in question prior to 2011.

*Wind River* states: "a substantive challenge to an agency decision alleging lack of agency authority may be brought within six years of the agency's application of that decision to the specific challenger." *Wind River*, 946 F.2d at 715. The opinion <u>nowhere</u> indicates that the referred to "application" is limited to the *first* application, and thus a plaintiff is required to bring his, her or its claim within six years after that *first* application. Rather, the opinion acknowledges that under the rule it articulates, a new claim would accrue to a plaintiff each time the allegedly *ultra vires* decision was applied to that plaintiff. Thus, the opinion acknowledged the hypothetical risk it created of plaintiffs bringing new challenges every time the *ultra vires* decision was applied to him her or it; however, it recognized that such a risk was unlikely to be materialized, as "principles of res judicata will likely bar further challenges to the agency decision once the claimant's first challenge is resolved." *Id.* at 716.

This is consistent with the *Wind River* rule's provenance in the continuing violation doctrine, a doctrine which provides a related but independently sufficient basis on which to find Plaintiff's claims timely, irrespective of when the *ultra vires* prohibition of commercial fishing was first applied to Plaintiff's members. *See id.* at 714 (noting that "[o]ther circuits have concluded that an agency regulation or other action of continuing application may be challenged after a limitations period has expired if the ground for challenge is that the issuing agency acted in excess of its statutory authority" and *inter alia* basing its rule on such decisions).

PLAINTIFF'S SUPP. BRIEF IN RESPONSE TO DEFENDANTS' ARGUMENTS RE STATUTE OF LIMITATIONS AND THE QUIET TITLE ACT; Case No. 13-1750 (JST)

4

> The continuing violations doctrine serves to bar the application of the statute of limitations defense when a single violation exists that is 'continuing' in nature . . . Under the continuing violations doctrine, the court can consider as timely all relevant violations including those that would otherwise be time barred.

*Pub. Citizen*, 2008 U.S. Dist. LEXIS 81246 at *26 (internal citations omitted); *see also Airweld, Inc. v. Airco, Inc.,* 742 F.2d 1184, 1190 (9th Cir. 1984) ("The effect of a continuing violation is to restart the statute of limitations."). Thus, even if one chose to characterize the NPS' *ultra vires* decision to prohibit commercial fishing in the waters in question as having first occured in 1997, when it allegedly "asserted the authority" to do so, Opp/Reply at 4, and ignored the Ninth Circuit's instructions in *Wind River* to focus not on when an agency made the challenged decision but rather when it applied that decision to the "particular challenger" of the decision, 946 F.2d at 715, Plaintiff's claim would still be timely because the NPS' *ultra vires* prohibition of commercial fishing is continuing in nature, and has continued through and including every season since, at least, 2011/12, well within the six year statute of limitations. *See* FAC.

### 2. The NPS' *Ultra Vires* Prohibition of Commercial Fishing Was First Applied to Sean Hodges, One of Plaintiff's Members, in 2012/13

As the foregoing makes clear, Plaintiff's claims are timely based on the application of the prohibition of commercial fishing in the waters in question to all of its members beginning with the 2011/12 season and thereafter, regardless whether the prohibition was ever applied to any of them before (which they dispute). However, even accepting *arguendo* that the statute of limitations for challenging an *ultra vires* action begins to when the action is *first* applied to the challenger, *cf. Wind River*, 946 F.2d at 715-716, Plaintiff's claims are still timely because one of its members, Sean Hodges, for the first time in 2012/13 season operated a boat commercially fishing for herring in San Francisco Bay and, thus, that season, for the first time, had the *ultra vires* prohibition of commercial fishing applied to him. *See* Declaration of Sean Hodges, Dkt. No. 58. Thus, if this is the rule, Plaintiff's claims are timely on this basis as well.

### D. Accepting *Arguendo* the Applicable Statute of Limitation Has Passed, It Should be Equitably Tolled Here

Finally, if despite the foregoing, the Court finds that the statute of limitations has nontheless passed, Plaintiff respectfully submits that the Court should exercise its equitable

GROSS LAW
THE EMBARCADERO, PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

PLAINTIFF'S SUPP. BRIEF IN RESPONSE TO DEFENDANTS' ARGUMENTS RE STATUTE OF LIMITATIONS AND THE QUIET TITLE ACT; Case No. 13-1750 (JST)

5

discretion to toll it. Whether a plaintiff is entitled to equitable tolling generally turns on whether "(1) [the plaintiff] has been pursuing his rights diligently, and (2) . . . some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). The Ninth Circuit has held that among the situations in which equitable tolling should apply are those "situations where, despite all due diligence, the party invoking equitable tolling is unable to obtain vital information bearing on the existence of the claim," *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1193 (9th Cir. 2001), and furthermore that it applies to the limitations period set by 28 U.S.C. §2401(a). *Cedars-Sinai Medical Ctr. v. Shalala*, 125 F.3d 765, 770 (9th Cir. 1997).

Here, Plaintiff's members did not know prior to 2011 that the NPS intended to apply a prohibition on commercial fishing to them in the waters in question, a fact that Defendants implicitly admitted through reference to what they charitably called "confusion over the jurisdiction of the NPS in past years" in their November 2012 letter to fishermen. FAC, Ex. 5; *see also* Answer to FAC, ¶ 48. Upon acquisition of that knowledge, representatives of Plaintiff sought first to negotiate a resolution of the issue with the NPS, and brought this action as soon as it was clear that such negotiations would not bear fruit. FAC, ¶¶ 46-51. While Plaintiff respectfully submits that under *Wind River* and other precedent, Plaintiff's claims are timely based on these facts, if the Court should decide otherwise, it submits that equity demands that the statute be tolled. "The [NPS] should not be permitted to avoid all challenges to its [decision to prohibit commercial fishing in these waters], even if ultra vires, simply because the [NPS] took the action long before anyone discovered the true state of affairs." *Wind River,* 946 F.2d at 715. If, as Defendants varyingly claim, the NPS took such actions in 1983, 1997, and 2000, Opp/Reply at 4-5, the reality is that Plaintiff's members were not actually prevented from commercial fishing in the waters in question until the 2011/12, *see* Dkt. Nos. 44-52, and so did not know that they would need to take actions to protect their ability to earn a livelihood in these waters till then. On this basis as well, Plaintiff's claims should be found timely.

II. **Quiet Title Act Does *Not* Insulate Defendants' *Ultra Vires* Conduct From Review As Plaintiff Has *Not* Brought a Quiet Title Action to Which the Act Applies**

Plaintiff brings "garden-variety APA claim[s]," under 5 U.S.C. §§ 706(2)(A), (C),

GROSS LAW
THE EMBARCADERO, PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

PLAINTIFF'S SUPP. BRIEF IN RESPONSE TO DEFENDANTS' ARGUMENTS RE STATUTE OF LIMITATIONS AND THE QUIET TITLE ACT; Case No. 13-1750 (JST)

6

alleging the NPS' prohibition of commercial fishing in the waters in question is "'not in accordance with law [or] in excess of statutory jurisdiction [or] authority.'" *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak* ("*Patchak*"), ___ U.S. ___, 132 S. Ct. 2199, 2208 (2012) (quoting with modification 5 U.S.C. § 706(2)(C)); *see* FAC, ¶¶ 56-77. "Because that is true--because in then-Assistant Attorney General Scalia's words, the QTA is 'not addressed to the type of grievance which [Plaintiff] seeks to assert,' H. R. Rep. 94-1656, at 28-- the QTA's limitation of remedies has no bearing. The APA's general waiver of sovereign immunity instead applies." *Patchak*, 132 S. Ct. at 2208. Thus, Defendants' argument that the QTA, 28 U.S.C. §2409a bars Plaintiff's claims is wholly without merit. *cf.* Opp/Reply at 27-29.[1]

A. **The Quiet Title Act Exclusively Applies to Challenges by Adverse Claimants to Title, *i.e.* Quiet Title Actions, *Not* Challenges by Citizens that an Agency Has Acted Beyond the Jurisdiction Granted to It by Congress, Which Are Governed by the APA and Fall Within its Waiver of Sovereign Immunity**

The Supreme Court in *Patchak* unambiguously held that the QTA applies exclusively to quite title actions, in which an adverse claimant to title over a piece of property challenges the Federal Government's claim to title over that property. 132 S. Ct. 2199. The Court furthermore held that "Congress has not assimilated to quiet title actions all other suits challenging the Government's ownership of property." *Id.* at 2210. Thus, if a plaintiff brings a suit, alleging an agency action or decision was arbitrary and capricious and/or *ultra vires*, and, as part of that suit, alleges that the government lacks title to a particular piece of property but does not claim title to that property for him-, her-, or itself, the QTA has no bearing and the suit "falls within the APA's general waiver of sovereign immunity." *Id.*

The plaintiff in *Patchak* was an individual that lived near certain land ("Bradley Property") that the Secretary of the Interior ("Secretary") had acquired under the Indian Reorganization Act ("IRA"), 25 U.S.C. §465 in trust for the Match-E-Be-Nash-She-Wish band

---

[1] Given how squarely the Supreme Court's *Patchak* decision forecloses Defendants' QTA arguments and that *Patchak* was decided against Defendant Sally Jewell's predecessor, then Department of the Interior Secretary Salazar, less than a year before the instant action was filed, Defendants' decision to include those QTA arguments in their Opp/Reply, without even a citation to *Patchak*, raises concerns. *Southern Pacific Transp. Co. v. Pub. Utilities Com.*, 716 F.2d 1285, 1291 (9th Cir. 1983) (characterizing a party's failure to mention binding adverse authority as a "dereliction of duty to the court").

GROSS LAW
THE EMBARCADERO, PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

PLAINTIFF'S SUPP. BRIEF IN RESPONSE TO DEFENDANTS' ARGUMENTS RE STATUTE OF LIMITATIONS AND THE QUIET TITLE ACT; Case No. 13-1750 (JST)

7

of the Pottawatomi Indians ("Band"), with the purpose that the Band would build a casino on the land. *Id.* at 2202. The plaintiff ("Patchak") brought suit "under the Administrative Procedures Act (APA), 5 U.S.C. § 701 *et seq.* . . . claim[ing] that the secretary lacked the authority under §465 to take title to the land." *Id.* at 2202-2203. "Notably, Patchak did not assert any claim of his own to the Bradley Property." *Id.* at 2203. Nonetheless, the Secretary argued that the QTA applied to Patchak's claim, but that under the QTA, Patchak was barred from bringing a claim, and so, the government had sovereign immunity from it. *Id.* at 2205.

The Court rejected this argument, finding that because Patchak was not himself claiming any adverse interest in the Bradley Property, but rather was challenging the Secretary's authority to have acquired it, the QTA had no applicability, but rather the APA did. *Id.* at 2208. In reaching this decision, the Court made clear that the "QTA—whose full name, recall, is the Quiet Title Act—concerns (no great surprise) quiet title actions"; thus, if a suit is not a quiet title action, the QTA does not apply and cannot be used by the Government as basis on which to claim its conduct is immune from review. *Id.* at 2206. The quiet title actions to which the QTA applies are, like all quiet title actions, "suits in which a plaintiff not only challenges someone else's claim, but also asserts his own right to disputed property." *Id.* Thus, "[i]f the plaintiff does not assert any such right . . . the statute cannot come into play." *Id.*

> Congress, we held [in *Block v. North Dakota*, 461 U.S. 273 (1982)], "intended the QTA to provide the exclusive means by which adverse claimants could challenge the United States' title to real property." We repeat: "adverse claimants," meaning plaintiffs who themselves assert a claim to property antagonistic to the Federal Government's.

*Id.* at 2207 (quoting *Block*, 461 U.S. at 286); *cf.* Opp/Reply at 27 (citing *Block*)

The Court furthermore <u>rejected</u> the Secretary's argument that language in the QTA which waives the Government's "immunity from suits 'to adjudicate a disputed title to real property in which the United States claims an interest' . . . encompasses all actions contesting the Government's legal interest in land, regardless whether the plaintiff claims ownership himself." *Id.* at 2208 (citing 28 U.S.C. § 2409a(a). In rejecting this argument, the Court pointed out that the remainder of the § 2409a(a) limits is applicability to "'*a civil action under this section*,'" which other portions of the QTA—including "its pleading requirements (the plaintiff

PLAINTIFF'S SUPP. BRIEF IN RESPONSE TO DEFENDANTS' ARGUMENTS RE STATUTE OF LIMITATIONS AND THE QUIET TITLE ACT; Case No. 13-1750 (JST)

8

GROSS LAW
THE EMBARCADERO, PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

'shall set forth with particularity the nature of the right, title, or interest which [he] claims')"—make clear are traditional quiet title actions, in which the Plaintiff also claims an ownership interest in the property that is the subject of the challenge. *Id.* (quoting with modifications 28 U.S.C. §§ 2409a(a), (d). Thus, while Defendants cite § 2409a(d)'s pleading requirements as the basis on which to argue that because Plaintiff does not claim an ownership interest in the waters in question or lands beneath them, Plaintiff cannot state a claim under the QTA and thus is barred from challenging the NPS' authority on the basis of the acquisition prerequisite of GGNRA Enabling Act §4, Opp/Reply at 28-29, the Court made clear that the correct conclusion is, rather, the QTA simply does not apply. *Patchak*, 132 S. Ct. at 2208.

Indeed, Defendant Jewell's predecessor unsuccessfully made the closely analogous argument that "the QTA's specific authorization of adverse claimants' suits creates a negative implication: nonadverse claimants like Patchak cannot challenge Government ownership of land under any other statute." *Id.* The Court rejected this argument, on the ground that plaintiffs like Patchak (and Plaintiff here), are "bringing a different claim, seeking a different relief, from the kind that the QTA address." *Id.* at 2209. Specifically, they are bringing a claim that an agency has an taken action that "violates a federal statute," which happens to touch on a claim of title by the Government. *Id.* at 2207. Thus, unless a plaintiff also claims title to the property in question (which Patchak did not, and Plaintiff does not,), it is a "garden variety APA claim," to which "the APA's general waiver of sovereign immunity applies." *Id.* at 2208, 2210.

**B.** **Plaintiff is *Not* Asserting an Adverse Claim to Title Over any Waters or Lands, but Rather Is Arguing NPS Never Met the Acquisition Prerequisite Congress Established for its Administrative Jurisdiction; Thus the APA, *NOT* the QTA, Applies, Including the APA's Waiver of Sovereign Immunity**

Defendant concedes, as they must, that Plaintiff has not asserted any ownership claim over either the waters in question or the lands beneath them, *see* Opp/Reply at 28-29; indeed, Plaintiff claims that the State of California owns them. *See* FAC, ¶¶ 41-42. Thus, to borrow (heavily) from Court's decision in *Patchak*, Plaintiff "is not an adverse claimant--and so the QTA . . . cannot bar [its] suit. [Plaintiff] does not contend that [it] owns the [waters in question or the lands beneath them], nor does [it] seek any relief corresponding to such a claim. [It]

GROSS LAW
THE EMBARCADERO, PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

PLAINTIFF'S SUPP. BRIEF IN RESPONSE TO DEFENDANTS' ARGUMENTS RE STATUTE OF LIMITATIONS AND THE QUIET TITLE ACT; Case No. 13-1750 (JST)

9

wants a court to [find that the NPS has no authority to enforce its regulation prohibiting commercial fishing in those waters], but not on the ground that [it holds title to the waters] and not so that [it] can possess [those waters]. [Plaintiff's] lawsuit therefore lacks a defining feature of a QTA action. [Plaintiff] is not trying to disguise a QTA suit as an APA action to circumvent [any bar to its claims in the QTA]. Rather, [Plaintiff] is not bringing a QTA suit at all. [It] asserts merely that the [NPS'] decision to [prohibit commercial fishing in the waters in question] violates a federal statute--a garden-variety APA claim. *See* 5 U.S.C. §§ 706(2)(A), (C) ('The reviewing court shall . . . hold unlawful and set aside agency action . . . not in accordance with law [or] in excess of statutory jurisdiction [or] authority')[ *see also* FAC, ¶¶ 56-77]. Because that is true--because in then-Assistant Attorney General Scalia's words, the QTA is 'not addressed to the type of grievance which [Plaintiff] seeks to assert,' H. R. Rep. 94-1656, at 28-- the QTA's limitation of remedies has no bearing. The APA's general waiver of sovereign immunity instead applies.'" *Patchak*, 132 S. Ct. at 2207-2208.

To borrow, again, from *Patchak*, the situation would different if, hypothetically, the State of California "had sued under the APA claiming that [it] owned the [waters in question or lands beneath them] and that the Secretary [and its delegate the NPS] therefore could not [remain on the property]. The QTA [may] bar that suit." *Id.* at 2205. [2] However, that is not what occurred here. Rather, Plaintiff, many of whose members have been sustainably fishing in the waters in question for over three decades under the successful management by State of California, have brought suit challenging the NPS' recent application to them of a prohibition of commercial fishing in these waters. The fact that Plaintiff's challenge touches upon the Government's claim of title to the waters in question and lands beneath them is the product of Congress' clear and explicit choice to limit the NPS' administrative jurisdiction to "lands, waters, and interests therein acquired for the recreation area." 16 U.S.C. § 460bb-3. However, it does not make the QTA applicable to the challenge. Rather, it is a "garden variety APA claim," and Defendant cannot avoid the Court review of it based on the QTA.

---

[2] This is qualified because the QTA excludes from its purview water rights claims. 28 U.S.C. 2409a(a). If there was any merit to the argument that the QTA even hypothetically applied to Plaintiff's claims, this exclusion would provide a further basis on which to reject its application.

PLAINTIFF'S SUPP. BRIEF IN RESPONSE TO DEFENDANTS' ARGUMENTS RE STATUTE OF LIMITATIONS AND THE QUIET TITLE ACT; Case No. 13-1750 (JST)

10

Dated: December 3, 2013

Respectfully submitted,

**GROSS LAW**

_____/s/ Stuart G. Gross_____
STUART G. GROSS (#251019)
(sgross@gross-law.com)
**GROSS LAW**
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111
t (415) 671-4628
f (415) 480-6688

*Counsel for Plaintiff*

PLAINTIFF'S SUPP. BRIEF IN RESPONSE TO DEFENDANTS' ARGUMENTS RE STATUTE OF LIMITATIONS AND THE QUIET TITLE ACT; Case No. 13-1750 (JST)

11