UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| SAN FRANCISCO HERRING ASSOCIATION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,<br><br>　　　　Defendants. | Case No.  13-cv-01750-JST<br><br>**ORDER REGARDING SUBJECT-MATTER JURISDICTION**<br><br>Re: ECF Nos. 31 & 37 |
|---|---|

## I.　INTRODUCTION

Plaintiff San Francisco Herring Association ("Plaintiff" or "SFHA") has brought this action against Defendants the U.S. Department of the Interior, Interior Secretary Sally Jewell, the U.S. National Park Service ("N.P.S."), N.P.S. Director Jonathan Jarvis, and Golden Gate National Recreation Area General Superintendent Frank Dean ("Defendants").  First Amended Complaint ("FAC"), ECF No. 17.  The parties have filed cross-motions for summary judgment on the issue of whether the Department of the Interior has jurisdiction to prohibit commercial fishing within the navigable waters of San Francisco Bay that are within the boundaries of the Golden Gate National Recreation Area ("the waters in question").  Defendants' Motion for Summary Judgment on the Issue of Jurisdiction ("Defendants' Motion"), ECF No 31; Plaintiff's Opposition to Defendants' Motion for Summary Judgment and Cross-Motion for Summary Judgment ("Plaintiff's Opp./Cross-Motion"), ECF No. 37.

In their opposition and reply brief, Defendants argued that 28 U.S.C. § 2401(a)'s ("Section 2401") limitations period, and the Quiet Title Act ("QTA"), PL 92-562, 86 Stat. 1176 (Oct. 25, 1972), deprived the Court of subject-matter jurisdiction.  The Court held a hearing on December 12, and hereby issues this order, only for the purpose of determining whether it has jurisdiction

over this action. As discussed in the Court's December 5 notice, the Court will set further hearing on the merits of this case after providing an opportunity for the State of California to express its views on certain issues the Court may address in reaching the merits of Plaintiff's claims. Notice Regarding December 12, 2013 Hearing, ECF No. 64.

## II. BACKGROUND

### A. Statutory History

In 1916, Congress enacted the N.P.S. Organic Act. Ch. 408, § 1, 39 Stat. 535 (Aug. 25, 1916), codified at 16 U.S.C. § 1 *et seq*. In states, in part, that the N.P.S. shall:

> [P]romote and regulate the use of the Federal areas known as national parks, monuments, and reservations hereinafter specified . . . by such means and measures as conform to the fundamental purpose of the said parks, monuments, and reservations, which purpose is to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations.

16 U.S.C. § 1.

In 1972, Congress established the Golden Gate National Recreation Area ("GGNRA") as an area of the National Park System, by enacting the GGNRA Enabling Act ("the GGNRA Act"). Pub. L. No. 92-589, 86 Stat. 1299 (1972), codified at 16 U.S.C. § 460bb-1 *et seq*.

One provision of the GGNRA Act, entitled "Acquisition," states that:

> Within the boundaries of the recreation area, the Secretary [of the Interior] may acquire lands, improvements, waters, or interests therein, by donation, purchase, exchange or transfer. Any lands, or interests therein, owned by the State of California or any political subdivision thereof, may be acquired only by donation.

16 U.S.C. § 460bb-2(a). The immediately subsequent provision, entitled "Administration," states that:

> The Secretary shall administer the lands, waters and interests therein acquired for the recreation area in accordance with the provisions of sections 1, 2, 3, and 4 of this title, as amended and supplemented, and the Secretary may utilize such statutory authority available to him for the conservation and management of wildlife and natural resources as he deems appropriate to carry out the purposes of this subchapter.

16 U.S.C. § 460bb-3(a).

Under the GGNRA Act, "[t]he recreation area . . . comprise[s] the lands, waters, and submerged lands generally depicted on the map entitled: 'Revised Boundary Map, Golden Gate National Recreation Area', numbered NRA-GG-80,003-K and dated October 1978, plus those areas depicted on the map entitled "Point Reyes and GGNRA Amendments and dated October 25, 1979". 16 U.S.C. § 460bb-1(a)(1). The boundary extends one-quarter mile offshore from the shoreline from approximately Sausalito to Bolinas Bay in Marin and San Francisco Counties, around Alcatraz Island, and from Ft. Mason in the City of San Francisco along the coast to south of Ocean Beach within San Francisco County. See Administrative Record ("A.R.") at 14, 18, 1683-86.

In 1976, in an amendment to the NPS Organic Act, Congress authorized the Secretary of Interior to "[p]romulgate and enforce regulation concerning boating and other activities on or relating to waters located within areas of the National Park System, including waters subject to the jurisdiction of the United States." 16 U.S.C. § 1a-2(h).

### B. Regulatory History

In 1983, the NPS promulgated regulations that apply to persons within, *inter alia*: "[t]he boundaries of federally owned lands and waters administered by the National Park Service," persons within "[w]aters subject to the jurisdiction of the United States located within the boundaries of the National Park System, including navigable waters and areas within their ordinary reach (up to the mean high water line in places subject to the ebb and flow of the tide and up to the ordinary high water mark in other places) and without regard to the ownership of submerged lands, tidelands, or lowlands," as well to persons within "[o]ther lands and waters over which the United States holds a less-than-fee interest, to the extent necessary to fulfill the purpose of the National Park Service administered interest and compatible with the nonfederal interest." 36 C.F.R. § 1.2(a).

Within those areas, the regulation "prohibits commercial fishing except where specifically authorized by Federal statutory law." 36 C.F.R. § 2.3(d)(4).[1]  The regulation on fishing further

---

[1] Defendants submit, and Plaintiff does not dispute, that no other federal statute specifically

states that "[t]he regulations contained in this section apply, regardless of land ownership, on all lands and waters within a park area that are under the legislative jurisdiction of the United States." 36 C.F.R. § 2.3(g).

The regulations also state that a park superintendent may, within the same areas, "[e]stablish, for all or a portion of a park area, a reasonable schedule of visiting hours, impose public use limits, or close all or a portion of a park area to all public use or to a specific use or activity; or "[d]esignate areas for a specific use or activity, or impose conditions or restrictions on a use or activity." 36 C.F.R. § 1.5(a).[2]

### C.     Procedural History

Plaintiff filed this action on April 18, 2013, bringing three causes of action: for violations of 5 U.S.C. § 706(2)(C), 5 U.S.C. § 706(2)(A), and for estoppel. Complaint for Declaratory Injunctive Relief, ECF No. 1. Plaintiff challenges the NPS's regulations as in excess of statutory authority insofar as they are applied to prohibit commercial fishing in the waters in question. Plaintiff argues that the GGNRA Act requires the United States to acquire a property interest in the waters before it may regulate them. Plaintiff maintains that the State of California, not the United States, owns all pertinent property interests in the waters themselves and to some, and perhaps all, of the submerged land beneath.

In July, the Court granted Defendants' unopposed motion to dismiss the estoppel cause of action. ECF No. 16. Plaintiff filed the FAC on July 10, bringing only the APA causes of action. ECF No. 17.

Defendants filed a motion for summary judgment on the issue of "whether defendants acted in excess of statutory jurisdiction in prohibiting commercial fishing in the units of the National Park System, including the Golden Gate National Recreation Area." Defendants' Motion 1:16-19. Plaintiff's cross-motion seeks a judgment "in its favor on the issue of the Defendants'

---

authorizes commercial fishing in the waters in question, and the Court is not aware of any. Defendants' Motion 10:1-2.

[2] Defendants do not rely on this regulation in their papers as the source of the NPS's authority to prohibit commercial fishing. However, it is the source of authority the NPS cited in its 1997 and 1998 closure of certain waters near Fort Mason. See AR 657.

4

jurisdiction to prohibit commercial fishing in the adjacent to shoreline of the GGRNA." Plaintiff's Opp./Cross-Motion 1:19-23.  In their initial motion, Defendants stated that its motion was "limited to the issue of the NPS's jurisdiction," and that "Defendants reserve the right to seek dismissal of this action if Plaintiff fails to meet its burden of establishing standing and subject matter jurisdiction, including an appropriate waiver of the United States' sovereign immunity and compliance with the applicable statute of limitations."  Defendant's Motion 1:23-26.  But in their combined opposition and reply brief, Defendants argued that 28 U.S.C. § 2401(a) ("Section 2401") and the QTA barred Plaintiff's claim.  Defendants' Reply Memorandum in Support of Defendants' Motion for Summary Judgment and in Opposition to Plaintiff's Cross-Motion for Summary Judgment on the Issue of Jurisdiction ("Defendants' Reply/Opp.") 3:20-5:10, 27:15-29:8, ECF No. 55.  With the Court's leave, Plaintiff filed an additional supplemental brief addressing these arguments, since they had not been raised in either of the parties' initial motions. Order Denying Motion to Strike, Denying as Moot Motion to Shorten Times, Granting Plaintiff Leave to File Supplemental Brief, ECF No. 62 (Nov. 23, 2013); see also Plaintiff's Supplemental Brief in Response to Defendants' Arguments Regarding Statute of Limitations and the Quiet Title Act, ECF No. 63.

On December 5, the Court invited the views of the State of California on certain issues the Court may address in reaching the merits of Plaintiff's claims, in the event that it determined that it had subject-matter jurisdiction over this action.  Notice to California Attorney General Kamala Harris, ECF No. 65.

### D.     Jurisdiction

Plaintiff's causes of action arise under the Administrative Procedure Act, 5 U.S.C. §§ 701-706.  Therefore, assuming that neither the statute of limitations nor the Quiet Title Act deprives the Court of subject-matter jurisdiction over these claims, the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

### E.     Legal Standard

"Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence."  Rattlesnake Coal. v. E.P.A., 509 F.3d 1095, 1102, n. 1 (9th Cir. 2007).  Where a

1  jurisdictional issue is not intertwined with the merits, "[a] district court may 'hear evidence
2  regarding jurisdiction' and 'resolv[e] factual disputes where necessary.'" Robinson v. United
3  States, 586 F.3d 683, 685 (9th Cir. 2009) (quoting Augustine v. United States, 704 F.2d 1074,
4  1077 (9th Cir. 1983) see also Thornhill Pub. Co., Inc. v. Gen. Tel. & Electronics Corp., 594 F.2d
5  730, 733 (9th Cir. 1979).

### III. ANALYSIS

The Court herein considers whether either Section 2401(a) or the QTA deprive the Court of subject-matter jurisdiction in this action.

#### A. 28 U.S.C. § 2401(a)'s Statute of Limitations

The motions before the Court seek partial summary judgment only on the specific issue of NPS's authority to regulate the waters in question. The parties have neither moved for judgment on the issue of whether Plaintiff's claim complies with the statute of limitations, nor moved for complete judgment on the question of whether Plaintiff has satisfied all of the requirements to recover on its claim. Therefore, the Court would only need to address Defendants' statute of limitations defense in this motion if Section 2401(a) were to deprive the Court of jurisdiction to enter any judgment in this action.

The Ninth Circuit has previously held that "the statute of limitations in 28 U.S.C. § 2401(a) is jurisdictional." UOP v. United States, 99 F.3d 344, 347 (9th Cir. 1996); see also Nesovic v. United States, 71 F.3d 776, 777 (9th Cir. 1995) (quoting Sisseton-Wahpeton Sioux Tribe, of Lake Traverse Indian Reservation, N. Dakota & S. Dakota v. United States, 895 F.2d 588, 592 (9th Cir. 1990). More recently, however, the Ninth Circuit held that "[b]ecause the statute of limitations codified at 28 U.S.C. § 2401(a) makes no mention of jurisdiction but erects only a procedural bar . . . § 2401(a)'s six-year statute of limitations is not jurisdictional, but is subject to waiver." Cedars-Sinai Med. Ctr. v. Shalala, 125 F.3d 765, 770 (9th Cir. 1997). This holding was recently affirmed by an *en banc* panel of the Ninth Circuit, in an opinion holding that Section 2401*(b)* (Section 2401(a)'s close neighbor and textual relative) is also not jurisdictional. Wong v. Beebe, 732 F.3d 1030, 1038 (9th Cir. 2013). Supreme Court Justice Ginsburg noted that "Courts of Appeals have divided on the question whether § 2401(a)'s limit is 'jurisdictional,'" and

1    cited Cedars-Sinai for the proposition that the Ninth Circuit has fallen on the "non-jurisdictional"
2    side of this circuit split.  John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 145 (2008)
3    (Ginsburg, J., dissenting).
4         The Court is not aware of any subsequent Ninth Circuit authority eroding Cedars-Sinai's
5    holding regarding the non-jurisdictional nature of Section 2401(a).  Cedars-Sinai's rationale was
6    criticized in Marley v. United States, 567 F.3d 1030, 1035 (9th Cir. 2009) and Aloe Vera of Am.,
7    Inc. v. United States, 580 F.3d 867, 872 (9th Cir. 2009).  But the *en banc* panel in Wong explicitly
8    overruled Marley, and substantially diminished the continuing viability of Aloe Vera.  Wong, 736
9    F.3d at 1038; see also id., at n. 2.
10        The Cedars-Sinai court acknowledged that Nesovic had previously called Section 2401(a)
11   jurisdictional, but distinguished that case because its holding was "not addressed to any issue
12   similar to the one before us."  125 F.3d at 770.  When the Ninth Circuit has previously labeled
13   Section 2401(a) 'jurisdictional,' it has typically done so in addressing issues not similar to the
14   issue before this Court.  For example, in Nesovic and Sisseton-Wahpeton, the courts' discussions
15   appeared to be dicta since the jurisdictional nature of the statute was not clearly at issue.  The UOP
16   court, on the other hand, was considering whether the statute of limitations defense was subject to
17   waiver.  99 F.3d at 347.  But so, too, was the Cedars-Sinai court.  125 F.3d at 770-71.[3]  In this
18   action, the Court must decide whether it is prohibited from addressing an issue going to the merits
19   of the case before satisfying itself that Section 2401(a)'s requirements are satisfied.  On this point,
20   Cedars-Sinai is the most apposite authority, in addition to being the most recent and the more
21   deeply considered.
22        While Defendants' papers characterized Section 2401(a) as a limitation that goes to the
23   Court's subject-matter jurisdiction, at oral argument Defendants' counsel conceded that, under the

---

[3] It is difficult to read Cedars-Sinai as anything other than a silent overruling of UOP, since both opinions issued contradictory holdings (regarding the jurisdictional nature of Section 2104(a)) in addressing the same issue (whether a statute of limitations defense can be waived).  "Generally, a panel opinion is binding on subsequent panels unless and until overruled by an *en banc* decision of this circuit."  United States v. Easterday, 564 F.3d 1004, 1010 (9th Cir. 2009).  However, whether or not the Cedars-Sinai panel was permitted to overrule UOP, the *en banc* panel in Wong certainly was, and this Court must regard it as the highest available authority.

Ninth Circuit authority this Court is bound to apply, Section 2401(a)'s limitations period is non-jurisdictional.

The Supreme Court has "[r]ecogniz[ed] . . . [its] 'less than meticulous' use of the term ['jurisdictional'] in the past." Gonzalez v. Thaler, ___ U.S. ___, 132 S. Ct. 641, 648 (2012) (quoting Kontrick v. Ryan, 540 U.S. 443, 454-455 (2004)). And the Ninth Circuit has recognized that its "[c]ase law has come to contradictory results" in applying that less-than-meticulously-defined standard to limitation periods in Section 2401. Wong, 732 F.3d at 1035. But it is clear enough that, under the law of this circuit, if parties agree to seek partial summary judgment and to reserve consideration of the statute of limitations until a later date, Section 2401(a)'s requirements do not deprive the Court of jurisdiction to rule on that motion. The Court therefore need not address Defendants' statute of limitations defense before considering the parties' motions for partial summary judgment on the issue of NPS's statutory authority

### B.   Quiet Title Act

Defendants argue that, under the QTA, the Court does not have subject matter jurisdiction over this action insofar as it will require the Court to adjudicate the United States' ownership claims to the lands and waters at issue. Although it is unclear whether the QTA's requirements are jurisdictional,[4] the Court need not decide that issue, because it is clear that the QTA does not apply to Plaintiff's claims.

"The QTA authorizes (and so waives the Government's sovereign immunity from) a particular type of action, known as a quiet title suit: a suit by a plaintiff asserting a 'right, title, or

---

[4] On this, too, the Ninth Circuit has taken contradictory positions. In Block, the Supreme Court held that "[i]f North Dakota's suit is barred by . . . [a QTA provision,] the courts below had no jurisdiction to inquire into the merits." 461 U.S. at 282. In 1995, the Ninth Circuit concluded that, after Irwin v. Department of Veterans Affairs, 498 U.S. 89 (1990), Block's statement "that the QTA's statute of limitations is jurisdictional in nature ha[s] no continuing validity," and held that the QTA's statute of limitations was subject to equitable tolling. Fadem v. United States, 52 F.3d 202, 206 (9th Cir. 1995) cert. granted, judgment vacated, 520 U.S. 1101 (1997) and judgment reinstated, 113 F.3d 167 (9th Cir. 1997). But in 2001, the Ninth Circuit held, without citing Fadem, that a district court "did not have jurisdiction to reach the merits of" a claim that was barred by the QTA's statute of limitations. Adams v. United States, 255 F.3d 787, 796 (9th Cir. 2001) (citing Block, 461 U.S. at 292). Robinson also appeared to conclude in dicta that the QTA's requirements are jurisdictional. 586 F.3d at 688, n. 3.

interest' in real property that conflicts with a 'right, title, or interest' the United States claims." Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak ("Patchak"), ___ U.S. ___, 132 S. Ct. 2199, 2205 (2012) (quoting 28 U.S.C. § 2409a(d)). A party bringing a "quiet title action" may only do so if the action complies with the requirements of the QTA. See id. (noting that, pursuant to the QTA provision at 28 U.S.C. § 2409a(a), a quiet title action is barred if it involves Indian lands).

Defendants argue that Plaintiff's suit qualifies as a "quiet title action" insofar as it may require the Court to "adjudicate" the United States' claim of title to the waters in question or the submerged land beneath. Therefore, Defendants' argue, the Court cannot reach that question because the SFHA cannot fulfill one of the QTA's prerequisites: that it identify with particularity the nature of the property interest "which *the plaintiff claims* in the real property." Defendants' Reply/Opp. 28:28 (quoting U.S.C. § 2409a(d) (emphasis added by Defendants).

Defendants' construction of the QTA would bar all suits in which the United States' ownership of property becomes a collateral issue in the case. In Patchak, the Supreme Court adopted precisely the contrary understanding of the QTA. The Court held that the suit in that case was "not a quiet title action, because although it contests the Secretary [of Interior's] title, it does not claim any competing interest in the [property at issue]." 132 S.Ct. at 2206. Therefore, the QTA's limitations and requirements did not apply. Id. Under Patchak, an action does not become a "quiet title action" simply because the United States' ownership of property becomes an issue in the case. Rather, it becomes so when the plaintiff makes a claim of ownership to the property. Patchak reaffirmed that the QTA is the "'exclusive means by which adverse claimants could challenge the United States' title to real property'" but specifically defined "adverse claimants" as "plaintiffs who themselves assert a claim to property antagonistic to the Federal Government's." 132 S.Ct. at 2207 (quoting Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands, 461 U.S. 273, 283 (1983)).

In light of Patchak, any support Defendants might draw from Block would be unavailing. But Block is of little support regardless, because in that case the plaintiff (North Dakota) and the United States "assert[ed] competing claims to title." 461 U.S. at 277. To the extent that earlier-

decided authority within this circuit supports Defendants' construction of the QTA, that authority is only controlling insofar as it is consistent with Patchak. See Metro. Water Dist. of S. California v. United States, 830 F.2d 139, 143 (9th Cir. 1987) aff'd sub nom. California v. United States, 490 U.S. 920 (1989).[5] The few Ninth Circuit cases to apply Patchak provide no support to Defendants' argument. See McMaster v. United States, 731 F.3d 881, 898 (9th Cir. 2013) (QTA applied to APA claims where the "'essence and bottom line'" of those claims was "a dispute against the government over the title" to an estate in which the plaintiff himself claimed title) (quoting Patchak, 132 S.Ct. at 2207); see also Pine Bar Ranch LLC v. Interior Bd. of Indian Appeals, 503 F. App'x 491, 493 (9th Cir. 2012) (unpublished), cert. denied, 134 S. Ct. 78 (U.S. 2013) (QTA does not apply where a plaintiff "asserts only a statutory right to use [a road] . . . not a property right").

At oral argument, Defendants' counsel argued that the SFHA is *effectively* an "adverse claimant" under Patchak, since the SFHA stands in the shoes of the State of California in asserting a property interest in the waters in question. But it is abundantly clear from the SFHA's complaint and its papers that it asserts no property interest of its own in the waters of San Francisco Bay. To the contrary, the SFHA argues that other parties (the State of California and the Sausalito School District) own all of the property interests pertinent to this case. It is true that, to the extent that the State of California owns "title as trustee to . . . [its navigable] waters," courts have referred to its title as being "'subject to the easement of the public for the public uses of navigation and commerce.'" Nat'l Audubon Soc'y v. Superior Court, 33 Cal. 3d 419, 434, 438 (1983) (quoting People v. California Fish Co. 166 Cal. 576 (1913). But few members of the public would really consider this right of access to be among their claimed "property." A commonly enjoyed public easement is hardly the kind of "claim to property" that can render the SFHA an "adverse claimant" under Patchak. Any "property interest" the SFHA might be said to hold in those waters is in no way particular to it; it is the same as the presumptive right of all members of the public to access public property. And Plaintiff does not dispute that this general public right of access is

---

[5] Even though the Supreme Court did not explicitly cite it, the same is true of the out-of-circuit authority Defendants' counsel cited to the Court at oral argument: Shawnee Trail Conservancy v. U.S. Dep't of Agric., 222 F.3d 383, 388 (7th Cir. 2000).

subordinate to the "right of the state, as administrator and controller of these public uses and the public trust therefor, to enter upon and possess the same." Nat'l Audobon, 33 Cal. 3d at 438 (quoting California Fish, 166 Cal. 576).

The only reason that the United States' claim of title is relevant to Plaintiff's claims is that Plaintiff argues that the United States must first obtain some property interest in the waters before the Department of Interior may regulate the waters in question. The SFHA asserts no property interest of its own in the waters. If Defendants argue that, notwithstanding this, a plaintiff "effectively" becomes an adverse claimant by asserting, as a collateral matter, that a *third party* has title to property claimed by the federal government, Defendants' argument is irreconcilable with Patchak.[6] It is also in significant tension with the argument Defendants made in their papers, in which they argued that the SFHA lacked standing to bring a QTA action is precisely because the *organization itself* claimed no property interest in the property at issue. See Defendants' Reply/Opp. 28:11-17.

Finally, even if Defendants were correctly applying Patchak's requirements to this case, it would only require, at most, dismissal without prejudice, since the SFHA could easily satisfy the QTA requirement that the Defendants argue bars the SFHA's claims. The only QTA requirement Defendants argue that the SFHA has failed to satisfy is the obligation to "set forth with particularity the nature of the right, title, or interest which *the plaintiff claims* in the real property . . . [and] the circumstances under which it was acquired." 28 U.S.C. § 2409a(d) (emphasis added). If Defendants are correct that the SFHA is effectively asserting its "property interest" in a public easement in the waters, then the SFHA could presumably satisfy this requirement by amending its complaint to state as much. Alternatively, if, notwithstanding Patchak, a party who claims no property interest becomes an "adverse claimant" by arguing that a third party has such an interest in the property, the SFHA could simply amend its complaint to set forth that it claims no interest in the property. The counterintuitive nature of this result reinforces the Court's conclusion that Defendants' argument cannot be correct.

---

[6] The Court does not mean to rule out the possibility that a court could *ever* hold that a particular challenger is "effectively" bringing a property claim as a proxy for another party. But it cannot reach such a conclusion here.

11

The fact that Plaintiff SFHA makes no claim to any property does not render its claim a defective quiet title action; it brings its claim outside the scope of QTA's requirements. The QTA does not deprive this Court of subject-matter jurisdiction over this action.

## IV. CONCLUSION

The Court concludes that neither 28 U.S.C. § 2401(a)'s statute of limitations nor the Quiet Title Act deprive the Court of subject-matter jurisdiction over this action. The Court will proceed to consider the merits of the parties' cross-motions for summary judgment after the State of California has provided its views, and will set a further hearing for that purpose.

**IT IS SO ORDERED.**

Dated: December 18, 2013

_____
JON S. TIGAR
United States District Judge