UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO HERRING ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,<br><br>Defendants. | Case No. 13-cv-01750-JST<br><br>**ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Re: ECF No. 75. |

## I.   INTRODUCTION

In this Administrative Procedure Act ("APA") case, Plaintiff San Francisco Herring Association ("Plaintiff" or "SFHA") has moved for a preliminary injunction enjoining Defendants the U.S. Department of the Interior ("DOI"), Interior Secretary Sally Jewell, the U.S. National Park Service ("NPS"), NPS Director Jonathan Jarvis, and Golden Gate National Recreation Area ("GGNRA") General Superintendent Frank Dean (collectively, "Defendants") from issuing citations to persons who engage in commercial herring fishing in waters of San Francisco Bay one quarter of a mile offshore of the shoreline of the GGNRA ("the waters in question").  The matter came for hearing on January 13, 2014.

## II.   BACKGROUND

### A.   Statutory Background

In 1916, Congress enacted the NPS Organic Act.  Ch. 408, § 1, 39 Stat. 535 (Aug. 25, 1916), codified at 16 U.S.C. § 1 *et seq*.  It states, in part, that the NPS shall:

> [P]romote and regulate the use of the Federal areas known as national parks, monuments, and reservations hereinafter specified . . . . by such means and measures as conform to the fundamental purpose of the said parks, monuments, and reservations, which purpose is to conserve the scenery and the natural and historic

> objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations.

16 U.S.C. § 1.

In 1972, Congress established the Golden Gate National Recreation Area ("GGNRA") as an area of the National Park System, by enacting the GGNRA Enabling Act ("the GGNRA Act"). Pub. L. No. 92-589, 86 Stat. 1299 (1972), codified at 16 U.S.C. § 460bb-1 *et seq*.

Section 3 of the GGNRA Act, entitled "Acquisition policy," states that:

> Within the boundaries of the recreation area, the Secretary [of the Interior] may acquire lands, improvements, waters, or interests therein, by donation, purchase, exchange or transfer. Any lands, or interests therein, owned by the State of California or any political subdivision thereof, may be acquired only by donation.
>
> [. . .]
>
> Except as hereinafter provided, Federal property within the boundaries of the recreation area is hereby transferred without consideration to the administrative jurisdiction of the Secretary for the purposes of this subchapter, subject to the continuation of such existing uses as may be agreed upon between the Secretary and the head of the agency formerly having jurisdiction over the property.

16 U.S.C. § 460bb-2(a). Section 4, the immediately following provision of the GGNRA Act, is entitled "Administration," and states that:

> The Secretary shall administer the lands, waters and interests therein acquired for the recreation area in accordance with the provisions of sections 1, 2, 3, and 4 of this title, as amended and supplemented, and the Secretary may utilize such statutory authority available to him for the conservation and management of wildlife and natural resources as he deems appropriate to carry out the purposes of this subchapter.

16 U.S.C. § 460bb-3(a).

Under the GGNRA Act, "[t]he recreation area . . . comprise[s] the lands, waters, and submerged lands generally depicted on the map entitled: 'Revised Boundary Map, Golden Gate National Recreation Area', numbered NRA-GG-80,003-K and dated October 1978, plus those areas depicted on the map entitled "Point Reyes and GGNRA Amendments and dated October 25, 1979." 16 U.S.C. § 460bb-1(a)(1). The boundary extends 1/4 mile offshore from the shoreline from approximately Sausalito to Bolinas Bay in Marin and San Francisco Counties, around Alcatraz Island, and from Ft. Mason in the City of San Francisco along the coast to south of Ocean

2

Beach within San Francisco County. See Administrative Record ("A.R.") at 14, 18, 1683-86.

In 1976, in an amendment to the NPS Organic Act, Congress authorized the Secretary of Interior to "[p]romulgate and enforce regulation concerning boating and other activities on or relating to waters located within areas of the National Park System, including waters subject to the jurisdiction of the United States." Pub L. No. 94-458, October 7, 1976, 90 Stat 1939, § 1, codified at 16 U.S.C. § 1a-2(h).

### B.  Regulatory Background

In 1983, the NPS promulgated regulations that apply to persons within, *inter alia*: "[t]he boundaries of federally owned lands and waters administered by the National Park Service," persons within "[w]aters subject to the jurisdiction of the United States located within the boundaries of the National Park System, including navigable waters and areas within their ordinary reach (up to the mean high water line in places subject to the ebb and flow of the tide and up to the ordinary high water mark in other places) and without regard to the ownership of submerged lands, tidelands, or lowlands," as well to persons within "[o]ther lands and waters over which the United States holds a less-than-fee interest, to the extent necessary to fulfill the purpose of the National Park Service administered interest and compatible with the nonfederal interest." 36 C.F.R. § 1.2(a).

Within those areas, the regulation "prohibits commercial fishing except where specifically authorized by Federal statutory law." 36 C.F.R. § 2.3(d)(4). Defendants have informed members of the SFHA of their intention to enforce this regulation within the waters in question.

### C.  Jurisdiction

Plaintiff's causes of action arise under the APA, 5 U.S.C. §§ 701-706. Therefore, the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. As discussed in the Court's Order Regarding Subject-Matter Jurisdiction, neither the statute of limitations nor the Quiet Title Act deprive this Court of subject-matter jurisdiction. ECF No. 84.

### D.  Procedural History

Plaintiff filed this action on April 18, 2013, bringing three causes of action: for violations of 5 U.S.C. § 706(2)(C), 5 U.S.C. § 706(2)(A), and for estoppel. Complaint for Declaratory and

Injunctive Relief, ECF No. 1.  In July, the Court granted Defendants' unopposed motion to dismiss the estoppel cause of action.  ECF No. 16.  Plaintiff filed the FAC on July 10, bringing only the APA causes of action.  ECF No. 17.  Defendants filed a motion for summary judgment on the issue of "whether defendants acted in excess of statutory jurisdiction in prohibiting commercial fishing in the units of the National Park System, including the Golden Gate National Recreation Area."  Defendants' Motion for Summary Judgment ("Defts' MSJ") 1:16-19, ECF No. 31.  Plaintiff's cross-motion seeks a judgment "in its favor on the issue of the Defendants' jurisdiction to prohibit commercial fishing adjacent to shoreline of the GGRNA."  Plaintiff's Opposition to Defendants' Motion for Summary Judgment and Cross-Motion for Summary Judgment ("Opp./Cross-MSJ") 1:19-23, ECF No. 37.

The cross-motions for summary judgment were initially set for hearing on December 12, 2013.  However, after concluding that the parties' summary judgment motions might require the Court to reach the question of whether the State of California or the United States government owns title to the waters in question, the Court invited the State of California to provide its views on that and other questions.  See Notice to California Attorney General Kamala Harris, ECF No. 65.  The California State Lands Commission ("CSLC") responded to accept the invitation to appear as *amicus curiae*, but requested until February 10 to provide its views.  ECF No. 70.  After the parties filed statements of non-opposition to this request, the Court granted it, gave the parties an opportunity to respond to the CSLC's filing, and continued the hearing on the parties' summary judgment motions to March 6, 2014.  ECF No. 85.  In the meantime, after hearing argument only on issues going to subject-matter jurisdiction, the Court concluded that it did not lack jurisdiction over this action.  Order Regarding Subject-Matter Jurisdiction, ECF No. 84.

Plaintiff then filed the instant motion for a preliminary injunction, noting that the Pacific herring fishing season closes on March 15.  Plaintiff's Motion for a Preliminary Injunction ("PI Motion"), ECF No. 75.  Plaintiff seeks an order through which "Defendants are . . . enjoined until the parties' cross-motions for summary judgment concerning the issue of the Defendants' jurisdiction to prohibit fishing in the waters in question are resolved or until March 15, 2014, whichever occurs sooner, from issuing citations to persons who engage in commercial herring fishing in the waters of San Francisco Bay adjacent to the shoreline of the Golden Gate National

4

Recreation Area ('GGNRA') over which the National Park Service ('NPS') claims jurisdiction, specifically those waters one quarter of a mile offshore of the shoreline of the GGNRA." Proposed Order, ECF No. 76.  Defendants have opposed the motion.  ECF No 87.  In response to the Court's invitation to make any portion of its views known to the Court before the Court addressed the preliminary injunction motion, the CSLC filed a "short statement" of the positions it would likely take on some of the issues presented.  ECF Nos. 82 & 83.

### E. Legal Standard

A plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Am. Trucking Associations, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting Winter v. Nat. Resources Defense Council, 555 U.S. 7, 20 (2008)).  Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22.

To grant preliminary injunctive relief, a court must find that "a certain threshold showing is made on each factor." Leiva-Perez v. Holder, 640 F.3d 962, 966 (9th Cir. 2011).  Provided that this has occurred, in balancing the four factors, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).

## III. ANALYSIS

### A. Substantial Likelihood of Success of the Merits

Plaintiff claims that Defendants have violated the APA by acting in excess of statutory authority in enforcing the NPS's regulations prohibiting commercial fishing within the waters of the GGNRA.  The question is one of statutory interpretation only.  Plaintiff does not maintain that Congress lacks the authority, if it wishes, to authorize NPS to regulate the waters in question.  Plaintiff's success depends on its argument that under federal statutory law, NPS may only

regulate waters within the boundaries of the GGNRA if the DOI has acquired a property interest in those waters.

At oral argument, Plaintiff's counsel argument also urged that the Court grant the motion on the more traditional Winter standard, which allows a court to issue an injunction by concluding, *inter alia*, that a plaintiff has a substantial likelihood of success on the merits and the balance of hardships tips (not necessarily sharply) in the plaintiff's favor. 555 U.S. at 20. But in its motion, Plaintiff said it "has chosen to base its motion for a preliminary injunction not on its likelihood of success on the merits of this claim but rather on the basis that there are serious questions raised by this claim." PI Motion 2:24-26. Ordinarily, the Court would be unlikely to grant a motion on any basis other than the one on which it was made. Because the Court concludes that Plaintiff's request must be denied under either standard, however, it proceeds below to address the request under each.

The NPS Organic Act specifically authorizes NPS to "[p]romulgate and enforce regulation concerning boating and other activities on or relating to waters located within areas of the National Park System, including waters subject to the jurisdiction of the United States." 16 U.S.C. § 1a-2(h). This authority is broad in geographic scope (applying throughout the national park system), but is very narrowly focused on the specific authority NPS now seeks to invoke (prohibiting fishing by boats). There can be no doubt that, standing alone, 16 U.S.C. § 1a-2(h) plainly authorizes NPS to promulgate and enforce 36 C.F.R. § 2.3(d)(4), and Plaintiff does not suggest otherwise.

Plaintiff also does not dispute 36 C.F.R. § 2.3(d)(4)'s facial validity. It argues instead that the previously enacted GGNRA Act limits the scope of 16 U.S.C. § 1a-2(h)'s applicability to the GGNRA, and that therefore the NPS may not enforce the regulation in the GGNRA's waters. Plaintiff maintains that, under the GGNRA Act, Congress established an "acquisition prerequisite" that required the DOI to obtain a property interest in any waters before it could regulate those waters. Therefore, Plaintiff maintains, the 1972 GGNRA Act should be read to limit the 1976 NPS Organic Act amendment and to prevent its application to the GGNRA.

In so arguing, Plaintiff invokes the statutory canon that repeals by implication are

6

disfavored. As the case on which Plaintiff primarily relies states:

> It is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum. "Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." Morton v. Mancari, 417 U.S. 535, 550-551, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290, 301.7 "The reason and philosophy of the rule is, that when the mind of the legislator has been turned to the details of a subject, and he has acted upon it, a subsequent statute in general terms, or treating the subject in a general manner, and not expressly contradicting the original act, shall not be considered as intended to affect the more particular or positive previous provisions, unless it is absolutely necessary to give the latter act such a construction, in order that its words shall have any meaning at all." T. Sedgwick, The Interpretation and Construction of Statutory and Constitutional Law 98 (2d ed. 1874).

Radzanower v. Touche Ross & Co., 426 U.S. 148, 153 (1976).

This canon remains well established in the law. See James v. City of Costa Mesa, 700 F.3d 394, 412 (9th Cir. 2012) cert. denied, __ U.S. __, 133 S. Ct. 2396 (2013) ("[r]epeals by implication are disfavored; every effort must therefore be made to make both statutes operative within their realm, rather than declaring a clash"); see also Nigg v. U.S. Postal Serv., 555 F.3d 781, 786-87 (9th Cir. 2009) ("Repeals by implication are disfavored—'[t]he intention of the legislature to repeal must be clear and manifest.'") (quoting Morton v. Mancari, 417 U.S. 535, 551 (1974)). As set forth below, however, the Court concludes that it doesn't apply here.

Plaintiff is correct, and Defendants conceded at oral argument, that Section 4(a) of the GGNRA imposed an "acquisition prerequisite" with regard to the lands within the boundaries of the GGNRA. Recognizing that there were nonfederal lands within the boundaries it had drawn for the GGNRA, Congress established that the DOI could later acquire those lands "by donation, purchase, exchange or transfer," 16 U.S.C. § 460bb-2(a), and that it would only then have the authority to administer the interests it had thereby acquired. 16 U.S.C. § 460bb-3(a). It appears from the legislative history that Congress' anomalous approach to park-making was part of a legislative compromise between two competing camps. Some interests wanted the federal government to take and administer all of the area of the GGNRA at one time, and others preferred

a more piecemeal approach in which the park's boundaries were set out in advance but would only come under unified regulation if the federal government acquired non-federal property within it from its then-current owners. See Opp./Cross-Motion 2-10.  Thus, in considering a later, broader statute that gave the NPS some specific authority over *lands* within the park system, a court might very well apply Morton and read the GGNRA Act to limit the effect of the later act.  417 U.S. at 550-51.

But the problem for Plaintiff is that neither the statutory framework of the GGNRA nor the legislative history of the enactment indicate in any way that "the mind of the legislator[s] ha[d] been turned to the details of" the *waters* within the GGNRA.  Radznower, 426 U.S. at 153.  To the contrary, the idea that Congress contemplated that the DOI would later acquire a property interest in the waters of San Francisco Bay seems implausible.  Plaintiff argued extensively in its summary judgment brief, and again emphasized at oral argument, that the State of California may not, under its constitution, alienate the property interest it holds in its waters as a public trust for the purposes of fishing and navigation.  See Plaintiff's Opp./Cross-Motion 13:24-16:7 (citing Cal. Const. Art. I, § 25, Cal. Const. Art. X, § 4, and People ex inf. Webb v. California Fish Co., 166 Cal. 576, 587 (1913).[1]  Therefore, the only way the DOI could acquire a property interest in the waters sufficient to permit regulation would be to take the property by eminent domain.  But in the GGNRA, Congress pointedly denied DOI the authority to use eminent domain to acquire property for the park, providing that acquisition could only be via "donation, purchase, exchange or transfer." 16 U.S.C. § 460bb-2(a). Under Plaintiff's reading, Congress established the GGNRA, drew its boundaries so as to include the waters in question, provided that DOI could not regulate those waters unless it acquired a property interest in those waters, and then in the same breath took away the only tool through which the DOI could ever acquire them.  This net effect of this circuitous approach – assuming it constitutes a reasonable reading of the GGNRA Act – would be to make it impossible for DOI to *ever* regulate these waters, making any discussion of *when* it could regulate them nonsensical, and in some ways making it a superfluous and unnecessary act to place the

---

[1] There is an exception to this limitation, which isn't relevant here.  See Cal Fish Co., 166 Cal. at 597.

8

waters within the boundaries at all.

It was clearly Congress' intention that the DOI begin attempting to acquire property interests in land for the park. But there is little in the statute to suggest that the DOI would also begin actually acquiring property interests in the navigable waters of San Francisco Bay. While it may be possible for the United States to acquire title to navigable waters owned in public trust by a state, it appears to be a rare occurrence. The examples cited by Plaintiff are an unclear reference in a 1913 case to the United States possibly taking "the whole flow" of a Michigan river, United States v. Chandler-Dunbar Water Power Co., 229 U.S. 53, 65 (1913), and the U.S. military's condemnation of water rights in tidelands (not navigable waters) off the California coast. United States v. 32.42 Acres of Land, 683 F.3d 1030, 1034 (9th Cir. 2012). If Congress had expected the DOI to begin attempting to *purchase* waters of San Francisco Bay from the State of California, the GGNRA would probably reflect that fact somewhere. As the Supreme Court put it in a somewhat different context, "Congress . . . does not, one might say, hide elephants in mouseholes." Whitman v. Am. Trucking Associations, 531 U.S. 457, 468 (2000). Instead, Section 4 of the GGNRA goes into great detail about which federal lands would be transferred to the DOI, without any mention of the waters in the Bay. And Section 3(a) provides specifically that "[a]ny *lands, or interests therein*, owned by the State of California or any political subdivision thereof, may be acquired only by donation," notably omitting any mention of the waters owned by the state. 16 U.S.C. § 460bb-2(a).

Plaintiff's account of the legislative history amply demonstrates that Congress understood that land would need to be owned to be regulated. But that same history also provides virtually no evidence that Congress thought the same way about the waters. In none of the discussions do legislators, or even observers, express any understanding of the effect the statute would have on waters.

Given this statutory framework and the legislative history, there is no indication that Congress thought very much at all about whether DOI would begin purchasing the waters of San Francisco Bay, much less that the "mind of the legislator . . . [was] specifically turned to the details" of the subject. Radzanower, 426 U.S. at 153. It is notable that the precise phrase "lands, waters, and interests therein" appears in 54 different places within Title 16 of the United States

9

Code. See, e.g., 16 U.S.C. § 668dd(a)(1) (National Wildlife Refuge System); 16 U.S.C. § 3102(2) (Alaska National Interest Lands Conservation Act); 16 U.S.C. § 1461(e)(3)(A) (National Estuarine Research Reserve System). The most persuasive explanation for the inclusion of the word "waters" in Section 4(a) is that the entire phrase is boilerplate, employed with near-automatic regularity when Congress enacts a statute relating to the DOI's authority. It appears that little thought was devoted to how this standard language would fit with the idiosyncratic "acquisition prerequisite" that Congress placed within the GGNRA Act.

Out of context, Plaintiff's interpretation of the isolated phrase "lands, waters, and interests therein acquired" seems reasonable. Standing alone, the most natural reading of this phrase is that it means something to the effect of "lands in which DOI has acquired a fee simple interest, waters in which DOI has acquired a fee simple interest, and other property interests in such lands and waters that are owned by DOI." But "a section of a statute should not be read in isolation from the context of the whole Act." Planned Parenthood Arizona Inc. v. Betlach, 727 F.3d 960, 971 (9th Cir. 2013) (quoting Richards v. United States, 369 U.S. 1, 11 (1962).

It might be another thing if the Court were being asked to consider whether the DOI could regulate the waters in question under the GGNRA Act alone. But the Court is asked to attempt to harmonize the GGNRA Act with a later-enacted, and equally valid, Act of Congress which specifically gives NPS the general authority to regulate boating within the national park system. For good reasons, the presumption against repeals by implication is generally employed when the previous enactment's provisions are clear and undisputed. See, e.g., Morton, 417 U.S. at 542-45. Since Plaintiff has not demonstrated that Congress specifically turned its attention to the question of whether DOI would need to acquire a property interest in the waters of San Francisco Bay, it cannot escape the otherwise clear effect of 16 U.S.C. § 1a-2(h).

### B. Balance of Hardships

The Court agrees that there are "serious questions going to the merits," especially pending the participation of the CSLC. However, "serious questions" will only support the issuance of a preliminary injunction where the balance of hardships "tips sharply" in Plaintiff's favor. See Alliance for the Wild Rockies, 632 F.3d at 1135. Plaintiff has not demonstrated that the balance of hardships tips sharply in its favor.

SFHA claims that its members will suffer the hardship of either being deprived of income they would otherwise derive from fishing within the waters in question, or running a risk of criminal prosecution if they do so. The waters in question, however, are only a small portion of the total area in which herring fishing occurs, and herring fishermen are limited by a biomass quota by the State of California that the fishermen have not always exceeded even when they did fish in the waters in question. Therefore, restricting the area in which fishing occurs does not necessarily restrict the total catch. It may extend the amount of *time* fishermen take to fulfill their quota, and time, of course, is money. But as one of the exhibits submitted by Plaintiff indicates, herring did not even spawn in the waters in question during the most recent fishing season. See Exhibit 5 to Gross Declaration, at 10. Thus, it is difficult for the Court to conclude that permitting the federal government to enforce the Organic Act will necessarily have the effect of extending the fishermen's time on the water.

Notwithstanding these qualifying facts, the Court does recognize that the SFHA and its members may suffer legitimate, cognizable harm from having their fishing options restricted, and that this is harm is likely to be irreparable since they cannot recover compensatory damages in this APA action. But the Court cannot conclude that these concerns "sharply" outweigh the hardship to the federal government (and the public it represents) of fulfilling a presumptively valid federal statutory goal. Cf. Coal. For Econ. Equity v. Wilson, 122 F.3d 718, 719 (9th Cir. 1997) ("[I]t is clear that a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined."). Preserving national park areas for noncommercial activity, public enjoyment, and wildlife protection is a paramount public interest. And as the representative of the public charged with keeping national park areas free of prohibited commercial activity, the DOI safeguards the public's interest in ensuring that its regulations are enforced.

At oral argument, Plaintiff's counsel conceded that the federal government generally has a strong equitable interest in enforcing a presumably valid regulation, but he argued that that interest does not attach in as-applied challenge. The Court disagrees. Since Plaintiff has not demonstrated that it is substantially likely to demonstrate that DOI is acting outside of its statutory authority, DOI and NPS presumably are acting within their authority in enforcing NPS regulations.

Plaintiff also asserts that granting the injunction will prevent harm to the environment

because fishermen will be able to meet their biomass quota catching older and larger fish that spawn within the GGNRA, preserving a younger fishery and reducing the potential secondary impacts of fishing by boats who spend excessive time on the water attempting to meet their quota. This argument is plausible, but the declarations Plaintiff has submitted in support of this argument lack foundation and call for expert testimony. The Court is not in a position to determine whether the SFHA or the federal government have the better approach to preserving the sustainability of the Pacific herring fishery.

The balance of hardships does not tip sharply in Plaintiff's favor.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction is DENIED.

**IT IS SO ORDERED.**

Dated: January 15, 2014

_____
JON S. TIGAR
United States District Judge