1  KAMALA D. HARRIS
   Attorney General of California
2  CHRISTIANA TIEDEMANN
   Supervising Deputy Attorney General
3  JOSEPH C. RUSCONI
   Deputy Attorney General
4  State Bar No. 78814
    1515 Clay Street, 20th Floor
5   P.O. Box 70550
    Oakland, CA 94612-0550
6   Telephone: (510) 622-2150
    Fax: (510) 622-2270
7   E-mail: Joseph.Rusconi@doj.ca.gov
   *Attorneys for Amicus Curiae*
8  *California State Lands Commission*

9                IN THE UNITED STATES DISTRICT COURT

10              FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                        SAN FRANCISCO DIVISION

| | |
|---|---|
| SAN FRANCISCO HERRING ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR: SALLY JEWELL, in her official capacity as the Secretary of the Interior; UNITED STATES NATIONAL PARKS SERVICE: JONATHAN JARVIS, in his official capacity as the Director of the National Parks Service; and FRANK DEAN, in his official capacity as the General Superintendent of the Golden Gate National Recreation Area,,<br><br>Defendants. | Case No. 13-cv-1750-JST<br><br>**CALIFORNIA STATE LANDS COMMISSION'S BRIEF AMICUS CURIAE ON OWNERSHIP OF TIDE AND SUBMERGED LANDS/LEGISLATIVE JURISDICTION WITHIN THE GOLDEN GATE NATIONAL RECREATION AREA**<br><br>Date: March 6, 2014<br>Time: 2:00 p.m.<br>Dept: 9; 9th Floor<br>Judge: Jon S. Tigar<br>Trial Date: None Set |

**TABLE OF CONTENTS**

Page

Introduction ................................................................................................................. 1

    I.    United States Department of the Interior's/National Park Service's Ownership of Uplands Within San Francisco Bay Now Part of the GGNRA. ............................................................................................................ 2

    II.   California's and the United States' Respective Ownership of Tide and Submerged Lands Within San Francisco Bay Adjacent to the GGNRA ................ 3

   III.   Summary of Civil and Criminal Legislative Jurisdiction Over Tide and Submerged Lands Owned by the United States ...................................................... 8

# TABLE OF AUTHORITIES

Page

CASES

*Borax Consolidated, Ltd. v. Los Angeles*
    (1935) 296 U.S. 10 ................................................................................................. 3

*City of Berkeley v. Superior Court*
    (1980) 26 Cal.3d 515 ............................................................................................. 4

*City of Long Beach v. Mansell*
    (1970) 3 Cal.3d 462 ............................................................................................... 3

*Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co.*
    (1977) 429 U.S. 363 ............................................................................................... 3

*People v. California Fish Co.*
    (1913) 166 Cal. 576 ............................................................................................... 4

STATUTES

FEDERAL

9 Statute 922 (1848) ..................................................................................................... 3

16 Statute 186 (1870) ................................................................................................... 6

265 Statute 374 (1934) ............................................................................................. 6, 7

Submerged Lands Act, 43 U.S.C. § 1301 et seq. ......................................................... 4

STATE

Chapter 41, California Statutes of 1851 ...................................................................... 5

Chapter 81, California Statutes of 1897 ............................................................... passim

Chapter 305, California Statutes of 1859 ................................................................. 8, 9

Chapter 160, California Statutes of 1853 .................................................................... 5

Chapter 521, California Statute of 1953 ...................................................................... 5

Chapter 1333, California Statute of 1968 .................................................................... 4

Political Code
    § 34 ....................................................................................................................... 8, 9
Public Resources Code
    § 6301 ...................................................................................................................... 4

# TABLE OF AUTHORITIES
## (continued)

Page

Government Code
    § 113 .................................................................................................................. 9
    § 126 .............................................................................................................. 9, 10

## INTRODUCTION

On December 5, 2012, the Honorable Jon S. Tigar issued a "Notice to California Attorney General, etc." ("Notice") soliciting the views of the California Attorney General on four questions regarding the respective ownership and legislative jurisdiction held by the State of California and the United States Department of the Interior over tide and submerged lands and the waters covering them adjacent to the Golden Gate National Recreation Area ("GGNRA"). On December 13, 2013, representing only the California State Lands Commission ("SLC"), the California Attorney General's Office informed the Court that it would provide the SLC's views on some or all of the questions posed by the Court but requested additional time to research and brief the issues. On December 18, 2013, the Court set the date of February 10, 2014, for filing the SLC's brief. Because the plaintiff then filed a motion for a preliminary injunction, the Court subsequently requested a short statement of the SLC's views by January 2, 2014, which the SLC provided on that date.

This brief will focus on the third of the four questions posed by the Court, i.e. "Whether the State of California holds title to some or all of the submerged land beneath the navigable waters of San Francisco Bay that are within the boundaries of the Golden Gate National Recreation Area, and whether the United States has acquired any property interest in such submerged lands."[1] First, the SLC will discuss the ownership of tide and submerged lands within the boundaries of the GGNRA in San Francisco Bay obtained by California upon its admission to the United States on September 9, 1850. It will then identify the lands granted by it to the United States for military purposes pursuant to Chapter 81 of the California Statutes of 1897. Second, the SLC will outline the current state of California's and the United States' respective legislative jurisdiction over the tidelands and submerged lands within the GGNRA after the SLC's acceptance of retrocession from the United States of legislative jurisdiction and a cession of

---

[1] Questions 1, 2, and 4 in the Court's Notice possibly implicate the jurisdiction of other State of California agencies who have chosen not to respond to the Court's invitation. In this brief amicus curiae, the California Attorney General's Office is representing only the California State Lands Commission and is not stating the views of the Attorney General or of any other agency of the State of California on the questions posed by the Court.

1

legislative jurisdiction in 2009. This brief also addresses the historic ownership by the United States of lands above the ordinary high water mark but does not evaluate this issue in detail. This ownership is important because California's grant of tide and submerged lands to the United States for military purposes pursuant to Chapter 81 of the Statutes of 1897 was contingent upon the ownership by the United States of the adjacent uplands. The SLC does believe, however, that the United States did meet the conditions of Chapter 81 and owns the lands granted in fee subject to a reversion as described below.

I. **UNITED STATES DEPARTMENT OF THE INTERIOR'S/NATIONAL PARK SERVICE'S OWNERSHIP OF UPLANDS WITHIN SAN FRANCISCO BAY NOW PART OF THE GGNRA.**

The federally owned uplands relevant to this matter are those comprising Lime Point Bluff Military Reservation (present Fort Barry and Fort Baker), Alcatraz Island, Presidio of San Francisco (including Fort Point and Crissy Field), and Fort Mason.

**Lime Point Bluff Military Reservation:** The lands comprising the Reservation were set apart from the public domain by President Fillmore on November 6, 1850. AR 1992-94.[2] However, prolonged contention over title to the lands ensued and it was not until July 24, 1866 that the United States acquired some 1900 acres at Lime Point Bluff by deed from Samuel R. Throckmorten. AR 1708. Lime Point Bluff Military Reservation was established thereafter consisting of barbette batteries constructed between 1872 and 1876 to protect the entrance to San Francisco Bay. In 1897 the Reservation was renamed Fort Baker and in 1904 was divided into Fort Baker on the east and Fort Barry on the west with the dividing line running north and south through Point Diablo. Both Forts continued operation well into the 20th Century with Fort Baker not closing until the 1990s. They are now part of the GGNRA.

---

[2] The citation "AR __" is to the applicable page in the Administrative Record.

**Alcatraz Island:** The United States acquired Alcatraz Island from Mexico under the Treaty of Guadalupe Hidalgo in 1848 and it became part of the public domain. 9 Stat. 922 (1848). On November 6, 1850, President Fillmore withdrew it to be used for "public purposes." Construction of a fort and gun batteries began in 1853 and was completed by 1859. AR 1992-94; 1907-09. In 1915 Alcatraz was named as a U.S. Disciplinary Barracks administered by the Army until it was transferred to the U.S. Bureau of Prisons in 1933. Alcatraz became part of the GGNRA in 1972.

**Presidio of San Francisco:** Like Alcatraz Island, the United States acquired the lands comprising the Presidio from Mexico in 1848 under the Treaty of Guadalupe Hidalgo. 9 Stat. 922 (1848). The Presidio had been used as a military base by the Spanish and Mexican armies and pursuant to a withdrawal order of President Fillmore dated November 6, 1850, (AR 1992-94) the United States continued that use until the Presidio was made part of the GGNRA in 1972. AR 1708; 1713-1715; 1907-09. Fort Point, Letterman Hospital, Fort Winfield Scott and Crissy Army Air Field all occupied lands within the Presidio.

**Fort Mason:** As with Alcatraz and the Presidio of San Francisco, Fort Mason is located on former public domain lands reserved for military use pursuant to President Fillmore's 1850 withdrawal order. AR 1708; 1710-1711; 1907-09; 1992-94.

## II. CALIFORNIA'S AND THE UNITED STATES' RESPECTIVE OWNERSHIP OF TIDE AND SUBMERGED LANDS WITHIN SAN FRANCISCO BAY ADJACENT TO THE GGNRA.

When California entered the Union on September 8, 1850, pursuant to the equal-footing doctrine, it acquired the rights in the beds of its navigable waters to the same extent as those held by the original States. *Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co.* (1977) 429 U.S. 363, 373-374. California received title to these tidelands, submerged lands,[3] and the beds of navigable lakes and rivers within its borders for public purposes, traditionally delineated in terms of commerce, navigation, fisheries—the "public trust." *Borax Consolidated, Ltd. v. Los*

---

[3] Tidelands are those lands lying between the lines of mean high tide and mean low tide. Submerged lands are lands seaward of the line of mean low tide. *City of Long Beach v. Mansell* (1970) 3 Cal.3d 462, 478, n. 12.

3

*Angeles* (1935) 296 U.S. 10, 15-16; *People v. California Fish Co.* (1913) 166 Cal. 576, 584; *City of Berkeley v. Superior Court* (1980) 26 Cal.3d 515, 521. This included all of the tidelands and submerged lands[4] within San Francisco Bay and along the open coast. California's title to the submerged lands along its open coast was confirmed by the Submerged Lands Act, 43 U.S.C. § 1301 et seq. The SLC has exclusive administrative jurisdiction over all un-granted tidelands and submerged lands owned by the State of California. Cal. Pub. Resources Code, § 6301.

On March 9, 1897, the California Legislature enacted Chapter 81 of the Statutes of 1897 ("Chapter 81")[5] granting to the United States the tide and submerged lands extending from the ordinary high water mark out to 300 yards beyond the low water mark adjacent to United States owned military installations then in existence. The grant pursuant to Chapter 81 continued for so long as the United States owned the adjacent uplands. Calif. Stats. 1897, ch. 81, pp. 74-75. Relevant here, this grant applied to the following military installations:

**1. Lime Point Bluff Military Reservation—Present Fort Barry and Fort Baker.** The United States received title to the tide and submerged lands surrounding the Lime Point Bluff Military Reservation measured from the ordinary high water out to a distance of 300 yards below ordinary low water pursuant to Chapter 81. AR 1693-1702; 1734-35; 1816-17; 1851. In 1967, however, the United States conveyed portions of the Lime Point Bluff Military Reservation to the California Department of Parks and Recreation for inclusion within the Marin Headlands State Park. The effect of this conveyance was to terminate the interest of the United States in the

---

[4] The submerged lands lying inside (East) of the Golden Gate Bridge within the City and County of San Francisco, not otherwise owned by the United States as explained herein, were granted to the City and County of San Francisco pursuant to Chapter 1333 of the California Statutes of 1968. See Fort Mason discussion, *post*.

[5] All right and title of the State of California in and to the parcels of land extending from the high-water mark out to 300 yards beyond low-water mark adjacent and contiguous to such lands of the United States in this State as lie upon tidal waters and are held, occupied, or reserved for military purposes or defense, lying adjacent and contiguous to any island, the title to which is in the United States, or which island is reserved by the United States for military or naval purpose of and for defense, are hereby granted, released, and ceded to the United States to be a line along high-water mark, a line 300 yards out beyond low-water mark, and lines at right angles to high-water mark at the points where the boundaries of the adjacent lands of the United States touch high-water mark; *provided,* that the title to each parcel of land granted, released, and ceded to the United States shall be, and remain in the United States only so long as the United States shall continue to hold and own the adjacent lands now belonging to the United States.

adjacent tide and submerged lands that it had received from California pursuant to Chapter 81. Subsequently these park lands were reconveyed to the United States in 1977 for inclusion within the GGNRA. AR 2021-30. This reconveyance did not include any tide and submerged lands and did not revive the 1897 grant because (1) that grant had been repealed by the California Legislature in Chapter 521 of the Statutes of 1953, and (2) the lands were no longer held for military purposes. With the exception of the tide and submerged lands adjacent to the former Marin Headlands State Park, the United States owns the tide and submerged lands adjacent to Lime Point Military Reservation in fee simple subject to California's reversionary rights. See Retained California Interests, *post,* p. 8.

**2. Alcatraz Island.** The United States owns the tide and submerged lands surrounding Alcatraz Island measured from ordinary high water out to a distance of 300 yards below ordinary low water in fee simple subject to California's reversionary rights pursuant to Chapter 81 because the adjacent uplands were owned by the United States and were used for military purposes at the time of the Chapter 81 grant in 1897. AR 1693-1702; 1748-49; 1851.

**3. Presidio of San Francisco.** The United States owns the tide and submerged lands adjacent to the Presidio of San Francisco from the ordinary high water out to a distance of 300 yards below ordinary low water in fee simple subject to California's reversionary rights pursuant to Chapter 81 because the adjacent uplands were owned by the United States and were used for military purposes at the time of the grant in 1897. AR 1693-1702; 1733; 1817-18; 1851.

**4. Fort Mason.** Federal ownership of tide and submerged lands adjacent to Fort Mason is different than at the above three installations. Pursuant to Chapter 41, California Statutes of 1851, the tide and submerged lands in front of Fort Mason were subdivided into "Beach and Water Lots" by the California Board of Land Commissioners ("BLC") and then sold into private ownership. Calif. Stats. 1851, ch. 41, p. 307. Streets that were reserved from sale were laid out between the Beach and Water Lots in anticipation of the lands being filled and reclaimed. The initial sales of these lots were for a term of 99 years. In 1853 the Legislature amended the 1851 statute so that the purchaser could also acquire the reversionary interest. Calif. Stats. 1853, ch. 160, p. 219.

Fort Mason is bordered by 11 blocks of these Beach and Water Lots: Blocks 76, 77, 78, 151, 152, 157, 158, 235, 236, 237, 242, 243 and 244. SLC records show that all of the tide and submerged lands within these blocks were sold to private parties in 1855. Thus they were not available for grant to the United States pursuant to Chapter 81 despite the United States' ownership and military use of the adjacent uplands.

The ownership of these Lots appears to have been the source of conflict between their owners and the United States because Congress, in 1870, passed "An Act to relinquish the interest of the United States in certain land to the City and County of San Francisco" (16 Stat. 186) in which Congress gave up any interest it had in the Beach and Water Lots.

It is the SLC's understanding that the United States acquired some of these same Beach and Water Lots northwesterly of Fort Mason in the eminent domain case of *United States v. Vanderbilt* in 1909 (c.f. United States Military Reservations, National Cemeteries and Military Parks: Title, Jurisdiction etc.; Revised Edition: 1916; Washington: Government Printing Office; 1916; page 30) and that they remain in federal ownership as part of the GGNRA. Copies of the deeds for these Beach and Water Lots are contained in the files of the SLC in Sacramento, California. SLC mapping shows the United States as the owner of portions of Blocks 157, 158, 235, 236, 237, 242, 243, and 244 only. All of these blocks are on the westerly side of Fort Mason where the piers and warehouses are constructed.

The remaining BLC blocks on the north and east sides of Fort Mason appear to have remained in non-federal ownership except for that portion which the United States acquired from the City and County of San Francisco for construction of the then new Transport Dock No. 4 pursuant to an exchange agreement in 1935. 265 Stat. 374 (1934). San Francisco County Assessor's records do not show an owner for most of these Beach and Water Lots, excluding Transport Dock No. 4 which is assessed to the United States and the Lots south of the south line of Lewis Street in Blocks 151 and 158 which are assessed to the City and County of San Francisco.

The United States did receive the ungranted tide and submerged lands adjacent to Fort Mason pursuant to Chapter 81. AR 1693-1702; 1746-47; 1851. That grant would have only

6
SLC's Brief Amicus Curiae on Ownership of Lands/Leg. Jurisdiction Within GGNRA    (13-cv-1750-JST)

included the reserved streets between the Beach and Water Lots and not the Beach and Water Lots themselves because of the prior sale of those Lots to private parties. Some federal mapping of Fort Mason shows all of the tide and submerged lands on the entire waterfront extending from the Marina Green to present day Aquatic Park as being in federal ownership pursuant to Chapter 81. SLC believes that the mapping is in error to the extent that it purports to show federal ownership of the Beach and Water Lots but correct as to the reserved streets between the Beach and Water Lots. A U.S. Army Corps of Engineers Map entitled "Fort Mason Military Reservation" and dated March 6, 1950 and revised September 30, 1971, confirms the SLC's view of federal ownership. This map also shows that the United States lost ownership of the submerged lands in Aquatic Park (where there were Beach and Water Lots sold in 1855) on June 3, 1969, when the easterly boundary was adjusted and the United States quitclaimed a strip of land on the easterly side of the Fort to the City and County of San Francisco.

The SLC has not established the location of the low water line at Fort Mason and the outer boundary of the Chapter 81 grant of submerged lands 300 yards beyond it. In addition, there are other Beach and Water Lots waterward of and adjacent to those cited above. Therefore, it is possible, that the United States owns tidelands waterward of the Beach and Water Lots and streets discussed above pursuant to Chapter 81. Most likely, however, the Chapter 81 grant is confined to the streets between the Beach and Water Lots.

In 1935 the United States and the City and County of San Francisco entered into an agreement that provided for the construction of the Municipal Pier at Aquatic Park by the City and County and its encroachment on the lands of Fort Mason. 265 Stat. 374 (1935). This conveyance out of the United States would have terminated any interest in the submerged streets under the pier received pursuant to Chapter 81 in 1897. In 1977 and 1983 (Corrective Deed) the City and County conveyed to the National Park Service its interest in Aquatic Park and the Municipal Pier. According to the San Francisco County Assessor's Records, federal ownership of the submerged lands at Aquatic Park is confined to the Municipal Pier and the submerged lands south of the south line of Lewis Street and the Embarcadero.

| | |
|---|---|
| 1 | **Lease PRC 8828.9.** On June 1, 2009, the SLC entered into lease PRC 8828.9 with the |
| 2 | United States for tide and submerged lands along the Pacific Coast from the San Mateo/San |
| 3 | Francisco County line north to the southern edge of Bolinas Lagoon including the tidelands |
| 4 | adjacent to the former Marin Headlands State Park. The intent of the lease was to make the lease |
| 5 | boundary and the GGNRA park boundary the same to facilitate ease of management by the |
| 6 | National Park Service. Simultaneously the SLC ceded concurrent criminal jurisdiction over the |
| 7 | leased lands for the lesser period of five years or so long as the United States owned the lands. |
| 8 | The lease only applies to tide and submerged lands outside (West) of the Golden Gate Bridge |
| 9 | because those submerged lands inside (East) of the Golden Gate Bridge, not granted to the United |
| 10 | States or sold to private parties, fall within a California legislative grant of those tidelands to the |
| 11 | City and County of San Francisco.[6] |
| 12 | **Retained California Interests.** California retains its sovereign reversionary interest |
| 13 | pursuant to Chapter 81 in all tide and submerged lands subject to the Chapter 81 grants on the |
| 14 | Pacific Coast at the Presidio of San Francisco and Lime Point Military Reservation and within |
| 15 | San Francisco Bay adjacent to Lime Point Bluff Military Reservation, Presidio of San Francisco, |
| 16 | Fort Mason and Alcatraz. |

### III. SUMMARY OF CIVIL AND CRIMINAL LEGISLATIVE JURISDICTION OVER TIDE AND SUBMERGED LANDS OWNED BY THE UNITED STATES

The United States originally acquired exclusive legislative jurisdiction over its fee owned submerged lands, subject to service of California process, either pursuant to California Political Code section 34[7] or Chapter 305 California Statutes of 1859 ("Chapter 305").[8] Thus, exclusive

---

[6] See footnote 4, p. 4, *infra*.

[7] "§ 34. **Legislative consent to purchase, etc., of lands by the United States for public use; jurisdiction over.** The Legislature consents to the purchase or condemnation by the United States of any tract of land within the state for the purpose of erecting forts, magazines, arsenals, dock-yards, and other needed buildings, upon the express condition that all civil process issued from the courts of this state, and such criminal process as may issue under the authority of this state, against any person charged with crime, may be served and executed thereon in the same mode and manner and the same officers as if the purchase or condemnation had not been made." [Enacted 1872]

[8] Chap. 305. **An Act ceding Jurisdiction to the United States over Certain Lands.** Section 1. Jurisdiction is hereby ceded to the United States over any such tract or tracts of land at or near Lime Point Bluff, on the northern side of the Harbor of San Francisco, as may be ac(re)quired by the United States for the purpose of military defense, and over all the contiguous

(continued...)

jurisdiction over tidelands would have vested at Alcatraz in 1897, Presidio of San Francisco in 1897 and Fort Mason in 1897 (streets between the Beach and Water Lots) and 1909 (Beach and Water Lots acquired by condemnation) and 1935 (new Transport Dock No. 4) pursuant to Section 34.

Exclusive jurisdiction at Lime Point Bluff vested in 1866 pursuant to Chapter 305. Federal jurisdiction here is a bit of an anomaly in that the statute cedes exclusive jurisdiction out to 500 yards beyond the low water mark without requiring the United States to own the submerged lands, although the United States did acquire ownership of the tide and submerged lands out to 300 yards below the low water line pursuant to the Chapter 81 grant in 1897. In 1967 the United States lost its exclusive jurisdiction over the tidelands adjacent to that portion of Lime Point Bluff Military Reservation when it conveyed those lands to the State of California for the Marin Headlands State Park.

Pursuant to sections 113 and 126 of the California Government Code, the State of California, acting through the SLC, can cede concurrent criminal legislative jurisdiction to the United States over areas owned or leased by the United States and accept a retrocession of jurisdiction from the United States and then establish concurrent legislative jurisdiction.

In 2009 the National Park Service sought to establish as much uniformity of legislative jurisdiction as possible over Lime Point Bluff Military Reservation, Fort Mason, the Presidio of San Francisco, Alcatraz Island and the 300 yard grant of tide and submerged lands adjacent to uplands within the GGNRA received from California pursuant to Chapter 81 as well as over the Beach and Water Lots at Fort Mason. Pursuant to the National Park Services' request, on June 1,

---

(...continued)
shores, flats, and waters, within five hundred yards from low-water-mark; Provided, that this State shall retain a concurrent jurisdiction with the United States, in and over the premises in question, so far as that all civil processes, not incompatible with the full constitutional authority of the United States, and criminal process as may lawfully issue under the authority of the State, against any person or persons charged with crimes committed without the premises aforesaid, may be executed therein, in the same way and manner as if jurisdiction had not been ceded as aforesaid, except so far as such process may affect the real or personal property of the United States.

2009, the SLC accepted a retrocession of exclusive jurisdiction from the United States and established concurrent civil and criminal legislative jurisdiction over the following lands:

    A.    Tide and submerged lands, extending from the ordinary high water mark out to 500 yards from the low water mark, as ceded in 1859, adjacent to the Lime Point Bluff Military Reservation excepting those tide and submerged lands adjacent to the former Marin Headlands State Park.

    B.    Tide and submerged lands received from California pursuant to the grant in Chapter 81 adjacent to Alcatraz Island, the Presidio of San Francisco, and the United States' streets and fee owned Beach and Water Lots at Fort Mason.

    C.    The Aquatic Park lands were inadvertently omitted from the 2009 cession and the United States has only proprietorial jurisdiction over them.

In that same action on June 1, 2009 the SLC also ceded concurrent criminal jurisdiction to the United States over all of the lands embraced by lease PRC 8828.9.

The net effect of the 2009 SLC actions was that the United States was vested with criminal jurisdiction over all of its fee owned and leased tide and submerged lands within Marin and San Francisco Counties concurrent with that of the State of California. As for civil jurisdiction, the 2009 SLC action vested the United States with civil jurisdiction over all of the United States' fee-owned tidelands in Marin and San Francisco Counties including the lands received from California pursuant to Chapter 81 concurrent with that of the State of California but not over the tide and submerged lands in lease PRC 8828.9 or over the lands comprising the former Marin Headlands State Park. California retained all of its civil jurisdiction over these lands. Finally, the United States has only proprietorial jurisdiction over Aquatic Park and has no legislative jurisdiction pursuant to California Government Code section 126 or a prior cession statute over the privately owned Beach and Water Lots on the north and east sides of Fort Mason because these Lots are in non-federal ownership as a result of the 1969 conveyance to the City and County of San Francisco.

1     The SLC's cession/retrocession action is found in the Administrative Record at pages 01849 through 01883. The areas affected by the 2009 SLC retrocession/cession are illustrated on the aerial photograph located at pages 01875-01876 of the Administrative Record.

Dated: February 10, 2014

Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
CHRISTIANA TIEDEMANN
Supervising Deputy Attorney General

*[signature]*

JOSEPH C. RUSCONI
Deputy Attorney General
*Attorneys for Amicus Curiae*
*California State Lands Commission*

OK2013311436
90376372.doc