STUART G. GROSS (#251019)
sgross@grosskleinlaw.com
CATHLEEN DONOHOE (#228729)
cdonohoe@grosskleinlaw.com
**GROSS & KLEIN LLP**
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111
t (415) 671-4628
f (415) 480-6688


*Counsel for Plaintiff*

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **SAN FRANCISCO HERRING ASSOCIATION**, | **Case No. 13-cv-01750-JST** |
| Plaintiff, | |
| v. | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT** |
| **UNITED STATES DEPARTMENT OF THE INTERIOR**; **RYAN ZINKE**, in his official capacity as Secretary of the Interior; **UNITED STATES NATIONAL PARK SERVICE**; **MICHAEL T. REYNOLDS**, in his official capacity as Director of the National Park Service; and **CICELY MULDOON**, in her official capacity as General Superintendent of the Golden Gate National Recreation Area, | Date: January 11, 2018
Time: 2:00 PM
Judge: Jon S. Tigar
Courtroom: 9, 19th Floor |
| Defendants. | |

# TABLE OF CONTENTS

NOTICE OF MOTION ................................................................................................ 1

REQUESTED RELIEF ............................................................................................. 1

POINTS AND AUTHORITIES ................................................................................ 1

   I.   Introduction .................................................................................................. 1

   II.   Background .................................................................................................. 3

      A.  Factual Background .............................................................................. 3

      B.  Procedural Background ........................................................................ 5

   III.   Legal Standard ............................................................................................ 6

   IV.   Argument .................................................................................................... 7

      A.  Allowing the Proposed Amendment Would Not Unduly Prejudice Defendants .............. 7

      B.  Plaintiff Is Not Seeking Leave to Amend in Bad Faith .................................... 7

      C.  Allowing Plaintiff Leave to Amend Would Not Unduly Delay the Litigation ................ 8

      D.  Plaintiff's Proposed Amendment Would Not Be Futile .................................... 8

          1.   Plaintiff's Proposed Amendment Alleges a Final Agency Action Sufficient to Give the Court Subject Matter Jurisdiction Over Plaintiff's APA Claim ......................................... 8

          2.   Irrespective of Whether Plaintiff Has Adequately Alleged a Final Agency Action for the Purposes of Its APA Claim, Plaintiff Has Adequately Alleged Standing to Pursue Its Claims Under the Declaratory Judgment Act ............................................... 12

CONCLUSION .................................................................................................... 15

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

## TABLE OF AUTHORITIES

### CASES

*AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946 (9th Cir. 2006) ..........................6

*Bennett v. Spear*, 520 U.S. 154 (1997).....................................................................................10

*Chudacoff v. Univ. Med. Ctr.*, 649 F.3d 1143 (9th Cir. 2011) ....................................................7

*DCD Programs, Ltd. v. Leighton*, 833 F.2d 183 (9th Cir. 1987) .................................................7

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ................................6, 7

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 490-91 (2010) .........................................................................................................................11

*Gilmore v. Weatherford*, 694 F.3d 1160 (10th Cir. 2012) ........................................................13

*Hanson v. Wyatt*, 552 F.3d 1148 (10th Cir. 2008) ....................................................................13

*Herr v. United States Forest Serv.*, 803 F.3d 809 (6th Cir. 2015) ............................................11

*Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221 (1986)..........................................12

*Lockheed Martin Corp. v. Network Sols., Inc.,* 194 F.3d 980 (9th Cir. 1999) ............................7

*Ministerio Roca Solida v. McKelvey*, 820 F.3d 1090, 1096 (9th Cir. 2016)............................13

*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990) ...............................7

*Sackett v. EPA*, 566 U.S. 120 (2012) .........................................................................10, 11, 12

*Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225 (10th Cir. 2005).........................................13

*Sturgeon v. Frost,* 136 S. Ct. 1061 (2016) ..................................................................................2

*Sturgeon v. Masica*, 768 F.3d 1066 (9th Cir. 2014)........................................................2, 13, 14

*Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334 (2014) ....................................................13

*The Emily*, 22 U.S. (9 Wheat.) 381 (1824) ...............................................................................12

### STATUTES

16 U.S.C. § 3 ..........................................................................................................................4, 10

16 U.S.C. § 460bb-3.....................................................................................................................2

16 U.S.C. §§ 460bb .....................................................................................................................3

28 U.S.C. § 2409a ........................................................................................................................6

28 U.S.C. §§ 2201.....................................................................................................8, 12, 13, 14

33 U.S.C. § 1319 ........................................................................................................................11

5 U.S.C. § 702 ............................................................................................................................13

5 U.S.C. § 704 ..........................................................................................................2, 8, 10, 13

5 U.S.C. § 706 ..............................................................................................................................2

5 U.S.C. § 706(2)(A) ...................................................................................................................5

5 U.S.C. § 706(2)(C) ...........................................................................................................passim

### RULES

Fed. R. Civ. Pro. 15(a)(2)............................................................................................................1

Fed. R. Civ. Pro. 25(d) ........................................................................1

**REGULATIONS**

36 C.F.R. § 1.3 .............................................................................4, 10

36 C.F.R. § 2.17(e) .............................................................................13

36 C.F.R. § 2.3(d)(4) ....................................................................2, 4, 6

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

**NOTICE OF MOTION**

TO THE PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on January 11, 2018 at 2:00 PM in Courtroom 9, before the Honorable Judge Jon S. Tigar, or as soon thereafter as may be heard, Plaintiff San Francisco Herring Association ("SFHA" or "Plaintiff") will and hereby does move for leave Federal Rule of Civil Procedure 15(a)(2) to file a Second Amended Complaint. SFHA bases this motion on this Notice of Motion and Motion, its accompanying Request for Judicial Notice and the Proposed Order, as well as filings in this case and any oral argument allowed.

**REQUESTED RELIEF**

Plaintiff respectfully requests leave to file the Second Amended Complaint attached hereto as Exhibit A.

**POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Plaintiff respectfully moves, pursuant to Federal Rule of Civil Procedure 15(a)(2), for leave to file the Second Amended Complaint (the "SAC"), attached hereto as Exhibit A, which cures the jurisdictional deficiencies identified by the Ninth Circuit in Memorandum, Dkt. No. 54-1 (USCA Ninth Circuit Case No.15-16214) ("Memo").

Before the Ninth Circuit was Plaintiff's appeal of this Court's Orders, which, in combination, granted the Motion for Partial Summary Judgment of Defendants[1] and denied Plaintiff's Cross-Motion for Summary Judgment, Dkt. Nos.  84 & 127. Those cross-motions and the resulting Orders addressed the merits of Plaintiff's claim, under 5 U.S.C. § 706(2)(C), that because the DOI has never acquired certain waters abutting the Golden Gate Nation Recreation Area or "GGNRA" (the "Waters at Issue")—as required under Section 4 of the GGNRA Enabling

---

[1] Defendants consist of the United States Department of the Interior ("DOI"), the National Park Service ("NPS"), Ryan Zinke, in his official capacity as Secretary of the Interior, Michael Reynolds, in his official capacity as Director of the National Park Service, and Cicely Muldoon, in her official capacity as General Superintendent of the Golden Gate National Recreation Area ("GGNRA"). The foregoing individual defendants were automatically substituted in for their predecessors pursuant to Fed. R. Civ. Pro. 25(d)

Act (the "Enabling Act"), 16 U.S.C. § 460bb-3, for Defendants to have the administrative

jurisdiction to enforce *any* federal regulation in the area—Defendants enforcement, in the Waters

at Issue, of federal regulations prohibiting commercial fishing (specifically, 36 C.F.R. § 2.3(d)(4))

exceeded Defendants' statutory jurisdiction, authority, or limitations.

The Ninth Circuit never reached the merits of the appeal. After determining that Plaintiff

had failed to adequately allege a final agency action—as a plaintiff bringing a claim under 5

U.S.C. § 706 is required to do under 5 U.S.C. § 704—the Ninth Circuit vacated this Court's

judgment and remanded the case with instruction to dismiss for lack of subject matter jurisdiction.

As discussed herein, the SAC cures the jurisdictional deficiencies in the First Amended

Complaint ("FAC") in two independently sufficient ways.

First, the SAC alleges in detail the specific actions that Defendants and their agents took

to enforce 36 C.F.R. § 2.3(d)(4) in the Waters at Issue against particular members of SFHA. As is

clear from these allegations, these and other actions by Defendants determined the rights of

SFHA member and legal consequences for such members flowed from them; thus, they

constituted a final agency action, sufficient to subject Defendants' enforcement of 36 C.F.R. §

2.3(d)(4) in the Waters at Issue to judicial review. Indeed, if these actions are not sufficient to

constitute a final agency action, a citizen who wishes to challenge the authority of a federal

agency to enforce against her or him regulations that carry with them a criminal sanction would

have to get arrested to gain judicial review. The law does not require that.

Second, the SAC adds claims, under the Declaratory Judgment Act, alleging that

Defendants' enforcement of 36 C.F.R. § 2.3(d)(4) in the Waters at Issue violates the Enabling

Act. As the Ninth Circuit recently made clear in an analogous case, *Sturgeon v. Masica*, 768 F.3d

1066 (9th Cir. 2014) *rev. on other grounds sub nom. Sturgeon v. Frost,* 136 S. Ct. 1061 (2016),

framed in this way, a claim seeking equitable relief on the ground that a federal agency or official,

in her or his official capacity, acted in violation of statutory limitations of authority, can be

brought by a plaintiff who satisfies Article III standing requirements. Section 704 does not apply

to non-APA claims; and thus the section's final agency action requirement is not applicable to

claims brought under the Declaratory Judgment Act. The allegations of the SAC are on all fours

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

with the facts found by the Ninth Circuit in *Sturgeon* to give it subject matter jurisdiction over that plaintiff's analogous Declaratory Judgment Act claims. Therefore, these allegations are sufficient to give this Court subject matter jurisdiction over SFHA's Declaratory Judgment Act claims as well, independent of the subject matter jurisdiction it has to hear SFHA's APA claim.

In light of the foregoing, Plaintiff's requested amendment would not be futile; and, as discussed herein all of other factors applicable to a motion for leave to amend weigh in favor giving Plaintiff such relief. Thus, in accordance with such factors, as well as the extreme liberality with which Fed. R. Civ. Pro. 15(a)(2) is to be applied and the strong presumption in favor granting leave to amend, Plaintiff respectfully requests that the Court grant Plaintiff leave to file the SAC attached hereto as Exhibit A.

## II.    <u>BACKGROUND</u>

### A.    <u>Factual Background</u>

An extensive factual background of the case is contained on pages 2 through 22 of Plaintiff's Cross-Motion for Summary Judgment, Dkt. No. 37, as well as pages 2 through 4 of the Court's Summary Judgment Order, Dkt. No. 127.

In summary, when Congress established the GGNRA, in 1972, through enactment of the Enabling Act, 16 U.S.C. §§ 460bb *et seq.*, it did so by designating areas in Counties of Marin and San Francisco in which the DOI was authorized to "acquire lands, improvements, waters, or interests therein" for establishment of the recreation area, 16 U.S.C. §§ 460bb-1 to 460bb-2, and then giving it the authority "administer the lands, waters and interests therein acquired for the recreation area," 16 U.S.C. § 460bb-3.

The Waters at Issue are contained within the boundaries of the area in which Congress authorized the DOI to acquire "waters, or interests therein." However, the DOI never made such an acquisition. Thus, the DOI satisfied, as to the Waters at Issue, the precondition necessary for it to have administrative jurisdiction over these waters under the Enabling Act.

Nonetheless, prior to the 2011/12 season of San Francisco Bay's commercial herring fisher (the "Herring Fishery"), Defendants sent a letter, through their agent the California Department of Fish and Wildlife ("CDFW"), to every participant in the Herring Fishery,

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

including SFHA's members, claiming that Defendants had jurisdiction over the Waters at Issue based on certain historical grants rights to lands below those waters made by the State of California to the federal government and indicating that pursuant to 36 C.F.R. § 2.3(d)(4) that commercial fishing was prohibited in those waters. *See* SAC, ¶ 49, Ex. 1.[2]

The Waters at Issue include some of the most important herring fishing grounds, from the perspective of both profitability of the fishery and sustainable management of the stock. Thus, in advance of the 2012/13 herring season, the membership of the SFHA tried extensively to convince the Defendants to not enforce the prohibition of commercial fishing in the Waters at Issue. *See id.*, ¶¶ 60-61. The Defendants rebuffed such efforts, sending a letter, again through its agent the CDFW, to all commercial herring fishermen, including SFHA members, indicating that it reserved the right to cite any person commercially fishing in the Waters at Issue for violating 36 C.F.R. § 2.3(d)(4). *See id.*, ¶ 62, Ex. 5. In a subsequent conversation with the undersigned, an attorney for Defendants further refused to state that a herring fishermen who commercially fished in the Watters at Issue would not receive a citation. *Id.*, ¶ 65. Such a citation would result in a criminal prosecution that could result in imprisonment for up to six months, as well as the inability to participate in certain fisheries. *See id.*; 16 U.S.C. § 3; 36 C.F.R. § 1.3

In or around the 11th through 14th of the following January, by far the largest herring spawn of the entire herring season occurred in a portion of the Waters at Issue, offshore of the area of the GGNRA in Marin County known as "Yellow Bluff." *Id.*, ¶ 69. During this spawn, NPS rangers and CDFW wardens acting on behalf, and at the direction, of Defendants, as Defendants' agents, confronted several SFHA members engaged in commercial fishing activities in the Waters at Issue. *See* SAC, ¶¶ 70-74. The SFHA members were all aware that Defendants had threatened anyone who commercially fished in the Waters at Issue with criminal prosecution. *Id.* Thus, when Defendants and their agents instructed the fishermen that they were in the Waters at Issue and needed to fish on the other side of the boundary demarcating the Waters at Issue from

---

[2] As laid out in detail on pages 11 to 20 and 26-29 of Plaintiff's Cross-Motion for Summary Judgment, Dkt. 37, neither these nor any other transaction resulted in transfer to the federal government of title to the Waters at Issue or any other lesser property interest therein.

other waters of the Bay, the fishermen obeyed rather than risk federal criminal prosecution. *Id.*

SFHA members intend and desire to commercially fish for herring in the Waters at Issue, but, as a result of the threat of criminal prosecution if they do so, have not and will not do so, denying them the right to use and enjoy these navigable waters. *Id.*, ¶¶ 76-77.

### B. <u>Procedural Background</u>

On April 18, 2013, Plaintiff filed its original complaint in this action, alleging claims that: (a) Defendants United States Department of the Interior ("DOI"), Sally Jewell, National Park Service ("NPS"), Jonathan Jarvis, and Frank Dean (collectively, "Defendants"), by prohibiting commercial fishing in certain waters of the San Francisco Bay (the "Disputed Waters"), were acting in excess of their administrative authority, in violation of 5 U.S.C. § 706(2)(C) (the "706(2)(C) APA Claim"); (b) Defendants were acting arbitrarily and capriciously in prohibiting commercial fishing in the Disputed Waters, in violation of 5 U.S.C. § 706(2)(A) (the "706(2)(A) APA Claim"); and (c) Defendants were estopped from prohibiting commercial fishing in the Disputed Waters (the "Estoppel Claim"). *See* Dkt. No. 1.

On June 19, 2013, Defendants filed a partial motion to dismiss, seeking only dismissal of Plaintiff's Estoppel Claim, *see* Dkt. No. 10, at the same time, filing an answer to Plaintiff's other claims, *see* Dkt. No. 12. Plaintiff filed a statement of non-opposition in response to the motion, Dkt. 14; and, following the Court's order granting the motion, Plaintiff filed its FAC, on July 10, 2013, in which the Estoppel Claim was omitted, but which otherwise was substantively unchanged from the original complaint, *see* Dkt. No. 17. On July 18, 2013, Defendants answered the FAC. Dkt. 18.

The Court issued an order, on August 23, 2013, setting a schedule for cross-motions for summary judgment on Plaintiff's 706(2)(C) APA Claim, deferring for later resolution of Plaintiff's 706(2)(A) APA Claim, Dkt. No. 27.

On September 26, 2013, Defendants moved for summary judgment on Plaintiff's 706(2)(C) APA Claim. Dkt. No. 31. In the motion, Defendants did not challenge the Court's subject matter jurisdiction, *see id.*; however, in Defendants' reply and opposition to Plaintiff's cross motion for summary judgment, Defendants challenged the Court's subject matter

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

jurisdiction, but only on the basis of the Quiet Title Act, 28 U.S.C. § 2409a, *see* Dkt. No. 55 at pp. 27-29. Defendants did not challenge the Court's subject matter jurisdiction to Plaintiff's 706(2)(C) APA Claim, on any other basis—either in that brief or in any other.

The Court issued two separate rulings on the parties' cross motion for summary judgment. First, it ruled that it did have subject matter jurisdiction, rejecting Defendants' Quiet Title Act argument (the "Jurisdictional Order"). *See* Dkt. No. 84. Second, it granted Defendants' motion for summary judgment on the merits, finding that Defendants had the administrative jurisdiction to apply 36 C.F.R. § 2.3(d)(4)'s prohibition of commercial fishing in the Waters at Issue (the "Merits Order"). *See* Dkt. No. 127.

Plaintiff then filed a timely appeal of the Merits Order to the Ninth Circuit. Dkt. No. 133. Neither party appealed the Jurisdictional Order.

On March 17, 2017, the Ninth Circuit issued its Memo, vacating this Court's judgment, without reaching the merits of Plaintiff's challenge to the Merits Order. Rather, it found that this Court lacked subject matter jurisdiction on the ground that Plaintiff did not sufficiently allege a final agency action challenged in the action. Memo at p. 2, ¶ 1.

On July 20, 2017, the Ninth Circuit issued its Mandate. *See* Dkt. No. 141.

On August 11, 2017. Plaintiff filed an administrative motion requesting that this Court comply with the Mandate by dismissing this case without prejudice and giving Plaintiff leave to file the instant motion for leave to file an amended complaint. Dkt. No. 142. The Court granted that motion on October 25, 2017, Dkt. No. 146.

## III.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 15(a)(2) provides that the Court "should freely give leave [to amend] when justice so requires."  The Ninth Circuit has explained that, "this policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation omitted);  District courts must grant leave to amend unless the proposed amendment: (1) would cause undue prejudice to the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile. *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). "Absent prejudice, or a strong showing of

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

any of the remaining . . . factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence*, 316 F.3d at 1052.

## IV.    ARGUMENT

### A.    Allowing the Proposed Amendment Would Not Unduly Prejudice Defendants

"The party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). And Defendants here cannot meet that burden. The proposed amendment does not come late in the litigation or greatly alter the nature of the litigation, thus requiring the defendants to undertake an entirely new defense. *Cf. Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). The proposed amendment comes after remand from the Ninth Circuit, following an appeal of cross motions for summary judgment heard early in the litigation; and the gravamen of Plaintiff's claims remain as they have always been: the DOI and its agency, the NPS, have never satisfied the prerequisite for gaining administrative jurisdiction over the Waters at Issue, and thus Defendants lack the authority to apply federal regulations prohibiting commercial fishing in those waters. Indeed, the reason for this Motion is to cure the jurisdictional deficiency that prevented the Ninth Circuit from reaching the merits of this import question of federal authority. *Chudacoff v. Univ. Med. Ctr.*, 649 F.3d 1143, 1152 (9th Cir. 2011) (Rule 15(a) "is designed to facilitate decision on the merits, rather than on the pleadings or technicalities.") And as an administrative record case, granting leave to amend could not increase Defendants' burdens as to discovery. *Cf. Lockheed Martin Corp. v. Network Sols., Inc.,* 194 F.3d 980, 986 (9th Cir. 1999). Indeed, it is highly unlikely that the administrative record would need to be in any way supplement as a result the amendment.

Accordingly, as to the "touchstone" factor of undue prejudice, *Eminence*, 316 F.3d at 1052, Defendants cannot meet their burden, and leave to amend should be granted.

### B.    Plaintiff Is Not Seeking Leave to Amend in Bad Faith

Plaintiff's proposed amendment is sought in good faith, as SFHA did not become aware of any deficiency in pleading until the Ninth Circuit issued its decision. Moreover, Plaintiff gains absolutely no strategic advantage by having to amend at this stage, and so there is no basis on which to claim that its motion for leave to amend is motivated by any sort of gamesmanship or

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT: NO.: 13-1750

the like. Rather, again, Plaintiff is merely seeking to leave to amend so that the merits of its challenge can be resolved. Thus, there is *no* showing of bad faith, let alone the strong one required, and leave to amend should be granted.

### C.  Allowing Plaintiff Leave to Amend Would Not Unduly Delay the Litigation

It is anticipated that soon following Plaintiff's filing of the SAC that the parties will cross-move for summary judgment on the grounds closely paralleling those on which they previously moved. Thus, no undue delay would be caused by granting the motion to amend, and consideration of this factor as well strongly supports granting the motion.

### D.  Plaintiff's Proposed Amendment Would Not Be Futile

Finally, Plaintiff's proposed amendment would not be futile, as it cures the jurisdictional defect identified by the Ninth Circuit in two independently sufficient ways. First, as to Plaintiff's APA claim brought under 5 U.S.C. § 702(2)(C), the allegations added to the SAC concerning the direct enforcement activities experienced by SFHA members, *see* SAC, ¶¶ 71-73, in combination with other allegations in the complaint, satisfy the requirements for a final agency action under 5 U.S.C. § 704. Second, as to Plaintiffs' Declaratory Judgment Act claims brought under 28 U.S.C. §§ 2201-2202, those same and other allegations in the SAC satisfy the Article III standing requirements that apply. Therefore, this factor also supports granting Plaintiff's motion and giving it the requested leave to amend.

#### 1.  Plaintiff's Proposed Amendment Alleges a Final Agency Action Sufficient to Give the Court Subject Matter Jurisdiction Over Plaintiff's APA Claim

The Ninth Circuit found that the FAC did not allege a final agency action that was sufficient to give the Court subject matter jurisdiction, under 5 U.S.C. § 704, over Plaintiff's claim under the APA. Specifically, the Ninth Circuit found that the FAC challenged "the National Park Service's decision to enforce the regulation against SFHA members, embodied in the Service's allegedly heightened patrol of the waters of the Golden Gate National Recreation Area ("GGNRA") in recent years." Memo at p. 2, ¶ 1. While recognizing that "actions by which an agency enforces a statute or rule against a particular party may be 'final agency action' within the meaning of 5 U.S.C. § 704," these patrols, it held, do not constitute a final agency action because

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

the "patrols are at best only the first step in the enforcement process, and thus do not meet the requirements for final agency action." *Id.* at pp. 2-3, ¶ 1.

The SAC cures this inadequacy by specifically alleging instances where SHFA members were individually ordered out of the Waters at Issue by the NPS rangers and CDFW wardens acting at Defendants' direction and on their behalf. *See* SAC, ¶¶ 70-74. These allegations include:

- Allegations concerning Ernie Koepf, who, on or around January 13, 2013, while surveying spawning herring in the Waters at Issue in preparation for setting his nets, was confronted by NPS wardens in his fishing vessel, who indicated that they had authority over the waters and that Mr. Koepf was not allowed to fish for herring in those waters and that he was required to set his nets on the other side of the boundary of the Waters at Issue. Mr. Koepf was aware of Defendants' communicated intention to prosecute those who commercially fished for herring in the Waters at Issue. Accordingly, Mr. Koepf, obeyed the instructions, exited the Waters at Issue and placed his nets outside of the indicated boundary rather than risk criminal prosecution. *Id.*, ¶ 72

- Allegations concerning Domenic Papetti, who, during approximately the same period, had set nets in the Waters at Issue. After setting his nets, Mr. Papetti was approached by CDFW wardens, acting as agents for Defendants, who told him that he was not allowed to fish in the Waters at Issue and ordered him to remove the nets. *Id.*, ¶ 74. He was also aware of Defendants' communicated intention to prosecute those who commercially fished for herring in the Waters at Issue. Accordingly, Mr. Papetti removed his nets from the Waters at Issue, exited the Waters at Issue, and placed his nets outside those waters, rather than risk criminal prosecution. *Id.*

- Allegations concerning Matt Ryan, Dennis Deaver, and Nick Sorokoff, each of who, during approximately the same period, while surveying spawning activity in the Waters at Issue in preparation for setting his nets, were approached by CDFW wardens acting as agents of Defendants, and each was informed that they could not set their nets in the waters. Thus, in response to these instructions, each of these fishermen left the Waters at Issue and fished elsewhere, rather than risking criminal prosecution. Each was aware of

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

Defendants' communicated intention to prosecute those who commercially fished for herring in the Waters at Issue. Accordingly, each obeyed the instructions, exited the Waters at Issue and placed his nets outside of the indicated boundary rather than risk criminal prosecution. *Id.*, ¶ 73.

The above actions by Defendants and their agents constituted final agency actions under 5 U.S.C. § 704. These actions, on their face, "determined [the] rights [and] obligations" of these SFHA members during the described circumstances. *Sackett v. EPA*, 566 U.S. 120, 126 (2012) (internal quotation omitted, modifications added). These fishermen were engaging in commercial herring fishing in the Waters at Issue—in the case of Messrs. Koepf, Ryan, Sorokoff, and Deaver, surveying spawning activity in order to locate their nets, and, in the case of Mr. Papetti, tending nets that he had set them in the Waters at Issue—and each was told that they had no right to fish in the Waters at Issue and were instructed to fish elsewhere. *See* SAC, ¶¶ 72-74. These actions determined these fishermen's rights to fish, specifically the geographic scope of those rights in the San Francisco Bay.

They were *also* actions "from which legal consequences [would] flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997). Defendants had stated, in their November 14, 2012 letter to fishermen, that they "'reserve[d] the right to enforce any violations of the prohibition of commercial fishing as set out in 36 CFR § 2.3(d)(4),'" FAC, ¶ 61; and counsel for Defendants, in a conversation with counsel for SFHA at or around the time of that letter, had specifically refused to state that a fisherman who commercially fished in the Waters at Issue would not be cited, *id.*, ¶ 64. Thus, the legal consequences that flowed from these instructions, if the fishermen refused to obey them, was federal criminal prosecution, including potential imprisonment for up to six months. *See id.*; 16 U.S.C. § 3; 36 C.F.R. § 1.3; *see also Sackett v. EPA*, 566 U.S. 120, 127 (2012) (finding that an action that exposed a plaintiff to potential penalties and enforcement proceedings qualified as a final agency action from which legal consequences flowed).

These fishermen were not required to subject themselves to such criminal prosecution in order for Defendants' actions to qualify as final and reviewable under 5 U.S.C. § 704. When a party challenges actions taken by an agency in excess of its statutory authority, that party may

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

challenge the action "without waiting for enforcement proceedings. That makes sense, as courts 'normally do not require plaintiffs to bet the farm . . . by taking the violative action before testing the validity of the law.'" *Herr v. United States Forest Serv.*, 803 F.3d 809, 822 (6th Cir. 2015) (quoting with modifications *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 490-91 (2010)).

The Supreme Court affirmed this common sense rule in *Sackett,* a case in which the Plaintiffs challenged the EPA's authority to apply the Clean Water Act to their property. *See* 566 U.S. at 125. There, the Ninth Circuit, in affirming the district court's dismissal of the case, concluded that the APA "'preclude[s] pre-enforcement judicial review of compliance orders,'" on the ground that such compliance orders did not constitute final agency action under 5. *Id.* (quoting opinion below). In reversing this conclusion, the Court not only, as indicated above, noted that an action which exposes a plaintiff to enforcement proceedings and fines, satisfies the requirement that the action be one from which "legal consequences flow," *id.* at 127, it also rejected the idea that the plaintiff was required to wait for such proceedings and fines to come to a fruition in order for there to be a final agency action to challenge. Thus, the Court noted, "[i]n Clean Water Act enforcement cases, judicial review ordinarily comes by way of a civil action brought by the EPA under 33 U.S.C. § 1319," the plaintiffs—who cannot initiate such a proceeding—are not required to "wait for the Agency to drop the hammer," while accruing additional potential fines. *Id.* at 127.

Here, where the hammer in question would come in the form of criminal prosecution, not only do basic principles of public policy strongly militate against the conclusion that a plaintiff is require to get arrested and face jail time in order to gain judicial review of his claim that a federal agency is acting beyond its statutory grant of authority, the text of 5 U.S.C. § 706(2)(c) and rules of statutory interpretation bar that conclusion. If the only way to challenge the statutory authority of an executive agency in this context is to get arrested, then 5 U.S.C. § 706(2)(c) has no application to situations in which the challenged *ultra vires* actions of an executive agency carry with them the threat of criminal prosecution; if that were the case, the only manner in which such an action would be challenged would be through the assertion of a defense at ones criminal prosecution. It should not be lightly assumed that when Congress enacted 5 U.S.C. § 706(2)(c), it

intended the provision to have no application in situations where the consequences to the citizenry of an agency acting beyond its authority was criminal prosecution as opposed to civil liability. *Cf. Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986) ("A separate indication of congressional intent to make agency action reviewable under the APA is not necessary; instead, the rule is that the cause of action for review of such action is available absent some clear and convincing evidence of legislative intention to preclude review."); *see also The Emily*, 22 U.S. (9 Wheat.) 381, 390 (1824) (interpretations that obstruct a law's purpose are disfavored).

Finally, the existence of the unlikely possibility that the above SFHA's member *may* not have been subject to criminal prosecution if they flouted the express instructions provide to them by Defendants and their agents and fished in the Waters at Issue does not make the actions against them non-final. In *Sackett,* the Supreme Court rejected an analogous argument that the possibility of informal discussions convincing the EPA not to go forward with an enforcement action made the action there non-final: "The mere possibility that an agency might reconsider in light of 'informal discussion' and invited contentions of inaccuracy does not suffice to make an otherwise final agency action nonfinal." 566 U.S. at 127. Similarly here, the mere possibility that Defendants and their agents, having instructed the above SFHA members not to fish in the Waters at Issue, might not have reacted to direct disobedience of those orders by issuing the member a criminal citation does not make the action non-final, and it does not allow Defendants to evade its review.

Thus, Plaintiff's allegations in the SAC adequately allege a final agency action, and Defendants cannot show that granting Plaintiff leave to file the SAC would be futile. Thus, this factor also supports granting Plaintiff's motion.

**2. Irrespective of Whether Plaintiff Has Adequately Alleged a Final Agency Action for the Purposes of Its APA Claim, Plaintiff Has Adequately Alleged Standing to Pursue Its Claims Under the Declaratory Judgment Act**

In addition to its claim under Section 706(2)(C) of the APA, SFHA also brings claims under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, *see* SAC, ¶¶ 96-103, for which

SFHA need not allege any final agency action, but rather only Article III standing.

It is well established that "[5 U.S.C.] § 702's waiver of sovereign immunity 'is not limited to suits under the Administrative Procedure Act,'" *Gilmore v. Weatherford*, 694 F.3d 1160, 1166 n.1 (10th Cir. 2012) (quoting *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225 (10th Cir. 2005), but rather applies to any action "'seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority.'" *Ministerio Roca Solida v. McKelvey*, 820 F.3d 1090, 1096 (9th Cir. 2016) (quoting 5 U.S.C. § 702). Thus, when a plaintiff seeks equitable relief against the federal government or federal officials, in their official capacity, on grounds other than the APA, courts "'have not treated Section 704 as a limit on that waiver.'" *Gilmore*, 694 F.3d at 1166 n.1 (quoting *Hanson v. Wyatt*, 552 F.3d 1148, 1173 n.11 (10th Cir. 2008) (Gorsuch, J., concurring). Such courts include the Ninth Circuit, in *Sturgeon*, 768 F.3d 1066.

In *Sturgeon,* the plaintiff, a hunter, challenged, under 28 U.S.C. §§ 2201-2202, the NPS's application of 36 C.F.R. § 2.17(e)'s prohibition of the use of hovercraft to his use of a hovercraft on the Nation River in Alaska. *See* [RJN]. Specifically, the plaintiff alleged that this application of the regulation by the NPS violated the express terms of the Alaska National Interest Lands Conservation Act ("ANILCA"), on the ground that the law excluded from the jurisdiction of NPS regulations, waters over which the State of Alaska held title, including the National River. *id.*, ¶ 45. He, therefore, sought under 28 U.S.C. §§ 2201-2202, a declaration that any application of 36 C.F.R. § 2.17(e) by the NPS to his use of a hovercraft on such waters was void, that, more generally, any application of NPS regulations to such waters was void, as well as corresponding temporary and permanent injunctions. *Id.*, ¶¶ 46, 51, 55, 60.

As no claims by the plaintiff were made under the APA, the Ninth Circuit did not address whether he had adequately alleged a final agency action under 5 U.S.C. 704. Rather, it examined whether he had adequately alleged standing under Article III. *See Sturgeon*, 768 F.3d at 1071. Doing so it found that the plaintiff had standing, under the Supreme Court's decision in *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334 (2014), based on the fact that the plaintiff had an intention to use his hovercraft on the river in question, the regulation in question proscribed such

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

use, such use "arguably implicates his right under the Privileges or Immunities Clause of the Fourteenth Amendment to use the navigable waters of the United States," and he faced a credible threat of prosecution if he used his hovercraft in this way. *Sturgeon*, 768 F.3d 1072 (quotation omitted). In determining that this last criterion was satisfied, the court held that the plaintiff's receipt of a "a verbal warning not to use the hovercraft" and statements made by an NPS agent to the plaintiff's lawyer that the plaintiff should remove his hovercraft and that the plaintiff "'[might] be subject to criminal liability if he operated a hovercraft in the preserve'" were "sufficient to show a credible threat of enforcement against" the plaintiff. *Sturgeon*, 768 F.3d at 1072 (modification in original). The court found that plaintiff's injury was fairly traceable to the actions of the NPS on the grounds that the regulation was promulgated by the NPS and enforcement has been threatened by NPS employees, and that a favorable decision would redress the plaintiff's injury in fact.

This holding is on all fours with the allegations in the SAC. SFHA alleges that: its members intend to commercially fish for herring in the Waters at Issue, SAC, ¶ 77, which implicates the same right under the Privileges and Immunities Clause under Fourteenth Amendment; the regulations at issue, proscribe such actions; and members of SFHA have been instructed by Defendants and their agents that they are not allowed to commercially fish in the Waters in Question and face citation if they do, through letters sent to each of them by the NPS, *id.*, ¶¶ 62-74, during in person enforcement interactions with Defendants and their agents in the Waters at Issue, *id.*, ¶¶ 72-74, and in personal communications between Defendants' counsel and SFHA's counsel, *id.*, ¶ 65. Furthermore, the NPS promulgated the regulations at issue and NPS employees and agents have communicated the threats to SFHA's members, *see, e.g., id.*, ¶¶ 62, 64. And finally, a favorable decision on Plaintiff's claims under the Declaratory Relief Act would redress Plaintiff's injury in fact.

Accordingly, independent of the adequacy of Plaintiff's allegations in the SAC of final agency action and thus this Court's subject matter jurisdiction to hear Plaintiff's claim under Section 706(2)(C) of the APA, Plaintiff's allegations are adequate to establish its standing under Article III to pursue claims under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and,

thus, independently on this ground as well it would not be futile to allow Plaintiff leave to file the

SAC; and this factor also weighs in favor of granting Plaintiff leave to file the SAC.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court grant its request for leave to file its Second Amended Complaint.

Respectfully submitted,

DATED:  November 21, 2017                              **GROSS & KLEIN LLP**


                                                      */S/ Stuart G. Gross*
                                                      Stuart G. Gross  (#251019)
                                                      sgross@grosskleinlaw.com
                                                      The Embarcadero
                                                      Pier 9, Suite 100
                                                      San Francisco, CA 941111
                                                      t (415) 671-4628
                                                      f (415) 480-6688

                                                      *Counsel for Plaintiff*

# EXHIBIT A

STUART G. GROSS (#251019)
sgross@grosskleinlaw.com
CATHLEEN DONOHOE (#228729)
cdonohoe@grosskleinlaw.com
**GROSS & KLEIN LLP**
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111
t (415) 671-4628
f (415) 480-6688

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **SAN FRANCISCO HERRING ASSOCIATION**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES DEPARTMENT OF THE INTERIOR**; **RYAN ZINKE**, in his official capacity as Secretary of the Interior; **UNITED STATES NATIONAL PARK SERVICE**; **MICHAEL T. REYNOLDS**, in his official capacity as Director of the National Park Service; and **CICELY MULDOON**, in her official capacity as General Superintendent of the Golden Gate National Recreation Area, <br><br> Defendants. | Case No.  13-cv-01750-JST <br><br><br> **SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

Plaintiff San Francisco Herring Association ("SFHA" or "Plaintiff") alleges as follows on information and belief, except where based on personal knowledge, against the United States Department of the Interior ("DOI"), Ryan Zinke, in his official capacity as Secretary of the Interior; United State National Park Service ("NPS"), Michael Reynolds, in his official capacity as Director of the NPS; and Cicely Muldoon, in her official capacity as General Superintendent of the Golden Gate National Recreation Area ("GGNRA") (collectively, "Defendants"):[1]

## **INTRODUCTION**

1.     This action challenges Defendants' unlawful denial of commercial herring fishermen access to fishing grounds in waters abutting the shoreline of the Golden Gate National Recreation Area (the "Waters At Issue"). Such waters, being part of the San Francisco Bay, are navigable.

2.     This action does not challenge the Defendants' authority to promulgate a regulation that prohibits commercials fishing, or the process by which such a regulation was promulgated. Rather, this action challenges the authority of Defendants to enforce, and to cause others to enforce on their behalf, that regulation in the Waters at Issue, on the ground that Defendants lack the authority to enforce *any* regulation in these waters.

3.     Defendants lack administrative jurisdiction and authority over the Waters at Issue because the conditions that Congress established for the Department of the Interior (the "DOI")— and, by extension, the NPS—to gain such administrative jurisdiction have not been satisfied, as to the Waters at Issue.

4.     The law by which Congress established the GGNRA, known as the "GGNRA Enabling Act, 16 U.S.C. §§ 460bb *et seq.,* specifically limits the administrative jurisdiction of the NPS, as to the GGNRA, to "the lands, waters and interests therein ***acquired*** [by the DOI] for the recreation area ." (emphasis added). 16 U.S.C. § 460bb-3.

---

[1] The originally named federal government officials are automatically substitute with the current officials in their positions pursuant to Fed. R. Civ. P. 25(d).

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

5. The DOI has never acquired the Waters at Issue; nor has the DOI ever acquired any interest therein. Thus, under the plain text of the law by which Congress gave this federal agency the authority to apply and enforce its regulations as to the GGNRA, it cannot enforce or apply its regulation prohibiting commercial fishing in the Waters at Issue.

6. Accordingly, while the federal regulation prohibiting commercial fishing in areas over which the NPS has administrative jurisdiction has been on the books since 1983, throughout 1980s, 1990s, and 2000s, Defendants did not enforce any prohibition commercial fishing by Plaintiff's members or others in the Waters at Issue.

7. In the mid-1990s, Defendants tried to enforce the regulation prohibiting commercial fishing in the Waters at Issue. However, they abandoned the effort when the California Department of Fish and Wildlife ("CDFW") objected to the effort. The basis for the CDFW's objection was that the Defendants had no administrative authority over the Waters at Issue.

8. This began to change in the 2011/12 season of San Francisco Bay's herring roe fishery (the "Herring Fishery").

9. In November 2011, Defendants informed fishermen, many of whom have been commercially fishing for herring in the San Francisco Bay since the mid-1970s, that the NPS would prohibit fishing in the Waters at Issue. The letter by which this notice was provided, claimed the authority to do so—in implicit recognition of the acquisition prerequisite in the GGNRA Enabling Act—on the basis of certain instruments by which the federal government had gained real property interests in various submerged lands from the State of California. As a matter of California law, these grants of property interests from the State did not include an interest in the waters above that would entitle the holder to exclude others from fishing or navigating in them.

10. The following season, the 2012/13 season, once NPS rangers at the GGNRA had acquired a vessel that could be used for enforcement, Defendants and their agents began actively excluding SFHA members from the Waters at Issue

**SECOND AMENDED COMPLAINT;** Case No. 13-1750-JST

Gross & Klein LLP
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111

11.     In or around January of 2013, when a large spawn of herring occurred in an area of the Waters at Issue in front of what is known to fishermen as the "Stink Plant," near the border of the Marin portion of the GGNRA and Sausalito, Defendants and their agents actively prevented fishermen, all members of the SFHA at the relevant time, from fishing in these waters, enforcing Defendants' regulation prohibiting commercial fishing in an area in which Congress never gave Defendants the administrative jurisdiction to enforce its regulations.

12.     Effectively, these actions are analogous to the NPS ticketing drivers on Market St. for breaking speed limits established under federal regulations.

13.     Defendants' enforcement and application, in the Waters at Issue, of NPS regulations prohibiting commercial fishing, including 36 CFR § 2.3(d)(4), violates the express terms of Section [4] of the GGNRA Enabling Act, 16 U.S.C. § 460bb-3, and Plaintiff is entitled to an order declaring and adjudging *inter alia* Defendants' enforcement of federal regulations prohibiting commercial fishing in the Waters at Issue are void

14.     Defendants had no authority to prohibit commercial fishing in the Waters at Issue and thus doing so was "in excess of [their] statutory jurisdiction, authority, or limitations," 5 U.S.C. § 706(2)(C), and should be held unlawful and enjoined by this Court.

15.     Defendants' *ultra vires* prohibition of commercial fishing in the Waters at Issue not only disrupted the careful management of the Herring Fishery by CDFW and the California Fish and Game Commission ("CFGC"), it caused SFHA's members – small-scale independent fishermen, many of whom fish in husband-wife teams – significant financial losses.

16.     The Herring Fishery is a limited entry quota-fishery, meaning that only persons who hold a special permit can fish for herring in the Bay and the total amount of fish that all of those persons can collectively harvest from anywhere in the Bay during a particular season is limited to a set amount. That amount is set by the CFGC each year in advance of the season's opener after notice, comment, including public hearings, and the creation of an environmental document, as required under the California Environmental Quality Act ("CEQA"). The Herring Fishery, moreover, is tied to periodic spawns of the Bay's herring stock, which come into the Bay

---

**SECOND AMENDED COMPLAINT;** Case No. 13-1750-JST

several times over the course of each winter to spawn at varying locations throughout the Bay, including on many occasions, the Waters at Issue.

17.     Thus, when Defendants prevented Plaintiff's members from commercially fishing in Waters at Issue, it had the effect of substantially extending the length of each fishing season, and causing quotas to go unfilled. During both the 2011/12 and 2012/13 seasons, substantial spawns occurred in the Waters at Issue, but Defendants and their agents prevented SFHA members from harvesting the fish. This not only caused commercial herring fishermen and their buyers, including the membership of the SFHA, to suffer significant financial losses, it also disrupted the careful resource management strategy of the CDFW/CFGC and harmed the Bay's herring resource.

18.     The Waters at Issue include areas of the San Francisco Bay at which herring generally spawn soonest in the season; and the fish that spawn first in a season are generally the oldest, largest, and have the highest roe content.

19.     Thus, from a herring resource conservation perspective, the result of preventing the commercial harvest of herring in the Waters at Issue is to unnecessarily increase the fishing pressure on younger herring and more herring. This is in direct conflict with the CDFW/CFGC management goal of concentrating fishing pressure, as much as possible, on older, larger fish, so as to encourage and support the natural replenishment of the stock.

20.     In a meeting that occurred recently between Defendants and representatives of fishermen, Defendants conceded that the regulation that they were enforcing to prohibit commercial fishing in the Waters at Issue was enacted without the situation presented by the Herring Fishery and the GGNRA in mind. Defendants also made clear their decision to enforce this regulation to prohibit herring fishing in the Waters at Issue was not based on any determination that the fishery caused any type of problems, ecological or otherwise. Defendants, in fact, conceded that though the fishery has operated as long as the GGNRA has been in existence, the Defendants did not know enough about the fishery to determine whether or not it was a good or bad thing.

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

21.     The waters of San Francisco Bay, including the Waters at Issue, have been actively and lawfully fished since the mid-1800s. The current commercial herring roe fishery has operated in the San Francisco Bay since at least 1971. Since 1972, the fishery has been subject to the close regulation of the CDFW and the CFGC. Indeed, the Herring Fishery is often cited as one of the most successfully managed commercial fisheries in the country, if not the world, and is recognized as the last urban commercial fishery in the United States.

22.     The GGNRA was established in 1972 primarily on lands vacated by the U.S. military. The recreation area was established through what is known as the GGNRA's enabling act, 16 U.S.C. §§ 460bb *et seq*. This act makes clear that ***the jurisdiction of the NPS is limited to lands, waters, and the rights therein <u>acquired</u> by the Department of the Interior ("DOI")***. Section 4 of the GGNRA's enabling act, 16 U.S.C. § 460bb-3, states

> The Secretary shall administer the lands, waters and interests therein ***<u>acquired</u>*** for the recreation area . . .

(emphasis added).

23.     Section 3 of the GGNRA's enabling act, 16 U.S.C. § 460bb-2, further makes clear that the boundaries of the GGNRA define merely the area in which the DOI "***<u>may acquire</u>*** lands, improvements, waters or interests therein." (emphasis added). The boundaries do not define the area over which the Defendants have administrative jurisdiction. The DOI has to acquire the lands, waters and rights therein contained within the boundaries, first, before the Defendants have any jurisdiction over them. The map boundaries drawn by Congress do not equal jurisdiction; rather, they merely define an area in which the DOI is authorized to make acquisitions; and only after the DOI has acquired lands, waters, or interests therein does it have the administrative jurisdiction to enforce its regulations within them.

24.     In this context, the Defendants' recent enforcement actions, after over forty years during which the GGNRA and the Herring Fishery have existed side-by-side without issue, to prevent SFHA's members from commercially fishing in the Waters at Issue is *ultra vires* and illegal. The DOI never acquired rights over these waters that would give the NPS the authority to prohibit commercial fishing in them under Section 4 the Enabling Act. Prohibiting commercial

fishing within the Waters at Issue is not within the NPS' power; thus, its decision to do so was squarely "in excess of [its] statutory jurisdiction, authority, or limitations," in violation of the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(C).

25.     Furthermore, such actions are in direct violation of the express terms of the Enabling Act, including Section 4 thereof, 16 U.S.C. § 460bb-3.

26.     Accordingly, SFHA, on behalf of itself and its members, brings this action against Defendants under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 and under APA, 5 U.S.C. §§ 701, *et seq.*, for declaratory and permanent injunctive relief as requested herein.

## JURISDICTION, VENUE, & INTRADISTRICT ASSIGNMENT

27.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States.  Specifically, this action arises under 28 U.S.C. §§ 2201-22002 and the APA, 5 U.S.C. §§ 701-06.

28.     An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201 concerning whether Defendants have administrative jurisdiction and authority over the Waters at Issue; and this dispute is justiciable in character, and speedy relief is needed to preserve the right of Plaintiff's members. A declaratory judgment will terminate the uncertainty and controversy between the parties. A permanent injunction will protect Plaintiff after the final resolution of these proceedings.

29.     Final agency action exists that is subject to this Court's review under the APA, 5 U.S.C. § 704. Specifically, as described herein, Defendants enforced, in the Waters at Issue, federal regulations prohibiting commercial, acting directly and through their agents, which had the purpose and effect of preventing SFHA members from commercially fishing for herring Waters at Issue.

30.     This Court may grant declaratory and additional relief, including an injunction, pursuant to 28 U.S.C. §§ 2201 and 2202, and 5 U.S.C. §§ 702, 705, and 706.  This Court may allow SFHA to recover reasonable costs and attorneys' fees incurred in connection with this action pursuant to 28 U.S.C. § 2412.

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

31.     The United States has waived sovereign immunity under U.S.C. § 702 as to

Plaintiff's claims under both the APA and the Declaratory Judgment Act.

32.     Venue lies in this judicial district pursuant to 28 U.S.C § 1391(e), because a

substantial part of the events and/or omissions giving rise to the claims at issue in this action

occurred in this judicial district, and a substantial part of the property that is the subject of this

action is situated in this judicial district.

33.     Intradistrict assignment to the San Francisco Division is proper under Civil Local

Rule 3-2(c) because a substantial portion of the events and/or omissions giving rise to the claims

in this case occurred in San Francisco County.

## PARTIES

### I.     Plaintiff

34.     Plaintiff SFHA is a California non-profit, unincorporated association whose

membership consists of active San Francisco Bay commercial herring fishermen and buyers.

SFHA was formed to protect its members' access to the Herring Fishery and otherwise advocate

on behalf of its members' activities related to herring fishing.  The SFHA's membership is made

up by predominantly active commercial herring fishermen, all of whom are small independent

business owner/operators.  Many such fishermen, in fact, work together as husband and wife

teams on boats on which they work and sleep.

35.     SFHA brings this action on behalf of its members, who have been denied the right

and ability to harvest herring in the Waters at Issue by Defendants' *ultra vires* enforcement, in

these waters, of Defendants' regulation prohibiting commercial fishing and are otherwise

detrimentally affected by those actions.  SFHA has standing to pursue this action.  SFHA and its

individual members have suffered injury to concrete commercial interests in the Herring Fishery,

and face imminent continuing injury to those commercial interests, which injury has been caused

by Defendants' *ultra vires* enforcement, in these waters, of Defendants' regulation prohibiting

commercial fishing and acts of enforcement taken by Defendants and their agents against SFHA

members.  Declaring Defendants' actions unlawful and enjoining the *ultra vires* enforcement, in

these waters, of Defendants' regulation prohibiting commercial fishing would redress these

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

injuries. As SFHA's purpose is to protect its members' access to the Herring Fishery, the interests at stake in this action—the right to conduct commercial herring fishing in the Waters at Issue—are germane to the SFHA's purpose.

## II. Defendants

36. Defendant United States Department of the Interior ("DOI") is an Executive Branch department of the United States, an "agency" within the meaning of 5 U.S.C. § 701(b), charged with managing the public lands and resources in accordance and in compliance with federal laws and regulations.

37. Defendant Ryan Zinke is the Secretary of the DOI, an Executive Branch agency of the United States. She is named as a defendant in his official capacity.

38. Defendant United States National Park Service ("NPS") is an Executive Branch agency of the DOI. NPS is responsible for managing all national parks and recreation areas in the United States, including the GGNRA.

39. Defendant Michael Reynolds is the Director of NPS. He is named as a defendant in his official capacity.

40. Defendant Cicely Muldoon is the General Superintendent of the GGNRA, a national recreation area administered by the NPS. She is named as a defendant in her official capacity.

41. At all relevant times, each of the Defendants was an agent, employee, servant, partner, alter ego, and/or joint venturer of each of his/her co-Defendants in the acts and omissions that have caused the injuries to Plaintiff as alleged herein, and was at all times, acting within the course and scope of said agency, employment, service, partnership, conspiracy, alter ego status, and/or joint venture.

## FACTUAL ALLEGATIONS

42. The San Francisco Bay commercial herring fishery is one of the most highly regulated and successful commercial fisheries and stock management programs in the country. The Herring Fishery has been regulated and managed by the State of California since its inception in 1972. The State of California and fishery stakeholders have endorsed and used a broad variety

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

of regulatory measures to ensure the safe, environmentally sensitive, and efficient conduct of commercial fishing in the fishery. These measures include: conservative annual catch quotas from 0 to 15% of spawning population (significantly less than the entire population of herring); limited entry of vessels and qualified permittees; elimination of round haul nets in 1997/98 to become a gillnet-only fishery; adoption of low harvest rates to account for ecosystem needs and scientific uncertainty; reduction from two to one gillnet fished per permit; and the allowance for multiple permits on a single vessel to reduce fleet size. These and other management measures were used not because of overfishing or stock collapse, but to prevent the possibility of these dangers, to improve the economic efficiency of the fleet, and to reduce the "footprint" of the herring boats on the often-congested waters of the San Francisco Bay.

43.    While the season for the Herring Fishery technically lasts from either December or January through March, as a practical matter, when the fishery is allowed to progress in accordance with the CDFW/CFGC management, the quota is generally filled much earlier than March, and the number of days during which boats are actually on the water harvesting is limited to a small number of days surrounding the first handful of times per season that herring enter the Bay to spawn.

44.    This helps fulfill the CDFW/CFGC critical management goal of concentrating fishing effort as much as possible on older, larger fish: herring come into the Bay in successive waves during a season. Each wave, the fish are younger. Thus, allowing fishermen to fill the quota as soon as possible lessens the extent to which fishing pressure is directed towards later spawns and thus younger fish.

45.    During the Herring Fishery's over forty year existence, Defendants have been fully aware of the commercial herring fishing taking place in Waters at Issue, and have not enforced a prohibition on commercial herring fishing within the Waters at Issue prior to the 2011/12 season. Rather, the Herring Fishery has been extensively and consistently regulated according to California State law. The regulation of the Herring Fishery under California Law has permitted commercial fishing in the Waters at Issue for as long as the Herring Fishery has existed.

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

46.     In fact, Defendants *threatened* to prohibit commercial herring fishing in the Waters at Issue only once before its recent prohibitory actions.

47.     In the mid-1990s, Defendants threatened to prohibit herring fishermen from fishing in the vicinity of the finger piers of Fort Mason and Gas House Cove. In reaction to the threat, CDFW Senior Biologist Frank Henry met with then Superintendent of the GGNRA, Brian O'Neil. At the meeting, Senior Biologist Henry provided Superintendent O'Neil details concerning the nature of herring fishing in San Francisco Bay and reported to him that NPS rangers were targeting highly-regulated, licensed herring fishermen while turning a blind eye to frequent sport fishing violations from these same piers in question. In reaction, the NPS dropped its threat to prohibit herring fishing in the area.

48.     Accordingly, for approximately the next twenty years, commercial fishermen, including members of the SFHA, continued to commercially fish for herring in the Waters at Issue, as they had for the two decades before, and invested substantial sums in reliance upon their continued ability to do so.

49.     Despite the long history of responsible and uninterrupted commercial fishing in the Herring Fishery, the previous decision not to seek to prohibit commercial fishing in the Waters at Issue, and the clear lack of the legal authority to do so, in November 2011, Defendants provided a letter to commercial herring fishermen as part of their 2012 herring season regulatory packet provided by the CDFW, notifying them that commercial fishing would be prohibited in certain key portions of the Herring Fishery that occurred in Waters at Issue.  A true and correct copy of the November 2011 letter from the NPS is attached hereto as **Exhibit 1**.

50.     In the November 2011 letter, Defendants asserted that commercial fishing was prohibited "within the Recreation Area, which includes the waters within the boundary."  While referencing Title 36 Code of Federal Regulations, the letter made no reference to the GGNRA Enabling Act: neither generally nor to specifically Section 4, which defines Defendants' administrative jurisdiction, as to the GGNRA.

51.     This absence was made all the more notable by the letter's claim elsewhere that there existed "federal concurrent jurisdictional status" over the following tracts of land,

"including tideland and submerged tracts": Fort Mason, Alcatraz Island, and the Presidio (including Crissy Field, Fort Point, and Baker Beach), within the City and County of San Francisco; and Fort Baker, Fort Barry, Fort Cronkhite, and Point Bonita, within the County of Marin.

52.     In an "Attachment A" to the November 2011 letter, Defendants described the basis for this claimed jurisdiction. At the top of Attachment A, it reads: "Jurisdictional status of tideland and submerged tracts at Golden Gate National Recreation Area (GGNRA) within the City and County of San Francisco and County of Marin:" Below this header are then described the five areas, the "Extent of Ownership" claimed by the United States over each area and the purported "Legal Authority" on which those claims are respectively based. The five areas are identified as follows: "Presidio of San Francisco (San Francisco City and County)"; "Fort Mason (San Francisco City and County)"; "Alcatraz Island (San Francisco City and County)"; "Point Bonita to West End of Lime Point (Golden Gate Bride) (Marin County); and "Fort Back (East) (Marin County)."

53.     According to Attachment A, the United States claims ownership of "fee title to the tide and submerged lands 300 yards beyond low water" line of the Presidio, Fort Mason, and Alcatraz, on the basis of "Act of March 9, 1897, by the California Legislature" (Stat. 1897 Ch. 81) ("1897 Act"). The United States claims to "hold[] fee title to the tide and submerged lands out to 500 yards beyond low water" line of Fort Baker (East), on the basis of "Act of April 16, 1859, by the California Legislature" (Stat. 1859 Ch. 105) ("1859 Act"). The United States claims "a leasehold interest (in a strip of tide and submerged lands 1,000 feet wide extending waterward from the ordinary high water mark)" of the area extending Point Bonita to West End of Lime Point (Golden Gate Bride), on the basis of a "1987 California State Lands Commission lease" ("1987 Lease").

54.     A true and correct copy of the 1897 Act is attached hereto as **Exhibit 2**.  A true and correct copy of the 1859 Act is attached hereto as **Exhibit 3**.

55.     Section 4 of the GGNRA Enabling Act, 16 U.S.C. § 460bb-3, limits the NPS' jurisdiction to "the lands, waters and interests therein acquired." As a matter of fundamental

California Constitutional law, the United States did not acquire any interest in the waters above bottom lands described in the November 2011 Letter's Attachment A that would allow Defendants to exclude persons wishing to fish or navigate in those waters, through either the 1897 Act, the 1859 Act, nor the 1987 Lease.

56.     When the State of California grants property rights to bottom lands under navigable waters – as Defendants claim California did through the 1897 Act, the 1859 Act, and the 1987 Lease to the United States – the grant is subject to the public trust rights of others to fish and navigate upon those waters. *See* California Const. Art. X, §3; *People v. Cal. Fish Co.*, 166 Cal. 576 (1913); Cal. Public Resource Code §6009.1. The California State Legislature and State executive agencies lack the legal authority to include within a grant of property rights to bottom lands below navigable waters a right to exclude others that would interfere with their public trust rights to navigate or fish such waters, subject to certain very narrow exceptions not applicable here.  As a result, the State of California could not have granted Defendants the right to prohibit fishing in the Waters at Issue, and therefore Defendants have no right or authority to prohibit commercial fishermen from exercising their public trust rights to navigate and fish those waters.

57.     Moreover, any interests that the United States was granted through the 1897 Act were rescinded in 1953, through Stat. 1953 Ch. 521 ("1953 Repealing Act"), a true and correct copy of which is attached hereto **<u>Exhibit 4</u>**.  The 1953 Repealing Act states: "Chapter 81 of the Statutes of 1897 is hereby repealed." Accordingly, the 1897 Act cannot be used as a basis of the "Legal Authority" for anything.

58.     Finally, even if California constitutional law and the repealed character of the 1897 Act were ignored, there is nothing in the 1897 Act, the 1859 Act, or the 1987 Lease to which Defendants' could point as basis for the claimed authority to prohibit commercial fishing in the Waters at Issue. Neither the 1897 Act nor the 1859 Act say anything concerning property rights over the waters above the bottom lands they described. Both acts merely ceded authority to the United States to the bottom lands described in each in connection with the United States' use of the abutting terrestrial lands for military purposes. It is further relevant to note that the grant by the California Legislature through the 1897 Act was made explicitly revocable.

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

59.     The November 2011 letter was the first time since the mid-1990s that Defendants (or any federal agency, for that matter) expressed its intention to enforce a commercial fishing prohibition within Waters at Issue. Defendants backed away from earlier unlawful threats to prohibit fishing in these waters in the 1990s (none of which constituted a final agency action), leading fishermen including SFHA members to rely on a continuation of such a policy.

60.     In an effort to protect their rights to fish commercially in the Waters at Issue and achieve an amicable resolution of the issue, on October 12, 2012, the president of the SFHA, Matt Ryan, and others sent a letter to Defendants pointing out that Defendants had no right to restrict fishing or navigation in the Waters at Issue.

61.     In response to the SFHA's October 12, 2012 letter, in the fall of 2012, representatives of the fishermen and Defendants met to discuss Defendants' unlawful prohibition of commercial fishing in the Waters at Issue and to attempt to reach a resolution.  During the meetings and in subsequent telephone conversations between Defendants' representatives and the fishermen's representatives, representatives for the NPS consistently expressly stated its intentions to continue to enforce the prohibition on commercial fishing contained in 36 C.F.R. § 2.3(d)(4) in the Waters at Issue, and that fishermen, including SFHA members, would be subject to criminal penalties if they fished in these waters.

62.     On November 14, 2012, Defendants sent a second letter to commercial herring fisherman regarding its prohibition on commercial fishing in the Waters at Issue. A true and correct copy of the November 14, 2012 letter is attached hereto as **Exhibit 5**. In the letter, Defendants reiterated their position that commercial fishing in the Waters at Issue is prohibited pursuant to 36 C.F.R. § 2.3(d)(4) and expressly stated its intent to monitor commercial fishing activities and enforce the prohibition of commercial fishing within these waters. The letter stated *inter alia* in this regard:

> Because of reported confusion over the jurisdiction of the NPS in past years, it is the intention of the NPS to provide informational warnings to any commercial fisherman fishing within the boundaries of GGNRA this season. The NPS, however, ***reserves the right to enforce any violations of the prohibition of commercial fishing as set out in 36 CFR § 2.3(d)(4).***

(emphasis added).

**SECOND AMENDED COMPLAINT;** Case No. 13-1750-JST

63.     Defendants did not cite any new support in its November 14, 2013 letter for their claimed authority to prohibit commercial fishing in the Waters at Issue. Rather, the letter omitted the descriptions of the United States' claimed property rights to the bottom lands in question and the purported "Legal Authority" for such claims that were contained in the November 2011 letter and refuted in the fishermen's letter of October 12, 2012.

64.     In a meeting between SFHA representatives and Defendants' representatives that occurred during the 2012/13 season, Defendants confirmed their intention to continue prohibiting commercial fishing in the Waters at Issue as long as current laws and regulations remained in effect.

65.     When pushed in a phone call with counsel for SFHA, in or around December of 2012, an attorney for Defendants explicitly refused to state that a commercial fisherman who fished for herring in the Waters at Issue would not be cited. The attorney for Defendants understood that this information would be communicated to SFHA's membership; and the information was, in fact, communicated to SFHA's membership.  A citation for violating federal regulations prohibiting commercial fishing would have been criminal in nature and would have subjected SFHA members to arrest and potential imprisonment. Moreover, it could have resulted in their inability to participate in certain fisheries.

66.     Though the Defendants had sent the above referenced letter in November 2011, the NPS rangers at the GGNRA did not attain a vessel that they could use to enforce the prohibition until after the conclusion of the 2011/12 season.

67.     Upon attainment of the boat by NPS rangers at the GGNRA, between the 2011/12 season and 2012/13 season, the Defendants and their agents began actively enforcing the prohibition of commercial herring fishing in the Waters at Issue.

68.     During 2012/13 season, NPS rangers patrolled the waters and shoreline of the GGNRA, acting to prevent SFHA members from fishing the waters to fish. Prior to the 2012/2013 season the Defendants lacked a boat to patrol the waters and prevent SFHA members from fishing in the Waters at Issue. Therefore, the 2012/13 season was the first time that

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

Defendants through those patrols prevented SFHA members from harvesting herring in the Waters at Issue.

69. On or around January 11 to 14, 2013, the largest spawn thus far in the season occurred in an area of the Waters at Issue on the Marin-side of the Bay, inside of the Golden Gate Bridge, that is referred to by fishermen as "Yellow Bluff," with reference to the most prominent topographical feature of the neighboring shoreline.

70. During the entire time of the spawn, NPS rangers and CDFW wardens, acting as Defendants' agents, patrolled the waters and shoreline to ensure that no commercial harvesting of herring would occur in those waters.

71. When these rangers, wardens, and other agents of Defendants spotted commercial herring fishermen, including SFHA members, in herring fishing vessels—which by their distinctive flat bottomed shape and bow-positioned winch are easy to distinguish from other vessels—within the Waters at Issue, they confronted the fishermen with the purpose and effect of preventing them from fishing in the Waters at Issue.

72. For example, Ernie Koepf, an SFHA member at the relevant time, on or around the evening of January 13, 2013, while engaged in commercial fishing for herring, was surveying the spawn with the purpose of locating his nets where he had seen fish in an area of the Waters at Issue near the terrestrial border of the GGNRA and Sausalito known as the "Stink Plant."[2] As he was doing so, an NPS vessel, with two uniformed NPS rangers aboard, came from the direction of the GGNRA shoreline and approached Mr. Koepf's vessel. Upon reaching Mr. Koepf's vessel, the rangers indicated that they were law enforcement officers from the GGNRA and that they were asserting authority in the waters. The rangers informed Mr. Koepf as to him the boundary of the area in which he was not allowed to fish and that in which he was allowed to fish to the northeast, towards Sausalito. Mr. Koepf had received the above referenced November 14th letter from Defendants and was aware from *inter alia* that letter that Defendants had indicated their intention to enforce the prohibition of fishing in the Waters at Issue and their indication that a

_____

[2] This moniker is based on its location near a wastewater treatment plant.

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

1    fisherman violating the prohibition could be subject to criminal prosecution. Accordingly, Mr.

2    Koepf understood that if he disobeyed the rangers' instructions concerning the boundary and set

3    his nets on the side of the boundary that the rangers had told him was the demarcation of the

4    Waters at Issue, he would be subject to federal criminal prosecution. Thus, Mr. Koepf obeyed the

5    instructions left the Waters at Issue, ultimately setting his nets on the Sausalito side of the

6    indicated boundary, in a location at which there was significantly less spawning activity, rather

7    than risk criminal prosecution.

8           73.    Similar enforcement activities during the referenced spawn were experienced by

9    Matt Ryan, Dennis Deaver, and Nick Sorokoff, SFHA members at the relevant time. Each of

10   these fishermen, while engaged in commercial herring fishermen, separately entered the Waters at

11   Issue and were surveying the spawn in preparation for setting their nets. Each were approached

12   by CDFW wardens acting as agents of Defendants, and each was informed that they could not set

13   their nets in the waters. Each of these fishermen had also received the above referenced

14   November 14th letter from Defendants and understood, *inter alia* on the basis of that letter, that

15   they would be subject to criminal prosecution if they ignored the instructions. Thus, in response

16   to these instructions, each of these fishermen left the Waters at Issue and fished elsewhere, rather

17   than risking criminal prosecution.

18          74.    Domenic Papetti, an SFHA member during the relevant period, at or around the

19   time of the referenced January 11-14, 2013 spawn, while commercially fishing for herring, set his

20   nets within the Waters at Issue in the vicinity of the Stink Plant. After setting his nets and while

21   engaged in tending the nets, he was approached by CDFW wardens, who acting as agents of

22   Defendants, instructed him that commercial fishing in the area was prohibited and instructed him

23   to remove his nets. Mr. Papetti had also received the above referenced November 14th letter from

24   Defendants and understood, *inter alia* on the basis of that letter, that he would be subject to

25   criminal prosecution if he ignored the instructions. Thus, in response, Mr. Papetti complied with

26   the instructions, removed his nets, and re-set them outside of the Waters at Issue, rather than

27   risking criminal prosecution.

28

**SECOND AMENDED COMPLAINT;** Case No. 13-1750-JST

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

75.     As a direct effect of these and other actions that Defendants took to enforce regulations prohibiting commercial fishing in the Waters at Issue during this spawn, only a tiny portion of this spawn was harvested by herring fishermen. The total biomass of this spawn was 34,547 tons, making it approximately 2.5 times larger than any other spawn that occurred in the 2012/13 season. However, of this total, only 9.9 tons, or 0.03% was harvested. By way of comparison, 7.38% and 2.17% of the total biomass was harvested from the other two significant spawns that occurred that season. Furthermore, fishing activity was extended to the end of the season and, even with that extension, the quota for the season was not filled.

76.     At other times during the 2012/13 season and during the seasons that followed, Defendants have taken similar actions to enforce regulations prohibiting commercial fishing in the Waters at Issue, causing harm to SFHA members as well as the herring stock on which their livelihoods depend.

77.     SFHA members intend and desire to commercially fish for herring in the Waters at Issue, but, as a result of the threat of criminal prosecution if they do so, have not and will not do so, denying them the right to use and enjoy these navigable waters.

78.     Each of these enforcement actions taken by Defendants and their agents to enforce, in the Waters at Issue, federal regulations prohibiting commercial fishing—which have had the purpose and effect of preventing SFHA members from commercially fishing for herring in the Waters at Issue—constitute a final agency action within the meaning of the Administrative Procedure Act.

79.     Members of SFHA risked punishment by a fine, imprisonment, or both for violation of 36 C.F.R. § 2.3(d)(4) had they disobeyed the directives of Defendants (and their agents) and commercially harvested herring the Waters at Issue. *See* 36 C.F.R. § 1.3.  By preventing SFHA's members from commercially fishing in Waters at Issue through the express enforcement actions described above, and on pain of criminal sanctions, Defendants have caused SFHA's members to suffer significant financial losses, and SFHA's members will continue to suffer financial losses so long as Defendants enforce or cause others to enforce, in the Waters at Issue, federal regulations prohibiting commercial fishing.  Additionally, Defendants' enforcement

**SECOND AMENDED COMPLAINT;** Case No. 13-1750-JST

of such regulations in the Waters at Issue has hindered, and will hinder in the future unless enjoined, the efficient management of the Herring Fishery and has caused, and will cause in the future unless enjoined, harm to the Bay's herring stock, on which SFHA members depend for their livelihood.

80. The SFHA brings this action on behalf of itself and its members on the ground that the SFHA and its members have suffered and will continue to suffer injuries as a result of being denied the right and ability to harvest herring from the Waters at Issue. The SFHA has standing to pursue this action on behalf of its injured members because its members would have standing to sue in their own right, the interest at stake (SFHA's members' rights to fish in the Waters at Issue) are germane to the SFHA's purpose, and the claims asserted and relief requested do not require the participation of individual members in this action.

81. Defendants have repeatedly declared their intent to continue enforcing, in the Waters at Issue, regulations prohibiting commercial herring fishing and will do so unless enjoined by this Court.

82. While no statute or agency rule prescribes administrative action as a prerequisite to judicial review of the Defendants' unlawful application of its regulations outside the scope of its jurisdiction, members of the SFHA have, nonetheless, unsuccessfully attempted to seek a remedy by recourse to the agency prior to filing this action. Moreover, any further attempt at administrative recourse would be futile in this case, as Defendants have clearly announced and reaffirmed their intention to continue enforcing, in the Waters at Issue, regulations prohibiting commercial herring fishing, and Defendants have rejected the SFHA's attempts to challenge that policy.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### VIOLATION OF SECTION 10(e)(2)(C) OF THE APA
### (5 U.S.C. § 706(2)(C))

83. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

84.     The APA, 5 U.S.C. § 701, *et seq.*, entitles a party to seek judicial review of an agency action where a legal wrong is alleged and the party alleging the violation is adversely affected or aggrieved by the agency action.

85.     Pursuant to 5 U.S.C. § 706(2)(C), a reviewing court shall hold unlawful and set aside agency action found to be in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

86.     Defendants acted in violation of the APA by acting in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, when they took actions to enforce, in the Waters at Issue, federal regulations prohibiting commercial fishing, when they caused others to take such actions on their behalf, and when agents of Defendants took such actions on Defendants behalf.

87.     Defendants do not possess, in the Waters at Issue, the jurisdiction, authority, or right to apply federal regulations prohibiting commercial fishing.

88.     The GGNRA's enabling act limits the jurisdiction of Defendants to "the lands, waters and interests therein acquired for the recreation area." 6 U.S.C. § 460bb-3. Defendants have never acquired, and are not presently in possession, of any interest in the Waters at Issue that would give Defendants the right and/or authority to enforce regulations prohibiting persons, including members of the SFHA, from exercising their public trust rights to navigate and/or fish in such waters.

89.     Rather, to the extent that Defendants have acquired, and is presently in possession of, any interest in such waters or the bottom lands beneath them, such interest is subject to the public trust rights of persons, including members of the SFHA, to navigate and fish in such waters.

90.     Section 3 of the GGNRA's enabling act, 16 U.S.C. § 460bb-2, further makes clear that the boundaries of the GGNRA define merely the area in which Defendants "may acquire lands, improvements, waters or interests therein." The boundaries do not define the area over which Defendants have jurisdiction. Defendants must acquire the lands, waters and rights therein, first, before Defendants any jurisdiction over those lands and waters. The boundaries of the

GGNRA established by Congress do not equal acquisition; rather, they merely define the area in which Defendants are authorized to make such acquisitions.

91.     Thus, actions taken by Defendants to enforce federal regulations prohibiting commercial fishing in the Waters at Issue—including enforcement actions directly taken by Defendants, actions taken by Defendants to cause others to take such enforcement actions, and enforcement actions taken on behalf of Defendants by their agents—are in excess of Defendants' statutory jurisdiction, authority, and/or limitations, and/or are short of statutory right in violation of Section 10(e)(2)(C) of the APA.

92.     Additionally, pursuant to 36 C.F.R. § 1.2(a)(5), where the United States holds a less-than-fee interest in lands and waters within the National Park System, the regulations governing the National Park System only apply "to the extent necessary to fulfill the purpose of the National Park Service administered interest *and compatible with nonfederal interest*." (emphasis added). Defendants do not possess the authority to apply, in the Waters at Issue, regulations prohibiting commercial fishing, any property rights held by Defendants to Waters at Issue or the bottom lands underneath such waters, to the extent such rights exist at all, are subject to the public trust rights of SFHA members and others to fish and navigate those waters. Defendants' application of 36 C.F.R. § 2.3(d)(4) to the Waters at Issue to prohibit commercial fishing is incompatible with the public trust rights of SFHA members and others to fish and navigate those waters, and therefore is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

93.     Actions taken by Defendants, directly and by agents acting on Defendants' behalf, to enforce, in the Waters at Issue, federal regulations prohibiting commercial fishing constitute final agency action because it is the consummation of the agency's decision-making process, is not merely tentative or interlocutory in nature, is an action by which the rights and/or obligations of SFHA's members have been determined or from which legal consequences for SFHA members flow.

94.     Due to Defendants' knowing and conscious agency action in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, the SFHA and its members have

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

1    suffered legal wrongs and have been adversely affected and aggrieved within the meaning of 5

2    U.S.C. § 702. Denials of fishing access to the Waters at Issue has and will continue to cause

3    injury to the SFHA and its members by artificially extending herring fishing seasons, slowing

4    and/or reducing herring catches, crowding vessels onto other spawning areas, and preventing

5    catch quotas from being fulfilled. SFHA's members have suffered and will continue to suffer

6    significant financial losses as a result of Defendants' extra-legal prohibition of commercial

7    fishing in the Waters at Issue.

8        95.    Defendants' actions outside the scope of their jurisdiction and/or authority are

9    reviewable under the APA. 5 U.S.C. §§ 704, 706.

10                  **<u>SECOND CAUSE OF ACTION</u>**

11
**Declaratory Judgment that Defendants May Not Enforce NPS Regulations Prohibiting
Commercial Fishing in the Waters at Issue**
12                     **(28 U.S.C. §§ 2201-2202)**

13        96.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth

14    herein.

15        97.    Defendants have threatened members of SFHA with criminal prosecution if they

16    otherwise lawfully engage in commercial fishing in the Waters at Issue. Defendants' unlawful

17    actions have prevented and are preventing members of SFHA from commercially fishing in the

18    Waters at Issue.

19        98.    Defendants' actions in enforcing NPS regulations in the Waters at Issue, taken

20    both directly and through their agents, so as to prevent members of SFHA from commercial

21    fishing in the Waters at Issue violate the express terms of the Enabling Act, including its Section

22    4, 16 U.S.C. § 460bb-3, limiting Defendants' administrative authority and jurisdiction with the

23    boundaries of the GGNRA to only those waters and interests therein acquired within those

24    boundaries by the DOI for the recreation area.

25        99.    Defendants dispute that such actions are in violation of the Enabling Act.

26        1.    Plaintiff is entitled to an order pursuant to 26 U.S.C. §§ 2201-2202,

27    declaring and adjudging: that any attempts by Defendants, directly or through their agents, to

28    enforce NPS regulations, including 36 C.F.R. § 2.3(d)(4), in the Waters at Issue are unlawful in

---

**SECOND AMENDED COMPLAINT;** Case No. 13-1750-JST

violation the Enabling Act, including its Section 4, 16 U.S.C. § 460bb-3; Defendants have no right, authority, or jurisdiction to enforce or apply, directly or through their agents, NPS regulations, including 36 C.F.R. § 2.3(d)(4), in the Waters at Issue; and any attempts by Defendants, directly or through their agents, to enforce NPS regulation to the Waters at Issue, including 36 C.F.R. § 2.3(d)(4), are void as applied to SHFA members.

### THIRD CAUSE OF ACTION

**Permanent Injunction Enjoining Defendants From Enforcing NPS Regulations Prohibiting Commercial Fishing Against SFHA Members When They Commercially Fish In The Waters At Issue**
**(28 U.S.C. §§ 2201-2202)**

100.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

101.    Defendants have threatened members of SFHA with criminal prosecution if they otherwise lawfully engage in commercial fishing in the Waters at Issue. Defendants' unlawful actions have prevented and are preventing members of SFHA from commercially fishing in the Waters at Issue.

102.    Defendants' actions in enforcing NPS regulations in the Waters at Issue, taken both directly and through their agents, so as to prevent members of SFHA from commercial fishing in the Waters at Issue violate the express terms of the Enabling Act, including its Section 4, 16 U.S.C. § 460bb-3, limiting Defendants' administrative authority and jurisdiction with the boundaries of the GGNRA to only those waters and interests therein acquired within those boundaries by the DOI for the recreation area.

103.    Plaintiff is entitled to an order permanently restraining Defendants from interfering, or causing others to interfere with, SFHA's members' engagement in commercial fishing activities in the Waters at Issue.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendants and grant the following relief:

A.    A judicial declaration that:

2.     Any attempt by Defendants to apply or enforce, directly or through their agents, NPS regulations, including 36 C.F.R. § 2.3(d)(4), in the Waters at Issue is unlawful in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, in violation of the APA, 5 U.S.C. § 706(2)(C);

3.     Any attempt by Defendants to apply or enforce, directly or through their agents, NPS regulations, including 36 C.F.R. § 2.3(d)(4), in the Waters at Issue is unlawful in violation the Enabling Act, including its Section 4, 16 U.S.C. § 460bb-3;

4.     Any attempts by Defendants or their agents to enforce NPS regulation to the Waters at Issue, including 36 C.F.R. § 2.3(d)(4) are void as applied to SHFA members; and

5.     Defendants have no right, authority, or jurisdiction to enforce or apply, directly or through their agents, NPS regulations, including 36 C.F.R. § 2.3(d)(4), in the Waters at Issue.

B.     An order permanently enjoining Defendants, their agents, and all persons and entities in active concert or participation with Defendants from applying or enforcing NPS regulations, including 36 C.F.R. § 2.3(d)(4), in the Waters at Issue;

C.     Award Plaintiff its costs and reasonable attorneys' fees incurred in this action, including without limitation pursuant to 28 U.S.C. § 2412; and

D.     Grant such other or further relief as the Court deems just and proper.

DATED:  November 21, 2017                    **GROSS & KLEIN LLP**

*/S/ Stuart G. Gross*
Stuart G. Gross  (#251019)
sgross@grosskleinlaw.com
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 941111
t (415) 671-4628
f (415) 480-6688

*Counsel for Plaintiff*

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

**SECOND AMENDED COMPLAINT;** Case No. 13-1750-JST

# EXHIBIT 1



# United States Department of the Interior

NATIONAL PARK SERVICE
Golden Gate National Recreation Area
Fort Mason, San Francisco, California 94123

November, 2011

The law creating the National Park Service, Title 16 of the United States Code, § 1, requires the Park Service to conserve the scenery and natural and historic objects and wildlife of the parks, and at the same time to provide for public enjoyment of the parks in a manner that will leave them unimpaired for future generations.

In preparation of the upcoming Herring Season information notice, being prepared by your agency, the following applies with respect to jurisdictional status and commercial fishing within Golden Gate National Recreation Area (GGNRA). The federal concurrent jurisdictional status of lands, including tideland and submerged tracts, at GGNRA within the City and County of San Francisco include Fort Mason, Alcatraz Island and the Presidio, including Crissy Field, Fort Point and Baker Beach. Within the County of Marin concurrent jurisdiction includes: Fort Baker, Fort Barry, Fort Cronkhite, and Point Bonita.

The National Park Service has the responsibility of enforcing Title 36 Code of Federal Regulations (CFR) within the Recreation Area, which includes the waters within the boundary (36 CFR 1.2(3)). Per 36 CFR § 2.3 (d)(4), the following are prohibited: Commercial fishing, except where specifically authorized by Federal statutory law.

Within the concurrent jurisdiction sites the State of California, Department of Fish & Game has jurisdiction to enforce its laws. The National Park Service is holding its authorities in reserve at this time, should it decide the resource needs more protection beyond the State regulations; it retains its powers to enforce federal regulations. However, boating or the use of any vessel, as defined by Title 36 CFR §1.4, is prohibited in the Wildlife Protection Area portion, 100 yards, at Crissy Field, established in August, 2001 by the Superintendent in the Park compendium, under his authority from Title 36 CFR, § 1.5 (a)(1) Closures and public use limits and will remain in effect.

Notwithstanding the above, the GGNRA – out of our primary interest in protecting the resources – will rely on California Department of Fish and Game to respect National Park Service closures and enforce fisheries management.

## Attachment A

Jurisdictional status of tideland and submerged tracts at Golden Gate National Recreation Area (GGNRA) within the City and County of San Francisco and County of Marin:

**Presidio of San Francisco** (San Francisco City and County)
(including Crissy Field, Fort Point, and Baker Beach south to Lobos Creek)

Extent of Ownership:  The United States owns fee title to the tide and submerged lands 300 yards beyond low water. The United States exercises concurrent jurisdiction over this area.

Legal Authority:  Act of March 9, 1897, by California Legislature

**Fort Mason** (San Francisco City and County)

Extent of Ownership:  The United States owns fee title to the tide and submerged lands 300 yards beyond low water. The United States exercises concurrent jurisdiction over this area.

Legal Authority:  Act of March 9, 1897, by California Legislature

**Alcatraz Island** (San Francisco City and County)

Extent of Ownership:  The United States owns fee title to the tide and submerged lands 300 yards beyond low water. The United States exercises concurrent jurisdiction over this area.

Legal Authority:  Act of March 9, 1897, by California Legislature

**Point Bonita to West End of Lime Point (Golden Gate Bridge)** (Marin County)

Extent of Ownership:  The United States does not have fee ownership of these offshore lands. The 1987 lease from the California State Lands Commission provides the National Park Service with a leasehold interest (in a      strip of tide and submerged lands 1,000 feet wide extending waterward from the ordinary high water mark). The federal jurisdiction is proprietary.

Legal Authority:  1987 California State Lands Commission lease

**Fort Baker (East)** (Marin County)

Extent of Ownership:  The United States holds fee title to the tide and submerged lands out to 500 yards beyond low water. The United States exercises concurrent jurisdiction over this area.

Legal Authority:  Act of April 16, 1859, by California Legislature

# EXHIBIT 2

# CHAPTER LXXXI.

*An Act relinquishing to the United States of America the title of this State to certain lands.*

[Approved March 9, 1897.]

*The People of the State of California, represented in Senate and Assembly, do enact as follows:*

Relin-
quishing
title to
certain
State lands
to the
United
States.

SECTION 1. All the right and title of the State of California in and to the parcels of land extending from high-water mark out to three hundred yards beyond low-water mark, lying adjacent and contiguous to such lands of the United States in this State as lie upon tidal waters and are held, occupied, or reserved for military purposes or defense, lying adjacent

and contiguous to any island, the title to which is in the
United States, or which island is reserved by the United States
for any military or naval purposes or for defense, are hereby
granted, released, and ceded to the United States of America;
the boundaries of each parcel of land hereby granted, released,
and ceded to the United States to be a line along high-water
mark, a line three hundred yards out beyond low-water mark,
and lines at right angles to high-water mark at the points
where the boundaries of the adjacent lands of the United States
touch high-water mark; *provided*, that the title to each parcel
of land hereby granted, released, and ceded to the United States
shall be, and remain in the United States only so long as the
United States shall continue to hold and own the adjacent lands
now belonging to the United States; *and provided further*, that
this State reserves the right to serve and execute on said lands Right to
all civil process, not incompatible with this cession, and such serve civil
criminal process as may lawfully issue under the authority of process.
this State against any person or persons charged with crimes
committed without said lands.

Sec. 2.  This Act shall take effect immediately.

# EXHIBIT 3

CHAP. CCCV.—*An Act ceding Jurisdiction to the United States over Certain Lands.*

[Approved April 16, 1859.]

*The People of the State of California, represented in Senate and Assembly, do enact as follows :*

Jurisdiction.    SECTION 1.   Jurisdiction is hereby ceded to the United States over any such tract or tracts of land at or near Lime Point Bluff, on the northern side of the Harbor of San Francisco, as may be ac[re]quired by the United States for the purpose of military defence, and over all the contiguous shores, flats, and waters, within five hundred yards from low-water-mark ; *Provided,* that this State shall retain a concurrent jurisdiction with the United States, in and over the premises in question, so far as that all civil processes, not incompatible with the full constitutional authority of the United States, and criminal process as may lawfully issue under the authority of this State, against any person or persons charged with crimes committed without the premises aforesaid, may be executed therein, in the same way and manner as if jurisdiction had not been ceded as aforesaid, except so far as such process may affect the real or personal property of the United States.

Exonerated from taxes.    SEC. 2.   The premises over which jurisdiction is ceded by this Act, and all structures and other property thereon, belonging to the United States, shall be exonerated and discharged from all taxes and assessments which may be laid or imposed under the authority of this State, while said premises shall remain the property of the United States, and shall be used for the purposes intended by this Act.

Take effect.    SEC. 3.   This Act shall take effect from and after its passage.

————

CHAP. CCCVI.—*An Act for the Relief of T. W. Blake, William B. Olmstead, H. W. Anderson, C. R. Rice, and the Administrator of John Cole, deceased.*

[Approved April 16, 1859.]

*The People of the State of California, represented in Senate and Assembly, do enact as follows :*

$989 65.    SECTION 1.   The sum of nine hundred and eighty-nine dollars and sixty-five cents, of any money in the State treasury not otherwise appropriated, is hereby appropriated and set apart to pay F. W. Blake, William B. Olmstead, H. W. Anderson, C. R. Rice, and the Administrator of John Cole, deceased, sureties of C. F. Lynn, Ex-County Treasurer of Trinity County, said sum being amount of a just set-off which said sureties are entitled to

# EXHIBIT 4

## CHAPTER 521

*An act to repeal Chapter 81 of the Statutes of 1897, relating to the relinquishing to the United States of America the title of this State to certain lands.*

[Approved by Governor May 2, 1953  Filed with Secretary of State May 4, 1953 ]

In effect September 9 1953

*The people of the State of California do enact as follows:*

SECTION 1.   Chapter 81 of the Statutes of 1897 is hereby repealed. Repeal

# EXHIBIT 5



# United States Department of the Interior

NATIONAL PARK SERVICE
Golden Gate National Recreation Area
Fort Mason, San Francisco, California 94123

IN REPLY REFER TO:
A7217(GOGA-SUPT)

November 14, 2012

Attention: 2012/2013 Commercial Herring Fishermen

The Golden Gate National Recreation Area (GGNRA or Park) is governed, in part, by our park enabling legislation, and by the law creating the National Park Service (NPS), the NPS Organic Act, Title 16 of the United States Code § 1, that requires the NPS to conserve the scenery and natural and historic objects and wildlife of the parks, and at the same time to provide for public enjoyment of the parks in a manner that will leave them unimpaired for future generations. The NPS has the responsibility of enforcing the regulations in Title 36, Chapter 1, of the Code of Federal Regulations (36 CFR), which are applicable to all units of the National Park System, including the waters within the boundary of GGNRA (36 CFR § 1.2(3). Title 36 CFR § 2.3 (d)(4) prohibits commercial fishing in all national parks, except where specifically authorized by Federal statutory law. There is no federal statute that specially authorizes commercial fishing within GGNRA; therefore, commercial fishing, including commercial herring fishing, is prohibited within GGNRA.

The State of California, Department of Fish & Game (CDFG) has jurisdiction to enforce its laws in the waters within the boundary of GGNRA and in the past, CDFG has assisted the NPS in monitoring commercial fishing within the Park. During the upcoming herring season, the NPS will also be monitoring commercial fishing activities and enforce the prohibition of commercial fishing within the waters of GGNRA. (See attached map). Because of reported confusion over the jurisdiction of the NPS in past years, it is the intention of the NPS to provide informational warnings to any commercial fisherman fishing within the boundaries of GGNRA this season. The NPS, however, reserves the right to enforce any violations of the prohibition of commercial fishing as set out in 36 CFR § 2.3(d)(4).

Please note, boating or the use of any vessel, as defined by 36 CFR §1.4, is prohibited in the Crissy Field Wildlife Protection Area which encompasses the shoreline and beach north of Crissy Field that stretches east from the Torpedo Warf to approximately 700 feet east of the former Coast Guard station and all tide lands and submerged lands to 300 feet off shore. The Alcatraz Island shoreline and docks and all tide

lands and submerged lands to 300 feet off shore are also closed to boating or the use of any vessel, except to NPS contracted ferry and barge service.

Sincerely,

Frank Dean
General Superintendent

Enclosure
   Map of Marine Boundary of GGNRA

# Marine Boundary and Wildlife Protection Areas





Sausalito

Fort Baker

Marin
Headlands

Point
Bonita

Golden Gate
Bridge

Fort Point NHS

Fort Mason

Crissy Field
(300 ft of fshore)

Presidio

**Relevant GGNRA Offshore Boundary**
(1,320 ft offshore)

**Crissy Wildlife Protection Area**

**Alcatraz Wildlife Protection Area**
(Seasonal Closure: February 1 - June 30)

Alcatraz
(300 ft offshore)

0   0.25   0.5   0.75   1
Miles

Sources: NPS. USDA. Air photo from 2012.
Date: 11/14/2012