STUART G. GROSS (#251019)
sgross@grosskleinlaw.com
TIMOTHY S. KLINE (#319227)
tk@grosskleinlaw.com
**GROSS & KLEIN LLP**
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111
t (415) 671-4628
f (415) 480-6688

*Attorneys for Plaintiff*
*San Francisco Herring Association*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **SAN FRANCISCO HERRING ASSOCIATION**, <br><br> Plaintiff, <br><br> **v.** <br><br> **UNITED STATES DEPARTMENT OF THE INTERIOR**; **DAVID BERNHARDT**, in his official capacity as Secretary of the Interior; **UNITED STATES NATIONAL PARK SERVICE**; **DAVID VELA**, in his official capacity as Deputy Director of the National Park Service; and **CICELY MULDOON**, in her official capacity as General Superintendent of the Golden Gate National Recreation Area, <br><br> Defendants. | **Case No.  13-cv-01750-JST** <br><br> **SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

1
2
3
4
5
6

Plaintiff San Francisco Herring Association ("SFHA" or "Plaintiff") alleges as follows on information and belief, except where based on personal knowledge, against the United States Department of the Interior ("DOI"), David Bernhardt, in his official capacity as Secretary of the Interior; United State National Park Service ("NPS"), David Vela, in his official capacity as Deputy Director of the NPS; and Laura Joss, in her official capacity as General Superintendent of the Golden Gate National Recreation Area ("GGNRA") (collectively, "Defendants"):[1]

7

## INTRODUCTION

8
9
10
11

1.      This action challenges Defendants' unlawful denial of commercial herring fishermen access to fishing grounds in waters abutting the shoreline of the Golden Gate National Recreation Area (the "Waters At Issue"). Such waters, being part of the San Francisco Bay, are navigable.

12
13
14
15
16

2.      This action does not challenge the Defendants' authority to promulgate a regulation that prohibits commercials fishing, or the process by which such a regulation was promulgated. Rather, this action challenges the authority of Defendants to enforce, and to cause others to enforce on their behalf, that regulation in the Waters at Issue, on the ground that Defendants lack the authority to enforce *any* regulation in these waters.

17
18
19
20

3.      Defendants lack administrative jurisdiction and authority over the Waters at Issue because the conditions that Congress established for the Department of the Interior (the "DOI")— and, by extension, the NPS—to gain such administrative jurisdiction have not been satisfied, as to the Waters at Issue.

21
22
23
24

4.      The law by which Congress established the GGNRA, known as the "GGNRA Enabling Act, 16 U.S.C. §§ 460bb *et seq.,* specifically limits the administrative jurisdiction of the NPS, as to the GGNRA, to "the lands, waters and interests therein *acquired* [by the DOI] for the recreation area ." (emphasis added). 16 U.S.C. § 460bb-3.

25
26
27
28

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

---

[1] The originally named federal government officials are automatically substituted with the current officials in their positions pursuant to Fed. R. Civ. P. 25(d).

**SECOND AMENDED COMPLAINT;** Case No. 13-1750-JST

5.     The DOI has never acquired the Waters at Issue; nor has the DOI ever acquired any interest therein. Thus, under the plain text of the law by which Congress gave this federal agency the authority to apply and enforce its regulations as to the GGNRA, it cannot enforce or apply its regulation prohibiting commercial fishing in the Waters at Issue.

6.     Accordingly, while the federal regulation prohibiting commercial fishing in areas over which the NPS has administrative jurisdiction has been on the books since 1983, throughout 1980s, 1990s, and 2000s, Defendants did not enforce any prohibition commercial fishing by Plaintiff's members or others in the Waters at Issue.

7.     In the mid-1990s, Defendants tried to enforce the regulation prohibiting commercial fishing in the Waters at Issue. However, they abandoned the effort when the California Department of Fish and Wildlife ("CDFW") objected to the effort. The basis for the CDFW's objection was that the Defendants had no administrative authority over the Waters at Issue.

8.     This began to change in the 2011/12 season of San Francisco Bay's herring roe fishery (the "Herring Fishery").

9.     In November 2011, Defendants informed fishermen, many of whom have been commercially fishing for herring in the San Francisco Bay since the mid-1970s, that the NPS would prohibit fishing in the Waters at Issue. The letter by which this notice was provided, claimed the authority to do so—in implicit recognition of the acquisition prerequisite in the GGNRA Enabling Act—on the basis of certain instruments by which the federal government had gained real property interests in various submerged lands from the State of California. As a matter of California law, these grants of property interests from the State did not include an interest in the waters above that would entitle the holder to exclude others from fishing or navigating in them.

10.     The following season, the 2012/13 season, once NPS rangers at the GGNRA had acquired a vessel that could be used for enforcement, Defendants and their agents began actively excluding SFHA members from the Waters at Issue

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

11.     In or around January of 2013, when a large spawn of herring occurred in an area of the Waters at Issue in front of what is known to fishermen as the "Stink Plant," near the border of the Marin portion of the GGNRA and Sausalito, Defendants and their agents actively prevented fishermen, all members of the SFHA at the relevant time, from fishing in these waters, enforcing Defendants' regulation prohibiting commercial fishing in an area in which Congress never gave Defendants the administrative jurisdiction to enforce its regulations.

12.     Effectively, these actions are analogous to the NPS ticketing drivers on Market St. for breaking speed limits established under federal regulations.

13.     Defendants' enforcement and application, in the Waters at Issue, of NPS regulations prohibiting commercial fishing, including 36 CFR § 2.3(d)(4), violates the express terms of Section [4] of the GGNRA Enabling Act, 16 U.S.C. § 460bb-3, and Plaintiff is entitled to an order declaring and adjudging *inter alia* Defendants' enforcement of federal regulations prohibiting commercial fishing in the Waters at Issue are void

14.     Defendants had no authority to prohibit commercial fishing in the Waters at Issue and thus doing so was "in excess of [their] statutory jurisdiction, authority, or limitations," 5 U.S.C. § 706(2)(C), and should be held unlawful and enjoined by this Court.

15.     Defendants' *ultra vires* prohibition of commercial fishing in the Waters at Issue not only disrupted the careful management of the Herring Fishery by CDFW and the California Fish and Game Commission ("CFGC"), it caused SFHA's members – small-scale independent fishermen, many of whom fish in husband-wife teams – significant financial losses.

16.     The Herring Fishery is a limited entry quota-fishery, meaning that only persons who hold a special permit can fish for herring in the Bay and the total amount of fish that all of those persons can collectively harvest from anywhere in the Bay during a particular season is limited to a set amount. That amount is set by the CFGC each year in advance of the season's opener after notice, comment, including public hearings, and the creation of an environmental document, as required under the California Environmental Quality Act ("CEQA"). The Herring Fishery, moreover, is tied to periodic spawns of the Bay's herring stock, which come into the Bay

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

**SECOND AMENDED COMPLAINT;** Case No. 13-1750-JST

1    several times over the course of each winter to spawn at varying locations throughout the Bay,

2    including on many occasions, the Waters at Issue.

3          17.    Thus, when Defendants prevented Plaintiff's members from commercially fishing

4    in Waters at Issue, it had the effect of substantially extending the length of each fishing season,

5    and causing quotas to go unfilled. During both the 2011/12 and 2012/13 seasons, substantial

6    spawns occurred in the Waters at Issue, but Defendants and their agents prevented SFHA

7    members from harvesting the fish. This not only caused commercial herring fishermen and their

8    buyers, including the membership of the SFHA, to suffer significant financial losses, it also

9    disrupted the careful resource management strategy of the CDFW/CFGC and harmed the Bay's

10   herring resource.

11         18.    The Waters at Issue include areas of the San Francisco Bay at which herring

12   generally spawn soonest in the season; and the fish that spawn first in a season are generally the

13   oldest, largest, and have the highest roe content.

14         19.    Thus, from a herring resource conservation perspective, the result of preventing

15   the commercial harvest of herring in the Waters at Issue is to unnecessarily increase the fishing

16   pressure on younger herring and more herring. This is in direct conflict with the CDFW/CFGC

17   management goal of concentrating fishing pressure, as much as possible, on older, larger fish, so

18   as to encourage and support the natural replenishment of the stock.

19         20.    In a meeting that occurred recently between Defendants and representatives of

20   fishermen, Defendants conceded that the regulation that they were enforcing to prohibit

21   commercial fishing in the Waters at Issue was enacted without the situation presented by the

22   Herring Fishery and the GGNRA in mind. Defendants also made clear their decision to enforce

23   this regulation to prohibit herring fishing in the Waters at Issue was not based on any

24   determination that the fishery caused any type of problems, ecological or otherwise. Defendants,

25   in fact, conceded that though the fishery has operated as long as the GGNRA has been in

26   existence, the Defendants did not know enough about the fishery to determine whether or not it

27   was a good or bad thing.

28

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

**SECOND AMENDED COMPLAINT;** Case No. 13-1750-JST

4

21.     The waters of San Francisco Bay, including the Waters at Issue, have been actively and lawfully fished since the mid-1800s. The current commercial herring roe fishery has operated in the San Francisco Bay since at least 1971. Since 1972, the fishery has been subject to the close regulation of the CDFW and the CFGC. Indeed, the Herring Fishery is often cited as one of the most successfully managed commercial fisheries in the country, if not the world, and is recognized as the last urban commercial fishery in the United States.

22.     The GGNRA was established in 1972 primarily on lands vacated by the U.S. military. The recreation area was established through what is known as the GGNRA's enabling act, 16 U.S.C. §§ 460bb *et seq*. This act makes clear that ***the jurisdiction of the NPS is limited to lands, waters, and the rights therein <u>acquired</u> by the Department of the Interior ("DOI")***. Section 4 of the GGNRA's enabling act, 16 U.S.C. § 460bb-3, states

> The Secretary shall administer the lands, waters and interests therein ***<u>acquired</u>*** for the recreation area . . .

(emphasis added).

23.     Section 3 of the GGNRA's enabling act, 16 U.S.C. § 460bb-2, further makes clear that the boundaries of the GGNRA define merely the area in which the DOI "***<u>may acquire</u>*** lands, improvements, waters or interests therein." (emphasis added). The boundaries do not define the area over which the Defendants have administrative jurisdiction. The DOI has to acquire the lands, waters and rights therein contained within the boudaries, first, before the Defendants have any jurisdiction over them. The map boundaries drawn by Congress do not equal jurisdiction; rather, they merely define an area in which the DOI is authorized to make acquisitions; and only after the DOI has acquired lands, waters, or interests therein does it have the administrative jurisdiction to enforce its regulations within them.

24.     In this context, the Defendants' recent enforcement actions, after over forty years during which the GGNRA and the Herring Fishery have existed side-by-side without issue, to prevent SFHA's members from commercially fishing in the Waters at Issue is *ultra vires* and illegal. The DOI never acquired rights over these waters that would give the NPS the authority to prohibit commercial fishing in them under Section 4 the Enabling Act. Prohibiting commercial

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

1  fishing within the Waters at Issue is not within the NPS' power; thus, its decision to do so was

2  squarely "in excess of [its] statutory jurisdiction, authority, or limitations," in violation of the

3  Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(C).

4        25.     Furthermore, such actions are in direct violation of the express terms of the

5  Enabling Act, including Section 4 thereof, 16 U.S.C. § 460bb-3.

6        26.     Accordingly, SFHA, on behalf of itself and its members, brings this action against

7  Defendants under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 and under APA, 5

8  U.S.C. §§ 701, *et seq.*, for declaratory and permanent injunctive relief as requested herein.

9  **<u>JURISDICTION, VENUE, & INTRADISTRICT ASSIGNMENT</u>**

10        27.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this

11  action arises under the laws of the United States.  Specifically, this action arises under 28 U.S.C.

12  §§ 2201-22002 and the APA, 5 U.S.C. §§ 701-06.

13        28.     An actual controversy exists between the parties within the meaning of 28 U.S.C.

14  § 2201 concerning whether Defendants have administrative jurisdiction and authority over the

15  Waters at Issue; and this dispute is justiciable in character, and speedy relief is needed to preserve

16  the right of Plaintiff's members. A declaratory judgment will terminate the uncertainty and

17  controversy between the parties. A permanent injunction will protect Plaintiff after the final

18  resolution of these proceedings.

19        29.     Final agency action exists that is subject to this Court's review under the APA, 5

20  U.S.C. § 704. Specifically, as described herein, Defendants enforced, in the Waters at Issue,

21  federal regulations prohibiting commercial, acting directly and through their agents, which had

22  the purpose and effect of preventing SFHA members from commercially fishing for herring

23  Waters at Issue.

24        30.     This Court may grant declaratory and additional relief, including an injunction,

25  pursuant to 28 U.S.C. §§ 2201 and 2202, and 5 U.S.C. §§ 702, 705, and 706.  This Court may

26  allow SFHA to recover reasonable costs and attorneys' fees incurred in connection with this

27  action pursuant to 28 U.S.C. § 2412.

28

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

31.     The United States has waived sovereign immunity under U.S.C. § 702 as to Plaintiff's claims under both the APA and the Declaratory Judgment Act.

32.     Venue lies in this judicial district pursuant to 28 U.S.C § 1391(e), because a substantial part of the events and/or omissions giving rise to the claims at issue in this action occurred in this judicial district, and a substantial part of the property that is the subject of this action is situated in this judicial district.

33.     Intradistrict assignment to the San Francisco Division is proper under Civil Local Rule 3-2(c) because a substantial portion of the events and/or omissions giving rise to the claims in this case occurred in San Francisco County.

## PARTIES

**I.**     **Plaintiff**

34.     Plaintiff SFHA is a California non-profit, unincorporated association whose membership consists of active San Francisco Bay commercial herring fishermen and buyers. SFHA was formed to protect its members' access to the Herring Fishery and otherwise advocate on behalf of its members' activities related to herring fishing.  The SFHA's membership is made up by predominantly active commercial herring fishermen, all of whom are small independent business owner/operators.  Many such fishermen, in fact, work together as husband and wife teams on boats on which they work and sleep.

35.     SFHA brings this action on behalf of its members, who have been denied the right and ability to harvest herring in the Waters at Issue by Defendants' *ultra vires* enforcement, in these waters, of Defendants' regulation prohibiting commercial fishing and are otherwise detrimentally affected by those actions.  SFHA has standing to pursue this action.  SFHA and its individual members have suffered injury to concrete commercial interests in the Herring Fishery, and face imminent continuing injury to those commercial interests, which injury has been caused by Defendants' *ultra vires* enforcement, in these waters, of Defendants' regulation prohibiting commercial fishing and acts of enforcement taken by Defendants and their agents against SFHA members.  Declaring Defendants' actions unlawful and enjoining the *ultra vires* enforcement, in these waters, of Defendants' regulation prohibiting commercial fishing would redress these

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

injuries.  As SFHA's purpose is to protect its members' access to the Herring Fishery, the interests at stake in this action—the right to conduct commercial herring fishing in the Waters at Issue—are germane to the SFHA's purpose.

**II.     Defendants**

36.     Defendant United States Department of the Interior ("DOI") is an Executive Branch department of the United States, an "agency" within the meaning of 5 U.S.C. § 701(b), charged with managing the public lands and resources in accordance and in compliance with federal laws and regulations.

37.     Defendant David Bernhart is the Secretary of the DOI, an Executive Branch agency of the United States.  She is named as a defendant in his official capacity.

38.     Defendant United States National Park Service ("NPS") is an Executive Branch agency of the DOI.  NPS is responsible for managing all national parks and recreation areas in the United States, including the GGNRA.

39.     Defendant David Vela is the Deputy Director of NPS and is exercising the authority of the Director of NPS.  He is named as a defendant in his official capacity.

40.     Defendant Laura Joss is the General Superintendent of the GGNRA, a national recreation area administered by the NPS.  She is named as a defendant in her official capacity.

41.     At all relevant times, each of the Defendants was an agent, employee, servant, partner, alter ego, and/or joint venturer of each of his/her co-Defendants in the acts and omissions that have caused the injuries to Plaintiff as alleged herein, and was at all times, acting within the course and scope of said agency, employment, service, partnership, conspiracy, alter ego status, and/or joint venture.

## FACTUAL ALLEGATIONS

42.     The San Francisco Bay commercial herring fishery is one of the most highly regulated and successful commercial fisheries and stock management programs in the country. The Herring Fishery has been regulated and managed by the State of California since its inception in 1972.  The State of California and fishery stakeholders have endorsed and used a broad variety of regulatory measures to ensure the safe, environmentally sensitive, and efficient conduct of

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

**SECOND AMENDED COMPLAINT;** Case No. 13-1750-JST

commercial fishing in the fishery. These measures include: conservative annual catch quotas from 0 to 15% of spawning population (significantly less than the entire population of herring); limited entry of vessels and qualified permittees; elimination of round haul nets in 1997/98 to become a gillnet-only fishery; adoption of low harvest rates to account for ecosystem needs and scientific uncertainty; reduction from two to one gillnet fished per permit; and the allowance for multiple permits on a single vessel to reduce fleet size. These and other management measures were used not because of overfishing or stock collapse, but to prevent the possibility of these dangers, to improve the economic efficiency of the fleet, and to reduce the "footprint" of the herring boats on the often-congested waters of the San Francisco Bay.

43.    While the season for the Herring Fishery technically lasts from either December or January through March, as a practical matter, when the fishery is allowed to progress in accordance with the CDFW/CFGC management, the quota is generally filled much earlier than March, and the number of days during which boats are actually on the water harvesting is limited to a small number of days surrounding the first handful of times per season that herring enter the Bay to spawn.

44.    This helps fulfill the CDFW/CFGC critical management goal of concentrating fishing effort as much as possible on older, larger fish: herring come into the Bay in successive waves during a season. Each wave, the fish are younger. Thus, allowing fishermen to fill the quota as soon as possible lessens the extent to which fishing pressure is directed towards later spawns and thus younger fish.

45.    During the Herring Fishery's over forty year existence, Defendants have been fully aware of the commercial herring fishing taking place in Waters at Issue, and have not enforced a prohibition on commercial herring fishing within the Waters at Issue prior to the 2011/12 season. Rather, the Herring Fishery has been extensively and consistently regulated according to California State law. The regulation of the Herring Fishery under California Law has permitted commercial fishing in the Waters at Issue for as long as the Herring Fishery has existed.

46.    In fact, Defendants *threatened* to prohibit commercial herring fishing in the Waters at Issue only once before its recent prohibitory actions.

SECOND AMENDED COMPLAINT; Case No. 13-1750-JST

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

47.     In the mid-1990s, Defendants threatened to prohibit herring fishermen from fishing in the vicinity of the finger piers of Fort Mason and Gas House Cove. In reaction to the threat, CDFW Senior Biologist Frank Henry met with then Superintendent of the GGNRA, Brian O'Neil. At the meeting, Senior Biologist Henry provided Superintendent O'Neil details concerning the nature of herring fishing in San Francisco Bay and reported to him that NPS rangers were targeting highly-regulated, licensed herring fishermen while turning a blind eye to frequent sport fishing violations from these same piers in question. In reaction, the NPS dropped its threat to prohibit herring fishing in the area.

48.     Accordingly, for approximately the next twenty years, commercial fishermen, including members of the SFHA, continued to commercially fish for herring in the Waters at Issue, as they had for the two decades before, and invested substantial sums in reliance upon their continued ability to do so.

49.     Despite the long history of responsible and uninterrupted commercial fishing in the Herring Fishery, the previous decision not to seek to prohibit commercial fishing in the Waters at Issue, and the clear lack of the legal authority to do so, in November 2011, Defendants provided a letter to commercial herring fishermen as part of their 2012 herring season regulatory packet provided by the CDFW, notifying them that commercial fishing would be prohibited in certain key portions of the Herring Fishery that occurred in Waters at Issue.  A true and correct copy of the November 2011 letter from the NPS is attached hereto as **Exhibit 1**.

50.     In the November 2011 letter, Defendants asserted that commercial fishing was prohibited "within the Recreation Area, which includes the waters within the boundary."  While referencing Title 36 Code of Federal Regulations, the letter made no reference to the GGNRA Enabling Act: neither generally nor to specificallySection 4, which defines Defendants' administrative jurisdiction, as to the GGNRA.

51.     This absence was made all the more notable by the letter's claim elsewhere that there existed "federal concurrent jurisdictional status" over the following tracts of land, "including tideland and submerged tracts": Fort Mason, Alcatraz Island, and the Presidio (including Crissy Field, Fort Point, and Baker Beach), within the City and County of San

SECOND AMENDED COMPLAINT; Case No. 13-1750-JST

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

Francisco; and Fort Baker, Fort Barry, Fort Cronkhite, and Point Bonita, within the County of Marin.

52.     In an "Attachment A" to the November 2011 letter, Defendants described the basis for this claimed jurisdiction. At the top of Attachment A, it reads: "Jurisdictional status of tideland and submerged tracts at Golden Gate National Recreation Area (GGNRA) within the City and County of San Francisco and County of Marin:" Below this header are then described the five areas, the "Extent of Ownership" claimed by the United States over each area and the purported "Legal Authority" on which those claims are respectively based. The five areas are identified as follows: "Presidio of San Francisco (San Francisco City and County)";  "Fort Mason (San Francisco City and County)"; "Alcatraz Island (San Francisco City and County)"; "Point Bonita to West End of Lime Point (Golden Gate Bride) (Marin County); and "Fort Back (East) (Marin County)."

53.     According to Attachment A, the United States claims ownership of "fee title to the tide and submerged lands 300 yards beyond low water" line of the Presidio, Fort Mason, and Alcatraz, on the basis of "Act of March 9, 1897, by the California Legislature" (Stat. 1897 Ch. 81) ("1897 Act"). The United States claims to "hold[] fee title to the tide and submerged lands out to 500 yards beyond low water" line of Fort Baker (East), on the basis of  "Act of April 16, 1859, by the California Legislature" (Stat. 1859 Ch. 105) ("1859 Act"). The United States claims "a leasehold interest (in a strip of tide and submerged lands 1,000 feet wide extending waterward from the ordinary high water mark)" of the area extending Point Bonita to West End of Lime Point (Golden Gate Bride), on the basis of a "1987 California State Lands Commission lease" ("1987 Lease").

54.     A true and correct copy of the 1897 Act is attached hereto as **Exhibit 2**.  A true and correct copy of the 1859 Act is attached hereto as **Exhibit 3**.

55.     Section 4 of the GGNRA Enabling Act, 16 U.S.C. § 460bb-3, limits the NPS' jurisdiction to "the lands, waters and interests therein acquired." As a matter of fundamental California Constitutional law, the United States did not acquire any interest in the waters above bottom lands described in the November 2011 Letter's Attachment A that would allow

1  Defendants to exclude persons wishing to fish or navigate in those waters, through either the 1897

2  Act, the 1859 Act, nor the 1987 Lease.

3      56.    When the State of California grants property rights to bottom lands under

4  navigable waters – as Defendants claim California did through the 1897 Act, the 1859 Act, and

5  the 1987 Lease to the United States – the grant is subject to the public trust rights of others to fish

6  and navigate upon those waters. *See* California Const. Art. X, §3; *People v. Cal. Fish Co.*, 166

7  Cal. 576 (1913); Cal. Public Resource Code §6009.1. The California State Legislature and State

8  executive agencies lack the legal authority to include within a grant of property rights to bottom

9  lands below navigable waters a right to exclude others that would interfere with their public trust

10  rights to navigate or fish such waters, subject to certain very narrow exceptions not applicable

11  here.  As a result, the State of California could not have granted Defendants the right to prohibit

12  fishing in the Waters at Issue, and therefore Defendants have no right or authority to prohibit

13  commercial fishermen from exercising their public trust rights to navigate and fish those waters.

14      57.    Moreover, any interests that the United States was granted through the 1897 Act

15  were rescinded in 1953, through Stat. 1953 Ch. 521 ("1953 Repealing Act"), a true and correct

16  copy of which is attached hereto **Exhibit 4**.  The 1953 Repealing Act states: "Chapter 81 of the

17  Statutes of 1897 is hereby repealed." Accordingly, the 1897 Act cannot be used as a basis of the

18  "Legal Authority" for anything.

19      58.    Finally, even if California constitutional law and the repealed character of the 1897

20  Act were ignored, there is nothing in the 1897 Act, the 1859 Act, or the 1987 Lease to which

21  Defendants' could point as basis for the claimed authority to prohibit commercial fishing in the

22  Waters at Issue. Neither the 1897 Act nor the 1859 Act say anything concerning property rights

23  over the waters above the bottom lands they described. Both acts merely ceded authority to the

24  United States to the bottom lands described in each in connection with the United States' use of

25  the abutting terrestrial lands for military purposes. It is further relevant to note that the grant by

26  the California Legislature through the 1897 Act was made explicitly revocable.

27      59.    The November 2011 letter was the first time since the mid-1990s that Defendants

28  (or any federal agency, for that matter) expressed its intention to enforce a commercial fishing

**SECOND AMENDED COMPLAINT;** Case No. 13-1750-JST

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

1    prohibition within Waters at Issue. Defendants backed away from earlier unlawful threats to

2    prohibit fishing in these waters in the 1990s (none of which constituted a final agency action),

3    leading fishermen including SFHA members to rely on a continuation of such a policy.

4          60.    In an effort to protect their rights to fish commercially in the Waters at Issue and

5    achieve an amicable resolution of the issue, on October 12, 2012, the president of the SFHA, Matt

6    Ryan, and others sent a letter to Defendants pointing out that Defendants had no right to restrict

7    fishing or navigation in the Waters at Issue.

8          61.    In response to the SFHA's October 12, 2012 letter, in the fall of 2012,

9    representatives of the fishermen and Defendants met to discuss Defendants' unlawful prohibition

10   of commercial fishing in the Waters at Issue and to attempt to reach a resolution.  During the

11   meetings and in subsequent telephone conversations between Defendants' representatives and the

12   fishermen's representatives, representatives for the NPS consistently expressly stated its

13   intentions to continue to enforce the prohibition on commercial fishing contained in 36 C.F.R. §

14   2.3(d)(4) in the Waters at Issue, and that fishermen, including SFHA members, would be subject

15   to criminal penalties if they fished in these waters.

16         62.    On November 14, 2012, Defendants sent a second letter to commercial herring

17   fisherman regarding its prohibition on commercial fishing in the Waters at Issue. A true and

18   correct copy of the November 14, 2012 letter is attached hereto as **Exhibit 5**. In the letter,

19   Defendants reiterated their position that commercial fishing in the Waters at Issue is prohibited

20   pursuant to 36 C.F.R. § 2.3(d)(4) and expressly stated its intent to monitor commercial fishing

21   activities and enforce the prohibition of commercial fishing within these waters. The letter stated

22   *inter alia* in this regard:

23         Because of reported confusion over the jurisdiction of the NPS in past years, it is
           the intention of the NPS to provide informational warnings to any commercial
24         fisherman fishing within the boundaries of GGNRA this season. The NPS,
           however, ***reserves the right to enforce any violations of the prohibition of***
25         ***commercial fishing as set out in 36 CFR § 2.3(d)(4).***

26   (emphasis added).

27         63.    Defendants did not cite any new support in its November 14, 2013 letter for their

28   claimed authority to prohibit commercial fishing in the Waters at Issue. Rather, the letter omitted

**SECOND AMENDED COMPLAINT;** Case No. 13-1750-JST

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

1    the descriptions of the United States' claimed property rights to the bottom lands in question and

2    the purported "Legal Authority" for such claims that were contained in the November 2011 letter

3    and refuted in the fishermen's letter of October 12, 2012.

4            64.     In a meeting between SFHA representatives and Defendants' representatives that

5    occurred during the 2012/13 season, Defendants confirmed their intention to continue prohibiting

6    commercial fishing in the Waters at Issue as long as current laws and regulations remained in

7    effect.

8            65.     When pushed in a phone call with counsel for SFHA, in or around December of

9    2012, an attorney for Defendants explicitly refused to state that a commercial fisherman who

10   fished for herring in the Waters at Issue would not be cited. The attorney for Defendants

11   understood that this information would be communicated to SFHA's membership; and the

12   information was, in fact, communicated to SFHA's membership.  A citation for violating federal

13   regulations prohibiting commercial fishing would have been criminal in nature and would have

14   subjected SFHA members to arrest and potential imprisonment. Moreover, it could have resulted

15   in their inability to participate in certain fisheries.

16           66.     Though the Defendants had sent the above referenced letter in November 2011, the

17   NPS rangers at the GGNRA did not attain a vessel that they could use to enforce the prohibition

18   until after the conclusion of the 2011/12 season.

19           67.     Upon attainment of the boat by NPS rangers at the GGNRA, between the 2011/12

20   season and 2012/13 season, the Defendants and their agents began actively enforcing the

21   prohibition of commercial herring fishing in the Waters at Issue.

22           68.     During 2012/13 season, NPS rangers patrolled the waters and shoreline of the

23   GGNRA, acting to prevent SFHA members from fishing the waters to fish. Prior to the

24   2012/2013 season the Defendants lacked a boat to patrol the waters and prevent SFHA members

25   from fishing in the Waters at Issue. Therefore, the 2012/13 season was the first time that

26   Defendants through those patrols prevented SFHA members from harvesting herring in the

27   Waters at Issue.

28

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

69.     On or around January 11 to 14, 2013, the largest spawn thus far in the season occurred in an area of the Waters at Issue on the Marin-side of the Bay, inside of the Golden Gate Bridge, that is referred to by fishermen as "Yellow Bluff," with reference to the most prominent topographical feature of the neighboring shoreline.

70.     During the entire time of the spawn, NPS rangers and CDFW wardens, acting as Defendants' agents, patrolled the waters and shoreline to ensure that no commercial harvesting of herring would occur in those waters.

71.     When these rangers, wardens, and other agents of Defendants spotted commercial herring fishermen, including SFHA members, in herring fishing vessels—which by their distinctive flat bottomed shape and bow-positioned winch are easy to distinguish from other vessels—within the Waters at Issue, they confronted the fishermen with the purpose and effect of preventing them from fishing in the Waters at Issue.

72.     For example, Ernie Koepf, an SFHA member at the relevant time, on or around the evening of January 13, 2013, while engaged in commercial fishing for herring, was surveying the spawn with the purpose of locating his nets where he had seen fish in an area of the Waters at Issue near the terrestrial border of the GGNRA and Sausalito know as the "Stink Plant."[2]  As he was doing so, an NPS vessel, with two uniformed NPS rangers aboard, came from the direction of the GGNRA shoreline and approached Mr. Koepf's vessel. Upon reaching Mr. Koepf's vessel, the rangers indicated that they were law enforcement officers from the GGNRA and that they were asserting authority in the waters. The rangers informed Mr. Koepf as to the boundary of the area in which he was not allowed to fish and that in which he was allowed to fish to the northeast, towards Sausalito. Mr. Koepf had received the above referenced November 14th letter from Defendants and was aware from *inter alia* that letter that Defendants had indicated their intention to enforce the prohibition of fishing in the Waters at Issue and their indication that a fisherman violating the prohibition could be subject to criminal prosecution. Accordingly, Mr. Koepf understood that if he disobeyed the rangers' instructions concerning the boundary and set his nets

_____

[2] This moniker is based on its location near a wastewater treatment plant.

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

1   on the side of the boundary that the rangers had told him was the demarcation of the Waters at

2   Issue, he would be subject to federal criminal prosecution. Thus, Mr. Koepf obeyed the

3   instructions left the Waters at Issue, ultimately setting his nets on the Sausalito side of the

4   indicated boundary, in a location at which there was significantly less spawning activity, rather

5   than risk criminal prosecution.

6          73.     Similar enforcement activities during the referenced spawn were experienced by

7   Matt Ryan, Dennis Deaver, and Nick Sorokoff, SFHA members at the relevant time. Each of

8   these fishermen, while engaged in commercial herring fishermen, separately entered the Waters at

9   Issue and were surveying the spawn in preparation for setting their nets. Each were approached

10  by CDFW wardens acting as agents of Defendants, and each was informed that they could not set

11  their nets in the waters. Each of these fishermen had also received the above referenced

12  November 14th letter from Defendants and understood, *inter alia* on the basis of that letter, that

13  they would be subject to criminal prosecution if they ignored the instructions. Thus, in response

14  to these instructions, each of these fishermen left the Waters at Issue and fished elsewhere, rather

15  than risking criminal prosecution.

16         74.     Domenic Papetti, an SFHA member during the relevant period, at or around the

17  time of the referenced January 11-14, 2013 spawn, while commercially fishing for herring, set his

18  nets within the Waters at Issue in the vicinity of the Stink Plant. After setting his nets and while

19  engaged in tending the nets, he was approached by CDFW wardens, who acting as agents of

20  Defendants, instructed him that commercial fishing in the area was prohibited and instructed him

21  to remove his nets. Mr. Papetti had also received the above referenced November 14th letter from

22  Defendants and understood, *inter alia* on the basis of that letter, that he would be subject to

23  criminal prosecution if he ignored the instructions. Thus, in response, Mr. Papetti complied with

24  the instructions, removed his nets, and re-set them outside of the Waters at Issue, rather than

25  risking criminal prosecution.

26         75.     As a direct effect of these and other actions that Defendants took to enforce

27  regulations prohibiting commercial fishing  in the Waters at Issue during this spawn, only a tiny

28  portion of this spawn was harvested by herring fishermen. The total biomass of this spawn was

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

**SECOND AMENDED COMPLAINT;** Case No. 13-1750-JST

34,547 tons, making it approximately 2.5 times larger than any other spawn that occurred in the 2012/13 season. However, of this total, only 9.9 tons, or 0.03% was harvested. By way of comparison, 7.38% and 2.17% of the total biomass was harvested from the other two significant spawns that occurred that season. Furthermore, fishing activity was extended to the end of the season and, even with that extension, the quota for the season was not filled.

76.     At other times during the 2012/13 season and during the seasons that followed, Defendants have taken similar actions to enforce regulations prohibiting commercial fishing in the Waters at Issue, causing harm to SFHA members as well as the herring stock on which their livelihoods depend.

77.     SFHA members intend and desire to commercially fish for herring in the Waters at Issue, but, as a result of the threat of criminal prosecution if they do so, have not and will not do so, denying them the right to use and enjoy these navigable waters.

78.     Each of these enforcement actions taken by Defendants and their agents to enforce, in the Waters at Issue, federal regulations prohibiting commercial fishing—which have had the purpose and effect of preventing SFHA members from commercially fishing for herring in the Waters at Issue—constitute a final agency action within the meaning of the Administrative Procedure Act.

79.     Members of SFHA risked punishment by a fine, imprisonment, or both for violation of 36 C.F.R. § 2.3(d)(4) had they disobeyed the directives of Defendants (and their agents) and commercially harvested herring the Waters at Issue.  *See* 36 C.F.R. § 1.3.  By preventing SFHA's members from commercially fishing in Waters at Issue through the express enforcement actions described above, and on pain of criminal sanctions, Defendants have caused SFHA's members to suffer significant financial losses, and SFHA's members will continue to suffer financial losses so long as Defendants enforce or cause others to enforce, in the Waters at Issue, federal regulations prohibiting commercial fishing.  Additionally, Defendants' enforcement of such regulations in the Waters at Issue has hindered, and will hinder in the future unless enjoined, the efficient management of the Herring Fishery and has caused, and will cause in the

**SECOND AMENDED COMPLAINT;** Case No. 13-1750-JST

1    future unless enjoined, harm to the Bay's herring stock, on which SFHA members depend for

2    their livelihood..

3        80.    The SFHA brings this action on behalf of itself and its members on the ground that

4    the SFHA and its members have suffered and will continue to suffer injuries as a result of being

5    denied the right and ability to harvest herring from the Waters at Issue. The SFHA has standing to

6    pursue this action on behalf of its injured members because its members would have standing to

7    sue in their own right, the interest at stake (SFHA's members' rights to fish in the Waters at

8    Issue) are germane to the SFHA's purpose, and the claims asserted and relief requested do not

9    require the participation of individual members in this action.

10       81.    Defendants have repeatedly declared their intent to continue enforcing, in the

11   Waters at Issue, regulations prohibiting commercial herring fishing and will do so unless enjoined

12   by this Court.

13       82.    While no statute or agency rule prescribes administrative action as a prerequisite to

14   judicial review of the Defendants' unlawful application of its regulations outside the scope of its

15   jurisdiction, members of the SFHA have, nonetheless, unsuccessfully attempted to seek a remedy

16   by recourse to the agency prior to filing this action.  Moreover, any further attempt at

17   administrative recourse would be futile in this case, as Defendants have clearly announced and

18   reaffirmed their intention to continue enforcing, in the Waters at Issue, regulations prohibiting

19   commercial herring fishing, and Defendants have rejected the SFHA's attempts to challenge that

20   policy.

## CAUSE OF ACTION

### VIOLATION OF SECTION 10(e)(2)(C) OF THE APA
### (5 U.S.C. § 706(2)(C))

23       83.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth

24   herein.

25       84.    The APA, 5 U.S.C. § 701, *et seq.*, entitles a party to seek judicial review of an

26   agency action where a legal wrong is alleged and the party alleging the violation is adversely

27   affected or aggrieved by the agency action.

28

---

**SECOND AMENDED COMPLAINT;** Case No. 13-1750-JST

18

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

85.     Pursuant to 5 U.S.C. § 706(2)(C), a reviewing court shall hold unlawful and set aside agency action found to be in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

86.     Defendants acted in violation of the APA by acting in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, when they took actions to enforce, in the Waters at Issue, federal regulations prohibiting commercial fishing, when they caused others to take such actions on their behalf, and when agents of Defendants took such actions on Defendants behalf.

87.     Defendants do not possess, in the Waters at Issue, the jurisdiction, authority, or right to apply federal regulations prohibiting commercial fishing.

88.     The GGNRA's enabling act limits the jurisdiction of Defendants to "the lands, waters and interests therein acquired for the recreation area." 6 U.S.C. § 460bb-3. Defendants have never acquired, and are not presently in possession, of any interest in the Waters at Issue that would give Defendants the right and/or authority to enforce regulations prohibiting persons, including members of the SFHA, from exercising their public trust rights to navigate and/or fish in such waters.

89.     Rather, to the extent that Defendants have acquired, and is presently in possession of, any interest in such waters or the bottom lands beneath them, such interest is subject to the public trust rights of persons, including members of the SFHA, to navigate and fish in such waters.

90.     Section 3 of the GGNRA's enabling act, 16 U.S.C. § 460bb-2, further makes clear that the boundaries of the GGNRA define merely the area in which Defendants "may acquire lands, improvements, waters or interests therein." The boundaries do not define the area over which Defendants have jurisdiction. Defendants must acquire the lands, waters and rights therein, first, before Defendants any jurisdiction over those lands and waters. The boundaries of the GGNRA established by Congress do not equal acquisition; rather, they merely define the area in which Defendants are authorized to make such acquisitions.

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

91.     Thus, actions taken by Defendants to enforce federal regulations prohibiting commercial fishing in the Waters at Issue—including enforcement actions directly taken by Defendants, actions taken by Defendants to cause others to take such enforcement actions, and enforcement actions taken on behalf of Defendants by their agents—are in excess of Defendants' statutory jurisdiction, authority, and/or limitations, and/or are short of statutory right in violation of Section 10(e)(2)(C) of the APA.

92.     Additionally, pursuant to 36 C.F.R. § 1.2(a)(5), where the United States holds a less-than-fee interest in lands and waters within the National Park System, the regulations governing the National Park System only apply "to the extent necessary to fulfill the purpose of the National Park Service administered interest ***and compatible with nonfederal interest***." (emphasis added). Defendants do not possess the authority to apply, in the Waters at Issue, regulations prohibiting commercial fishing, any property rights held by Defendants to Waters at Issue or the bottom lands underneath such waters, to the extent such rights exist at all, are subject to the public trust rights of SFHA members and others to fish and navigate those waters. Defendants' application of 36 C.F.R. § 2.3(d)(4) to the Waters at Issue to prohibit commercial fishing is incompatible with the public trust rights of SFHA members and others to fish and navigate those waters, and therefore is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

93.     Actions taken by Defendants, directly and by agents acting on Defendants' behalf, to enforce, in the Waters at Issue, federal regulations prohibiting commercial fishing constitute final agency action because it is the consummation of the agency's decision-making process, is not merely tentative or interlocutory in nature, is an action by which the rights and/or obligations of SFHA's members have been determined or from which legal consequences for SFHA members flow.

94.     Due to Defendants' knowing and conscious agency action in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, the SFHA and its members have suffered legal wrongs and have been adversely affected and aggrieved within the meaning of 5 U.S.C. § 702.  Denials of fishing access to the Waters at Issue has and will continue to cause

SECOND AMENDED COMPLAINT; Case No. 13-1750-JST

1   injury to the SFHA and its members by artificially extending herring fishing seasons, slowing

2   and/or reducing herring catches, crowding vessels onto other spawning areas, and preventing

3   catch quotas from being fulfilled.  SFHA's members have suffered and will continue to suffer

4   significant financial losses as a result of Defendants' extra-legal prohibition of commercial

5   fishing in the Waters at Issue.

6        95.    Defendants' actions outside the scope of their jurisdiction and/or authority are

7   reviewable under the APA.  5 U.S.C. §§ 704, 706.

8                           **PRAYER FOR RELIEF**

9       WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of

10   Plaintiff and against Defendants and grant the following relief:

11       A.    A judicial declaration that:

12           1.    Any attempt by Defendants to apply or enforce, directly or through their

13   agents, NPS regulations, including 36 C.F.R. § 2.3(d)(4), in the Waters at Issue is unlawful in

14   excess of statutory jurisdiction, authority, or limitations, or short of statutory right, in violation of

15   the APA, 5 U.S.C. § 706(2)(C);

16           2.    Any attempt by Defendants to apply or enforce, directly or through their

17   agents, NPS regulations, including 36 C.F.R. § 2.3(d)(4), in the Waters at Issue is unlawful in

18   violation the Enabling Act, including its Section 4, 16 U.S.C. § 460bb-3;

19           3.    Any attempts by Defendants or their agents to enforce NPS regulation to

20   the Waters at Issue, including 36 C.F.R. § 2.3(d)(4) are void as applied to SHFA members; and

21           4.    Defendants have no right, authority, or jurisdiction to enforce or apply,

22   directly or through their agents, NPS regulations, including 36 C.F.R. § 2.3(d)(4), in the Waters at

23   Issue.

24       B.    An order permanently enjoining Defendants, their agents, and all persons and

25   entities in active concert or participation with Defendants from applying or enforcing NPS

26   regulations, including 36 C.F.R. § 2.3(d)(4), in the Waters at Issue;

27       C.    Award Plaintiff its costs and reasonable attorneys' fees incurred in this action,

28   including without limitation pursuant to 28 U.S.C. § 2412; and

SECOND AMENDED COMPLAINT; Case No. 13-1750-JST

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

1    D.    Grant such other or further relief as the Court deems just and proper.

2

3  DATED: March 6, 2020                          **GROSS &KLEIN LLP**

4

5                                                */S/ Stuart G. Gross*
                                                 Stuart G. Gross  (#251019)
6                                                sgross@grosskleinlaw.com
                                                 The Embarcadero
7                                                Pier 9, Suite 100
                                                 San Francisco, CA 941111
8                                                t (415) 671-4628
                                                 f (415) 480-6688
9

10                                               *Counsel for Plaintiff*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SECOND AMENDED COMPLAINT;** Case No. 13-1750-JST

# EXHIBIT 1



# United States Department of the Interior

NATIONAL PARK SERVICE
Golden Gate National Recreation Area
Fort Mason, San Francisco, California 94123

IN REPLY REFER TO:
W30(GOGA-VRPCR)

November, 2011

The law creating the National Park Service, Title 16 of the United States Code, § 1, requires the Park Service to conserve the scenery and natural and historic objects and wildlife of the parks, and at the same time to provide for public enjoyment of the parks in a manner that will leave them unimpaired for future generations.

In preparation of the upcoming Herring Season information notice, being prepared by your agency, the following applies with respect to jurisdictional status and commercial fishing within Golden Gate National Recreation Area (GGNRA). The federal concurrent jurisdictional status of lands, including tideland and submerged tracts, at GGNRA within the City and County of San Francisco include Fort Mason, Alcatraz Island and the Presidio, including Crissy Field, Fort Point and Baker Beach. Within the County of Marin concurrent jurisdiction includes: Fort Baker, Fort Barry, Fort Cronkhite, and Point Bonita.

The National Park Service has the responsibility of enforcing Title 36 Code of Federal Regulations (CFR) within the Recreation Area, which includes the waters within the boundary (36 CFR 1.2(3)). Per 36 CFR § 2.3 (d)(4), the following are prohibited: Commercial fishing, except where specifically authorized by Federal statutory law.

Within the concurrent jurisdiction sites the State of California, Department of Fish & Game has jurisdiction to enforce its laws. The National Park Service is holding its authorities in reserve at this time, should it decide the resource needs more protection beyond the State regulations; it retains its powers to enforce federal regulations. However, boating or the use of any vessel, as defined by Title 36 CFR §1.4, is prohibited in the Wildlife Protection Area portion, 100 yards, at Crissy Field, established in August, 2001 by the Superintendent in the Park compendium, under his authority from Title 36 CFR, § 1.5 (a)(1) Closures and public use limits and will remain in effect.

Notwithstanding the above, the GGNRA – out of our primary interest in protecting the resources – will rely on California Department of Fish and Game to respect National Park Service closures and enforce fisheries management.

## Attachment A

Jurisdictional status of tideland and submerged tracts at Golden Gate National Recreation Area (GGNRA) within the City and County of San Francisco and County of Marin:

**Presidio of San Francisco** (San Francisco City and County)
(including Crissy Field, Fort Point, and Baker Beach south to Lobos Creek)

    Extent of Ownership:  The United States owns fee title to the tide and submerged lands 300 yards beyond low water.  The United States exercises concurrent jurisdiction over this area.

        Legal Authority:                 Act of March 9, 1897, by California Legislature


**Fort Mason** (San Francisco City and County)

    Extent of Ownership:  The United States owns fee title to the tide and submerged lands 300 yards beyond low water.  The United States exercises concurrent jurisdiction over this area.

        Legal Authority:                 Act of March 9, 1897, by California Legislature


**Alcatraz Island** (San Francisco City and County)

    Extent of Ownership:  The United States owns fee title to the tide and submerged lands 300 yards beyond low water.  The United States exercises concurrent jurisdiction over this area.

        Legal Authority:                 Act of March 9, 1897, by California Legislature


**Point Bonita to West End of Lime Point (Golden Gate Bridge)** (Marin County)

    Extent of Ownership:  The United States does not have fee ownership of these offshore lands.  The 1987 lease from the California State Lands Commission provides the National Park Service with a leasehold interest (in a      strip of tide and submerged lands 1,000 feet wide extending waterward from the ordinary high water mark).  The federal jurisdiction is proprietary.

        Legal Authority:                 1987 California State Lands Commission lease


**Fort Baker (East)** (Marin County)

    Extent of Ownership:  The United States holds fee title to the tide and submerged lands out to 500 yards beyond low water.  The United States exercises concurrent jurisdiction over this area.

        Legal Authority:                 Act of April 16, 1859, by California Legislature

# EXHIBIT 2

# CHAPTER LXXXI.

*An Act relinquishing to the United States of America the title of this State to certain lands.*

[Approved March 9, 1897.]

*The People of the State of California, represented in Senate and Assembly, do enact as follows:*

Relin-
quishing
title to
certain
State lands
to the
United
States.

SECTION 1. All the right and title of the State of California in and to the parcels of land extending from high-water mark out to three hundred yards beyond low-water mark, lying adjacent and contiguous to such lands of the United States in this State as lie upon tidal waters and are held, occupied, or reserved for military purposes or defense, lying adjacent

and contiguous to any island, the title to which is in the
United States, or which island is reserved by the United States
for any military or naval purposes or for defense, are hereby
granted, released, and ceded to the United States of America;
the boundaries of each parcel of land hereby granted, released,
and ceded to the United States to be a line along high-water
mark, a line three hundred yards out beyond low-water mark,
and lines at right angles to high-water mark at the points
where the boundaries of the adjacent lands of the United States
touch high-water mark; *provided*, that the title to each parcel
of land hereby granted, released, and ceded to the United States
shall be, and remain in the United States only so long as the
United States shall continue to hold and own the adjacent lands
now belonging to the United States; *and provided further*, that
this State reserves the right to serve and execute on said lands Right to
all civil process, not incompatible with this cession, and such serve civil process.
criminal process as may lawfully issue under the authority of
this State against any person or persons charged with crimes
committed without said lands.

SEC. 2. This Act shall take effect immediately.

# EXHIBIT 3

334                                    STATUTES OF CALIFORNIA,

### CHAP. CCCV.—An Act ceding Jurisdiction to the United States over Certain Lands.

[Approved April 16, 1859.]

*The People of the State of California, represented in Senate and Assembly, do enact as follows :*

Jurisdiction.    SECTION 1.   Jurisdiction is hereby ceded to the United States over any such tract or tracts of land at or near Lime Point Bluff, on the northern side of the Harbor of San Francisco, as may be ac[re]quired by the United States for the purpose of military defence, and over all the contiguous shores, flats, and waters, within five hundred yards from low-water-mark; *Provided,* that this State shall retain a concurrent jurisdiction with the United States, in and over the premises in question, so far as that all civil processes, not incompatible with the full constitutional authority of the United States, and criminal process as may lawfully issue under the authority of this State, against any person or persons charged with crimes committed without the premises aforesaid, may be executed therein, in the same way and manner as if jurisdiction had not been ceded as aforesaid, except so far as such process may affect the real or personal property of the United States.

Exonerated from taxes.    SEC. 2.   The premises over which jurisdiction is ceded by this Act, and all structures and other property thereon, belonging to the United States, shall be exonerated and discharged from all taxes and assessments which may be laid or imposed under the authority of this State, while said premises shall remain the property of the United States, and shall be used for the purposes intended by this Act.

Take effect.    SEC. 3.   This Act shall take effect from and after its passage.

----

### CHAP. CCCVI.—An Act for the Relief of T. W. Blake, William B. Olmstead, H. W. Anderson, C. R. Rice, and the Administrator of John Cole, deceased.

[Approved April 16, 1859.]

*The People of the State of California, represented in Senate and Assembly, do enact as follows :*

$989 65.    SECTION 1.   The sum of nine hundred and eighty-nine dollars and sixty-five cents, of any money in the State treasury not otherwise appropriated, is hereby appropriated and set apart to pay F. W. Blake, William B. Olmstead, H. W. Anderson, C. R. Rice, and the Administrator of John Cole, deceased, sureties of C. F. Lynn, Ex-County Treasurer of Trinity County, said sum being amount of a just set-off which said sureties are entitled to

# EXHIBIT 4

Ch. 521]  1953 REGULAR SESSION  1761

## CHAPTER 521

*An act to repeal Chapter 81 of the Statutes of 1897, relating to the relinquishing to the United States of America the title of this State to certain lands.*

[Approved by Governor May 2, 1953 Filed with
Secretary of State May 4, 1953 ]

In effect
September 9
1953

*The people of the State of California do enact as follows:*

SECTION 1.  Chapter 81 of the Statutes of 1897 is hereby repealed. Repeal

# EXHIBIT 5



# United States Department of the Interior

NATIONAL PARK SERVICE
Golden Gate National Recreation Area
Fort Mason, San Francisco, California 94123

IN REPLY REFER TO:
A7217(GOGA-SUPT)

November 14, 2012

Attention:  2012/2013 Commercial Herring Fishermen

The Golden Gate National Recreation Area (GGNRA or Park) is governed, in part, by our park enabling legislation, and by the law creating the National Park Service (NPS), the NPS Organic Act, Title 16 of the United States Code § 1, that requires the NPS to conserve the scenery and natural and historic objects and wildlife of the parks, and at the same time to provide for public enjoyment of the parks in a manner that will leave them unimpaired for future generations.  The NPS has the responsibility of enforcing the regulations in Title 36, Chapter 1, of the Code of Federal Regulations (36 CFR), which are applicable to all units of the National Park System, including the waters within the boundary of GGNRA (36 CFR § 1.2(3).  Title 36 CFR § 2.3 (d)(4) prohibits commercial fishing in all national parks, except where specifically authorized by Federal statutory law.  There is no federal statute that specially authorizes commercial fishing within GGNRA; therefore, commercial fishing, including commercial herring fishing, is prohibited within GGNRA.

The State of California, Department of Fish & Game (CDFG) has jurisdiction to enforce its laws in the waters within the boundary of GGNRA and in the past, CDFG has assisted the NPS in monitoring commercial fishing within the Park.  During the upcoming herring season, the NPS will also be monitoring commercial fishing activities and enforce the prohibition of commercial fishing within the waters of GGNRA.  (See attached map).  Because of reported confusion over the jurisdiction of the NPS in past years, it is the intention of the NPS to provide informational warnings to any commercial fisherman fishing within the boundaries of GGNRA this season.  The NPS, however, reserves the right to enforce any violations of the prohibition of commercial fishing as set out in 36 CFR § 2.3(d)(4).

Please note, boating or the use of any vessel, as defined by 36 CFR §1.4, is prohibited in the Crissy Field Wildlife Protection Area which encompasses the shoreline and beach north of Crissy Field that stretches east from the Torpedo Warf to approximately 700 feet east of the former Coast Guard station and all tide lands and submerged lands to 300 feet off shore.  The Alcatraz Island shoreline and docks and all tide

lands and submerged lands to 300 feet off shore are also closed to boating or the use of any vessel, except to NPS contracted ferry and barge service.

Sincerely,

Frank Dean
General Superintendent

Enclosure
    Map of Marine Boundary of GGNRA

# Marine Boundary and Wildlife Protection Areas

National Park Service
U. S. Department of the Interior

Golden Gate National Recreation Area

Relevant GGNRA Offshore Boundary
(1,320 ft offshore)

Crissy Wildlife Protection Area

Alcatraz Wildlife Protection Area
(Seasonal Closure: February 1 - June 30)

Sausalito

Fort Baker

Marin Headlands

Alcatraz
(300 ft offshore)

Fort Point NHS

Golden Gate Bridge

Fort Mason

Point Bonita

Crissy Field
(300 ft offshore)

Presidio

0   0.25   0.5   0.75   1
Miles

Sources: NPS. USDA. Air photo from 2012.
Date: 11/14/2012