DAVID L. ANDERSON
United States Attorney
SARA WINSLOW (DCBN 457643)
Chief, Civil Division
MICHAEL T. PYLE (CSBN 172954)
Assistant United States Attorney
150 Almaden Boulevard, Suite 900
San Jose, California 95113
Tel: (408) 535-5087 / Fax: (408) 535-5081
Email: michael.t.pyle@usdoj.gov

JEAN E. WILLIAMS
Deputy Assistant Attorney General
DAVID W. GEHLERT
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
999 18th Street, South Terrace, Suite 370
Denver, CO 80202
Tel: (303) 844-1386 / Fax: (303) 844-1350
Email: david.gehlert@usdoj.gov

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO HERRING ASSOCIATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No.   13-cv-1750-JST |
| | ) |
| UNITED STATES DEPARTMENT OF THE INTERIOR: DAVID BERNHARDT, in his official capacity as Secretary of the Interior: UNITED STATES NATIONAL PARK SERVICE; DAVID VELA, in his official capacity as Director of the National Park Service: and LAURA JOSS, in her official capacity as General Superintendent of the Golden Gate National Recreation Area, | ) **DEFENDANTS' REPLY IN SUPPORT** ) **OF MOTION FOR SUMMARY** ) **JUDGMENT** ) ) Date: Dec. 9, 2020 ) Time: 2:00 p.m. ) Hon. Jon S. Tigar ) Courtroom: 6, 2nd Floor ) ) ) |
| Defendants. | ) ) ) |

# **TABLE OF CONTENTS**

Introduction ................................................................................................................... 1

Argument ........................................................................................................................ 2

I.    PLAINTIFF HAS NOT SHOWN THAT THIS COURT ERRED IN
CONCLUDING THAT THE NPS HAS AUTHORITY TO ADMINISTER THE
NAVIGABLE WATERS OF THE GGNRA ..................................................... 2

    A.    The Text of the GGNRA Act Does Not Support Plaintiff's Claim that the
NPS has to "own" the navigable waters within the Park ......................... 3

        1.    The Act Does Not Contemplate the NPS Acquiring Navigable Water
from California ............................................................................ 3

        2.    Boilerplate language should not be used to defeat the purpose for
which navigable waters of San Francisco Bay were included in the
Park. ........................................................................................... 6

    B.    The Legislative History Provides No Evidence That Congress Intended to
Condition the NPS's Authority on the Acquisition of an Interest in Water. .......... 9

    C.    The Court Correctly Found the 1976 Amendment Applies. ................................ 11

        1.    The plain terms of the Organic Act and related authorities
demonstrate that there is no conflict between their terms and the
GGNRA Act ............................................................................... 11

        2.    The Court properly applied canons of statutory construction ................. 12

    D.    The NPS's Interpretation of its Own Authorities Is Entitled to Deference. ......... 15

II.    THE UNITED STATES HAS LEGISLATIVE JURISDICTION OVER WATERS
WITHIN THE BOUNDARY OF THE GGNRA. .......................................... 17

III.    THE UNITED STATES OWNS SUBMERGED LANDS WITHIN THE
BOUNDARY OF THE GGNRA. ................................................................. 18

Conclusion .................................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arizona v. California*,
  373 U.S. 546 (1963)....................................................................................................... 6, 20

*Fed. Power Comm'n v. Niagara Mohawk Power Corp.*,
  347 U.S. 239 (1954)............................................................................................................ 5

*Franchise Tax Bd. of Cal. v. U.S. Postal Serv.*,
  467 U.S. 512 (1984).......................................................................................................... 12

*Gibbons v. Ogden*,
  22 U.S. 1 (1824).................................................................................................................. 2

*Gilman v. City of Philadelphia*,
  3 Wall. 713 (1865)............................................................................................................. 5

*Ill. Cent. R.R. Co. v. Illinois*,
  146 U.S. 387 (1892)........................................................................................................... 4

*Kleppe v. New Mexico*,
  426 U.S. 529 (1976)...................................................................................................... 6, 19

*Momeni v. Chertoff*,
  521 F.3d 1094 (9th Cir. 2008) ........................................................................................ 14

*Oakland v. Oakland Water Front Co.*,
  118 Cal. 160 (1897) .......................................................................................................... 4

*Organized Fisherman of Fla. v. Hodel*,
  775 F.2d 1544 (11th Cir. 1985) ........................................................................................ 8

*People v. Cal. Fish Co.*,
  166 Cal. 576 (1913) ....................................................................................................... 5, 6

*PPL Mont., LLC v. Montana*,
  565 U.S. 576 (2012).......................................................................................................... 5

*Related Indus., Inc. v. United States*,
  2 Cl. Ct. 517 (1983) ....................................................................................................... 7, 8

*San Francisco Herring Ass'n v. Dep't of the Interior*,
  946 F.3d 564 (9th Cir. 2019) ........................................................................................... 2

*Standard Oil Co. v. People of the State of California*,
  291 U.S. 242 (1934)........................................................................................................ 17

*Sturgeon v. Frost*,
  ___ U.S. ___, 139 S. Ct. 1066 (2019)............................................................................. 5

*Sweet v. City of Syracuse*,
  129 N.Y. 316, 27 N.E. 1081 (1891).................................................................................. 5

*Swords to Plowshares v. Kemp*,
  423 F. Supp. 2d 1031 (N.D. Cal. 2005) ............................................................. 16, 17

*United States v. 11.037 Acres of Land*,
  685 F.Supp 214 (N.D. Cal. 1988) ............................................................................ 20

*United States v. 32.42 Acres of Land*,
  683 F.3d 1030 (9th Cir. 2012) ........................................................................... 5, 20

*United States v. Armstrong*,
  186 F.3d 1055 (8th Cir. 1999) ...................................................................... 8, 18, 19

*United States v. Brown*,
  552 F.2d 817 (8th Cir. 1977) .................................................................................. 8, 19

*United States v. Chandler-Dunbar Water Power Co.*,
  229 U.S. 53 (1913) ...................................................................................................... 5

*United States v. Hells Canyon Guide Services, Inc.*,
  660 F.2d 735 (9th Cir. 1981) .................................................................................... 19

*United States v. Leal-Vega*,
  680 F.3d 1160 (9th Cir. 2012) .................................................................................. 12

*United States v. Nader*,
  542 F.3d 713 (9th Cir. 2008) .................................................................................... 12

*United States v. Rands*,
  389 U.S. 121 (1967) ..................................................................................................... 5

*Utah Div. of State Lands v. United States*,
  482 U.S. 190 (1987) ..................................................................................................... 2

*Westwood Apex v. Contreras*,
  644 F.3d 799 (9th Cir. 2011) .................................................................................... 12

*WildEarth Guardians v. National Park Service*,
  703 F.3d 1178 (10th Cir. 2013) ..................................................................... 11, 13, 14

**Statutes**

16 U.S.C. § 100101(b)(2) ................................................................................................ 11

16 U.S.C. § 160 .................................................................................................................. 8

16 U.S.C. § 410gg .............................................................................................................. 7

16 U.S.C. § 410ii-3 ............................................................................................................ 7

16 U.S.C. § 410jjj .............................................................................................................. 7

16 U.S.C. § 410rr-2 ........................................................................................................... 7

16 U.S.C. § 460bb ........................................................................... 3, 4, 6, 9, 14, 17, 18

16 U.S.C. § 460cc .............................................................................................................. 7

16 U.S.C. § 460uu-1 .......................................................................................................... 7

16 U.S.C. § 90 .................................................................................................................... 7

54 U.S.C. § 100101 .......................................................................................................... 2

54 U.S.C. § 100751(b) ...................................................................................................... 13

54 U.S.C. § 100755 .......................................................................................................... 11

**Regulations**

36 C.F.R. § 1.2(3) ............................................................................................................. 15

36 C.F.R. § 1.2(a)(3) ........................................................................................................ 15

36 C.F.R. § 1.2(b) ............................................................................................................. 17

36 C.F.R. § 2.13 (1967) .................................................................................................... 2

36 C.F.R. § 2.3(d)(4) ........................................................................................................ 15

36 C.F.R. § 2.3(g) ........................................................................................................ 16, 17

**Other Authorities**

H.R. 9498, 92nd Cong. (1971) ......................................................................................... 9

H.R. Rep. No. 92-1391 (1972) ..................................................................................... 2, 10

*Hearings on H.R. 9498 and Related Bills To Establish Nat'l Recreation Area in San Francisco & Marin Cntys: Before the H.R. Subcomm. on Nat'l Parks & Recreation, Comm. on Interior & Insular Affairs,* 92nd Cong. 246-49 (1972) .................................................................................................. 9

*Hearings on S. 2342, S. 3174, & H.R. 16444 To Establish the Golden Gate Nat'l Urban Recreation Area in San Francisco & Marin Cntys: Before the Subcomm. on Parks & Recreation of the Comm. on Interior & Insular Affairs,* 92nd Cong. 65 (1972) ......................................................................................................... 9

S. 3174, 92nd Cong. (1972) ............................................................................................. 9

S. Rep. No. 92-1271 (1972) ............................................................................................. 10

## MEMORANDUM OF POINTS AND AUTHORITIES

### *Introduction*

This case presents a straight-forward question: did Congress intend to require the National Park Service (NPS) to acquire a property interest in the navigable waters Congress expressly included within the Golden Gate National Recreation Area (GGNRA or Park) before the agency could administer those waters?  This Court has already ruled Congress did not. ECF 127.  Nothing in Plaintiff's Opposition to Defendants' Motion for Summary Judgment and Cross-Motion for Summary Judgment (ECF 185) demonstrates this Court erred in its conclusion.

Most of Plaintiff's Opposition rehashes arguments previously presented.  Only in the last few pages does it directly address the Court's decision.  Those arguments are unavailing.  Even though the GGNRA Act includes many very specific instructions regarding acquisition of property, neither the statute nor the legislative history include a clear statement of Congressional intent to require the NPS to acquire an interest in the navigable waters within the Park in order to be able to administer those waters.  Instead, the text and legislative history support the obvious:  Congress included the navigable waters within the GGNRA to achieve the fundamental aim of a park—preservation of its resources for public use and enjoyment.

In addition to the Court's correct reading of the text and legislative history, the Court correctly applied canons of statutory construction to further the purpose of the GGNRA.  By doing so, the Court avoided unnecessary conflict between the GGNRA's enabling act (GGNRA Act) and Congress' 1976 Amendment to the NPS' governing laws which directly and specifically confirmed that the NPS has— and has had since the Organic Act of 1916—the authority to regulate navigable waters within park boundaries.  Plaintiff claims to be seeking a "small puncture" in that long-standing authority.  Far from it.  Plaintiff's contentions, if accepted, would leave the agency unable to preserve the resources of navigable waters Congress expressly included within the park or to ensure the safety of visitors enjoying

those waters.  Plaintiff's attempt to deprive the NPS of the ability to achieve those fundamental purposes

of the GGNRA should be rejected.[1]

***Argument***

**I.     PLAINTIFF HAS NOT SHOWN THAT THIS COURT ERRED IN CONCLUDING THAT THE NPS HAS AUTHORITY TO ADMINISTER THE NAVIGABLE WATERS OF THE GGNRA.**

At the time Congress created the GGNRA, it had been well established for more than a century

that the federal government has the authority to regulate navigable waters such as San Francisco Bay,

regardless of the ownership of the tide and submerged lands underlying those lands ("submerged

lands").  *E.g., Gibbons v. Ogden*, 22 U.S. 1, 21 (1824); *Utah Div. of State Lands v. United States*, 482

U.S. 190, 202 (1987).   For decades the NPS had been exercising its broad authority under the 1916

Organic Act, now codified at 54 U.S.C. § 100101 *et seq.*, to regulate waters within the boundaries of

parks, and the agency's regulations addressed numerous activities occurring in the waters of the

National Park System.  *See* ECF 182 at 8 (citing *e.g.*, 36 C.F.R. § 2.13 (1967) (fishing)).  Consequently,

at the time Congress created the GGNRA, it was well understood that the NPS had the authority to

regulate navigable waters within units of the National Park System ("parks").  Not surprisingly then, not

once did Congress discuss the NPS's authority over navigable waters, much less express a clear intent to

constrain the NPS's regulatory authority over navigable waters.  Indeed, what little Congress did say

about water merely confirmed that Congress included certain navigable waters within the GGNRA so

that the NPS would have the ability to protect resources in those waters.  H.R. Rep. No. 92-1391, at 2

(1972) (ECF 39-5).  Consistent with that intention, the text of the GGNRA Act should not be read to

---

[1]       The Ninth Circuit held that the NPS's alleged interaction with Plaintiff's member Mr. Koepf was a final agency action sufficient to "sustain this action."  *San Francisco Herring Ass'n v. Dep't of the Interior,* 946 F.3d 564, 575, 577 (9th Cir. 2019).  Defendants' motion raised Plaintiff's obligation to provide competent evidence to support the facts necessary to establish a court's jurisdiction.  ECF 182 at 18.  Mr. Koepf's declaration, ECF 184-3, provides that evidence.  Thus, under controlling authority, this Court has jurisdiction over Plaintiff's claims.

require the NPS to acquire an interest in the navigable waters within the GGNRA before it can administer those waters.

### A. The Text of the GGNRA Act Does Not Support Plaintiff's Claim that the NPS has to "own" the navigable waters within the Park

As the Court observed, the GGNRA Act is devoid of any clear statement that Congress expected the NPS to purchase a property interest in the waters of San Francisco Bay from the State of California. ECF 127 at 9. That fact alone disposes of Plaintiff's purported construction of the Act. Even if it did not, the Act as a whole demonstrates that Congress did not intend to impose an "acquisition prerequisite" to the NPS's administration of the GGNRA's navigable water.[2]

### 1. The Act Does Not Contemplate the NPS Acquiring Navigable Water from California.

First, as the Court noted, while the Act provides detailed instructions on the transfer of federal lands, it does not mention the transfer of waters. ECF 127 at 10. To amplify on the same point, the GGNRA Act is rife with such detailed instructions, and in particular, detailed instructions addressing the acquisition of property for the Park. Section 2 of the Act, "Areas Included and Excluded," addressed particular parcels of land which were included in the Park, and particular parcels Congress forbid the Secretary from acquiring. 16 U.S.C. § 460bb-1. In Section 3, Congress set forth its "Acquisition Policy." Even though that "Policy" spans *sixteen* subsections providing detailed instructions related to the acquisition of various lands and property interests, there is no specific instruction for acquisition of navigable waters. *See* 16 U.S.C. § 460bb-2. The absence is telling.

Further, as the Court also noted, while Section 3(a) expressly provides that "[a]ny lands, or interests therein, owned by the State of California or any political subdivision thereof, may be acquired

---

[2]     Plaintiff's assertion that the NPS "still urge(s) the Court" to find that there is "no limit" on NPS's authority within the GGNRA is based on a sentence discussing this Court's previous ruling that is solely about navigable waters. *See* ECF 185 at 23. Plaintiff's assertion is baseless. Defendants have never claimed or argued the NPS has unlimited power; rather, we have argued that the NPS's authority over navigable waters within the boundary of the GGNRA is not predicated on an acquisition of a property interest in those waters. ECF 182 at 13-20.

only by donation," it notably omits any mention of waters. ECF 127 at 10 (quoting 16 U.S.C. § 460bb-2(a)). Plaintiff attempts to construe that omission as Congress's "deliberate choice to provide different acquisition means for different types of property." ECF 185 at 28. But as the Court explained, Congress expressly took away eminent domain, the only means by which the NPS could possibly have acquired an interest in navigable water. ECF 127 at 8. Plaintiff attempts to avoid the corollary to that point—that Congress did not intend to require the NPS to obtain an interest in the navigable waters within the GGNRA—by speculating that the NPS "could obtain an interest in the waters (in the form of lease or easement) that it could then administer consistent with California's choice of public trust goals." ECF 185 at 29. Plaintiff's speculation fails because State law does not allow California to convey *any* property interest the state may hold in navigable waters and Plaintiff's gloss on the law would make the exercise of federal authority dependent on the largesse of the State.

By their express terms, the California Constitutional provisions cited by Plaintiff—Cal. Const. Art. I, §25; Art. X, §§ 3 and 4—provide for and control the transfer or use of submerged *lands* (often referred to as "sovereign lands"[3]) or lands adjacent to navigable waters, but *not* the transfer of navigable waters. *Cf. id.* at 15. Similarly, the California State Land Commission (CSLC) is authorized to manage the state's sovereign lands ("submerged lands") but has no authority to transfer any interest in the navigable waters above these sovereign lands.[4] *See, e.g.,* Cal. Public Resource Code §§ 6009, 6009.1, 6301, and 6501.1.

---

[3] "Sovereign lands" are the tide and submerged lands transferred to the state upon admission, in which the state holds the lands both as an attribute of its sovereignty and as a simple property owner. *See Ill. Cent. R.R. Co. v. Illinois*, 146 U.S. 387, 452 (1892); *Oakland v. Oakland Water Front Co.,* 118 Cal. 160, 182 (1897).

[4] Consistent with the CSLC's limited authority, the 1987 and 2009 leases discussed by Plaintiff, ECF 185 at 16-17, 29, n. 17, are only for submerged lands and not waters: "sovereign lands" AR 2049 (2009 lease) and "sovereign-ungranted tide and submerged lands." AR 2062 (1987 lease).

The limits of California law reflect a long established principle: "neither sovereign nor subject can acquire anything more than a mere usufructuary right [in navigable waters]." *Sweet v. City of Syracuse*, 129 N.Y. 316, 335, 27 N.E. 1081, 1084 (1891) (quoted in *Fed. Power Comm'n v. Niagara Mohawk Power Corp.*, 347 U.S. 239, 247, n. 10 (1954)); *see also Sturgeon v. Frost*, ___ U.S. ___, 139 S. Ct. 1066, 1078 (2019) (navigable waters "cannot be owned—whether by a government or a private party."). Despite these unequivocal holdings, some cases have used language suggesting title or ownership of navigable waters is held by a state or the federal government. However, all of those cases turn on either the ownership of the underlying submerged lands or the use, not ownership, of water. *See e.g., United States v. Rands*, 389 U.S. 121,122-23 (1967) (navigable waters deemed to be the "public property of the nation, and subject to all the requisite legislation by Congress.") (quoting *Gilman v. City of Philadelphia*, 3 Wall. 713, 725 (1865)); *PPL Mont., LLC v. Montana*, 565 U.S. 576, 604 (2012) Indeed, the case most often cited by Plaintiff, *People v. California Fish Co.*, 166 Cal. 576 (1913), illustrates that Plaintiff does not grasp the difference between owning submerged lands and "owning" navigable water.[5] *Cal. Fish* was a suit by "the state of California to quiet its title to certain *lands.*" 166 Cal. at 582 (emphasis added).

Even if Plaintiff's speculation that California can convey a property interest in navigable water had some foundation, Plaintiff's assertion that the NPS was required to obtain such an interest would fail. This Court was correct to observe that "[t]he suggestion that a non-federal entity would continue to own portions of the park, and that the [NPS] would have some subsidiary regulatory authority in those areas is difficult to square with the remainder of the Act." ECF 127 at 9. Plaintiff may wish otherwise,

---

[5]    Further, the cases that Plaintiff cites for the proposition that Congress "could have obtained full title to the waters in the Bay free and clear of California's public trust right if had so desired" do not support it. *Cf.* ECF 185 at 29 n.18. The first, *United States v. Chandler-Dunbar Water Power Co.*, 229 U.S. 53, 66 (1913), addressed whether the United States owed compensation for interrupting the flow of a river, the ownership of which the court characterized as "inconceivable." The second, *United States v. 32.42 Acres of Land*, 683 F.3d 1030 (9th Cir. 2012) addresses condemnation of submerged lands.

but Congress did not instruct the NPS to manage the waters of the GGNRA "consistent with California's choice of public trust goals." *Cf.* ECF 185 at 29. Congress instructed the NPS to manage those waters pursuant to the NPS Organic Act. Moreover, where the NPS's actions pursuant to the Organic Act are inconsistent with California's public trust, the public trust gives way. *E.g., Cal. Fish*, 166 Cal. at 600 (State authority can only be exercised "until the federal authority interferes.").

Indeed, Plaintiff's suggestion that the NPS could obtain some "lesser" interest seeks to stand the relationship between the state and federal governments on its head. Obtaining a "lesser" interest would require the NPS to obtain the permission of the State and subject the NPS's administration of the GGNRA to the goals and priorities of the State, despite the clear direction from Congress to administer these navigable waters according to the NPS Organic Act—in essence making state law superior to federal Constitutional and statutory law. *Cf.* ECF 185 at 29 (asserting that under Plaintiff's construction of the GGNRA Act, "*California* [would be] free to choose between trust uses, such as fishing or conservation") (emphasis added). Such a proposition cannot be sustained. *See Kleppe v. New Mexico*, 426 U.S. 529, 543, 545-46 (1976); *Arizona v. California*, 373 U.S. 546, 597-8 (1963).

### 2. Boilerplate language should not be used to defeat the purpose for which navigable waters of San Francisco Bay were included in the Park.

An additional reason the text does not support Plaintiff's construction of Section 4(a) is that the phrase Plaintiff relies on, "lands, waters and interests therein," is frequently used boilerplate suggesting that Congress gave "little thought" to how that clause would fit with the terms of the statute. *See* ECF 127 at 10 (referring to 16 U.S.C. § 460bb-3(a)). Plaintiff takes issue with the characterization of the language as "boilerplate" and argues that each time Congress has invoked the phrase, it was used with "a specific purpose and was not superfluous." ECF 185 at 29-30.

Contrary to Plaintiff's suggestion, characterizing a phrase as boilerplate is not tantamount to arguing it is meaningless or surplusage. In fact, the boilerplate at issue here is often used to cast a broad net in provisions that describe the purpose and composition of a park or that transfer administration of

federal property to the NPS and allow the Secretary to acquire additional property.[6]  *See e.g.*, North Cascades National Park, 16 U.S.C. §§ 90, 90b; Biscayne National Park, 16 U.S.C. §§ 410gg, 410gg-1(a).

The issue with Plaintiff's reliance on the boilerplate is the one this Court identified – it makes no sense for Congress to have employed a boilerplate phrase to create a distinct limitation on a park's authority, especially when there is no evidence Congress gave particular thought to its use of the phrase. *See* ECF 127 at 10; *see also e.g., Related Indus., Inc. v. United States*, 2 Cl. Ct. 517, 522 (1983) (rejecting reading of boilerplate statutory provision which would have created a "special exemption").

Plaintiff claims that its purported acquisition requirement is not "exceptional or *sui generis*" because the boilerplate at issue here is commonly used by Congress.  ECF 185 at 22.  It is true that the GGNRA is not different from the many national parks Congress has created by setting a boundary (including navigable waters), instructing the NPS to administer the areas under federal control according to the NPS Organic Act, as amended, transferring federal property to the administration of the NPS, and authorizing the NPS to acquire non-federal property within that boundary to protect the area as a park within the National Park System.  *See e.g.,* Biscayne National Park, 16 U.S.C. §§ 410gg, 410gg-1(a), and 410gg-2(b); Congaree National Park, 16 U.S.C. §§ 410jjj, 410jjj-1, and 410jjj-2; Gateway National Recreation Area, 16 U.S.C. §§ 460cc, 460cc-1, and 460cc-2.  What would be unique is interpreting a catch-all boilerplate provision as Congressional instruction that the NPS is not authorized to administer waters within the boundary of a park until it acquires navigable waters that are already subject to federal

---

[6]    To the extent that Plaintiff is suggesting the phrase is only used when Congress seeks "to regulate either specific waters within the national parks or parks containing significant bodies of water, Plaintiff is wrong.  *Cf.* ECF 185 at 29.  Congress has routinely used the phrase in desert southwest parks where water is scarcely present, much less the reason the park was created. *See e.g.*, Chaco Culture National Historical Park, 16 U.S.C. § 410ii-3; Pecos National Historical Park, 16 U.S.C. § 410rr-2; and El Malpais National Monument, 16 U.S.C. § 460uu-1.

regulation and in the absence of any clear statement of this purported requirement in the text or legislative history.

Litigation at Voyageurs National Park illustrates that Congressional boilerplate, without a clear and specific direction otherwise, should not be used to restrict the NPS's ability to administer a National Park to achieve the Organic Act's purpose of protecting its resources. The enabling Act for Voyageurs, enacted around the same time as the GGNRA Act, has several parallels to the GGNRA Act. Notably, the Voyageurs Act includes direction that the NPS "shall administer the lands acquired for the park," which Plaintiff has described as an "acquisition prerequisite." ECF 37 at 40 (discussing 16 U.S.C. § 160f(a)). Congress authorized the Secretary to establish Voyageurs, but only after "sufficient interests in lands or waters had been acquired." 16 U.S.C. § 160a. In fact, the very reason Voyageurs was created, to preserve the "waterway system which constituted a part of the historic route of the Voyageurs," requires water. *See* 16 U.S.C. § 160. Despite this apparent expectation that waters would be included in the Park, Congress only expressly authorized the Secretary to "acquire lands or interests therein." *Id.* at § 160b(a)(1).

Even though Voyageurs' enabling act anticipated water would be included in Voyageurs but did not authorize the Secretary to acquire water, the Eighth Circuit twice affirmed the NPS's authority over the navigable waters within Voyageurs. It did so for a simple reason: Congress intended the waters to be preserved and included them within the park to do so. *United States v. Armstrong*, 186 F.3d 1055, 1062 (8th Cir. 1999); *United States v. Brown*, 552 F.2d 817, 820 (8th Cir. 1977). The lesson of Voyageurs applies just as strongly here: boilerplate language in enabling act administrative provisions cannot be exploited as an excuse to defeat the purpose for which Congress includes navigable waters within the boundaries of a park, which is to allow the NPS to administer and protect those waters.

That lesson is even the more compelling here, because this case concerns commercial fishing in a park, and "[w]here Congress has intended to permit commercial fishing in a national park, it has done so

expressly by statute." *See Organized Fisherman of Fla. v. Hodel*, 775 F.2d 1544, 1548 (11th Cir. 1985). Plaintiff's references to boilerplate administrative provisions cannot defeat Congress's clear purpose in including the waters in the park, much less serve as the sort of "express" statutory authority that would be required to allow commercial fishing.

**B.     The Legislative History Provides No Evidence That Congress Intended to Condition the NPS's Authority on the Acquisition of an Interest in Water.**

Plaintiff offers an extensive discussion of the legislative history (ECF 185 at 9-13), which merely confirms the Court's observation that the main point to be gleaned from that history is that there is not a single clear statement that Congress intended to require NPS to obtain title to the navigable waters in the Park to regulate them as part of the Park. *See* ECF 127 at 10.

As noted by this Court, the debates in Congress over the various competing bills focused on land: when military lands, including submerged lands, would be transferred to NPS administration and how private and State-owned lands could be acquired. *Id.* Bills introduced by Democrats and those introduced by Republicans took different positions on those crucial issues. *Compare* H.R. 9498, 92nd Cong. (1971) (ECF 36-4) *with* S. 3174, 92nd Cong. (1972) (ECF 39-3). Congress expressly resolved those differences in the GGNRA Act. *See* 16 U.S.C. § 460bb-2.

In contrast to the extensive discussion of the issues revolving around the acquisition of land for the GGNRA, there is strikingly little discussion of waters in the legislative history and none directly related to the authority of the United States over navigable waters.[7] Despite Plaintiff's rhetoric, this

---

[7]     The same is true of the Department of the Interior. Plaintiff implies that Secretary Rogers Morton's statements regarding the management of state owned lands, dealt with the administration of waters within GGNRA. ECF 185 at 11, 13. They did not. In fact, Secretary Morton, like Congress, said nothing at all about the administration of waters within the GGNRA. *See Hearings on S. 2342, S. 3174, & H.R. 16444 To Establish the Golden Gate Nat'l Urban Recreation Area in San Francisco & Marin Cntys: Before the Subcomm. on Parks & Recreation of the Comm. on Interior & Insular Affairs*, 92nd Cong. 65 (1972) ("September Hearings") at 77-98; *Hearings on H.R. 9498 and Related Bills To Establish Nat'l Recreation Area in San Francisco & Marin Cntys: Before the H.R. Subcomm. on Nat'l Parks & Recreation, Comm. on Interior & Insular Affairs,* 92nd Cong. 246-49 (1972) (ECF 38-5).

Court will search in vain for any clear indication in the legislative history that Congress somehow intended that its specific direction that land could only be acquired from California by donation would instead serve as an authorization to acquire water from the state by any means possible, *Cf.* ECF 185 at 23, or that Congress intended to provide "greater State and local control" over the waters Congress elected to include within the GGNRA. *Cf. id.* at 29.

What discussion of water there is in the legislative history makes two points. First, Congress intended navigable waters within San Francisco Bay and along the Pacific Coast to be part of the Park upon enactment. While the bills noted above included some substantial differences in their treatment of land, both those bills, as well as the GGNRA as enacted, were uniform in their treatment of water: all included within the boundary of GGNRA the navigable waters and submerged lands ¼-mile offshore of the uplands within the boundary. September Hearings at 41 (quoting H.R. 16444 § 2(a)); *see* AR at 1683-1685. Like H.R. 16444, the GGNRA Act made all federal interests in those waters and submerged lands subject to the administration of the NPS upon enactment of the GGNRA Enabling Act, except as provided in Section 3. *See* ECF 182 at 12 n.5 (discussing transfers pursuant to Section 3). Second, Congress included the navigable waters within the GGNRA so they could be protected. As Congress explained, the "thrust" of the legislation was "to preserve and protect, for public use and enjoyment, the nationally significant land and water areas which border San Francisco . . . ." H.R. Rep. No. 92-1391, at 2 (1972) (ECF 39-5); *see also* S. Rep. No. 92-1271, at 1 (1972) (ECF 40-3) (same language).

In short, just as in the text of the act, nothing in the legislative history of the GGNRA Enabling Act demonstrates that Congress intended to exclude the navigable waters within the GGNRA from immediate administration by the NPS. Instead, the legislative history confirms that Congress included navigable waters within the boundary of the GGNRA so that those waters could be protected.

**C.      The Court Correctly Found the 1976 Amendment Applies.**

In 1976, just a few years after Congress created the GGNRA, it amended the Organic Act authorities to expressly confirm that the 1916 Act had provided the NPS with authority to regulate activities occurring in waters within the boundaries of park system units.  ECF 182 at 9-10.  Plaintiff contends that the authority recognized in the 1976 Amendment is not available to the NPS because the Amendment did not "repeal" the acquisition prerequisite Plaintiff alleges is part of the GGNRA Act.  Contrary to Plaintiff's claim, neither the Organic Act's deference to particular statutory instructions nor the canon of statutory construction disfavoring repeal by implication deprive the NPS of the authority ratified in the 1976 Amendment.

**1.      The plain terms of the Organic Act and related authorities demonstrate that there is no conflict between their terms and the GGNRA Act.**

Plaintiff argues its alleged "acquisition prerequisite" should control because the Organic Act states "that its own provisions give way when in conflict with provisions governing individual parks."  ECF 185 at 26-27 (citing *e.g., WildEarth Guardians v. National Park Service*, 703 F.3d 1178 (10th Cir. 2013)).  To the contrary, the Organic Act and related authorities illustrate that there is no conflict between the GGNRA Act and the 1976 Amendment.  The Organic Act and other general NPS authorities apply "to the extent that those provisions are not in conflict with any such specific provision." 54 U.S.C. § 100755.  The need for a specific contrary provision is reinforced by the "1978 Reaffirmation" of the Organic Act, which states that its mandates apply "except as directly and specifically provided by Congress."  *See* 16 U.S.C. § 100101(b)(2).  Plaintiff cannot rely on these authorities because as explained above, the GGNRA Act contains no "specific provision" instructing that waters within the boundary of the Park must be acquired before they can be administered, much less a "direct and specific" instruction.

The lack of any direct and specific instruction in the GGNRA Act requiring acquisition of a property interest in the navigable waters within the Park before the NPS can regulate those waters means

that there is no basis to apply the canon disfavoring repeal by implication. As this Court observed, the cases applying that canon "assum[e] that the court is confronted with an earlier statute whose effect is, after applying traditional tools of statutory interpretation, clear and undisputed." ECF 127 at 11 n.4. Moreover, other canons such as the Whole Act Rule inform a court's construction of the statute. *Id.* As set forth above, the construction of Section 4(a) urged by Plaintiff is not clearly supported by the terms of the statute or its legislative history and is contradicted by the framework of the Act as a whole. Consequently there is no basis to invoke the canon that repeals by implication are disfavored. But even assuming the canon is applicable here, Plaintiff cannot prevail because this Court properly concluded that the authority ratified in the 1976 Amendment applies.

### 2. The Court properly applied canons of statutory construction.

This Court concluded that Plaintiff's reliance on the canon that repeal by implication is disfavored was unavailing because Plaintiff failed to "demonstrate[] that Congress specifically turned its attention to the question of whether DOI would need to acquire a property interest in the waters of San Francisco Bay before it could regulate them, [and therefore] Plaintiff cannot escape the otherwise clear effect of [the 1976 amendment]." *Id.* at 11. Plaintiff criticizes the Court's conclusion because the Court considered and applied the rationale for the canon of construction, instead of simply asking which statute applied more narrowly. *See* ECF 185 at 27-28.

Canons of construction are ultimately a tool to aid in discerning Congressional intent. *See United States v. Nader*, 542 F.3d 713, 717 (9th Cir. 2008); *accord Westwood Apex v. Contreras*, 644 F.3d 799, 803 (9th Cir. 2011). As such they should not be applied mechanically, but instead should be applied in light of Congress's fundamental purpose. *See United States v. Leal-Vega*, 680 F.3d 1160, 1165 (9th Cir. 2012) (rejecting arguments based on canons of statutory interpretation because accepting them would undermine the reasoning for categorical sentencing guidelines); *see also Franchise Tax Bd.*

*of California v. U.S. Postal Serv.*, 467 U.S. 512, 521 (1984) (statute is not to be interpreted based on "ritualistic formula" but instead "by reference to underlying congressional policy").

Although *WildEarth Guardians* does not support Plaintiff's reading of the Organic Act, the case does illustrate an informed application of the canon that repeals by implication are disfavored. *WildEarth Guardians* addressed the Park Service's authority to cull elk from Rocky Mountain National Park (Rocky). The Organic Act allows the Park Service to remove animals "detrimental to the use of any [] park." The Tenth Circuit was tasked with harmonizing that provision with a conflicting provision in Rocky's enabling act which prohibits "all hunting or the killing, wounding or capturing" animals within the park unless the animals are a danger to man. WildEarth Guardians, like Plaintiff here, argued that the park's enabling act should control because it provided direction that was specific to Rocky. 703 F.3d at 1189. The Tenth Circuit rejected that reading of the acts because prioritizing Rocky's enabling act would "make it almost impossible for the NPS to manage [Rocky's] wildlife." 703 F.3d at 1190. The court concluded that the Organic Act was "better interpreted as the more specific provision," because doing so would facilitate NPS's ability to manage the park's wildlife, while giving effect to both statutes. *See id. WildEarth Guardians* is instructive here in several ways.

First, the court's rationale is equally applicable here: Plaintiff's reading of the relevant law would "make it almost impossible for the NPS to manage" the GGNRA's waters. 703 F.3d at 1190. Although Plaintiff's interest is in avoiding regulation of the Bay's herring fishery, its crimped reading of the NPS's authority would deprive the agency of the ability to regulate *any* activity occurring in the GGNRA's waters.

Second, the Tenth Circuit concluded that the statute that is applicable to more parks is better treated as the more specific provision. 703 F.3d at 1190. Here too. As this Court observed, the Amendment is "very narrowly focused on the specific authority [the] NPS now seeks to invoke." ECF 127 at 6. It directly addresses the National Park Service's jurisdiction over navigable waters and

instructs that the NPS has the authority to "[p]romulgate and enforce regulations concerning boating and other activities on or relating to waters located within [parks], including waters subject to the jurisdiction of the United States" 54 U.S.C. § 100751(b). In contrast, the provision of Section 4(a) Plaintiff contends was intended to abrogate the NPS's authority over navigable waters within the Park includes no clear expression of intent to do so. *See* ECF 127 at 10. Further, where Section 4(a) does expressly speak to the Secretary's authority, it does so by affirmatively granting the Secretary the ability to "utilize such statutory authority available to him for the conservation and management of wildlife and natural resources as he deems appropriate to carry out the purposes of this Act." 16 U.S.C. § 460bb-3(a). Given that GGNRA was established to protect the "outstanding natural, historic, scenic, and recreational values . . . [found in the] lands, waters, and submerged lands" within the ¼-mile offshore boundary of GGNRA, *id*. §§ 460bb, 460bb-1(a), this Court's reconciliation of the two statutes properly gives effect to Congress' intent that those waters be protected.

Third, the Tenth Circuit construed the statutes before it in a manner that gave both effect. 703 F.3d at 1190. This Court also construed the two statutes in a manner that allows both to be applied: the GGNRA Act made the navigable waters part of the Park and the 1976 Amendment confirmed the NPS's authority to administer those waters. *See also Momeni v. Chertoff*, 521 F.3d 1094, 1097 (9th Cir. 2008). Moreover, the Court did so in a manner that left no inconsistency between the two statutes, and therefore no implied repeal to be avoided. That result is particularly appropriate here, where Section 4(a) of the GGNRA Act expressly directs the Park Service to manage the recreation area in accordance with the Organic Act "as amended and supplemented." 16 U.S.C. § 460bb-3.

In short, this Court appropriately applied canons of construction in a manner that is consistent with Congressional intent, which furthers the underlying purpose of all parks and which gave effect to both of the statutes before it. Consequently, there is no question that the Organic Act and related

authorities including the 1976 Amendment invest the NPS with authority to regulate the navigable waters included within the GGNRA.

**D.    The NPS's Interpretation of its Own Authorities Is Entitled to Deference.**

Defendants demonstrated that the NPS's interpretation of the GGNRA Act is entitled to deference. ECF 182 at 25. Plaintiff relies on a long string of misstatements to claim that the NPS is entitled to "no deference" because the NPS "changed its position." ECF 185 at 24-25. Contrary to Plaintiff's assertion, the NPS has consistently asserted authority over the navigable waters within GGNRA and has consistently asserted that commercial fishing is prohibited in these same navigable waters pursuant to 36 C.F.R. §§ 2.3(d)(4) & 1.2(a)(3) .

First, Plaintiff's suggestion that prior to 2003 the NPS's position was that "jurisdictional limitations" prevented it from enforcing the regulation rests on Plaintiff's misrepresentation of the Department of the Interior's statement on the proposed GGNRA legislation. *See* n.11, *infra.* In fact, even outside the context of fishing, the NPS has consistently asserted regulatory authority over the very waters in which Plaintiff seeks to fish. *See e.g.* AR 1320-24 (mitigation measures within the waters off of Ft. Baker; AR 1652 (dredging project in San Francisco Bay); AR 740-743 (research permit).

Second, the NPS took action to enforce the prohibition on commercial fishing no later than 1997, not 2011 as Plaintiff contends. AR 134 (statement from NPS law enforcement ranger that her enforcement of the regulation could prove controversial); *see also* ECF 185 at 24. And as far back as 2000, the agency engaged with the California Department of Fish and Wildlife (CDFW) on this issue and, at the request of CDFW, in 2003 began sending notices for the CDFW to include in the annual herring permit packets. ECF 182 at 15-17 (citing *e.g.,* AR 827 (meeting), AR 1 (notice)). Each of the

annual notices explained that pursuant to 36 C.F.R. §§ 1.2(a)(3) and 2.3(d)(4) "the following are prohibited: commercial fishing…"  AR 1-6.[8]

Third, the NPS never "considered" changing its position.  *Cf.* ECF 185 at 18 (citing AR 142).[9] To the contrary, NPS's position remained consistent, even as it dealt with a dispute with CDFW over the NPS's enforcement of the regulation.  *See* ECF 182 at 15-16.  That dispute was resolved in 2006, not in 2011 as Plaintiff contends.  In 2007, the CDFW included a letter in the annual permit packet which informed the herring fishermen that NPS had authority over the waters within the Park.  ECF 98 at 15 (letter); *see also* AR 1882 (letter from CDFW acknowledging NPS authority).

Fourth, Fourth, Plaintiff fails to mention that its own members demonstrated that they were aware that the NPS asserted authority to prohibit commercial fishing within the GGNRA by writing a letter about it to the NPS in 2007.  *See* AR 663 (letter to NPS).  In subsequent years the NPS continued to send annual notices that were identical to that the agency first issued in 2003.  *See* AR 1-6 (notices); *cf.* ECF 185 at 19 (inaccurately characterizing the 2011 notice as a new assertion of jurisdiction).

In sum, Plaintiff's assertion that the NPS somehow changed its position is without basis because the NPS has consistently asserted it has authority to regulate the navigable waters of San Francisco Bay that are within the boundary of the Park.

---

[8]     The first notice in 2003 had a typo, which was perpetuated in the subsequent notices, referring "36 C.F.R. § 1.2(3)" rather than "1.2(a)(3)." *See* AR 1-6.

[9]     The internal NPS email Plaintiff cites merely states an NPS law enforcement officer's "belief" that the Solicitor's Office may have questioned the use of exclusive jurisdiction because the cession grant mentioned military purposes.  AR 142.  The email acknowledges the NPS's position that commercial fishing is prohibited.  Further, exclusive jurisdiction is just one basis for the NPS's exercise of authority and this District would later hold that the military purposes language did not restrict the United States' exercise of exclusive jurisdiction so long as the property remained in federal ownership. *Swords to Plowshares v. Kemp*, 423 F. Supp. 2d 1031, 1035 (N.D. Cal. 2005).

## II. THE UNITED STATES HAS LEGISLATIVE JURISDICTION OVER WATERS WITHIN THE BOUNDARY OF THE GGNRA.

Plaintiff argues that the "legislative jurisdiction of the United States is irrelevant." ECF 185 at 25. The reason for that claim is clear: Plaintiff realizes it would make little sense for Congress to require the NPS to obtain title to navigable waters within the Park in 1972 when the federal government already had exclusive sovereign authority over water that Congress expressly included within the GGNRA and directed the NPS to administer.

Plaintiff's only argument is to claim that the authority of the Park Service to regulate commercial fishing within areas of federal legislative jurisdiction is based solely on an NPS regulation (36 C.F.R. § 2.3(g)). ECF 185 at 25-26. That is not the case. That regulation (like most others that that apply to non-federal lands and waters within the National Park System) is based on a cession of that jurisdiction by a state—in this case, California—and applies pursuant the various enabling laws that transferred administration to the NPS. *See* 36 C.F.R. §§ 1.2(b) and 2.3(g); 16 U.S.C. § 460bb-2. The grants of exclusive jurisdiction provided to the United States in this case continue so long as this federal enclave remains in federal ownership. *See e.g., Swords to Plowshares v. Kemp*, 423 F. Supp. 2d 1031, 1035 (N.D. Cal. 2005) (affirming that the United States retained the exclusive jurisdiction over the Presidio granted by the 1897 Act after the area was transferred from the military).

Apart from its argument, Plaintiff's only other discussion of the California statutes that ceded exclusive legislative jurisdiction is to claim that the grant of legislative jurisdiction in the 1859 Act that covered the submerged lands and waters now within GGNRA were not exclusive but "concurrent," implying that the State of California retained full sovereign power over these areas. *Cf.* ECF 185 at 14. Even had the CSLC not confirmed that the State granted exclusive jurisdiction to the United States, ECF 118 at 12-13, Plaintiff's contention would have to be rejected.

Plaintiff's argument for concurrent jurisdiction rests on a misquote of the 1859 Act, which by its plain terms did no more than preserve California's ability to serve civil and criminal process within the

ceded lands and waters. *See* ECF 168 at 31 (Section 1 of 1859 Act). The Supreme Court, in construing California's grant of legislative jurisdiction to the United States under the 1897 Act, which like the 1859 Act contains a proviso reserving state authority for civil and criminal process, *see* ECF 168 at 29 (Section 1 of 1897 Act), held that in "the act of 1897 California surrendered every possible claim of right to exercise legislative authority" and put the area ceded "beyond the field of operation of her laws." *Standard Oil Co. v. People of the State of California*, 291 U.S. 242, 244 (1934). Consequently, at the time the Park was created, the State of California had no authority over the navigable waters, and no authority over the lands and uplands within GGNRA that were subject to the cessions of jurisdiction.

In short the clear consequence of California's cession of jurisdiction is that the ceded lands, and the waters above them, are to be "administered in accordance with the general statutory authorities regarding the national park system." *Armstrong,* 186 F.3d at 1061. Plaintiff's suggestion that *Armstrong* is "irrelevant," because "it considered whether the State of Minnesota had 'ceded jurisdiction,'" misses one of the central points of the case. *Cf.* ECF 185 at 26, n.14. The Eighth Circuit held that the NPS had authority over the waters within Voyageurs *because* Minnesota had ceded legislative jurisdiction over those waters and Congress had directed the NPS to administer them pursuant to that park's enabling act. *See Armstrong,* 186 F.3d at 1061. That rationale applies equally here.

## III. THE UNITED STATES OWNS SUBMERGED LANDS WITHIN THE BOUNDARY OF THE GGNRA.

Defendants' Motion documented the United States' ownership—and the CSLC's affirmation of that ownership—of the submerged lands 300 yards out from the shoreline under the "waters at issue" adjacent to the uplands at East Fort Baker ("Yellow Buff"), the Presidio, Alcatraz Island, and (partially) at Ft Mason. *See* ECF 182 at 12-14; *see also* ECF 118 at 4-7 (CSLC's brief). The United States also owns some of the submerged lands west of the Golden Gate Bridge and along the shore of the open

ocean.[10]  *See* AR 1875-76.  Congress included these federally owned submerged lands within the boundary of the GGNRA and, through the GGNRA Act, transferred administration of them to the NPS to be managed pursuant to the NPS Organic Act. 16 U.S.C. § 460bb-3.

Plaintiff's response to these well-established facts effectively argues that the maps and other records documenting ownership in the Administrative Record are wrong and that the CSLC does not understand the laws it is tasked with administering.  *Cf.* ECF 185 at 13-17, 23-24.  Contrary to Plaintiff's assertion, ECF 185 at 23 fn.12, the CSLC was aware that the 1953 California statute, which by its plain terms merely repealed the 1897 Act—and thus stopped any *future* grants—did not (and could not) take back the lands the State had previously granted to the United States.  *See* ECF 118 at 9 (acknowledging repeal).

Plaintiff specifically contends that the United States does not own the submerged lands at "Yellow Bluff," which Plaintiff claims is important area for fishing.  ECF 185 at 15-16; *see also* ECF 45 at 2; ECF 168 at ¶ 69.  The submerged lands adjacent to East Fort Baker—aka "Yellow Bluff"—are still in federal ownership and administered by the NPS, as the maps in the Administrative Record and the CSLC's brief confirm.  *See* AR 1875-7, AR 1686a; ECF 118 at 8-9.

Plaintiff cannot ignore the clear consequences of the United States owning these submerged lands within the GGNRA's boundary: because Congress included them within the GGNRA and instructed the NPS to administer them pursuant to the NPS Organic Act, the NPS has the statutory authority to regulate these lands and the waters above them in order to protect the resources on these

---

[10]     Plaintiff's response brief continues its practice of referring to the scope of the area addressed by its claims through vague terms such as "waters at issue."  *E.g.,* ECF 185 at 9; *Cf.* ECF 185 at 7 n.2 (explaining that the "waters at issue" are those within the boundary of the GGNRA). The United States owns a majority of the submerged lands within GGNRA east of the Golden Gate Bridge, where state law allows commercial herring fishing and some of the submerged lands west of the Bridge and under the open ocean, where such fishing is not allowed. AR 1875-76; 14 Cal Code Reg 163(f)(1); AR 615 (map showing where fishing is allowed in San Francisco Bay, including CDFW closures).  The leases between the NPS and the State discussed by Plaintiff, ECF 185 at 16-17, address submerged lands west of the Bridge where the State prohibits fishing.

federal lands and provide for public safety. *See United States v. Brown*, 552 F.2d 817, 821-22 (8th Cir. 1997) (citing *Kleppe v. New Mexico* 426 U.S. 529, 536-40 (1976)); *United States v. Armstrong* 186 F.3d 1055, 1061-62 (8th Cir. 1999); *United States v. Hells Canyon Guide Services, Inc.,* 660 F.2d 735, 737-38 (9th Cir. 1981).

Finally, Plaintiff's many assertions that the lands conveyed to the United States were burdened "under state law" with limitations on the NPS's ability to restrict fishing, ECF 185 at 14-15, 24, demonstrate that what Plaintiff is really asking the Court to decide: state law regarding these submerged lands is supreme over federal laws, including the express direction of Congress to administer these submerged lands as part of the National Park System pursuant to the NPS Organic Act. As the Supremacy Clause and countless cases mandate, "[t]his the Court may not do." *United States v. 11.037 Acres of Land*, 685 F.Supp 214, 217 (N.D. Cal. 1988); *see also e.g.*, *Arizona v. California*, 373 U.S. 546, 597-98 (1963); *United States v. 32.42 Acres of Land,* 683 F.3d 1030, 1038 (9th Cir. 2012).

### *Conclusion*

As this Court has previously held, the NPS has authority to administer the navigable waters Congress included within the GGNRA. Accordingly, Defendants' motion for summary judgment must be granted and Plaintiff's cross motion denied.

Respectfully submitted,

JEAN E. WILLIAMS
Deputy Assistant Attorney General

*Of counsel:*

*/s/ David W. Gehlert*
GREGORY LIND                         DAVID W. GEHLERT
U.S. Department of the Interior       Trial Attorney
Office of the Solicitor              U.S. Department of Justice
                                     Environment & Natural Resources Division
MICHAEL T. PYLE                      999 18th Street
Assistant U.S. Attorney              South Terrace, Suite 370.
                                     Denver, CO 80202
                                     Phone: (303) 844-1386
                                     Fax: (303) 844-1350
                                     Email: david.gehlert@usdoj.gov