UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO HERRING ASSOCIATION,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,<br><br>    Defendants. | Case No. 13-cv-01750-JST<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 182, 185 |

Before the Court are cross-motions for summary judgment filed by Plaintiff San Francisco Herring Association ("Plaintiff" or "SFHA") and Defendants the U.S. Department of the Interior, Interior Secretary David Bernhardt, the U.S. National Park Service ("NPS"), NPS Director David Vela, and Golden Gate National Recreation Area ("GGNRA") General Superintendent Laura Joss ("Defendants"). ECF Nos. 182, 185. The motions are substantially similar to the cross-motions for summary judgment filed in 2013. ECF Nos. 31, 37. On April 29, 2014, the Court granted Defendants' motion for summary judgment, ECF No. 127, but this order was vacated by the Ninth Circuit on jurisdictional grounds, ECF No. 136. The Ninth Circuit has since confirmed the Court's subject matter jurisdiction over this case. ECF No. 164.

The Court held a hearing on the instant motions on December 9, 2020. For the reasons set forth below, the Court will grant Defendants' motion for summary judgment and deny Plaintiff's cross-motion for summary judgment.

**I. BACKGROUND**

    **A. Factual Background**

Plaintiff "is a California non-profit, unincorporated association whose membership

consists of active San Francisco Bay commercial herring fishermen and buyers." Second Amended Complaint ("SAC"), ECF No. 168 ¶ 34. Plaintiff sued Defendants, arguing that NPS unlawfully denied SFHA members access to fishing grounds abutting the shoreline of the GGNRA. *Id.* ¶ 35. The waters in question are depicted below.



Administrative Record ("A.R.") 14.

Plaintiff asserts that Defendants have been "fully aware of the commercial herring fishing taking place" in the GGNRA since 1972 but did not enforce any ban on such fishing prior to the 2011-12 season. SAC ¶ 45. Defendants counter that as early as 2003, NPS provided notice that commercial fishing within the GGNRA waters was prohibited, but that the California Department of Fish & Wildlife ("CDFW") declined to forward this notice to the fishermen. ECF No. 182 at 16 (citing A.R. 1-6, 145, 827, 830-31).

The record reflects that as early as January 2005, NPS enforced the commercial fishing ban with the assistance of the United States Coast Guard. A.R. 843-53. This led CDFW and NPS "to begin a process to resolve questions regarding their respective jurisdictions." ECF No. 182 (citing A.R. 172). After a June 2006 meeting between the two agencies, DOI and CDFW (along with various other state agencies) agreed to share concurrent legislative and criminal jurisdiction over certain areas of the GGNRA lands and waters. A.R. 1877-83.

In November 2011, Defendants sent a letter to commercial herring fishermen via CDFW's 2012 herring season regulatory packet. *Id.* at 13. The letter informed the fishermen that

commercial fishing is prohibited in the waters of the GGNRA pursuant to federal regulations. *Id.* On October 12, 2012, SFHA sent a letter to Defendants asserting that they "had no right to restrict fishing or navigation in the Waters at Issue." ECF No. 168 at 60. On November 14, 2012, Defendants responded to the fishermen with another letter that reiterated their prohibition of commercial fishing in the GGNRA. A.R. 16. This letter stated that NPS "reserves the right to enforce any violations of the prohibition on commercial fishing as set out in 36 C.F.R. § 2.3(d)(4)." *Id.* The parties engaged in multiple rounds of negotiation in an effort to resolve the dispute, *see* SAC ¶¶ 61, 64, 65, but Defendants maintained their prohibition and enforced it against members of SFHA after the 2011-12 season, *id.* ¶¶ 66-67.

According to Plaintiff, "[d]uring the 2012/13 season, NPS rangers patrolled the waters and shoreline of the GGNRA" to enforce the fishing prohibition. *Id.* ¶ 68; *see* ECF Nos. 184-1 ¶ 5, 184-2 ¶ 5, 184-3 ¶ 5. Between January 11 and 14, 2013, during the largest herring spawn of the season, NPS and CDFW agents, acting on behalf of Defendants, "patrolled the [disputed] waters and shoreline to ensure that no commercial harvesting of herring would occur." SAC ¶¶ 69-70. For example, NPS rangers informed Ernie Koepf, an SFHA member, that he was not allowed to fish in the GGNRA waters off the Sausalito coast. ECF No. 184-3 ¶ 5. Understanding that he could face federal criminal prosecution for disobeying the rangers, Koepf left the disputed waters and set his nets elsewhere. *Id.*

**B.     Statutory Background**

In 1916, Congress enacted the NPS Organic Act. Pub. L. No. 113-287 § 3, Dec. 19, 2014, 128 Stat. 3096, *codified at* 54 U.S.C. § 100101, *et seq.*[1] The act states, in part, that NPS shall:

> [P]romote and regulate the use of the National Park System by means and measures that conform to the fundamental purpose of the System units, which purpose is to conserve the scenery, natural and historic objects, and wild life in the System units and to provide for the enjoyment of the scenery, natural and historic objects, and wild life in such a manner and by such means as will leave them unimpaired for the enjoyment of future generations.

54 U.S.C. § 100101(a).

---

[1] The statute was previously cited as 16 U.S.C. § 1.

3

In 1972, Congress established the GGNRA as a unit of the National Park System, by enacting the GGNRA Enabling Act ("the GGNRA Act"). Pub. L. No. 92-589, 86 Stat. 1299 (1972), *codified at* 16 U.S.C. § 460bb-1, *et seq.* Section 3 of the GGNRA Act, entitled "Acquisition policy," states that:

> Within the boundaries of the recreation area, the Secretary [of the Interior] may acquire lands, improvements, waters, or interests therein, by donation, purchase, exchange or transfer. Any lands, or interests therein, owned by the State of California or any political subdivision thereof, may be acquired only by donation.
>
> [. . .]
>
> Except as hereinafter provided, Federal property within the boundaries of the recreation area is hereby transferred without consideration to the administrative jurisdiction of the Secretary for the purposes of this subchapter, subject to the continuation of such existing as may be agreed upon by the Secretary and the head of the agency formerly having jurisdiction over the property.

16 U.S.C. § 460bb-2(a). Section 4, entitled "Administration," states that:

> The Secretary shall administer the lands, waters and interests therein acquired for the recreation area in accordance with the provisions of the Act of August 25, 1916 (39 Stat. 535; 16 U.S.C §§ 1, 2-4), as amended and supplemented, and the Secretary may utilize such statutory authority available to him for the conservation and management of wildlife and natural resources as he deems appropriate to carry out the purposes of this subchapter.

16 U.S.C. § 460bb-3(a).

Under the GGNRA Act, "[t]he recreation area . . . comprise[s] the lands, waters, and submerged lands generally depicted on the map entitled: 'Revised Boundary Map, Golden Gate National Recreation Area', numbered NRA-GG-80,003-K and dated October 1978, plus those areas depicted on the map entitled 'Point Reyes and GGNRA Amendments and dated October 25, 1979.'" 16 U.S.C. § 460bb-1(a)(1). The boundary extends one-quarter mile offshore from the shoreline from approximately Sausalito to Bolinas Bay in Marin and San Francisco Counties, around Alcatraz Island, and from Fort Mason in the City of San Francisco along the coast to south of Ocean Beach within San Francisco County. *See* A.R. 14, 18, 1683-86.

In 1976, in an amendment to the NPS Organic Act, Congress authorized the Secretary of the Interior to "[p]romulgate and enforce regulation . . . concerning boating and other activities on

or relating to waters located within areas of the National Park System, including waters subject to the jurisdiction of the United States." Pub. L. No. 95-458, October 7, 1976, 90 Stat. 1939, § 1, *codified at* 16 U.S.C. § 1a-2(h).[2]

### C. Regulatory Background

In 1983, NPS promulgated regulations that apply to persons within, *inter alia*: "[t]he boundaries of federally owned lands and waters administered by the National Park Service," persons within "[w]aters subject to the jurisdiction of the United States located within the boundaries of the National Park System, including navigable waters and areas within their ordinary reach (up to the mean high water line in places subject to the ebb and flow of the tide and up to the ordinary high water mark in other places) and without regard to the ownership of submerged lands, tidelands, or lowlands," as well as to persons within "[o]ther lands and waters over which the United States holds a less-than-fee interest, to the extent necessary to fulfill the purpose of the National Park Service administered interest and compatible with the nonfederal interest." 36 C.F.R. § 1.2(a).

Within those areas, the regulation prohibits "commercial fishing, except where specifically authorized by Federal statutory law." 36 C.F.R. § 2.3(d)(4). As described above, Defendants have enforced this regulation against members of SFHA within the waters in question since 2011.

### D. Procedural History

Plaintiff initially filed suit on April 18, 2013, bringing three claims, two for violating the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(C), 5 U.S.C. § 706(2)(A), and one for estoppel. ECF No. 1. After the Court granted Defendants' unopposed motion to dismiss with leave to amend, ECF No. 16, Plaintiff filed its First Amended Complaint on July 10, 2013, asserting only the APA causes of action, ECF No. 17.

Defendants moved for summary judgment on September 26, 2013. ECF No. 31.

---

[2] Congress repealed and amended the amendment in 2014. Where the original language authorized the Secretary to "[p]romulgate and enforce regulation," 16 U.S.C. § 1a-2(h), the amended language authorizes the Secretary to "prescribe regulation," 54 U.S.C. § 100751(b). The parties do not dispute the significance of the 2014 revision to the litigation and the Court does not consider it for the purposes of these motions.

Defendants argued that NPS acted within its statutory jurisdiction in banning commercial fishing in the waters in question. *Id.* at 17. Plaintiff filed a cross-motion on October 25, 2013, arguing that NPS does not have the authority to ban commercial fishing in the GGNRA waters because Congress limited NPS's regulatory authority to areas of the GGNRA in which it has acquired a property interest. ECF No. 37 at 30. A hearing on the cross-motions was initially set for December 12, 2013. However, the Court needed to reach questions in which the State of California might have a significant interest – specifically, whether California owns a property interest in the waters in question, whether California owns a property interest in the submerged lands beneath those waters, and whether the United States has the statutory authority to prohibit fishing in waters in which California holds title or which lie above lands in which California holds title. Thus, the Court invited the State of California to provide its view on those questions, ECF No. 65, and the California State Lands Commission ("CSLC") responded to accept the invitation to appear as *amicus curiae* to answer "some or all" of the questions presented, but requested until February 10, 2014 to provide its views, ECF No. 70. The Court granted the request, gave the parties the opportunity to respond to the CSLC's filing, and continued the hearing on the parties' summary judgment motions to March 6, 2014. ECF No. 85.

In the meantime, the Court heard argument only on whether it had subject matter jurisdiction and subsequently held that it had jurisdiction over the action. ECF No. 84. The Court also heard Plaintiff's motion for a preliminary injunction, ECF No. 75, and denied the motion after concluding that Plaintiff had failed to demonstrate a substantial likelihood of success on the merits or that the balances of equities tipped sharply in its favor, ECF No. 117.

The CSLC provided its views on February 10, 2014, only addressing the question of California's ownership of tidelands and submerged lands beneath the waters in question. ECF No. 118. CSLC's brief did not address whether the United States owns any property interest in the waters themselves, and neither did it take a position on DOI's authority to regulate the waters. *See id.*

On April 29, 2014, this Court granted Defendants' motion for summary judgment and denied Plaintiff's cross-motion for summary judgment on the same issue now before the Court.

6

ECF No. 127. The Court concluded that NPS had the statutory authority to regulate the waters in question because "applying the 'acquisition prerequisite' to the waters of San Francisco Bay does not seem to be a plausible construction" of the GGNRA Act. *Id.* at 11. The Court issued a final judgment for Defendants on June 3, 2015. ECF No. 132.

Plaintiff appealed the Court's judgment on June 17, 2015. ECF No. 133. On March 17, 2017, without ruling on the merits of the summary judgment grant, the Ninth Circuit found that this Court "lacked subject matter jurisdiction over the SFHA's complaint" because Plaintiff had failed to "establish that it [was] challenging some final agency action." *San Francisco Herring Ass'n v. U.S. Dep't of Interior*, 683 Fed. App'x 579, 580 (9th Cir. 2017). The panel vacated this Court's judgment and remanded with instructions to dismiss. *Id.* The Ninth Circuit denied Plaintiff's petition for panel rehearing and petition for rehearing *en banc* on July 12, 2017, ECF No. 139, and the mandate issued on July 20, 2017, ECF No. 141.

On remand, this Court granted Plaintiff's motion for dismissal without prejudice and leave to file a motion for leave to amend on October 25, 2017. ECF No. 146. Plaintiff filed a motion for leave to file the SAC on November 21, 2017. ECF No. 147. The proposed SAC asserted new facts to allege a final agency action and added new claims under the Declaratory Judgment Act ("DJA"). *Id.* at 39-43. The Court denied the motion on February 15, 2018, holding that the SAC did not cure the jurisdictional deficiencies under the APA and thus the proposed amendment was futile. ECF No. 155 at 3-5. The Court also held that the SAC's new DJA claims were unduly delayed because Plaintiff failed to provide "adequate justification for why it could not have brought these additional claims in the original complaint or FAC." *Id.* at 5.

On December 31, 2019, the Ninth Circuit affirmed the Court's dismissal of the DJA claims but reversed the Court on the final agency action issue, holding that the SAC pleaded sufficient facts to allege a final agency action under the APA. *San Francisco Herring Ass'n v. U.S. Dep't of Interior* ("*SFHA II*"), 946 F.3d 564, 568 (9th Cir. 2019). The case was remanded, and Plaintiff filed the SAC on March 6, 2020, asserting a single claim under 5 U.S.C § 706(2)(C). ECF No. 168. Defendants filed an answer on April 10, 2020. ECF No. 171.

The present round of summary judgment cross-motions ensued. On June 26, 2020,

1 Defendants filed a motion for summary judgment, asserting that it has the statutory authority to
2 regulate the waters within the boundaries of the GGNRA. ECF No. 182. On August 10, 2020,
3 Plaintiff filed a cross-motion for summary judgment and opposition to Defendants' summary
4 judgment motion, arguing that the GGNRA Act limits NPS's statutory authority to those waters in
5 which it has acquired a property interest. ECF Nos. 184, 185. Defendants replied to Plaintiff's
6 opposition on September 24, 2020. ECF No. 187. Plaintiff filed a final reply on November 9,
7 2020. ECF No. 188. The Court held a hearing on December 9, 2020.

## II.   JURISDICTION

Plaintiff's causes of action arise under the APA, 5 U.S.C. §§ 701-06. Therefore, the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. Moreover, under 5 U.S.C. § 704, "final agency action for which there is no other adequate remedy in a court" is subject to judicial review. Under the APA, "agency action" is defined "broadly to 'includ[e] the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.'" *SFHA II*, 946 F.3d at 575 (citing 5 U.S.C. §§ 551(13) and 701(b)(2)).

The Court holds that Plaintiff has provided sufficient evidence to support its allegation of final agency action. The Ninth Circuit held that Plaintiff's SAC adequately alleged a final agency action. *Id.* at 577 (allegations that two NPS officers ordered Ernie Koepf not to fish in the GGNRA were sufficient to allege final agency action). Plaintiff has supported these allegations with "affidavit[s] or other evidence [of] specific facts," *Washington Envtl. Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013), including various declarations from SFHA members stating that NPS or CDFW agents told them that they were prohibited from casting their nets and fishing in the GGNRA. ECF Nos. 184-1 ¶ 5, 184-2 ¶ 5, 184-3 ¶ 5, 184-4 ¶ 5, 184-5 ¶ 5. Defendants do not dispute that oral instructions by NPS rangers constituted final agency action and concede that, "under controlling authority, this Court has jurisdiction over Plaintiff's claim." ECF No. 185 at 7 n.1.

## III.   LEGAL STANDARD

Pursuant to 5 U.S.C. § 706(2)(C), a court shall hold unlawful and set aside any agency action found to be "in excess of statutory jurisdiction, authority, or limitations, or short of

8

statutory right." Because the issue to be decided is one of law, it may be answered on summary judgment. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1472 (9th Cir. 1994). In an APA proceeding there are no material facts in dispute because the Court does not engage as a fact finder but rather rules upon the administrative record compiled by the agency. *Id.*

## IV. ANALYSIS

The Court now revisits the same issue it decided in its April 2014 summary judgment order that was vacated on appeal.[3] *See* ECF No. 127. Having found no substantive changes in the material facts or law, the Court again finds that the GGNRA Act does not impose an "acquisition prerequisite," as Plaintiff asserts, over the waters in question, and concludes that Defendants have statutory authority to apply 36 C.F.R. § 2.3(d)(4) within the waters of the GGNRA. Accordingly, the Court will grant Defendants' motion for summary judgment and deny Plaintiff's cross-motion for summary judgment.

Defendants move for summary judgment on the issue of NPS's authority to prohibit commercial fishing in the GGNRA waters pursuant to 36 C.F.R. § 2.3(d)(4). ECF No. 182. Plaintiff filed a cross-motion for summary judgment, arguing that Section 4(a) of the GGNRA Act unambiguously prevents NPS from regulating the waters in question without first acquiring a property interest in the waters. ECF No. 185. As this Court previously noted, the question "is one of statutory interpretation only." ECF No. 127 at 5. Plaintiff does not assert that Congress lacks the authority, if it wishes, to authorize NPS to regulate the waters at issue.[4] Plaintiff's success depends on its argument that under federal statutory law, NPS may only regulate waters within the boundaries of the GGNRA after DOI acquires a property interest in those waters.[5]

---

[3] The Ninth Circuit did not take up the merits of the grant of summary judgment in the intervening appeals.

[4] The Court does not consider Defendants' argument that the federal government's legislative jurisdiction offers support for its authority to regulate the waters. If Defendants argue that the United States' constitutional authority to regulate the GGNRA waters is somehow self-effectuating, even absent a statutory grant of authority, the Court rejects the proposition. The fact that the *United States* can regulate these waters does not mean that *NPS* can. The Constitution makes the former statement a possibility, but only Congress can make the latter a reality. *See* ECF No. 127 at 6 n.1.

[5] The Court agrees with Defendants' statutory construction on *de novo* review. Therefore, it does

9

The NPS Organic Act specifically authorized NPS to "[p]romulgate and enforce regulation concerning boating and other activities on or relating to waters located within areas of the National Park System, including waters subject to the jurisdiction of the United States." 16 U.S.C. § 1a-2(h). This authority is broad in geographic scope, applying throughout the national park system, but is narrowly focused on the specific authority NPS now seeks to invoke (prohibiting fishing by boats). There is no doubt that, standing alone, the NPS Organic Act plainly authorized NPS to promulgate and enforce 36 C.F.R. § 2.3(d)(4), and Plaintiff does not suggest otherwise.

Plaintiff also does not dispute the facial validity of 36 C.F.R. § 2.3(d)(4). Plaintiff argues instead that the previously enacted GGNRA Act limits the scope of 16 U.S.C. § 1a-2(h)'s applicability to the GGNRA, and that therefore NPS may not enforce the regulation in the GGNRA's waters. ECF No. 185 at 21. Plaintiff maintains that, under the GGNRA Act, Congress established an "acquisition prerequisite" that required DOI to obtain a property interest in any waters before it could regulate those waters. *Id.*

In so arguing, Plaintiff invokes the statutory canon that repeals by implication are disfavored. As a case on which Plaintiff relies states:

> It is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum. "Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Morton v. Mancari*, 417 U.S. 535, 550-551, 94 S.Ct. 2474, 2482, 41 L. Ed. 2d 290, 301. "The reason and philosophy of the rule is, that when the mind of the legislator has been turned to the details of a subject, and he has acted upon it, a subsequent statute in general terms, or treating the subject in a general manner, and not expressly contradicting the original act, shall not be considered as intended to affect the more particular or positive previous provisions, unless it is absolutely necessary to give the latter act such a construction, in order that its words shall have any meaning at all." T. Sedgwick, *The Interpretation and Construction of Statutory Construction of Statutory and Constitutional Law* 98 (2d ed. 1874).

*Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976). This canon remains well established in the law. *See, e.g.*, *Swinomish Indian Tribal Cmty. v. BNSF Ry. Co.*, 951 F.3d 1142,

---

not address whether the agency's determination warrants deference under *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 843 (1984). The Court also does not consider the parties' arguments regarding deference.

1156 (9th Cir. 2020) ("When a later-enacted statute does not expressly repeal existing federal law, we ask whether the later-enacted statute implicitly repeals earlier law. [R]epeals by implication are not favored.") (citation omitted). As the Court has previously found, and as set forth below, the canon does not apply here.

Defendants concede that Section 4(a) of the GGNRA Act imposed an "acquisition prerequisite" with respect to the lands within the boundaries of the GGNRA. *See* ECF No. 187 at 14. Congress recognized that there were nonfederal lands within the boundaries it had drawn for the GGNRA and thus established that DOI could later acquire those lands "by donation, purchase, exchange or transfer," 16 U.S.C. § 460bb-2(a), and that it would only then have the authority to administer the interests it had thereby acquired. 16 U.S.C. § 460bb-3(a). As this Court and the parties have noted, Congress's approach to park-making was part of a legislative compromise among several competing camps. Some interests sought to have the federal government take possession of the entire area presently composing the GGNRA, while others sought to restrict the federal government's authority to areas it already owned. The compromise was a piecemeal approach in which the park's boundaries were set out in advance but would only come under unified regulation if the federal government acquired non-federal property within it from its then-current owners. *See* ECF No. 185 at 9-13. In considering a later, broader statute that gave NPS some specific authority over *lands* within the park system, a court might well apply *Morton*, 417 U.S. at 550-51, and read the GGNRA Act to limit the effect of the later act.

However, as the Court determined in its previous order on the matter, "the problem for Plaintiff is that neither the statutory framework of the GGNRA nor the legislative history of the enactment indicate in any way that 'the mind of the legislator[s] ha[d] been turned to the details of' the *waters* within the GGNRA." ECF No. 127 at 8 (citing *Radzanower*, 426 U.S. at 153). Rather, it seems implausible that Congress set up a requirement that DOI would have to acquire property interests in the waters of San Francisco Bay before it could regulate the waters that Congress specifically included within the park's boundaries. Plaintiff points out that the State of California's constitution prohibits the state from alienating the property interest it holds in its waters as a public trust for the purposes of fishing and navigation. *See* ECF No. 185 at 15 (citing

11

Cal. Const. Art. 1, § 25, Cal. Const., Art. X, § 4, and *People ex inf. Webb v. Cal. Fish Co.*, 166 Cal. 576, 587, 589, 598 (1913)). Therefore, the only way DOI could acquire title to the waters would be to take title by eminent domain. But the GGNRA Act expressly denies DOI the authority to use eminent domain to acquire property for the park. *See* 16 U.S.C. § 460bb-2(a) (acquisition can only be via "donation, purchase, exchange or transfer"). Plaintiff's reading, taken to its logical conclusion, requires concluding that Congress established the GGNRA, drew its boundaries to include the waters in question, limited DOI's ability to regulate those waters unless it acquired a property interest in them, and then took away the only mechanism through which DOI could acquire title to the waters. The net effect of this circuitous approach – assuming it constitutes a reasonable reading of the GGNRA Act – would be to make it impossible for DOI *ever* to regulate these waters, making any discussion of *when* it could regulate them nonsensical, and in some ways making it a superfluous and unnecessary act to place the waters within the boundaries at all.

At the March 7, 2014 oral argument, Plaintiff's counsel acknowledged that its reading of the statute and the California Constitution made it impossible for DOI to acquire complete title to the waters. ECF No. 127 at 9. Yet Plaintiff again argues in its present motion that its reading does not render the GGNRA Act superfluous because DOI could obtain a lesser interest in the waters "in the form of a lease or easement" that it could administer in line with California's public trust policy. ECF No. 185 at 29. The Court remains skeptical of this argument. As the Court previously noted, the neighboring provisions of the GGNRA Act contemplate that DOI would begin acquiring complete title to the lands within the GGNRA boundaries and that the land within the GGNRA boundaries would thereby fall under the unified regulation of DOI as part of the national park system. The suggestion that a non-federal entity would continue to own portions of the park, and that DOI would have only subsidiary regulatory authority in those areas, does not square with the remainder of the Act.

It was clearly Congress's intention that DOI begin acquiring land for the park. But the statute does not contemplate that DOI would also begin acquiring property interests in the navigable waters of San Francisco Bay. Though it may be possible for the United States to

12

acquire full title to navigable waters owned in public trust by a state, as Plaintiff argues, it appears to be a rare occurrence at best. The examples Plaintiff cites include an unclear reference in a 1913 case to the United States possibly taking "the whole flow" of a Michigan stream, *United States v. Chandler-Dunbar Water Power Co.*, 229 U.S. 53, 65 (1913), and the United States military's condemnation of water rights in tidelands (not navigable waters) off the California coast, *United States v. 32.42 Acres of Land*, 683 F.3d 1030, 1034 (9th Cir. 2012). If Congress had expected DOI to begin attempting to *purchase* the waters of San Francisco Bay from the State of California (or even to acquire a limited property interest therein), the GGNRA Act would have reflected that expectation. As the Supreme Court put it in a different context, "Congress . . . does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2000). Instead, Section 4 of the GGNRA goes into great detail about which federal lands would be transferred to DOI, without any mention of the waters in the Bay. And Section 3(a) provides specifically that "[a]ny *lands, or interests therein*, owned by the State of California or any political subdivision thereof, may be acquired only by donation," notably omitting the waters owned by the state. 16 U.S.C § 460bb-2(a) (emphasis added).

The Court continues to find it notable that the precise phrase, "lands, waters, and interests therein," appears in dozens of different places within Title 16 of the United States Code. *See, e.g.*, 16 U.S.C. § 3102(2) (Alaska National Interests Lands Conservation Act); 16 U.S.C. § 1461(e)(3)(A) (National Estuarine Research Reserve System); 16 U.S.C. § 398d(a) (Virgin Islands National Park). In context with the statute as a whole, as well as with the title as a whole, the most persuasive explanation for the inclusion of the word "waters" in Section 4(a) is that the entire phrase is boilerplate, employed with near-automatic regularity when Congress enacts a statute relating to DOI's authority. It appears that little thought was devoted to how this standard language would fit with the idiosyncratic "acquisition prerequisite" that Congress placed within the GGNRA Act. Plaintiff argues that the boilerplate language does not take away from the effect of the statute's plain meaning. ECF No. 189 at 5. Plaintiff relies on a recent Supreme Court holding that "boilerplate is boilerplate for a reason – because it offers tried-and-true language to ensure a precise and predictable result." *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140

13

S. Ct. 2183, 2209 (2020). But here, in contrast, Plaintiff's reading of the statute does not lead to "a precise and predictable result," but one that is both idiosyncratic and impossible to administer. *Id.* The effect of reading Plaintiff's asserted "acquisition prerequisite" into boilerplate language is an implausible construction that, as discussed *supra*, gives Defendants virtually no legal mechanism to regulate the GGNRA waters. Further, as discussed below, the GGNRA Act's legislative history lends no support to Plaintiff's argument that Congress sought to employ boilerplate language to place a significant limit on NPS's authority to regulate the GGNRA waters.

The GGNRA Act's legislative history bolsters the Court's understanding that Congress did not intend to impose an "acquisition prerequisite" on the waters of the GGNRA. Plaintiff's account of the legislative history amply demonstrates that Congress understood that land would need to be owned to be regulated. But that same history also provides virtually no evidence that Congress thought the same about the waters. In none of the discussions and records submitted by Plaintiff do legislators, or even observers, express any understanding of the effect the statute would have on the waters in question. Plaintiff argues that this Court should not rely on legislative history (or a lack thereof) to evaluate whether the GGNRA Act imposes an acquisition prerequisite to the waters in question. ECF No. 185 at 30. Plaintiff contends that the absence of any discussion contemplating DOI's acquisition in the waters of San Francisco Bay is a natural outcome "[g]iven the sheer number of pre-existing federal properties present within the park and the disputes regarding their disposition." *Id.* Plaintiff relies on *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1084 (9th Cir. 2014), which held that "[e]xtrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms." *Drakes Bay* does not support Plaintiff's position. The "extrinsic materials" in that case referred to legislative history "from decades earlier," and thus, not correspondent to the statute at issue. *Id.* Here, the relevant legislative materials directly concern the relevant statute, the GGNRA Act. Plaintiff's argument therefore does not dissuade the Court from its previous holding.

Plaintiff also argues that the acquisition requirement over the waters of the GGNRA is not

14

*sui generis*, "but is, in fact, a common provision that Congress has used on other occasions." ECF No. 185 at 22. Plaintiff relies only on *Sturgeon v. Frost*, 136 S. Ct. 1061, 1063 (2016) to support this argument, but the scope of that case is specifically limited to NPS's authority in Alaska. Otherwise, Plaintiff points to a statute governing the Everglades National Park, which states that "land and water therein not in Federal ownership shall be administered as a part of the park only after being acquired as hereinafter provided." 16 U.S.C. § 410i. The Everglades National Park statute only further supports the Court's conclusion that the GGNRA Act does not impose an "acquisition prerequisite" over the GGNRA waters: unlike in the Everglades statute, nowhere in the GGNRA Act does Congress impose such an unequivocal mandate. If Congress had intended that NPS could regulate the waters at issue *only after* it acquires a property interest in them, Congress would have included more explicit language in the GGNRA Act. Rather, Section 3 of the Act simply states that DOI "may acquire lands, improvements, waters, or interests therein" within the boundaries of the GGNRA, 16 U.S.C. § 460bb-2(a), and Section 4 contemplates the terms governing how the GGNRA is to be administered.

In light of the GGNRA Act's statutory framework and legislative history, there is no indication that Congress gave any significant thought to whether DOI would ever begin purchasing the waters of the San Francisco Bay, much less that the "mind of the legislator . . . [was] specifically turned to the details" of the subject. *Radzanower*, 426 U.S. at 153.[6]

---

[6] Plaintiff argues that the Court improperly assesses the case by analyzing whether the mind of the legislator had turned to the details of the subject. ECF No. 185 at 27. According to Plaintiff, courts apply the statutory canon disfavoring repeal by implication "simply by asking which statute addresses the narrower subject matter, and whether the general statute reflects any clear intent that it should not apply." *Id.* (citing *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1034 (9th Cir. 2008)). But the absence of evidence pointing to Congress's intent to impose an "acquisition prerequisite" to the *waters* of the GGNRA is precisely why the Court declines to apply the canon disfavoring repeals by implication in the rote way that Plaintiff suggests. In citing *Radzanower*'s explanation for the purpose of the canon, the Court does not mean to suggest that courts must seek out legislative history or extrinsic sources of Congressional intent to determine whether to apply the presumption against repeals by implication. But the Court does read *Morton* and its progeny as assuming that the court is confronted with an earlier statute whose effect is, after applying traditional tools of statutory interpretation, clear and undisputed. And the presumption against repeal by implication lives alongside other well-established canons, such as the Whole Act Rule, which affects the Court's construction of the GGNRA Act, *supra*. *See, e.g.*, *Gonzales v. Oregon*, 546 U.S. 243, 273-74 (2005) (interpreting an act in the context of "[t]he statutory scheme with which . . . [it] is intertwined"). For these reasons, the Court rejects Plaintiff's argument and declines to apply the canon disfavoring repeals by implication.

15

Out of context, Plaintiff's interpretation of the isolated phrase "lands, waters, and interests therein acquired," could be reasonable. But "a section of a statute should not be read in isolation from the context of the whole act." *Planned Parenthood Arizona Inc. v. Betlach*, 727 F.3d 960, 971 (9th Cir. 2013) (quoting *Richards v. United States*, 369 U.S. 1, 11 (1962)). In the context of the whole act, applying the "acquisition prerequisite" to the waters in question does not seem to be a plausible construction. It might be different if the Court were asked to consider whether DOI could regulate the waters in question under the GGNRA Act Alone. But the Court is asked to attempt to harmonize the GGNRA Act with a later enacted, and equally valid, Act of Congress which specifically gives NPS general authority to regulate boating within the waters of the national park system. Courts generally employ the presumption against repeals by implication when the previous enactment's provisions are clear and undisputed. *See, e.g.*, *Morton*, 417 U.S. at 542-45. Since Plaintiff has failed to demonstrate that Congress specifically turned its attention to the question of whether DOI would need to acquire a property interest in the waters in question before it could regulate them, Plaintiff cannot escape the otherwise clear effect of 16 U.S.C. § 1a-2(h). *See Radzanower*, 426 U.S. at 153.

For the purposes of this motion, the Court assumes without deciding that DOI has never acquired any property interest in the waters in question.[7] As the Court interprets the GGNRA Act

---

[7] CSLC took no position on this question, and no other agency of the State of California responded to the Court's 2013 invitation to provide its views. However, "[i]t is a well-established proposition that the lands lying between the lines of ordinary high and low tide, as well as that within a bay or harbor, and permanently covered by its waters, belong to the state in its sovereign character, and are held in trust for the public purposes of navigation and fishery." *Cal. Fish Co.*, 166 Cal. at 584. "A public easement and servitude exists over these lands for those purposes." *Id.* Under the concept of public trust, "the sovereign owns 'all of its navigable waterways and the lands lying beneath them as trustee of a public trust for the benefit of the people.'" *Nat'l Audubon Soc'y v. Superior Court*, 33 Cal. 3d 419, 434 (1983) (quoting *Colberg, Inc. v. State of California ex rel Dep't Pub. Works*, 67 Cal. 2d 408, 416 (1967)). "The State of California acquired title as trustee to such lands and waterways upon its admission to the union." *Id.* at 434.

Defendants do not claim that the United States ever at any point after California's admission acquired any property interest in the waters themselves. There is some question about whether the United States has acquired *some* of the tide and submerged land *beneath* the waters in question. *See* ECF No. 118 at 6-12. Defendants argue that the United States' ownership of some of the submerged lands supports their authority to regulate activity within the waters above those lands. ECF No. 182 at 9. The Court does not rule on Defendants' contention for the purposes of this motion. In any event, acquisition of submerged land does not generally include an interest in

16

and the NPS Organic Act, this fact does not deprive DOI and NPS of statutory authority to apply 36 C.F.R. § 2.3(d)(4) within the waters in question.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED, and Plaintiff's cross-motion is DENIED. The clerk is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: December 11, 2020



JON S. TIGAR
United States District Judge

---

waters above that are owned by the State of California in public trust. *See* Cal. Const. Art. X., § 3; *Cal. Fish Co.*, 166 Cal. at 576; Cal. Pub. Resource Code § 6009.1.